Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON J. HAMLIN, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> YAYYO, INC., RAMY EL-BATRAWI, JONATHAN ROSEN, KEVIN PICKARD, HARBANT S. SIDHU, JEFFREY GUZY, CHRISTOPHER MIGLINO, PAUL RICHTER, AEGIS CAPITAL CORP., and WESTPARK CAPITAL, INC., <br><br> Defendants. | No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>CLASS ACTION</u> <br><br> JURY TRIAL DEMANDED |

Plaintiff Jason J. Hamlin ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, announcements, public filings, wire and press releases published by and regarding YayYo, Inc. ("YayYo," or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded YayYo securities pursuant and/or traceable to the registration statement and related prospectus (collectively, the "Registration Statement") issued in connection with YayYo's November 14, 2019 initial public offering (the "IPO" or "Offering"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act").

2.      In November 2019, Defendants held the IPO, issuing approximately 2,625,000 shares to the investing public at $4.00 per share, pursuant to the Registration Statement.

3.      By the commencement of this action, the Company's shares trade significantly below the IPO price. As a result, investors were damaged.

## JURISDICTION AND VENUE

4.      The claims alleged herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 771(a)(2) and 77o.

1

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 22 of the Securities Act (15 U.S.C. §77v).

6.      This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. The Company is also headquartered in this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and §22(a) of the Securities Act (15 U.S.C. §77v(a)) as a significant portion of the Defendants' actions, and the subsequent damages took place within this District.

8.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange. Defendants disseminated the statements alleged to be false and misleading herein into this District, and Defendants solicited purchasers of YayYo securities in this District.

## PARTIES

9.      Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the corrective disclosure.

10.     Defendant YayYo purports to, through its subsidiaries, operate an online peer-to-peer booking platform that rents standard passenger vehicles to self-employed ridesharing drivers and manages a fleet of standard passenger vehicles to be rented directly to drivers in the ridesharing economy.

11.     The Company is incorporated in Delaware and its head office is located at 433 N. Camden Drive, Suite 600, Beverly Hills, California 90210. YayYo securities traded on the NASDAQ exchange from the IPO until February

2

20, 2020 under the ticker symbol "YAYO." Following its delisting from the NASDAQ exchange, YayYo securities have traded on the OTC Pink market since February 20, 2020 under the ticker symbol "YAYO."

12.     Defendant Ramy El-Batrawi ("El-Batrawi") founded YayYo and served as its Chief Executive Officer ("CEO") from the inception of the Company until October 4, 2018, then as Acting CEO from November 17, 2018 to February 1, 2019, and as a member of the Company's Board of Directors (the "Board") between November 2016 and September 2019. Due to his checkered past, at the insistence of the NASDAQ Defendant El-Batrawi resigned all positions at YayYo in September 2019 so that the Company could be taken public. On January 26, 2020, Defendant El-Batrawi purports to have been reappointed CEO of YayYo and as a member of its Board.

13.     Defendant Jonathan Rosen ("Rosen") was at the time of the IPO YayYo's CEO.

14.     Defendant Kevin F. Pickard ("Pickard") was at the time of the IPO YayYo's Chief Financial Officer, Secretary, and a member of its Board.

15.     Defendant Jeffrey J. Guzy ("Guzy") was at the time of the IPO a member of the Company's Board.

16.     Defendant Christopher Miglino ("Miglino") was at the time of the IPO a member of the Company's Board.

17.     Defendant Harbant S. Sidhu ("Sidhu") was at the time of the IPO a member of the Company's Board.

18.     Defendant Paul Richter ("Richter") was at the time of the IPO a member of the Company's Board.

19.     Defendants El-Batrawi, Rosen, Pickard, Guzy, Miglino, Sidhu, and Richter are sometimes referred to herein as the "Individual Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

20.     Each of the Individual Defendants signed or authorized the signing of the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential YayYo investors, all motivated by their own and the Company's financial interests.

21.     Defendant Westpark Capital, Inc. ("Westpark") is an investment banking firm that acted as an underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. Westpark's corporate headquarters is located at 1900 Avenue of The Stars, Third Floor, Los Angeles, CA 90067.

