George B. Newhouse, Esq. (State Bar No. 107036)
RICHARDS CARRINGTON LLC
545 S. Figueroa Street, 7th Fl.
Los Angeles, California 90071
george@richardscarrington.com
Telephone: (213) 348-9016
Facsimile: (213) 348-9017

Attorneys for Defendants, YayYO, Inc.,
Ramy El-Batrawi, Kevin F. Pickard,
Jeffrey J. Guzy, Douglas Mox, Christopher Miglino,
Jon Rosen, John P. O'Neill, Paul Richter, Stephen Sanchez,
and Harbant S. Sidhu ("Individual Defendants")

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE YAYYO, INC. SECURITIES LITIGATION<br><br>. | Case No. 2:20-cv-08235-SVW-AFM<br><br>**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADING ON BEHALF OF DEFENDANTS YAYYO, INC., INDIVIDUAL DEFENDANTS PURSUANT TO FED.R.CIV.P. 12(C); MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER**<br><br>DATE:           JUNE 14, 2021<br>TIME:            1:30 P.M.<br>LOCATION:   COURTROOM 10A<br>JUDGE:         HON. STEPHEN V. WILSON<br>TRIAL DATE: JULY 27, 2021 |

**TO THE COURT, AND COUNSEL OF RECORD FOR PLAINTIFF**:

     **PLEASE TAKE NOTICE** that on June 14, 2021 at 1:30 PM or as soon thereafter as counsel may be heard in the above-entitled Court, located in Courtroom 11A of the U.S. Courthouse of the United States Central District of California, 350 W. First St, Los Angeles, CA 90012, Hon. Stephen V. Wilson, presiding, Defendants YayYO, Inc. (now known as EvMo, Inc.), and individual defendants Ramy El-Batrawi, Kevin F. Pickard, Jeffrey J. Guzy, Douglas Mox, Christopher Miglino, Jonathan Rosen, John P. O'Neill, Paul Richter, Stephen Sanchez, and Harbant S. Sidhu (the "Moving Defendants") will and hereby respectfully do move the Court for an order granting Defendants Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure 9(b) & 12(c) on the basis that the Amended Complaint in this case fails to adequately allege a viable cause of action against YayYo, Inc. (now known as "EvMo, Inc."), Ramy El-Batrawi, Westpark Capital Corp. or any of the individual Defendants named herein as defendants, and fails specifically to plead fraud with sufficient particularity in compliance with Rule 9 (b).

     This motion is made following the conference of counsel held pursuant to Local Rule 7-3 and this Court's Standing Order which took place on May 11, 2021. Counsel for Defendants met and conferred with counsel for the Plaintiffs following the Rule 26(f) conference in which this motion was discussed. The discussion with opposing counsel did not resolve the matter.

     As set forth in the accompanying memorandum of points and authorities, and based on the files and records of this case, and other evidence set forth in the operative pleading, the Amended Complaint, there is good cause for an order granting judgment on the pleadings. Additionally, Moving Defendants join in and incorporate by reference the arguments and authorities advanced by co-Defendant Aegis Capital Corp. in its motion to dismiss pursuant to Rule 12(b)(6) as it applies equally to this motion for judgment on the pleadings.

1

2

3   Dated:  May 17, 2021

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

RICHARDS CARRINGTON LLC


By: ___/s/ George B. Newhouse, Jr.___
       George B. Newhouse, Jr.

Attorneys for Defendants
Defendants YayYO, Inc. (now known as
EvMo, Inc.), Ramy El-Batrawi, Kevin F.
Pickard, Jeffrey J. Guzy, Douglas Mox,
Christopher Miglino, Jonathan Rosen, John P.
O'Neill, Paul Richter, Stephen Sanchez

# TABLE OF CONTENTS

MEMORANDUM OF POINTS & AUTHORITIES .................................................. 1

I.   PRELIMINARY STATEMENT ................................................................... 1

II.  FACTS: THE AMENDED COMPLAINT RELIES ALMOST ENTIRELY ON
     UNSUBSTANTIATED ALLEGATIONS IN OTHER LAWSUITS ..................... 3

     A.   Summary of Pending/ Settled Ligations Against YayYo Since IPO ........... 3

          1.  Social Reality Inc. v. YayYo, Inc. (AC ¶¶ 12, 84-88) ..................... 4

          2.  Anthony Davis v. YayYo, Inc., & Ramy El-Batrawi (AC ¶¶90-96) ............... 4

          3.  FirstFire Global Opportunities Fund, LLC v. Westpark Capital, Inc (AC ¶¶ 102 -122) No.
              1:20-cv-03327-LLS (SDNY) ........................................................ 5

          4.  YayYo, Inc. v. El-Batrawi, Case No. 20STCP00309 ("El-Batrawi Action")(AC ¶¶72-83)
              ................................................................................................. 5

     B.   YayYo's Initial Public Offering ...................................................... 6

     C.   The Various Complaints Against YayYo and Management Fail to Establish Alleged
          Misstatements or Omissions In Respect to the IPO ............................... 7

III. ARGUMENT ............................................................................................ 8

     A.   Moving Defendants Motion for Judgment on the Pleadings Is Timely Under Rule 12(c)
          As the Moving Defendants Have Answered and the Only Defendant Yet To Answer,
          Aegis Capital, Has Filed a Motion to Dismiss Pursuant to Rule 12(b)(6) ............... 8

     B.   Plaintiffs Amended Complaint Being a Hodgepodge Compilation of Asserted Yet
          Unproven Allegations in Other Complaints Cannot Satisfy the Heightened Pleading
          Requirements in Rule 9(b) or the PSLRA. ......................................... 10

     C.   The Registration Statement Accurately Discloses All Material Facts, including That Mr.
          El-Batrawi Resigned From His Positions With YayYo and Retained an Ownership
          Interest in YayYo ..................................................................... 10

     D.   The Registration Statement Accurately Discloses the Intended Use of Proceeds Raised in
          the IPO, YayYo's Liabilities and All Risks Associated with the Acquisition of YayYo's
          stock. .................................................................................... 11

     E.   This Lawsuit Is Filed After YayYo Voluntarily Delists Its Common Stock From
          NASDAQ in Early 2020 – Occurrences That Were Neither Planned nor Foreseeable at
          the Time of the IPO. ................................................................... 11