22.     Defendant Aegis Capital Corp. ("Aegis") is an investment banking firm that acted as an underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. Aegis' address is 810 7th Avenue, New York, NY 10019.

23.     Defendants Westpark and Aegis are referred to herein as the "Underwriter Defendants."

24.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared substantial fees from the IPO collectively. The Underwriter Defendants arranged a roadshow prior to the IPO during which they, and representatives from the Company, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b)     The Underwriter Defendants also obtained an agreement from the Company and the Individual Defendants that YayYo would indemnify and hold

4

the Underwriter Defendants harmless from any liability under the federal securities laws.

(c)     Representatives of the Underwriter Defendants also assisted the Company and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of the Company, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning the Company's most up-to-date operational and financial results and prospects.

(d)     In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with the Company's lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which the Company's securities would be sold; (iii) the language to be used in the Registration Statement; what disclosures about the Company's would be made in the Registration Statement; and (iv) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and the Company's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, the Company's existing problems as detailed herein.

25.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of

securities registered thereby, including those to Plaintiff and the other members of the Class

26.     The Company, the Individual Defendants, and the Underwriter Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

27.     In June 2016, Defendant El-Batrawi incorporated YayYo in Delaware.

28.     Defendant El-Batrawi has a checkered past. On April 13, 2006, Defendant El-Batrawi was named, along with other officers, directors, and/or associates of Genesis Intermedia, Inc., as defendants in a SEC enforcement action. In the SEC's complaint filed in *SEC v. El-Batrawi, et al.*, Case No. 2:06-cv-02247-CAS-VBK (C.D. Cal.), the SEC charged Defendant El-Batrawi with violations of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934, in connection with a stock loan and manipulation scheme. The SEC enforcement action alleged, among other things, that the defendants had violated antifraud provisions of federal securities laws by orchestrating a scheme to manipulate the stock price of Genesis Intermedia, Inc., a now-defunct public company that was also based in California. On April 1, 2010, Defendant El-Batrawi settled the SEC enforcement action by entering into a final judgment by consent with the SEC. In connection with the settlement of the SEC enforcement action charges, the U.S. District Court for the Central District of California entered a consent decree against Defendant El-Batrawi, which, among other things, barred him from acting as an officer or director of a public company for a period of five years following the date of entry of the final judgment by consent.

29.     As Defendants prepared to take YayYo public in the IPO, given

Defendant El-Batrawi's history of securities law violations, the NASDAQ refused to permit a listing of the Company's shares unless Defendant El-Batrawi resigned from his positions and relinquished all authority and control over YayYo prior to the effective date of the IPO. Defendant Rosen was hired by the Company in February 2019 and appointed as CEO in October 2019.

## YayYo's False and/or Misleading Registration Statement

30.     On April 30, 2018, YayYo filed with the SEC a registration statement on Form S-1, which in combination with subsequent amendments on Forms S-1/A and filed pursuant to Rule 424(b)(4), are collectively referred to the Registration Statement and  issued in connection with the IPO.

31.     On November 14, 2019, YayYo filed with the SEC the final prospectus for the IPO of common stock on Form 424B4 (the "Prospectus"), which forms part of the Registration Statement. In the IPO, YayYo sold 2,625,000 shares at $4.00 per share, purportedly the "[t]otal gross proceeds from the offering were $10,500,000[.]"

32.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

33.     The Registration Statement stated the following, in pertinent part, regarding Defendant El-Batrawi's role with the Company:

> ***On October 4, 2018, Mr. El-Batrawi resigned as Chief Executive Officer.*** He then was appointed Acting Chief Executive Officer on November 17, 2018. ***On February 1, 2019, Mr. El-Batrawi resigned from his position as Acting Chief Executive Officer of the Company*** upon the appointment of Jonathan Rosen as Chief Executive Officer. ***Mr. El-Batrawi resigned as our director effective as of September 1, 2019.***

7

(Emphasis added.)