     F.   Plaintiffs Fail to State Claims under Sections 11 or 12(a)(2) As the AC Alleges No
          Actionable Misrepresentations or Omissions ..................................... 11

          1.  The Amended Complaint Failed to Allege Actionable Misrepresentations or Omissions
          Regarding El-Batrawi's Plans For Continuing Involvement With the Company .............. 13

          2.  The Amended Complaint Likewise Fails to Allege Misrepresentations about YayYo
          Liabilities Such as the Debt to SRAX or the Former Executive Davis ..................... 15

          3.  The Amended Complaint Fails to Allege Misrepresentations Regarding the Intended
          Use of the IPO Proceeds ............................................................... 17

          4.  The Amended Complaint Fails to Allege Misrepresentations Regarding the Company's
          Risk Disclosures ....................................................................... 18

IV.  CONCLUSION ..................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Alicke v. MCI Communications Corp.*, 111 F.3d 909, 912 (D.C.Cir.1997)..........................9

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) ...........................................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007);.........................................9, 10

*Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*, 2010 WL 148617, at *9-10 (S.D.N.Y. Jan. 14, 2010) .................................................................................................18

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 848 (N.D. Cal. 2014), aff'd, 856 F.3d 605 (9th Cir. 2017)...............................*1*

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) .........................9

*Daou Sys., Inc.*, 411 F.3d 1006, 1027-29 (9th Cir. 2005) ............................................11

*Freeway Foods of Greensboro, Inc.*, 467 B.R. 853, 859-61 (Bankr. M.D. N.C. 2012) ...................8

*Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996)........................................10

*Velti PLC Sec. Litig.*, No.13-CV-03889-WHO, 2015 WL 5736589, at *31 (N.D. Cal. Oct. 1, 2015) .........................................................................................................11

*Jung v. Ass'n of Am. Med. Coll.*, 339 F.Supp.2d 26, 35–36 (D.D.C.2004)............................9

*Miyahira v. Vitacost.com, Inc.*, 2012 WL 12895513, at *5 (S.D. Fla. June 28, 2012),...................14

*Moran v. Peralta Community College Dist.*, 825 F.Supp. 891 (ND CA 1993)..............................9

*Noel v. Hart*, No. CV99-649-AS, 2005 WL 2007876, at *1 (D. Or. Aug. 16, 2005)........................9

*Rigel Pharm., Inc.Sec*. Litig., 697 F.3d, 869, 886 (9th Cir. 2012)....................................12

*Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009)............................10, 12

*Yourish v. Cal. Amplifier,* 191 F.3d 983, 993 (9th Cir. 1999) .....................................10

**Other Authorities**

15 U.S.C. § 78u-4(b)(1) .................................................................................3

15 U.S.C. §§ 77k(a) ....................................................................................11

Fed.R.Civ.P. 12 (b)(6).................................................................................8, 10

Fed.R.Civ.P. 12(c) ..................................................................................1, 8, 9

Fed.R.Civ.P. 9(b) ...................................................................................1, 10

Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. 104–67, 15 U.S.C. § 78u-4(b)(1) .............................................................................................3

## MEMORANDUM OF POINTS & AUTHORITIES

### I.   PRELIMINARY STATEMENT

Defendants YayYo, Inc. (now knows as EvMo, Inc.)[1], Westpark Capital Corp., Ramy El-Batrawi et al[2], respectfully move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and Fed.R.Civ.P. 9(b) with respect to the Amended Complaint ("AC") filed by lead plaintiffs Bernard Benarz and William Koch.  Styled as a class action[3] these two individuals allege securities violations against the company, the underwriters to an Initial Public Offering ("IPO") and a host of YayYo's officers and directors.  In filing this motion for judgment on the pleadings *now*, in the interest of judicial economy, the Moving Defendants (all of whom have filed answers) join in and incorporate by reference the pending 12(b)(6) motion filed by Aegis Capital Corporation ("Aegis") and the arguments and authorities adduced by Aegis in its motion, which of course, apply with equal force to the Moving Defendants' motion to dismiss under Rule 12(c).[4]

As we demonstrate below, the instant lawsuit (like the copy-cat actions filed in state court) are largely opportunistic attempts to extract "damages" from the Company, the Underwriters and the Company's officers and directors for alleged -- but otherwise non-existent -- false statements

---

[1] Hereafter  referred to as "YayYo" or the "Company".  All the Defendants on whose behalf this brief is filed, plus WestPark Capital may be referred to collectively as the "Defendants" or "Moving Defendants" as may be appropriate in context.

[2] The other individual defendants who are moving for judgment on the pleadings are Ramy El-Batrawi, Kevin F. Pickard, Jeffrey J. Guzy, Douglas Mox, Christopher Miglino, Jonathan Rosen, John P. O'Neill, Paul Richter, Stephen Sanchez shall be jointly identified herein either as "Individual Defendants."

[3] Lead plaintiffs Bernard Benarz and William Koch purport to act on behalf of a class that has not been certified – and never will be.  No motion for class certification has yet to be brought.

[4] References to Aegis' 12(b)(6) motion shall be "Aegis Br." followed by a page reference.  In order to reduce paperwork before the Court we adopt Aegis references and exhibits, including its convention of citation to the Amended Complaint. Thus, as in Aegis brief, "Ex. __" shall refer to exhibits attached to the Declaration of Aaron F. Miner; "¶__" to the paragraphs of the AC; and "Ex. __" shall refer to exhibits to the supporting Declaration of Aaron F. Miner.  As Aegis states, the Court may consider YayYo's public SEC filings and any other documents incorporated by reference in the AC for purposes of this motion for judgment on the pleadings.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 848 (N.D. Cal. 2014), aff'd, 856 F.3d 605 (9th Cir. 2017).

and omissions made to the investing public at the time of YayYo's IPO -- which transpired on or about November 15, 2019.  On the merits, these contentions are baseless and any associated damages wholly speculative.  The federal and mirror-image state court securities cases filed against the company lack merit as to the allegations of substantive violations.  In addition, there is no readily identifiable class of potentially aggrieved shareholders, and since the Company has largely recovered its share price since the economic difficulties (that were transitory in nature), investors have not been harmed.  The Company's stock has essentially recovered, leaving a situation in which an unidentifiable class of investors have zero damages based on spurious claims.