34.     The Registration Statement claimed that Defendant Rosen was operating independently as CEO and stated, in pertinent part:

> We depend on a small number of executive officers and other members of management to work effectively as a team, to execute our business strategy and operating business segments, and to manage employees and consultants. ***Our success will be dependent on the personal efforts of our Chief Executive Officer, our directors and such other key personnel.*** Any of our officers or employees can terminate his or her employment relationship at any time, and the loss of the services of such individuals could have a material adverse effect on our business and prospects. ***Mr. El-Batrawi, the founder and original Chairman of the Board and original Chief Executive Officer of the Company from its incorporation of the Company, resigned from all positions with the Company as a condition for being approved for listing on The Nasdaq Capital Market.***

(Emphasis added.)

35.     The Registration Statement stated the following, in pertinent part, regarding the purported sale of Defendant El-Batrawi's equity ownership:

> ***As a condition to approving the Company's common stock for listing on The Nasdaq Capital Market, X, LLC, an entity that is wholly-owned and controlled by Ramy El-Batrawi, our founder and former Chief Executive Officer and former director, agreed to sell 12,525,000 of its 15,425,000 shares of common stock. The 12,525,000 shares (the "Private Shares") were sold*** pursuant to an exemption from registration to four existing Company shareholders who qualify as accredited investors (as that term is defined in Securities Act Rule 501(a)). The Private Shares were sold at $3.00 per share in exchange for non-recourse, non-interest-bearing promissory notes with maturities ranging from one year to eighteen months. ***As a result of the sale, X, LLC's beneficial ownership shall be reduced to 9.9% of the shares outstanding after the completion of this Offering.*** We will not receive any proceeds from the sale of the Private Shares. If the offering contemplated by this registration statement is not consummated by January 31, 2020, the parties have agreed to unwind

8

the sale of the Private Shares transaction in compliance with applicable law. Mr. El-Batrawi has also entered into a Voting Trust Agreement (the "Trust") pursuant to which the voting power of all of his remaining 2,900,000 shares of common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters.

\* \* \*

***Mr. El-Batrawi has entered into a Voting Trust Agreement (the "Trust") pursuant to which the voting power of all of his outstanding common stock will be controlled by a trustee*** who will use the voting power of the common stock held in the Trust to vote on all matters presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters. The Trust shall be irrevocable, and shall terminate upon the earlier of (a) the written agreement of the Company, the trustee and a duly authorized representative of Nasdaq, or (b) the date upon which the Company is not listed on a security exchange controlled by Nasdaq.

\* \* \*

**Voting Trust**

***Mr. El-Batrawi has entered into a Voting Trust Agreement pursuant to which the voting power of all of his outstanding common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters, other than certain extraordinary matters***, presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters. Mr. El-Batrawi's entrance into the Voting Trust Agreement is a condition for the Company's approval for listing on The Nasdaq Capital Market.

***The Trust shall be irrevocable***, and shall terminate upon the earlier of (a) the written agreement of the Company, the trustee and a duly authorized representative of Nasdaq, or (b) the date upon which the Company is not listed on a security exchange controlled by Nasdaq.

9

*The trustee, initially one of our directors, Harbant S. Sidhu, shall have discretion to vote the Trust's shares on all extraordinary matters which shall include any merger, consolidation, business combination, share exchange, restructuring, recapitalization or acquisition involving the Company or any similar transaction or the sale, lease, exchange, pledge, mortgage or transfer of all or a material portion of the Company's assets.*

\*      \*      \*

To the best of our knowledge, except as otherwise indicated, *each of the persons named in the table has sole voting and investment power with respect to the shares of our common stock beneficially owned by such person*, except to the extent such power may be shared with a spouse. To our knowledge, none of the shares listed below are held under a voting trust or similar agreement, except as noted. *To our knowledge, there is no arrangement, including any pledge by any person of securities of the Company, the operation of which may at a subsequent date result in a change in control of the Company.*