A close reading of the AC, in any event, reveals several defects fatal to plaintiff's case, as co-defendant Aegis Capital Corp. argues persuasively in its pending motion to dismiss pursuant to Rule 12(b)(6):  (1) No material misrepresentation and/omission are identified in the Registration Statement (or other public filings) in connection with the IPO or other sales or purchases of securities.  Rather, Plaintiffs' allegations make clear that the facts and circumstances giving rise to the alleged "fraud" did not arise until months *after* the IPO.  (2) The AC contains no particularized allegations of fraud or wrongdoing against any of the Defendants, especially the Underwriters (WestPark and Aegis) and the individual board members and officers who are barely, if at all, mentioned in the complaint. As to the Underwriters and all individuals with the possible except of Defendant El-Batrawi, the AC simply says nothing about their conduct that would give rise to a cause of action for securities fraud.  Nothing cannot give rise to a cause of action in a fraud case.

As Aegis correctly points out:
> "Plaintiffs allege that as a condition of YayYo's listing on NASDAQ, Mr. El-Batrawi was required to resign from all positions relating to the company prior to the IPO. Plaintiffs also allege that Mr. El-Batrawi also agreed to sell 12,525,000 shares of YayYo common stock, and to enter into a voting trust agreement with respect to his remaining shares.  It is undisputed that Mr. El-Batrawi did in fact resign from his positions with YayYo and that a new CEO was appointed to replace Mr. El-Batrawi in late September 2019, about a month and half before the IPO closed, and Mr. El-Batrawi entered into the aforementioned agreements with respect to his ownership interest in YayYo."  (Aegis Br. at 1-2)

1    In short the AC on its face fails to comply with the elevated pleading standards set forth in

2    the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. 104–67, 15 U.S.C. § 78u-

3    4(b)(1).  As the Court well knows, the PSLRA requires a plaintiff to identify in his complaint "each

4    statement alleged to have been misleading, the reason or reasons why the statement is misleading,

5    and if an allegation regarding the statement or omission is made on information and belief [as is the

6    case with virtually allegations here] the complaint shall state with particularity all facts on which

7    that belief is formed." 15 U.S.C. § 78u-4(b)(1). Where, as here, the purported securities fraud

8    complaint does <u>not</u> specifically identify the allegedly fraudulent statements *and* explain *why* such

9    statements were misleading, the complaint must be dismissed.  As we demonstrate below (in

10   conjunction with Aegis), there are few, if any, "factual" allegations in the complaint, other than

11   copious cutting and pasting from other complaints, which clearly is deficient under the PSLRA's

12   heightened pleading standards and Rule 9(b).  The Moving Defendants' motion for judgment on the

13   pleadings should be granted.

14   **II.    <u>FACTS: THE AMENDED COMPLAINT RELIES ALMOST ENTIRELY ON</u>**

15   **<u>UNSUBSTANTIATED ALLEGATIONS MADE IN OTHER LAWSUITS</u>**

16   Virtually all of the AC's allegations arise from unproven allegations copied from four

17   lawsuits filed in other courts, all of which were filed *after* the effective date if the IPO. These

18   allegations are bereft of a factual basis, but form the bulk of the largely conclusory allegations

19   comprising the instant complaint.  The various actions involve essentially <u>one fact pattern</u> on which

20   the allegations in AC appear to be based.  The Amended Complaint, indeed, bears an uncanny

21   resemblance to a prior alleged securities case that an investor doing business as "*FirstFire*" filed

22   initially in the Southern District of New York against YayYo, Mr. El-Batrawi and the underwriters

23   involved in this case, Aegis Capital Corporation and WestPark Capital, Inc. (collectively the

24   "Underwriters").  From that case spawned a number of so-called "class action" complaints.

25   **A.  Summary of Pending/ Settled Ligations Against YayYo Since IPO**

26   Following is a summary of litigations involving the Company since early 2020 which are

27   referenced in the AC and comprise the bulk of the factual allegations therein.

28

1          1.      Social Reality Inc. v. YayYo, Inc. (AC ¶¶ 12, 84-88)

2          The SRAX action, which was filed on February 11, 2020, in the Superior Court for the

3   County of Los Angeles ("LA Superior"), was a run-of-the-mill business dispute.  Plaintiff Social

4   Reality Inc. (now knowns as "SRAX") is a media company, a vendor who claimed to have provided

5   media services to the Company.  A dispute developed and SRAX sued the Company for breach of

6   contract and related causes of action, arising from the typical contention that the Company failed to

7   pay for outstanding invoices for services rendered.  The AC alleges that the amount of the SRAX

8   debt was understated in the public filings by $91,815, hardly a material amount. (¶87) The case has

9   been settled amicably between the parties for an amount close to the debt disclosed in the S-1,

10  $334,471.  In short, the allegations in the various complaints about non-disclosures involving

11  SRAX and the status of its "debt" are entirely frivolous.

12         2.      Anthony Davis v. YayYo, Inc., & Ramy El-Batrawi (AC ¶¶90-96)

13         Another commercial dispute led to a complaint that was filed on March 5, 2020, in the LA

14  Superior Court.  Plaintiff Anthony Davis ("Davis") was hired by the Company as its Chief

15  Executive Officer in or about December 2016, although he worked there for only a matter of three

16  months.  Mr. El-Batrawi, the founder of the Company and a former CEO and director, and was

17  involved in Davis' hiring and firing, the Davis complaint alleges.  As part of his compensation, Mr.

18  Davis alleges that he expected to receive stock options in the Company.  Davis does not deny,

19  however, that he resigned from his executive officer and director positions, but asserts that he did

20  not receive his stock options (he also included a spurious claim for wage and hour violations). The

21  Company denied liability and has asserted that it has paid Davis all amounts due to him under the

22  contract, while zeroing in the fact that Davis failed to exercise his stock options before they expired

23  on December 31, 2018.  The lawsuit, as well the SRAX case, entirely lacks merit, but in no event

24  will it have a material impact on the company's business or prospects.

25         Again, the Davis claim, to the extent that the Company knew about it, was fully disclosed in

26  the S-1, as the AC admits: "While the Registration Statement stated that Davis' options expired on

27

28

- 4 -

1  December 31, 2018, and made no mention of other awards, the Davis Action stated he was in fact

2  owed money related to stock options and other compensation" [worth less than $5,000]. (AC ¶96.)