| Name and Address of Beneficial Owner | Title | Beneficially Owned | Percent of Class Before Offering | Percent of Class After Offering |
|---|---|---|---|---|
| **Officers and Directors** [1] | | | | |
| Jonathan Rosen | Chief Executive Officer | — | — | — |
| Kevin F. Pickard [2] | Chief Financial Officer and Director | 300,000 | 1.1% | 1.0% |
| Laurie DiGiovanni | Chief Operating Officer | — | — | — |
| | | | | |
| Jeffrey J. Guzy | Director | — | — | — |
| Christopher Miglino | Director | — | — | — |
| Harbant S. Sidhu | Director | — | — | — |
| Paul Richter | Director | — | — | — |
| | | | | |
| **Officers and Directors as a Group (total of 7 persons)** | | **300,000** | **1.1%** | **1.0%** |
| **5% Stockholders** | | | | |
| X, LLC [3] [5] | | 2,900,000 | 10.8% | 9.9% |
| Gray Mars Venus Trust, Arizona 2015 [4] [5] | | 10,325,000 | 38.5% | 35.1% |
| Bellridge Capital, L.P. [5] [6] | | 2,400,000 | 8.5% | 7.87% |
| David Haley [5] [7] | | 2,844,945 | 10.6% | 9.7% |
| James Malackowski [5] [8] | | 2,758,824 | 10.3% | 9.4% |
| John O'Hurley [5] [9] | | 2,018,750 | 7.5% | 6.9% |
| Acuitas Group Holdings, LLC [5] [10] | | 1,654,412 | 6.2% | 5.6% |

10

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(Emphasis added.)

36.     The Registration Statement stated the following, in pertinent part, regarding "Use of Proceeds'" from the IPO:

> We currently intend to use the net proceeds to us from this primary offering to purchase vehicles to add to our fleet of passenger vehicles made available for rent through our wholly-owned subsidiary, Distinct Cars, and for general corporate purposes, including working capital and sales and marketing activities.

> *       *       *

> The principal purposes of this primary offering are to increase our capitalization and financial flexibility, increase our visibility in the marketplace and create a public market for our common stock. As of the date of this prospectus, we cannot specify with certainty all of the particular uses for the net proceeds to us from this primary offering. However, we currently intend to use the net proceeds to us from this primary offering to add to our fleet of passenger vehicles made available for rent through the Company's wholly-owned subsidiary, Distinct Cars, and for general corporate purposes, including working capital, sales and marketing activities. We may also use a portion of the net proceeds for the acquisition of, or investment in, technologies, solutions or businesses that complement our business, although we have no present commitments or agreements to enter into any acquisitions or investments.

37.     The Registration Statement stated the following, in pertinent part, regarding Anthony Davis, its former President, CEO, and Director of YayYo:

- Anthony Davis was the "Former President, Chief Executive Officer, Director[,]" having served in those capacities between 2017 and 2018 and was paid $20,000 in salary;

- That "[o]n December 1, 2016 . . . Mr. Davis . . . received non-qualified stock options expiring on December 31, 2018, entitling [him] to purchase 100.000 shares of Company common stock at an exercise price of $1.00 per share at any time on or after June 1, 2017"; and

11

- That "[o]n November 29, 2016, the Company and Mr. Davis, a former executive officer of the Company, entered into an offer of employment agreement with the Company setting forth an initial base salary for Mr. Davis's first three months of service and performance under his term of employment with the Company. As set forth under the employment offer, Mr. Davis was entitled to receive (i) $15,000 for his service in the month of December 2016, (ii) $10,000 for service performed during the month of January, 2017 and an additional $10,000 for service performed by Mr. Davis during the month of February 2017."

38.   The Registration Statement downplayed and underreported its indebtedness to the social media company Social Reality, Inc., which changed its name to "SRAX, Inc." in August 2019 ("SRAX"). Specifically, the Registration Statement stated, in pertinent part, that "[d]uring the year ended December 31, 2018, the Company incurred $334,471 for advertising and digital media services from Social Reality" and that "[a]t December 31, 2018, the Company had an amount due of $334,471 to Social Reality." In addition to failing to disclose the full amount owed to SRAX at the time of the IPO, the Registration Statement failed to disclose that the debt was then overdue and that YayYo had been delaying making the payment while it carried out its IPO.