3            3.  <u>FirstFire Global Opportunities Fund, LLC v. Westpark Capital, Inc</u> (AC ¶¶ 102 *-122)*

4               No. 1:20-cv-03327-LLS (SDNY)

5        The *Firstfire* lawsuit was filed on April 28, 2020, against the Underwriters, certain principals of

6  the Underwriters (later amended to add YayYo and El-Batrawi as defendants).  The thrust of the

7  *FirstFire* Complaint, like the sundry so-called securities lawsuits that followed, is that from the

8  outset, YayYo and/or Mr. El-Batrawi never intended to comply with the NASDAQ listing

9  requirements that Mr. El-Batrawi relinquish his managerial control, divest certain shareholdings and

10  financial control over YayYo, but instead that Mr. El-Batrawi undertook temporary measures to

11  placate NASDAQ. (¶¶ 105, 108-111). As can be seen from an examination of the various other

12  complaints, including the cases filed after the Firstfire case, the latter plaintiffs' attorneys largely

13  cribbed FirstFire's allegations that YayYo fabricated a $1.2 million commitment purportedly from

14  the Gray Mars Venus Trust, which was a YayYo shareholder, and that YayYo failed to follow

15  through on using IPO proceeds in a manner that was consistent with the public disclosures made in

16  connection with the IPO. These contentions are manifestly false. The FirstFire case was recently

17  settled amicably and the lawsuit has been dismissed.

18            4.  <u>YayYo, Inc. v. El-Batrawi, Case No. 20STCP00309 ("El-Batrawi Action")</u>(AC

19              ¶¶72-83)

20        The AC alleges that on January 24, 2020, YayYo "took the extraordinary step of filing an

21  action for declaratory [and] injunction [relief] against its founder [and significant shareholder], Mr.

22  El-Batrawi" in Los Angeles Superior Court alleging that El-Batrawi *after* the IPO had closed (and

23  after the stock was listed on NASDAQ) "failed and/or refused to sell his shares of stock in the

24  Company," and "continue[d] to operate and hold himself out as if a director or officer or director of

25  YayYo, or as an otherwise authorized representative of the same" as the AC asserts (¶¶ 76, 130),

26  largely cribbing from the state court case filed against Mr. El-Batrawi.  (*See* Aegis Br. at 5).

27

28

The allegations and evidence submitted in connection with the ill-fated El-Batrawi action (that was dismissed months later) make clear that the conduct alleged to be wrongful was conduct that occurred after the closing of the IPO.  Quoting from the El-Batrawi complaint the AC alleges (¶73-74):

> Despite leaving the Company following concerns from NASDAQ regarding his involvement in the day-to-day operations of YayYo in September 2019, Defendant [El-Batrawi] has engaged in a continuous course of actions misrepresenting himself as affiliated with, speaking on behalf of, and authorized or empowered by YayYo. In so doing, Defendant [El-Batrawi] has purported to bind the Company to contracts, direct its employees, change its website, and even attempted to sell the Company to its competitors*.*"

And the AC alleges that El-Batrawi, after the IPO closed ""engaged in [] wrongful acts against YayYo to dispute and harm YayYo's business." (AC ¶74)[5]

### B. YayYo's Initial Public Offering

The basic facts are not in dispute and appear in the AC. YayYo, now known as EvMo, Inc., is a start-up company that first went public with an IPO in November 2019. (AC ¶¶1, 4)  YayYo is a Delaware corporation with its principal place of business in  Beverly Hills, California.  (AC ¶27)  YayYo's founder, principal shareholder and former CEO is Ramy El-Batrawi. (AC ¶¶ 27,28) Mr. El-Batrawi is a long time resident of Los Angeles, and has organized, owned and operated a number of start-up companies, including YayYo.  YayYo, when first organized in 2016, was involved in developing a ride-sharing application, that would be featured on smart phones and which individuals could use to engage Uber, Lyft or other rider sharing companies, and to shop for the best

---

[5] Aegis correctly points out that all these supposed acts of misconduct occurred according to the AC after the disclosures made in connection with the IPO:  "Mr. Rosen makes clear that both he and Mr. El-Batrawi signed certificates attesting to Mr. El-Batrawi's resignation from his positions with YayYo and the sale of Mr. El-Batrawi's ownership interest in YayYo in late September 2019, approximately a month and a half before the IPO closed. (Ex. 9 at 13, 15.) The underwriters were entitled to rely on these certificates. Mr. Rosen does not allege that Mr. El-Batrawi engaged in any of the alleged improprieties before the IPO closed, or that either he or the Aegis Defendants were aware of Mr. El-Batrawi's alleged misconduct pre-closing. To the contrary, as described in Section E below, Mr. Rosen signed the Registration Statement, attesting to Mr. El-Batrawi's resignation from his positions with YayYo and the sale of the majority of Mr. El-Batrawi's stock in YayYo." (Aegis Br. at 5-6)

1  rate.  Since its formation, YayYo has shifted its business model.  Its principal business now involves

2  leasing fleets of new cars to drivers for Uber and Lyft.  Its business is booming.

3     In late 2019, intent on going public, in order to raise capital to assist its efforts in expanding

4  its fleet of vehicle, YayYo retained the two underwriter defendants, Aegis and WestPark, to work as

5  underwriters for its IPO on NASDAQ. (¶¶ 2, 4, 183.)

6     Although Aegis served as the lead underwriter, WestPark, which is headquartered in

7  California, was primarily responsible for marketing and distributing the securities.  It conducted

8  various roadshows to market the IPO. Indeed, Plaintiff Koch acquired his shares from WestPark as

9  part of the IPO. We understand from Westpark that all of its agreements with the investors who

10  acquired their stock through Westpark included signed binding arbitration agreements, so to the

11  extent that any member of the class acquired their stock through Westpark, such as Koch, those

12  claims would be subject to binding arbitration, and those individuals would have to elect out of the

13  class.