39.   The statements contained in ¶¶ 31-38 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, the Registration Statement was false and/or misleading and/or failed to disclose that: (1) Defendant El-Batrawi continued to exercise supervision, authority, and control over YayYo, and was intimately involved, on a day-to-day basis, with the business, operations, and finances of the Company, including assisting the Underwriter Defendants in marketing YayYo's IPO; (2) Defendant El-Batrawi never sold the

12

12,525,000 "Private Shares" and continued to own a controlling interest in YayYo despite the NASDAQ's insistence that he retain less than a 10% equity ownership interest in connection with the listing agreement; (3) Defendants promised certain creditors of YayYo that in exchange to their agreeing to purchase shares in the IPO – in order to permit the Underwriter Defendants to close the IPO – YayYo would repurchase those shares after the IPO; (4) Defendants intended to repurchase shares purchased by creditors of YayYo in the IPO using IPO proceeds; (5) YayYo owed its former President, CEO, and Director a half of million dollars at the time of the IPO; (6) YayYo owed SRAX $426,286 in unpaid social media costs, most of which was more than a year overdue as payment had been delayed while YayYo attempted to complete its IPO; and (7) as a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### **THE TRUTH EMERGES**

40.    On January 13, 2020, YayYo filed with the SEC a Form 8-K announcing that "[o]n January 10, 2020, YayYo  Inc. [] entered into an Executive Employment Agreement [] with the Company's Chief Executive Officer, Jonathan Rosen, pursuant to which Mr. Rosen will continue to serve as the Company's Chief Executive Officer for one year or until terminated in accordance with the Agreement."

41.    On January 24, 2020, YayYo filed an action for declaratory judgement and permanent injunction against Defendant El-Batrawi in the Superior Court of the State of California, County of Los Angeles, Case No. 20STCP00309, alleging in pertinent part:

*Despite leaving the Company following concerns from NASDAQ regarding his involvement in the day-to-day operations of YayYo in September 2019, Defendant [El-Batrawi] has engaged in a continuous course of actions misrepresenting himself as affiliated*

13

***with, speaking on behalf of, and authorized or empowered by YayYo.
In so doing, Defendant [El-Batrawi] has purported to bind the
Company to contracts, direct its employees, change its website, and
event to attempted to sell the Company to its competitors.***

(Emphasis added.)

42.     In a declaration filed with YayYo's complaint in support of a
temporary restraining order, Defendant Rosen testified that despite having
promised in September 2019 in connection with his resignation to have "***no formal
or informal affiliation between the Company and [El-Batrawi]***, expect [sic] for
[his] minority ownership (less than 10%) in the Company" (emphasis in original),
"[Defendant El-Batrawi] [had] continue[d] to operate and hold himself out as if a
director or officer of YayYo, or as an otherwise authorized representative of the
same." Defendant Rosen further testified that despite the Registration Statement
having expressly stated that Defendant El-Batrawi had already sold the 12,525,000
shares of YayYo prior to the IPO, in reality "Defendant El-Batrawi ha[d] failed
and/or refused to sell his shares of stock in the Company . . ." Defendant Rosen
further admitted this had all been going on since September 2019, well before the
IPO, including testifying in pertinent part that "[s]ince [September 2019],
Defendant El-Batrawi has engaged in a continuous and escalating pattern of
behavior destructive to YayYo. . . ." Defendant Rosen testified that Defendant El-
Batrawi's misconduct between September 2019 and January 2020 had included,
among other things, contacting competitors, suppliers, and vendors of YayYo and
negotiating with them as a representative of YayYo; meeting with financiers and
investment firms about investing in YayYo and claiming to represent YayYo;
hiring a public relations firm for YayYo and producing and airing commercials for
YayYo on the Fox Business Channel; attempting to hire two marketing firms for
YayYo; and directing that changes be made to YayYo's website.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