14     As required under the Securities Act, YayYo filed and distributed its Registration Statement

15  on November 6, 2019, which totaled 158 pages. (See Ex.  3,  §2.4.1(i)) The Registration Statement

16  was declared effective by the SEC on November 12, 2019 (Id.) On November 15, 2019, YayYo's

17  IPO closed, and its shares were listed on NASDAQ under the symbol "YAYO." The offering was

18  small however:  in total, around 2,625,000 common shares were sold at a price of $4.00 per share,

19  thus raising approximately $10,500,000 for the company. (*Id.*) The vast majority of the shares were

20  acquired by investors friendly to management and Mr. El-Batrawi – persons who have expressed no

21  interest in joining a purported class action, as discussed in further detail below.

22     **C.  The Various Complaints Against YayYo and Management Fail to Establish**

23       **Alleged Misstatements or Omissions In Respect to the IPO**

24     Plaintiffs' attempt to manufacture federal securities claims out of ordinary business

25  development *following* the IPO fails.  The various lawsuits against YayYo, its officers and directors,

26  and the underwriters of the IPO are:  1) clearly based on unproven allegations and do not arise to

27  facts nor are these largely conclusory assertions sufficient for purposes of Rule (b) particularity; and

28

1  2) the circumstances and developments alleged, on their face, arise solely from business decisions

2  YayYo and Mr. El-Batrawi, occurred long *after* the IPO closed.

3        Specifically, Plaintiffs allege that as a condition of YayYo's listing on NASDAQ, Mr. El-

4  Batrawi was required to resign from all positions that he held with the company prior to the IPO.

5  Plaintiffs also allege that Mr. El-Batrawi agreed to divest 12,525,000 shares of stock that he held of

6  YayYo common stock, and to enter into a voting trust agreement with respect to his remaining

7  shares.  Those contentions while true, do not lay basis for a claim of securities fraud, as it is

8  undisputed, or should be undisputed, that Mr. El-Batrawi did just those things: (1) he resigned from

9  his positions with YayYo (as both an officer and director) and saw to it that a new CEO was

10 appointed to replace him, which transpired in late September 2019, about a month and half *before*

11 the IPO closed, and (2) Mr. El-Batrawi entered into agreements with respect to his ownership

12 interest in YayYo – reducing his stock holdings per the agreement with NASDAQ to just under

13 10%.  In short, Mr. El-Batrawi did everything he promised NASDAQ that he would do.  He did not,

14 however, surrender his rights as a significant shareholder, nor did the law require him to do so.

15 **III.**    **ARGUMENT**

16       **A.**  **Moving Defendants' Motion for Judgment on the Pleadings Is Timely Under**

17           **Rule 12(c) As the Moving Defendants Have Answered and the Only Defendant**

18           **Yet To Answer, Aegis Capital, Has Filed a Motion to Dismiss Pursuant to Rule**

19           **12(b)(6)**

20       This motion for judgment on the pleadings, the equivalent to a motion to dismiss under

21 Fed.R.Civ.P. 12 (b)(6), is timely under by Rule 12(c) which provides that "[a]fter the pleadings are

22 closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *In*

23 *re Freeway Foods of Greensboro, Inc.*, 467 B.R. 853, 859-61 (Bankr. M.D. N.C. 2012) (motion for

24 judgment on the pleadings is considered under the same standards as a motion to dismiss for failure

25 to state a claim, the main difference being that for a motion to dismiss on the pleadings, an answer

26 has been filed). Since the Moving Defendants have filed answers, the pleadings are closed as to

27 them.  To the extent that Plaintiffs argue that the pleadings are <u>not</u> closed as to Aegis, which has a

28

motion to dismiss pending, our position would be that it lies within the sound discretion of the district court to allow this motion for judgment on the pleadings to be heard *now*, as opposed to later, concurrently with Aegis' motion in the interests of uniform justice.  *See Noel v. Hart*, No. CV99-649-AS, 2005 WL 2007876, at *1 (D. Or. Aug. 16, 2005) holding that in a case where other defendants had not yet filed answers, it is well within the discretion of the district court to accept a 12 (c) motion in the interests of justice.  As the district court stated in *Noel*, allowing the 12(c) motion to be heard, "courts have exercised their discretion to permit a motion on the pleadings before all defendants have filed an answer where no prejudice to any party would result."  The district court in Noel cited *Moran v. Peralta Community College Dist*., 825 F.Supp. 891 (ND CA 1993) (considering Rule 12(c) motion even though all defendants had not yet answered because otherwise plaintiff could avoid Rule 12(c) motion simply by not serving one defendant); *Jung v. Ass'n of Am. Med. Coll*., 339 F.Supp.2d 26, 35–36 (D.D.C.2004) (multiple defendants brought a motion under Rule 12(c) but not all had filed answers, court considered the motion under Rule 12(c) for defendants who had answered and under Rule 12(b)(6) for defendants who had not).

In this case fairness and judicial economy favor allowing Defendants' motion for judgment on the pleadings to be heard – particularly because Aegis' motion, which clearly has merit – will be pending at the same hearing.  No prejudice will occur to plaintiffs, and they can argue none.

In reviewing a motion for judgment on the pleadings, the same standard applies as for a 12(b)(6) motion which is warranted only if it appears based on the allegations contained in the complaint, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Alicke v. MCI Communications Corp*., 111 F.3d 909, 912 (D.C.Cir.1997).  That said, naked allegations and bare conclusions – which is all that is offered here – are plainly insufficient. It is settled law that the Court need not accept legal conclusions, naked assertions, conclusory statements or implausible inferences.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing Twombly, 550 U.S. at 555).  To be actionable, a claim must raise more than the "mere possibility of misconduct." Rather,  plaintiff must plead "factual

1    content that allows the court to draw the reasonable inference that the defendant is liable for the

2    misconduct alleged."  Iqbal, 556 U.S. at 678-79.

3    **B.  Plaintiffs Amended Complaint Being a Hodgepodge Compilation of Asserted**

4    **Yet Unproven Allegations in Other Complaints Cannot Satisfy the Heightened**

5    **Pleading Requirements in Rule 9(b) or the PSLRA**.

6           Securities  fraud  claims face a higher burden of pleading and proof.  They  must  satisfy  the

7    heightened  pleading requirements of  FRCP 9(b).   *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156,

8    1161 (9th Cir. 2009); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996).  For example,

9    the AC must "state with particularity the circumstances constituting fraud," FRCP 9(b), i.e., "set

10   forth what is false or misleading about a statement, and *why  it  is  false,*" *Yourish  v.  Cal.*

11   *Amplifier,* 191  F.3d 983,  993  (9th  Cir.  1999), and we submit (citations omitted).