43.    On January 27, 2020, YayYo filed a Form 8-K with the SEC announcing that Defendants Guzy, Miglino, and Richter had been replaced as Board members and that Defendant Rosen was no longer the CEO of YayYo. The 8-K stated in pertinent part:

> By the written consent of the holders of more than a majority of the shares of YayYo, Inc. (the "Company") then entitled to vote at an election of directors, ***Messrs. Jeffrey J. Guzy, Christopher Miglino and Paul Richter were removed as directors of the Company, effective January 22, 2020***. On January 24, 2020, the remaining directors of the Company elected Douglas M. Mox, John P. O'Neill and Stephen M. Sanchez as directors to fill such vacancies, each to hold office until the earlier of the expiration of the term of office of the director whom he has replaced, a successor is duly elected and qualified or the earlier of such director's death, resignation, disqualification or removal. Stephen M. Sanchez was elected as the Chairman of the Board of Directors (the "Board").
>
> \*       \*       \*
>
> In addition to the above, ***on January 26, 2020, Jonathan Rosen resigned from his position as the Company's Chief Executive Officer. Mr. Rosen informed the Board that his resignation was for "Good Reason,"*** as that term is defined in Mr. Rosen's employment agreement with the Company dated January 10, 2020. The Company disagrees with Mr. Rosen's characterization of the circumstances surrounding his resignation and does not believe that "Good Reason" exists for Mr. Rosen's resignation.

(Emphasis added.)

44.    On February 10, 2020, YayYo issued a press release entitled "YayYo, Inc. Announces Intention to Voluntarily Delist Its Common Stock From the NASDAQ Capital Market Effective February 20, 2020" disclosing that the new Board would delist YayYo common stock from the NASDAQ, stating:

> BEVERLY HILLS, Calif., Feb. 10, 2020 (GLOBE NEWSWIRE) -- YayYo, Inc. (NASDAQ: YAYO) (the "Company" or "YayYo") today

15

***announced its intention to voluntarily delist its common stock from
the NASDAQ Stock Market ("NASDAQ") effective on February 20,
2020***. The Company expects that its common stock will be approved
for quotation on the OTCQB from and after that date. The Company
has elected to effect the voluntary delisting of its common stock after
discussions with NASDAQ's staff and based on the determination of
the Company's board of directors that voluntarily delisting the
common stock from the NASDAQ is in the best interests of the
Company and its stockholders. ***NASDAQ has advised the Company
that it believes that the Company has failed the conditions for
continued listing of its common stock set forth in Listing Rule
5250(a). The voluntary delisting will permit the Company to operate
its business free from restrictions imposed by NASDAQ rules and the
conditions applicable to the listing of the Company's common stock
on the NASDAQ.***

The Company has notified NASDAQ of its intent to voluntarily delist
its common stock from the NASDAQ. The Company currently
anticipates that it will file with the Securities and Exchange
Commission a Form 25 relating to the delisting of its common stock
on or about February 20, 2020 and expects the delisting of its common
stock to be effective ten days thereafter. The purpose of the Form 25
filing is to effect the voluntary delisting from the NASDAQ of the
Company's outstanding common stock. The Company does not
expect the delisting to have any adverse effects on its business
operations.

(Emphasis added.)

45.     On February 11, 2020, SRAX filed a collection action against YayYo
in the Superior Court of the State of California for the County of Los Angeles, Case
No. 20STVV05559, alleging that SRAX had provided media services to the
Company dating back to 2018, claiming breach of contract and related causes of
action. SRAX alleged that YayYo then owed it $645,286 – including $426,286 for
services rendered prior to time of the IPO. In its complaint, SRAX alleged that
YayYo claimed to be "unable to pay" for the services prior to the IPO "apparently

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

due to a delay in its [IPO]." Though the invoices for the services attached to the complaint filed by SRAX were signed by Defendant El-Batrawi, an email attached to the complaint dated January 24, 2020 from Defendant Rosen stated that other than $50,000 that had apparently been paid to SRAX from the IPO proceeds on January 23, 2020, YayYo would be unable to pay the rest of the outstanding bill until it obtained additional outside financing.