12          Because Plaintiffs fail to satisfy even the most basic pleading requirements of Rule

13   12(b)(6)—let  alone  the heightened  pleading  standards  of  FRCP  9(b)—their

14   claims should be dismissed.

15

16   **C.  The Registration Statement Accurately Disclosed All Material Facts,**
     **including That Mr. El-Batrawi Resigned From His Positions With**
     **YayYo and Retained an Ownership Interest in YayYo**

17

18          We adopt, endorse and refer to Aegis' recitation at page 5 – 6 of Aegis' brief that despite

19   Plaintiffs conclusory allegations, the Registration Statement, which is part of the record, fully and

20   truthfully disclosed that "Mr. El-Batrawi, the founder and original Chairman of the Board and

21   original Chief Executive Officer of the Company from its incorporation of the Company, resigned

22   from all positions with the Company as a condition for being approved for listing on The Nasdaq

23   Capital Market."  Aegis Br. at 4-5, citing AC ¶¶ 57, 127, 151; Ex. 2 at 21.)

24

25

26

27

28

**D. The Registration Statement Accurately Disclosed the Intended Use of Proceeds Raised in the IPO, YayYo's Liabilities and All Risks Associated with the Acquisition of YayYo's stock.**

Likewise we adopt, endorse and refer the Court to Aegis' points that the Registration Statement fully and adequately disclosed the use of proceeds, YayYo's known liabilities and all possible risks associated with the purchase of YayYo's securities, again despite the conclusory allegations to the contrary in the AC. (See Aegis' Br. at 6-9)

**E. This Lawsuit Is Filed After YayYo Voluntarily Delists Its Common Stock From NASDAQ in Early 2020 – Occurrences That Were Neither Planned nor Foreseeable at the Time of the IPO**

We adopt, endorse and refer the Court to Aegis' points that events in question that led to the drop in price of YayYo's stock occurred in or about Feb. 10, 2020 (see Aegis' Br. at 9-12), approximately three months after the IPO, upon YayYo's issuance of a press release announcing that it decided to voluntarily delist its common stock. The decision was made after NASDAQ staff members notified YayYo that, in their view, YayYo was not complying with the conditions for continued listing set forth in Listing Rule 5250(a).

**F. Plaintiffs Fail to State Claims under Sections 11 or 12(a)(2) As the AC Alleges No Actionable Misrepresentations or Omissions**

To state a cause of action under either Sections 11 or 12(a)(2) of the Securities Act, the complaint must plausibly allege facts establishing the existence of a false statement of material fact or a material actionable omission in connection with issuance of the security. 15 U.S.C. §§ 77k(a), 77l(a)(2); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027-29 (9th Cir. 2005). While Section 11 applies to registration statements and Section 12(a)(2) applies to prospectuses and oral communications, *see* 15 U.S.C. §§ 77k(a), 77l(a)(2), the two sections are "'Securities Act siblings' with similar elements." *In re Velti PLC Sec. Litig.*, No.13-CV-03889-WHO, 2015 WL 5736589, at *31 (N.D. Cal. Oct. 1, 2015) (citing In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir. 2010)).

Where, as here, a plaintiff's claims sound in fraud, as opposed to simple negligence, to plead a violation of Section 11 or Section 12(a)(2) the Complaint must explicitly charge any individual defendant with fraud – the allegations must specifically set forth facts that would show that the individuals, or the Underwriters (both Aegis and Westpark) knew about and endorsed, at least by their inaction, the purported fraudulent scheme.  The AC utterly fails to allege facts that would demonstrate such requisite intent to renege on agreements and representations which comprises the crux of the scheme to defraud.

Moreover, the allegations must be pleaded with particularity pursuant to Rule 9(b). *See Rubke*, 551 F.3d at 1164. Under Ninth Circuit case law, "[w]here . . . a complaint employs the exact same factual allegations to allege violations of Section 11 as it uses to allege fraudulent conduct under Section 10(b) . . . , [the court] can assume that it sounds in fraud." *Rubke*, 551 F.3d at 1161; *see also In re Rigel Pharm., Inc. Sec*. Litig., 697 F.3d, 869, 886 (9th Cir. 2012) (applying Rule 9(b) to Section 11 claim where, although it did not incorporate "all of the allegations contained in the rest of the complaint, it does not allege different misrepresentations" and instead "merely relies on the same alleged misrepresentations . . . that are central to [the] Section 10(b) fraud claim"). Furthermore, Plaintiffs' "nominal efforts" to make allegations of "fraud with respect to its section 11 claims are unconvincing where the gravamen of the complaint is fraud and no effort is made to show any other basis for the claims." *In re Rigel Pharm., Inc. Sec. Litig*., 697 F.3d at 885-86.

It is established law that to comply with Rule 9(b), Plaintiffs must provide "particularized allegations of the circumstances constituting fraud, including identifying the statements at issue and setting forth what is false or misleading about the statement and why the statements were false or misleading at the time they were made." Id. at 876.  Plaintiffs utterly fail to do so here.

Instead Plaintiffs rest their claims entirely on the slender reed of allegations made in other complaints  -- allegations from lawsuits post-dating the publication of the Registration Statement and related disclosures purportedly consisting of the following: (i) omission of the fact of Mr. El-Batrawi's continued authority and control over YayYo; (ii) misrepresentations regarding liabilities owed to SRAX and its former CEO Davis – which as it turns out were accurately disclosed; (iii)

1  misrepresentations regarding YayYo's intended "Use of Proceeds" in the Registration Statement;

2  (iv) misrepresentations regarding YayYo's internal controls; and (v)  a host of vague failures to

3  disclose trends, uncertainties, and risks regarding YayYo's products. For the reasons discussed

4  below and in Aegis' brief in support of their motion to dismiss, Plaintiffs have failed to plead falsity

5  with respect to each of these allegations.