46.   On March 3, 2020, YayYo filed a with the SEC a Form 8-K announcing the following:

> **On February 28, 2020, the Board of Directors (the "Board") of YayYo Inc. (the "Company") appointed Ramy El-Batrawi as the Company's Chief Executive Officer and as a member of the Board, effective immediately.** Mr. El-Batrawi has not been appointed to serve on any committees of the Board at this time and will receive no compensation in connection with his appointment as Chief Executive Officer or his service on the Board.
>
> Mr. El-Batrawi, 58, is a founder of the Company and previously served as its Chief Executive Officer from June 2016 until February 2019 and as a director from June 2016 until September 2019. Mr. El-Batrawi is the founder and sole owner of PDQ Pickup LLC, a moving and logistics company, which he founded in December 2018. Since May 2015, he has been the owner of X, LLC, a private investment firm. Prior thereto, Mr. El-Batrawi was the owner and chief executive officer of Growth Strategy Investments, LLC, a private investment firm.
>
> There are no family relationships, as defined in Item 401 of Regulation S-K, between Mr. El-Batrawi and any of the Company's executive officers or directors or persons nominated or chosen to become a director or executive officer. **There is no arrangement or understanding between Mr. El-Batrawi and any other person pursuant to which Mr. El-Batrawi was appointed as Chief Executive Officer.**
>
> During the year ended December 31, 2018, the Company paid management fees of $205,000, to a company that is owned by Mr. El-

17

Batrawi. Beginning on February 1, 2019, the Company entered into a consulting agreement with Mr. El-Batrawi and paid $167,000 under the consulting agreement. The consulting agreement was terminated effective September 1, 2019.

(Emphasis added.)

47.    On March 3, 2020, former YayYo President, CEO, and Director Anthony Davis filed a complaint for damages, declaratory relief, failure to pay wages in violation of labor code 201, et. seq., violation of California's Unfair Competition Laws (Business & Professions Code § 17200, et seq.), breach of contract, intentional misrepresentation and fraud, and promissory fraud against YayYo, alleging in pertinent part:

Plaintiff Anthony Davis is an experienced, c-suite level executive that agreed to join Yayyo [sic], a ridesharing startup company, as its CEO, for a salary well below his market rate in exchange for the written promise of stock options made by Yayyo founder and then CEO Ramy El-Batrawi.

After only five (5) months of service and in accordance with his responsibilities under an employment agreement, Plaintiff determined that Ramy El-Batrawi could not be trusted because he regularly ignored legal counsel regarding SEC matters and flouted Board protocols and industry norms for corporate compliance. Specifically, El-Batrawi filed fraudulent and materially misleading documents with the SEC that Yayyo continues to use to deny Plaintiff the compensation he is owed.

Instead of remaining in an untenable position due to El-Batrawi's illegal and fraudulent conduct, Plaintiff negotiated a separation written agreement through a consulting agreement that described the agreed upon compensation owed to Plaintiff, including specific language regarding payment from the stock options and other cash owed. To date, despite numerous good faith attempts to be paid pursuant to the written agreements, Yayyo refuses to honor its obligations thereunder.

*    *    *

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Based on the written agreements, Yayyo and El-Batrawi caused damages to Davis in the amount of at least **$454,086.39** for losses related to cash compensation, expenses and the stock options value, plus attorney's fees and costs. Plaintiff also seeks injunctive relief requiring Yayyo to amend the SEC filings (Form S-1/A) so as to not mislead the public.

(Emphasis in original.)

48.    On April 13, 2020, the Company filed with the SEC a Form 8-K announcing the following:

*On April 2, 2020, X, LLC, a company wholly-owned and controlled by Ramy El-Batrawi, the Chief Executive Officer and a Director of YayYo, Inc. (the "Company"), loaned $50,000 to the Company, and on April 6, 2020, X, LLC, loaned an additional $100,000 to the Company.* These loans were made under an oral agreement, are *secured by all of the assets of the Company and its subsidiaries*, bear no interest, and are payable 30 days after the date of the loan. The Company will use the proceeds of these loans for general working capital purposes.

(Emphasis added.)