6          **1.    The Amended Complaint Fails to Allege Cognizable Misrepresentations or**

7                  **Omissions Regarding El-Batrawi's Plans For Continuing Involvement With the**

8                  **Company**

9          Plaintiffs' allegations regarding Mr. El-Batrawi's failure to resign from his position at

10  YayYo coupled with the contention that he refused to sell or divest his ownership interests should

11  be dismissed because, like so much of the AC, the assertions are not only false, but based on

12  pleading-by-hindsight. The Registration Statement stated that "Mr. El-Batrawi, the founder and

13  original Chairman of the Board and original Chief Executive Officer of the Company from its

14  incorporation of the Company resigned from all positions with the Company as a condition for

15  being approved for listing on The Nasdaq Capital Market." (AC ¶¶ 57, 127; Aegis Br., Ex. 2 at 21.)

16  There is no dispute that well before November 12, 2019, the Effective Date of the Registration

17  Statement, Mr. El-Batrawi had in fact resigned as YayYo's acting CEO, which he did on February

18  1, 2019, and as a director of YayYo effective as of September 1, 2019. (Id., Ex. 2 at 82.) The

19  complaint is devoid of any allegation that Mr. El-Batrawi continued to hold any formal or informal

20  position with YayYo between September 1 and November 12, 2019. He clearly did not do so.

21          In support of these allegations, Plaintiffs apparently rely not on their own knowledge or

22  investigation – which was nil -- but on allegations supposedly cribbed from the El-Batrawi Action,

23  a lawsuit between Mr. El-Batrawi and YayYo, in which Mr. Rosen (ironically now a defendant),

24  who replaced Mr. El-Batrawi as YayYo's CEO, provided a declaration stating that Mr. El-Batrawi

25  "continue[d] to operate and hold himself out as if a director or officer of YayYo, or as an otherwise

26  authorized representative of same" and that Mr. El-Batrawi "ha[d] failed and/or refused to sell his

27  shares of stock in the Company." (AC ¶ 76.) However, the El-Batrawi Action fails to indicate when

28

this alleged misconduct occurred – particularly missing is any allegation that the purported

misconduct occurred before the Effective Date or that any other entity, including YayYo or

individual, had any "knowledge" of El-Batrawi's supposed misconduct.  The Rosen declaration

attached as an exhibit to the El-Batrawi action, in fact refutes these false claims:  Mr. Rosen attested

to the fact that Mr. El-Batrawi had indeed "resigned from the Company's Board, of Directors and

resigned from any and all positions with the Company and any of its subsidiaries," and that "[a]fter

the sale of 12,525,000 of the Company's common stock, there will be no formal or informal

affiliation between the Company and Mr. El-Batrawi, except for the minority shareholder

ownership (less than 10%) in the Company." (*See* Aegis Br., ¶9 at 13, 15.) In short, the allegations

in the El-Batrawi Action do not assist Plaintiffs in their vain efforts to plead falsity with

particularity with respect to any defendant.  As Aegis has correctly pointed out:  "On the contrary,

to the extent that any inferences can be drawn, they suggest that YayYo and Mr. Rosen shared

Aegis's [and Westpark's and the other individual directors and officer's] understanding that the

information presented in the Registration Statement was accurate".  (Aegis Br. at 16). All such

allegations would support, if anything, is that YayYo's management only had reason to believe that

Mr. El-Batrawi may have engaged in interference *after* the Effective Date, when IPO closed.

The bottom line is that alleging facts and events that occurred *after the fact*, here nearly

three months after the Registration Statement and assorted disclosures were made, in order to show

that the statements made in the offering documents were false, fraudulent or misleading does not

suffice under applicable pleading standards.  This point was emphasized by the district court in

*Miyahira v. Vitacost.com, Inc.*, 2012 WL 12895513, at *5 (S.D. Fla. June 28, 2012), *aff'd*, 715 F.3d

1257 (11th Cir. 2013): "Plaintiffs cannot meet their pleading burden by pointing to post-IPO events

to support their claim that statements in the prospectus were  materially misleading when made".

Aegis likewise makes this point persuasively with ample authority:

> "A plaintiff must set forth, as part of the circumstances constituting
> fraud, an explanation as to why the disputed statement was untrue or misleading
> when made." *Glob. Acquisitions Network v. Bank of Am. Corp.*, No. CV 12-
> 08758 DDP CWX, 2013 WL 604159, at *7 (C.D. Cal. Feb. 19, 2013) (citing *In*

*re Glenfed, Inc., Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994)) (emphasis original); *see also In re Glenfed, Inc., Sec. Litig.*, 42 F.3d at 1549 (in securities cases, "often there is no reason to assume that what is true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation, and that therefore simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false"); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (in order to state a Securities Act claim, "a plaintiff must allege facts ***demonstrating the defendant possessed the omitted information at the time the registration statement became effective*** and that the defendant had a duty to disclose that information.'") (quoting *Scibelli v. Roth*, 2000 WL 122193, at *3 (S.D.N.Y. Jan. 31, 2000)) (emphasis added); *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 308 F. Supp. 2d 249, 254 (S.D.N.Y. 2004) ("The truth of a statement made in the [registration statement] is adjudged by the facts as they existed when the registration statement became effective."

"'[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal'" of Securities Act claims. *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 613 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 665 (2d Cir. 2009) (quoting *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)). (Aegis Br. at 17)

## 2. The Amended Complaint Fails to Allege Misrepresentations about YayYo Liabilities Such as the Debts to SRAX or the Former CEO Davis

The allegations concerning supposed misstatements relating to corporate liabilities regarding commercial dealings with SRAX or the former CEO Davis, both of whom later sued the company, are plainly insufficient on their face. With respect to SRAX, Plaintiffs claim that the Registration Statement underreported the debt to the tune of $91,815, and that the Registration Statement omitted to note that YayYo was responsible for an additional debt SRAX had incurred in selling YayYo's debt to SRAX to a third party. (AC ¶¶ 13-14, 141.) Plaintiffs also alleged that YayYo had "obtained services from SRAX with no ability to pay the relevant invoices" and that "YayYo needed to use a portion of the IPO proceeds to pay its many debts." (AC ¶ 141.)  Not only are the allegations not factually based, but they are also plainly immaterial on their face. The SRAX suit has been settled amicably with the Company basically paying SRAX about what was disclosed in the public filings.