49.    On April 28, 2020, FirstFire Global Opportunities Fund, LLC ("FirstFire") filed a complaint against the Underwriter Defendants in the U.S. District Court for the Southern District of New York, Case No. l:20-cv-03327. Among other things, FirstFire alleges that the Registration Statement used to conduct the IPO was materially false and misleading because it concealed Defendant El-Batrawi's ongoing control over the company and its IPO process. FirstFire further alleges that when the Underwriter Defendants were unable to raise the full $10 million required by NASDAQ to close the IPO, Defendant El-Batrawi fabricated a $1.2 million commitment purportedly from a trust, which turned out to be a lie. FirstFire also alleges that the Underwriter Defendants and Defendant

19

El-Batrawi solicited creditors and shareholders to invest more money to close the IPO, and "sought to sweeten the attraction of such further investment" by agreeing that YayYo would "immediately" pay them back from the IPO proceeds, an "unlawful act" that would "materially misrepresent the Offering and fraudulently mislead investors[.]" FirstFire further alleges that the Underwriter Defendants told investors that YayYo planned to use the IPO proceeds to purchase vehicles, as well as for general corporate purposes, including working capital and sales and marketing activities, but that in reality YayYo had no intention to do so.

50.     Since the IPO, and as a result of the disclosure of material adverse facts omitted from the Company's Registration Statement, YayYo's stock price has fallen significantly below its IPO price, damaging Plaintiff and Class members.

51.     As of the filing of this Complaint, YayYo's stock trades at approximately 40¢ per share, a 90% decline from the price the stock was offered at the IPO.

52.     Additionally, due to the materially deficient Registration Statement, Defendants have also violated their independent, affirmative duty to provide adequate disclosures about adverse conditions, risk and uncertainties. Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii) requires that the materials incorporated in a registration statement disclose all "known trends or uncertainties" reasonably expected to have a material unfavorable impact on the Company's operations.

53.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

54.     Plaintiff brings this action as a class action on behalf of all those who purchased the Company's securities pursuant and/or traceable to the Registration Statement (the "Class"). Excluded from the Class are Defendants and their

20

families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

58. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants violated the Securities Act;

(b) whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and to what extent the members of the Class have sustained damages and the proper measure of damages.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I
### For Violations of Section 11 of the Securities Act
### Against All Defendants

60.     Plaintiff incorporates all the foregoing by reference.

61.     This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

62.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

63.     Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

64.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

65.     By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated §11 of the Securities Act.

66.     Plaintiff acquired the Company's securities pursuant to the Registration Statement.

67.     At the time of their purchases of YayYo securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful

22

conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

68.      This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act

### Against All Defendants

69.      Plaintiff incorporates all the foregoing by reference.

70.      By means of the defective Prospectus, Defendants promoted, solicited, and sold YayYo securities to Plaintiff and other members of the Class.

71.      The Prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased the Company's securities pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

72.      Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired YayYo securities.

73.      By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2). As a direct and proximate result of such violations, Plaintiff and the other members of the Class who

23

purchased YayYo securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the securities issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their securities to Defendants sued herein. Class members who have sold their securities seek damages to the extent permitted by law.

74.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT III

### Violations of Section 15 of the Securities Act

### Against the Individual Defendants

75.     Plaintiff incorporates all the foregoing by reference.

76.     This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against all Defendants except the Underwriter Defendants.

77.     The Individual Defendants were controlling persons of YayYo by virtue of their positions as directors and/or senior officers of the Company. The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of the Company. The Company controlled the Individual Defendants and all of YayYo employees.

78.     The Company and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

24

79.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 9, 2020               **THE ROSEN LAW FIRM, P.A.**

                                       /s/Laurence M. Rosen
                                       Laurence M. Rosen (SBN 219683)
                                       355 South Grand Avenue, Suite 2450
                                       Los Angeles, CA 90071
                                       Telephone: (213) 785-2610
                                       Facsimile: (213) 226-4684
                                       Email: lrosen@rosenlegal.com

                                       *Counsel for Plaintiff*

25