With respect to Davis, Plaintiffs' claim that, in 2016, Mr. El-Batrawi caused to be filed with the SEC a "forged" equity incentive plan that did not reflect the actual terms of employment struck between Mr. Davis and Mr. El-Batrawi, one that was never adopted by the Board. (AC ¶¶ 90-96.) The terms of the purportedly forged agreement were later summarized in the Registration Statement. (AC¶ 96.)  Allegedly, under the actual terms of Mr. Davis's agreement with Mr. El-Batrawi, which Mr. Davis apparently did not challenge for over three years after the allegedly falsified incentive plan was filed with the SEC, YayYo owed Mr. Davis over $450,000. Plaintiffs parrot Mr. Davis's allegation that, as a result, the Registration Statement contained misrepresentations concerning his compensation. (AC¶ 143.)

Once again the alleged misrepresentations fail to satisfy the requisite pleading standard.  They are based entirely on multiple, unreliable hearsay -- two lawsuits filed over four months after the Effective Date, only one of which is still pending in Los Angeles Superior Court.  Moreover, to the extent that these alleged misrepresentations relate to YayYo's audited financial information in the Registration Statement, Defendants in this case, including the Underwriters and officers and directors, were entitled to rely on the auditor and accounting expert, AJ Robbins. 15 U.S.C. §§ 77k(b)(3)(C) (an underwriter does not have liability for "any part of the registration statement purporting to be made on the authority of an expert (other than himself)" if "he had no reasonable ground to believe and did not believe, at the time of such part of the registration statement became effective, that the statements therein were untrue" or otherwise misleading.)

In short, both the SRAX and Davis Actions were filed well after the IPO and only one is ongoing.  As such, these purported liabilities are, at best, contingent ones that were unknown and unknowable at the time the Registration Statement was made public and the IPO went forward. As Aegis correctly points out:

> "***The Registration Statement did not need to include these disputed amounts and claims because "the federal securities laws do not require a company to accuse itself of wrongdoing," particularly for unknown claims.*** *In re Volkswagen "Clean Diesel"Mktg., Sales Practices, & Prod. Liab. Litig.*, 258 F. Supp. 3d 1037, 1043 (N.D. Cal. 2017) (citations omitted)); *see also Greenberg v.*

*Sunrun Inc.*, 233 F. Supp. 3d 764, 775 (N.D. Cal. 2017) (finding no misstatement or omission in failure to disclose litigation when litigation did not occur until three weeks after the IPO); *cf. In re Facebook, Inc. Sec. Litig.,* 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) ("[C]ompanies are not required to engage in 'self-flagellation' by disclosing unproven allegations."); *In re Paypal Holdings, Inc.,* 2018 WL 466527, at *3 (N.D. Cal. Jan.18, 2018) ("Federal securities laws do not impose upon companies a duty to disclose uncharged, unadjudicated wrongdoing) (citations omitted).

(Aegis Br. at 19-20; emphasis added.)  The absurd and unproven allegations in the SRAX and Davis litigations especially because they had not been file at the time of the IPO cannot form the basis for a securities violation in this action.

### 3.  The Amended Complaint Fails to Allege Misrepresentations Regarding the Intended Use of the IPO Proceeds

Plaintiffs also failed to establish the presence of misrepresentations or material omissions regarding YayYo's intend use the proceeds of the IPO.  Aegis briefing, again, persuasively disposes of that spurious claim.  (Aegis Br. at 19-22)  We refer the court to Aegis concise and correct arguments which we endorse and adopt.  Aegis points out that any possible variability in the use of proceeds was in fact disclosed in the Registration Statement, but that in any event,

assuming that Plaintiffs' allegations were true, YayYo's use of the IPO proceeds was entirely consistent with the disclosures in the offering documents. Because Plaintiffs' allegations are flatly contradicted by the public disclosures, its Securities Act claims relating to the use of IPO proceeds must be dismissed. *See, e.g., In re Velti PLC Sec. Litig.*, No. 13-CV-03889-WHO, 2015 WL 5736589, at *24 (N.D. Cal. Oct. 1, 2015) (finding that a misstatement cannot serve as the basis of a Securities Act claim "because plaintiffs do not identify any facts plausibly indicating that it was false or misleading when made"); *Greenberg v. Sunrun Inc.*, 233 F. Supp. 3d 764, 772 (N.D. Cal. 2017) (finding that a misstatement cannot serve as the basis of a Securities Act claim where "[t]here was no untruth or misleading omission"); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 366 (affirming dismissal of Section 11 and Section 12(a)(2) claims where plaintiffs failed to allege "that the Funds' managers pursued an undisclosed objective or investment strategy when making investment decisions for the Funds"); *Steinberg v. PRT Group, Inc.,* 88 F. Supp. 2d 294, 300 (S.D.N.Y. 2000) (dismissing claims where alleged omissions were disclosed in prospectus; *Hinerfeld v. United Auto Group*, 1998 WL 397852, at *4 (S.D.N.Y. July 15, 1998) ("If the plaintiffs' claims of misleading disclosures are contradicted by

disclosures made on the face of the prospectus, then no additional facts can prove the claims and dismissal is proper.").

(Aegis Br. at 21-22)

### 4. The Amended Complaint Fails to Allege Misrepresentations Regarding the Company's Risk Disclosures

Finally, the Moving Defendants adopt, endorse and reference by incorporation Aegis rejection of Plaintiff's allegations that the Registration Statement violated Items 303 and 105 of Regulation S-K. These allegations appear to be based on Plaintiffs' earlier allegations regarding Mr. El-Batrawi's "checkered past", his alleged failure to sell his shares and other alleged vague concerns. (See Aegis Br. at 22-23): "In addition, the Item 303 claim fails for the independent reason that Item 303 requires only the disclosure of "known" trends. *See, e.g., Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*, 2010 WL 148617, at *9-10 (S.D.N.Y. Jan. 14, 2010) (Item 303 "requires that a plaintiff plead, with some specificity, facts establishing that the defendants had actual knowledge of the purported trend")

## IV. CONCLUSION

For the foregoing reasons, and as expressed in Aegis brief in support of its motion to dismiss pursuant to Rule 12(b)(6), in which the Moving Defendants adopt and join fully, we submit that the Court should grant their motion for judgment on the pleadings.


Dated: May 17, 2021


                              **RICHARDS CARRINGTON**
                              By: */s/ George B. Newhouse, Jr.*

                              *Attorneys for Defendant*
                              *YayYo, Inc. and Individual Defendants*