**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Lead Counsel for Plaintiffs*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL OF CALIFORNIA

| | |
|---|---|
| IN RE YAYYO, INC. SECURITIES LITIGATION | )  Case Number: 2:20-cv-08235-SVW-AFM )  )  )  ) **Plaintiffs' Opposition to Aegis'** ) **Motion to Dismiss the Amended** ) **Class Complaint** )  ) |

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ..................................................................1

II.  STATEMENT OF FACTS.....................................................................2

     A.   El-Batrawi's Past Impacts the Company.................................................4

     B.   The Company Launches and the Lawsuits Begin, Revealing the Truth ................................................................6

     C.   Other Developments Materially Impact the Company ......................10

III. LEGAL STANDARD ...........................................................................11

IV.  ARGUMENT........................................................................................14

     A.   The Registration Statement Contains Several Material Misstatements and Omissions ...........................................................14

          1.   The Registration Statement Contained Several Misstatements About El-Batrawi's Role With the Company ..........................14

          2.   The Registration Statement Contains Misstatements and Omissions Regarding the Amount of Debt Owed ...................18

          3.   The Registration Statement Contains Misstatements About the Intended Use of Proceeds.......................................20

          4.   The Registration Statement Failed to Disclose Trends, Uncertainties and Risks Regarding YayYo's Products ............21

     B.   Negative Causation Does Not Warrant Dismissal .............................23

     C.   Aegis is a Control Person under Section 15......................................25

V.   CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................12

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
  No. 19-CV-06361-RS, 2020 WL 4569846 (N.D. Cal. Aug. 7,
  2020) ...............................................................................................15, 16, 17

*Derr v. Ra Med. Sys., Inc.*,
  No. 19CV1079-LAB-AHG, 2021 WL 1117309 (S.D. Cal. Mar. 24,
  2021)................................................................................................................16

*Greenberg v. Sunrun, Inc.*,
  233 F. Supp. 3d 764 (N.D. Cal 2017)..............................................................20

*Hildes v. Arthur Andersen LLP*,
  734 F.3d 854 (9th Cir. 2013) ...........................................................................12

*In re Am. Realty Cap. Properties, Inc. Litig.*,
  No. 15 CIV. 307 (AKH), 2019 WL 2082508 (S.D.N.Y. May 10,
  2019) ...........................................................................................................20, 21

*In re CytRx Corp. Sec. Litig.*,
  No. CV141956GHKPJWX, 2015 WL 5031232 (C.D. Cal. July 13,
  2015) ................................................................................................................18

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005) .........................................................................15

*In re Facebook, Inc. Sec. Litig.*,
  405 F. Supp. 3d 809 (N.D. Cal. 2019)..............................................................20

*In re Gilead Scis. Sec Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .........................................................................12

*In re Mattel, Inc. Securities Litigation*,
  No. 2:19-cv-10860-MCS-PLA, 2021 WL 1259405 (C.D. Cal Jan.
  26, 2021) ..........................................................................................................25

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ................................................................22

*In re Paypal Holdings, Inc. S'holder Derivative Litig.*,
   No. 17-cv-00162-RS, 2018 WL 466527 (N.D. Cal. Jan. 18, 2018)...................20

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................13

*In re Snap Inc. Sec. Litig.*,
   No. 2:17-CV-03679-SVW-AGR, 2018 WL 2972528 (C.D. Cal.
   June 7, 2018)........................................................................12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.
   Liab. Litig.*,
   258 F. Supp. 3d 1037 (N.D. Cal. 2017).............................................19

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir.1994) .........................................................23

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom. Hagan v.
   Khoja*, 139 S. Ct. 2615 (2019).....................................................11

*Knollenberg v. Harmonic, Inc.*,
   152 Fed. Appx. 674 (9th Cir. 2005)..............................................13, 25

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
   65 F.3d 1044 (2nd Cir.1995) ........................................................23

*Michael Sanders, et al. v. The RealReal, Inc., et al.*,
   No. 19-CV-07737-EJD, 2021 WL 1222625 (N.D. Cal. Mar. 31,
   2021) ................................................................................25

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir. 2008) ........................................................15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension
   Fund*,
   575 U.S. 175 (2015)..................................................................23

*Pirani v. Slack Techs., Inc.*,
   No. 19-cv-5857, 2020 WL 1929241 (N.D. Cal. Apr. 21, 2019) ..................22

*Robb v. Fitbit Inc.*,
216 F. Supp. 3d 1017 (N.D. Cal. 2016)...............................................................24

*Rubke v. Capitol Bancorp, Ltd.*,
551 F.3d 1156 (9th Cir.2009) ...............................................................12

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ...............................................................16

*Scott Kuhne v. Gossamer Bio, Inc. et al.*,
No. 20-CV-649-DMS-DEB, 2021 WL 1529934 (S.D. Cal. Apr. 19, 2021) ...............................................................24

*SEC v. Todd*,
642 F.3d 1207 (9th Cir. 2011) ...............................................................13

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ...............................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...............................................................12

**Statutes**

15 U.S.C. § 77(k) ...............................................................*passim*

15 U.S.C. § 77(o) ...............................................................25

15 U.S.C. § 77I(a) ...............................................................13, 15, 23

15 U.S.C. § 77k(b)(3)...............................................................20

15 U.S.C. § 78j(b) ...............................................................3, 13

California's Unfair Competition Laws Business & Professions Code § 17200, *et seq.* ...............................................................8

**Rules**

Fed R. Civ. P. 8 ...............................................................13

Fed. R. Civ. P. 9(b) ...............................................................13

Fed. R. Civ. P. 11 ...............................................................9

Fed. R. Civ. P 12(b)(6)...............................................................11

**Other Authorities**

17 C.F.R. § 229.105 ...............................................................................................3, 22

17 C.F.R. § 229.303(a)(3)(ii) ...................................................................................22

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

Lead Plaintiff Bernard Bednarz and Plaintiff William Koch ("Plaintiffs") submit this memorandum of law in support of their opposition to the Aegis Capital Corporation ("Aegis") Motion to Dismiss the Amended Class Action Complaint.[1] Plaintiffs note this motion was filed in violation of Local Rule 7.3, as there was no meet and confer or opportunity to narrow the areas of disagreement. Nonetheless, Plaintiffs are responding in good faith.

## I.    PRELIMINARY STATEMENT

This case is more straight-forward than many other securities fraud class actions. Here it is clear that YayYo was taken public in what can only be called a fraudulent IPO. Aegis, the lead underwriter in YayYo's IPO, vouched for the accuracy and completeness of YayYo's Registration Statement, and was understood to have undertaken a reasonable investigation of the Registration Statement's *bona fides*. Either it did not or was purposefully looking the other way – regardless, Aegis is liable.

The Complaint clearly alleges that, despite the fact that Defendant Rami El-Batrawi—founder and former head of the Company—was required by NASDAQ to fully step back from the Company as a condition of its listing on the exchange, he was working hand-in-glove with the underwriters in marketing the IPO. Further, behind the scenes he was continuing to attempt to operate YayYo as his own private

---

[1] Paragraphs in the Amended Complaint are cited as "¶_." The Aegis Motion to Dismiss is cited as "Aegis MTD."

fiefdom, having never sold the shares that the Registration Statement reported to the public he had sold. If Aegis conducted a reasonable due diligence, all of this would have been known to it. Similarly, if Aegis conducted a reasonable due diligence, it would have discovered the contradictory filings related to the compensation owed to a former executive, that payment to a vendor was higher than reported and far overdue, that the IPO was not properly closed and that the company would not be using the IPO proceeds as reported. While all of this was blowing up in litigations filed soon after the IPO, Defendant El-Batrawi tossed out the new nominal management team and swiftly delisted YayYo's common stock so he could resume his place at the throne. As the market price of YayYo's common stock plummeted in the process, millions of dollars in market capitalization was simply erased – yet still, YayYo and the underwriters kept the $10.5 million raised from innocent investors.

In its motion, Aegis distorts law and facts by arguing the Complaint is based on hindsight pleading. That is far from the truth. Everything alleged was knowable at the time of the IPO. Aegis attached its name to this IPO and profited from this IPO. It is liable for the misstatements and omissions in the Registration Statement.

## II.   STATEMENT OF FACTS

Both YayYo and its founder have questionable backgrounds. On April 13, 2006, El-Batrawi was named as a defendant in the SEC enforcement action, *SEC v. El-Batrawi, et al.*, Case No. 2:06-cv-02247-CAS-VBK (C.D. Cal.), charging him

with violations of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934, in connection with a stock loan and manipulation scheme. (¶ 53.) The SEC enforcement action alleged, among other things, that El-Batrawi had violated the antifraud provisions of federal securities laws. (¶ 53.) In 2010, El-Batrawi settled the SEC enforcement action by entering into a final judgment by consent with the SEC. (¶ 53.) In connection with the settlement, the U.S. District Court for the Central District of California entered a consent decree against El-Batrawi, which, among other things, barred him from acting as an officer or director of a public company for a period of five years following the date of entry of the final judgment by consent. (¶ 53.) In 2014, El-Batrawi was also sued by investors alleging that he misled them about an investment in a multilevel-marketing company that El-Batrawi controlled called Xerveo, which sold diet products. (¶ 54.) The case was later settled. (¶ 54.)

In June 2016, El-Batrawi incorporated YayYo in Delaware. The Company first filed an Offering Statement on December 15, 2016. (¶ 41.) At that time, it had a completely different business model – it was developing a single sign-on metasearch "ridesharing" application for smartphone users that sought to provide price comparison and bookings of available ridesharing and other private transportation services. (¶ 42.) The business model required sign-on by companies such as Uber and Lyft. (¶ 43.) Even though El-Batrawi did not have that sign-on, he began promoting the Company – hiring the rapper Master P to make a

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

promotional jingle about the service and enlisting John O'Hurley, known for portraying the character J. Peterman on the television show *Seinfeld*, to make a commercial promoting the YayYo IPO. (¶¶ 42-43.) An article on *Business Insider* from May 11, 2017 quoted a Lyft spokesperson as saying the company had even sent YayYo a cease-and-desist letter. (¶ 43.)

Eventually, when Uber and Lyft refused to sign on, the Company had to change course. (¶¶ 45-46.) On August 12, 2017, the Company announced it was shifting its primary corporate focus. (¶ 46.) It became a company that maintained a fleet of standard passenger vehicles to be made commercially available to drivers in the ridesharing economy. (¶ 46.) In other words, if people want to drive for Uber, Lyft or another rideshare company and do not have their own car, or would prefer not to use their own car, they can go to YayYo. (¶ 47.)

On April 30, 2018, with this new business model in place, YayYo filed a registration statement on Form S-1 with the SEC. (¶ 50.)

### A.    El-Batrawi's Past Impacts the Company

As Defendants prepared to take YayYo public in the IPO, NASDAQ conditioned its listing on El-Batrawi resigning from his positions at YayYo and retaining less than 10% ownership interest in the Company. (¶ 55.)

According to the Registration Statement:

On October 4, 2018, Mr. El-Batrawi resigned as Chief Executive Officer. He then was appointed Acting Chief Executive Officer on November 17, 2018. On February 1, 2019, Mr. El-Batrawi resigned

4

from his position as Acting Chief Executive Officer of the Company upon the appointment of Jonathan Rosen as Chief Executive Officer. Mr. El-Batrawi resigned as our director effective as of September 1, 2019.

(¶ 56.) NASDAQ also required El-Batrawi to sell his controlling interest in YayYo. (¶ 60.) The Registration Statement stated: "X, LLC, an entity that is wholly-owned and controlled by Ramy El-Batrawi, our founder and former Chief Executive Officer and former director, agreed to sell 12,525,000 of its 15,425,000 shares of common stock" and, critically, that those shares "were sold" already. (¶ 60.) Additionally, the Registration Statement reported that prior to the IPO, El-Batrawi had entered into a Voting Trust Agreement ("Trust") pursuant to which the voting power of all of his outstanding common stock would be controlled by a trustee. The Trust was to terminate "upon the earlier of (a) the written agreement of the Company, the trustee and a duly authorized representative of NASDAQ, or (b) the date upon which the Company is not listed on a security exchange controlled by NASDAQ." (¶¶ 58, 128.)

In addition to then-current CEO Rosen and El-Batrawi, the Registration Statement also mentioned another YayYo CEO: Anthony Davis. (¶ 62.) The Registration Statement stated that Davis – who served as president, CEO and a director from December 2016 through February 2017 – was entitled to $35,000 for his service to the Company and that he had failed to exercise stock options granted to him before they expired. (¶ 62.)

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

**B.     The Company Launches and the Lawsuits Begin, Revealing the Truth**

After fifteen amendments to the Registration Statement, YayYo launched its IPO on November 13, 2019. (¶ 50.) Aegis acted as the lead managing underwriter and as a representative of the underwriters for the IPO. (¶ 38.) The other underwriter was WestPark Capital, Inc. Each underwriter was committed to purchase and sell 1,312,500 shares of stock, or 50%. (¶ 39.) The proceeds were purportedly to be used primarily to purchase vehicles and for general corporate purposes. (¶ 133.)

A couple of months later, the Company was in court, seeking a declaratory judgement and permanent injunction against El-Batrawi in the Superior Court of the State of California, County of Los Angeles, alleging that despite nominally standing down as CEO to take the Company public with the NASDAQ listing, El-Batrawi had continued to purport to act on behalf of the Company and that he was harming the business. (¶¶ 72-78.) In a declaration filed with YayYo's complaint in support of a temporary restraining order (the "Rosen Declaration"), Rosen testified that despite having promised in September 2019 in connection with his resignation to have "***no formal or informal affiliation between the Company and [El-Batrawi]***, expect [sic] for [his] minority ownership (less than 10%) in the Company" (emphasis in original), "[El-Batrawi] [had] continue[d] to operate and hold himself out as if a director or officer of YayYo, or as an otherwise authorized

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

representative of the same." (¶ 76.) Critically, Rosen further testified that despite the Registration Statement having expressly stated that El-Batrawi *had already sold* the 12,525,000 shares of YayYo prior to the IPO, in reality he "ha[d] failed and/or refused to sell his shares of stock in the Company . . ." (¶ 76.) Rosen testified that El-Batrawi was "engag[ing] in a continuous and escalating pattern of behavior destructive to YayYo" since September 2019, *before the IPO*. (¶ 77.)

Days after this lawsuit was filed, Guzy, Miglino, and Richter were "removed" as Directors and Rosen resigned, informing the Board it was for "Good Reason" as defined in his employment agreement. (¶¶ 79-80.)

On February 10, 2010, after the market closed, the Company announced its intention to voluntarily delist from the NASDAQ. (¶ 81.) The move came after NASDAQ officials reported to the Company that it believed the Company failed to adhere to NASDAQ's rules. (¶ 81.) As YayYo's counsel described to this Court, NASDAQ was notified of the El-Batrawi Action and: "NASDAQ basically gave the company a Hobson's choice, effectively delisting with NASDAQ or NASDAQ said, we will delist you because we are not happy with the nature of those representations." (11/2/20 Tr. at 7:9-13.)

This was not the end of the revelations about the Company. A day later it was revealed that all of El-Batrawi's promotional activities had cost YayYo a lot, and it could not pay. (¶ 84.) The social media company YayYo employed, SRAX, filed a lawsuit against YayYo alleging breach of contract and unjust enrichment

7

seeking $645,286 in damages, including $426,286 for tasks billed prior to the IPO. (¶¶ 84-86.) The Registration Statement only stated the amount as due at year end 2018, $334,471. (¶ 87.) Therefore, the Registration Statement omitted $91,815, over 20% of the then-outstanding invoice total. SRAX also alleged YayYo owed it another $219,000 because of an arrangement with a third party. (¶¶ 85-86.) SRAX's complaint stated that it had been promised payment in full only following the IPO.

On March 3, 2020, former YayYo President, CEO, and Director Davis filed a complaint for damages, declaratory relief, failure to pay wages in violation of labor code 201, et. seq., violation of California's Unfair Competition Laws (Business & Professions Code § 17200, *et seq.*), breach of contract, intentional misrepresentation and fraud, and promissory fraud against YayYo (the "Davis Complaint"), alleging in pertinent part that "El-Batrawi could not be trusted because he regularly ignored legal counsel regarding SEC matters and flouted Board protocols and industry norms for corporate compliance." (¶ 90.) The Davis Complaint alleged that the amounts owed to him were well above $35,000 – the suit sought "at least **$454,086.39** for losses related to cash compensation, expenses and the stock options value, plus attorney's fees and costs." (¶ 90.) Specifically, the Davis Complaint alleged that El-Batrawi "caused to be filed [with the SEC], under Davis' name and signature, and without his consent or knowledge" or the "approval or knowledge of Yayyo's Board" an incentive plan that purported an extremely short expiration period for Davis' stock options. (¶ 93.) Davis claimed this plan

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

was "fabricated," he never would have agreed to the terms contained in it and it was being used to deny him compensation and stock options owed to him. (¶ 93.) In addition to the money, the suit sought "injunctive relief requiring YayYo to amend the SEC filings (Form S-1/A) so as to not mislead the public." (¶ 90.)

That same day, the Company, which was now trading over-the-counter, having delisted from the NASDAQ, announced that El-Batrawi was back in charge, operating as CEO and a member of the Board. (¶ 97.)

On April 28, 2020, FirstFire Global Opportunities Fund, LLC, which purported to have obtained shares as part of the underwriting, filed a lawsuit alleging, as this action does, that the Registration Statement was materially false and misleading. (¶¶ 102-111.) Among other things, the suit alleged:

- the Registration Statement used to conduct the IPO was materially false and misleading because it concealed El-Batrawi's ongoing control over the company and its IPO process;

- the announcement that the IPO was "closed" was false and misleading because when the underwriters for the IPO were unable to raise the full $10 million required by NASDAQ to close the IPO, El-Batrawi fabricated a $1.2 million commitment from a trust operated by an old friend of El-Batrawi, who later claimed he had never committed to pay the money; and

- Defendants solicited creditors and shareholders to invest more money to close the IPO, and "sought to sweeten the attraction of such further investment" by agreeing that YayYo would "immediately" pay them back from the IPO proceeds, although there was no mention of these debts in the Registration Statement.

All of the complaints referenced above were filed by attorneys who could have been subject to Rule 11 sanctions or disciplinary action. Nothing of the sort

was ever sought by any opposing counsel. The El-Batrawi Action was voluntarily dismissed after El-Batrawi became CEO of the Company again. The FirstFire Action was settled.[2] The other two actions remain pending.

### C. Other Developments Materially Impact the Company

On March 31, 2020, the Company filed a Form 10-K for the fiscal year ended December 31, 2019 (the "2019 10-K"), which repeated many of the misstatements in the Registration Statement. (¶ 112.) It also revealed that, although the Registration Statement stated the goal of the IPO was obtain proceeds to be used "primarily" to purchase vehicles, in fact, only approximately 7% of those monies were used for that purpose. (¶¶ 113-114.) The largest expenditure was repayment of debt – debt which, at least in large part, was known or knowable to YayYo at the time of the IPO – and any underwriter who made a reasonable effort to discover it as part of their due diligence review. (¶¶ 113-114.) It also stated that Rosen resigned "after [YayYo's] delisting from NASDAQ" when El-Batrawi was re-named CEO, which is contradicted by YayYo's own prior statements in SEC filings. (¶ 187.)

On October 30, 2020, Defendants Miglino and Rosen filed a complaint in the Court of Chancery of the State of Delaware seeking advancement of legal fees with regard to civil proceedings (the "Advancement Complaint"). (¶ 116.) As part

---

[2] This occurred after the Complaint was filed but the settlement document has been filed with the SEC and a voluntary dismissal is recorded on the docket of the FirstFire Action.

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

of the Advancement Complaint, Miglino and Rosen attached a rather shocking letter from Company counsel (which now represents them both), which stated the Company was "considering filing suit against Rosen seeking damages caused by his misconduct and his stark breach of fiduciary duty." (¶ 116.) "Likewise, the company believes that Mr. Miglino's bringing a meritless lawsuit against the company – by which he also breached a fiduciary duty of care to the corporation by engaging in commercial transactions with the corporation, while concurrently a board member – is one of the reasons why the securities litigations have been filed." (¶ 116.) The letter from the Company did not spell out what these breaches were other than referencing a lawsuit by Miglino, which was likely the SRAX Action. However, this letter is a statement of admission that the Company believes at least Rosen, CEO at the time of the IPO, committed misconduct. (¶ 117.) The suit has been since dismissed after the parties filed a stipulation of dismissal.

As of February of this year, Acuitas Group Holdings, LLC ("Acuitas") bought 6,000,000 shares of YayYo stock from El-Batrawi's LLC, making Acuitas the largest and controlling shareholder. El-Batrawi was quickly replaced as CEO.

## III.    LEGAL STANDARD

Dismissal pursuant to Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable theory or sufficient facts to support a cognizable theory." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

A complaint must only allege "enough facts to state a claim to relief that is plausible on its face." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] district court ruling on a motion to dismiss is not sitting as a trier of fact … so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings." *In re Gilead Scis. Sec Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). In applying this standard, courts accept as true all factual allegations and draw all reasonable inferences in plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

"Section 11 places a relatively minimal burden on a plaintiff." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013) (citing *Herman & MacLean v. Huddleston*, 459 U.S . 375, 382 (1983)). Liability under Section 11 requires that only "any part of the registration statement . . . contain[] an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Issuers can therefore be liable for what the registration says as well as what it leaves out. *See In re Snap Inc. Sec. Litig.*, No. 2:17-CV-03679-SVW-AGR, 2018 WL 2972528, at *8 (C.D. Cal. June 7, 2018) (Wilson, J.). No proof of scienter, reliance, or loss causation is required. *See Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir.2009).

Section 12(a)(2) similarly is a strict liability statute that creates liability for any person who sells securities using an instrument containing an untruth or omission to an unaware purchaser. 15 U.S.C. § 771 (a)(2).

To state a claim under the control-person liability provision of Section 15(a) of the Securities Act, a plaintiff must show that (1) there is a primary violation of the Securities Act and (2) the defendant directly or indirectly controlled the person or entity liable for the primary violation. *See SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).

Plaintiffs' Securities Act claims do not necessarily "sound in fraud" and are, therefore, generally subject to the more permissive notice pleading standards of Rule 8(a). *See Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674, 683-684 (9th Cir. 2005) (finding that Rule 9(b) did not apply where "Claims [were] not 'grounded in fraud' because Plaintiffs allege[d] a basis for Section 11 liability other than fraud; i.e., the omission of a material fact from the Registration Statement."); *see also In re Refco, Inc. Sec. Litig.,* 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007) (finding careful division of Section 11 and Section 10(b) claims, such as the one present in the instant complaint, instructive). Fed R. Civ. P. 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." There are no claims pled against Aegis which require either fraud or recklessness. However, the Complaint also meets the heightened pleading requirement of Rule 9(b).

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

## IV.   ARGUMENT

### A.   The Registration Statement Contains Several Material Misstatements and Omissions

#### 1.   The Registration Statement Contained Several Misstatements About El-Batrawi's Role With the Company

In January 2020, only approximately two months after the IPO, the then CEO of the Company testified in another action that El-Batrawi *had not sold his shares of the Company* and *had never stopped interfering with the Company*. (¶¶ 72-78.) The Registration Statement stated that those shares "were sold" and El-Batrawi had resigned from all positions at YayYo. (¶¶ 126, 128.)

Aegis argues that because El-Batrawi technically resigned his positions and the El-Batrawi Action does not assert when his acts of misconduct "occurred and/or were discovered" or "any basis for the claim that Mr. El-Batrawi failed to divest his ownership interest in YayYo" that the Complaint fails to allege "any actionable misrepresentations or omissions" with regards to these topics. (Aegis MTD at 15-17.) Aegis further argues that because the truth only came to light after the IPO, the Complaint is based on "hindsight" pleading. (*Id.*) This is a misapprehension of both fact and law.

The misrepresentation regarding the sale alone is enough the establish a Section 11 claim. The Company itself filed a court action that represented that El-Batrawi had not sold his shares. (¶¶ 72, 76.) Notably, though El-Batrawi forced YayYo to dismiss that lawsuit against him when he returned as CEO in connection

14

with the stock delisting, YayYo never claimed that that lawsuit was improperly filed or lacked justification. Surely, Aegis is not asserting that the Company was making a false representation regarding the ownership of a significant portion of its own shares. Simply because this fact did not become public until after the IPO does not make the allegation hindsight pleading. *See Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-CV-06361-RS, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020) (holding a complaint did not engage in "impermissible hindsight pleading" when "defendants' statements were misleading given the information available to them at the time the statements were made"). Defendants represented to the market in the IPO Registration Statement that El-Batrawi sold his shares *prior to the IPO*. (¶¶ 60, 128, 189.) If this was not the case – and Plaintiffs believe evidence will prove it was not – Aegis was at the very least negligent in not knowing the reality of the situation. Section 11 and Section 12(a)(2) do not require knowledge or recklessness; they require simple negligence.[3]

Likewise, while El-Batrawi might have technically relinquished his titles, he is alleged not to have truly relinquished his roles with the Company, and continued to assert, *inter alia*, management over employees. (¶¶ 73-75.) A statement which is technically true can be misleading to investors and liability attaches to such

---

[3] *See Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) (discussing how Section 12(a)(2) does not require scienter); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) ("No scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions.").

statements. *Derr v. Ra Med. Sys., Inc.*, No. 19CV1079-LAB-AHG, 2021 WL 1117309, at *6 (S.D. Cal. Mar. 24, 2021) (holding that while two "sets of statements may have been technically true. . . both would mislead a reasonable investor").

Once the Defendants chose to speak in the Registration Statement on El-Batrawi's involvement with the Company – they had a duty to disclose all material information such that its statements would not be misleading. *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705-706 (9th Cir. 2016) (once a company speaks it is "bound to do so in a manner that wouldn't mislead investors"); *Uber Techs., Inc.*, 2020 WL 4569846 at *7 ("[T]he information defendants *did* disclose created an impression of a state of affairs that differed in a material way from the one that actually exist[ed]."). The Registration Statement undoubtably sent the message to the investing public that El-Batrawi was gone – he was purportedly no longer the controlling shareholder – and even the less than 10% of stock that he still owned according to the Registration Statement was purportedly subject to a voting trust agreement. However, as later revealed by the Company, El-Batrawi, at the time of the IPO, had not sold his shares and was continuing his involvement with the Company. In fact, he operated as if his resignations were in name only. This information would certainly be material to investors, as it might impact (and did impact) the Company's NASDAQ listing. For that reason it should have been known to the underwriters, including Aegis, as part of their due diligence efforts.

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

To compare this to a higher profile case: in September 2018, CBS Corporation announced that Les Moonves, who had been accused of sexual assault allegations, resigned as chairman and CEO. Surely it would be material to investors to know if he was still showing up each day and acting on behalf of CBS. And that would indeed be less impactful than the situation here – Moonves' conduct would not threaten CBS' ability to be listed on a major exchange.

The FirstFire Action – now settled – alleged that El-Batrawi was even working out of the other underwriter's offices to close the IPO. If Aegis did not know about his continued involvement with the Company, they clearly were not even communicating with the other underwriter. Surely more is required of a lead underwriter.[4]

Aegis spends an entire page citing cases that have no applicability to the situation at hand. (Aegis MTD at 17.) Plaintiffs agree with the premise that "[a] plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made." *Id.* (*quoting Glob. Acquisitions Network v. Bank of Am. Corp.*, Case No. CV 12-08758 DDP (CWx), 2013 WL 604159, at *7 (C.D. Cal. Feb. 19, 2013) (a case dismissed because submitted documents contradicted central allegations in the complaint). But Plaintiffs do not see its relevance to this situation. First, the

---

[4] Additionally, the Court cannot take Aegis' word that it did not know; the Complaint credibly alleges that Aegis would have known based on an adequate due diligence investigation.

17
PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

Securities Act claims asserted against Aegis can be alleged based on negligence, explicit fraud is not required. Second, the Complaint clearly lays out why the alleged misstatements were "untrue or misleading when made" – because El-Batrawi, at the time of the IPO, had not sold his shares and was continuing to work on behalf of the Company. These are not "conclusory allegations. . . masquerading as facts" as Aegis asserts – the allegations in the Complaint are backed by statements the Company itself made regarding the situation at the time of the IPO in legal proceedings its own lawyers filed with a court.

Aegis likewise tries to confuse the issue by using pull quotes that imply that Plaintiffs have the burden of pleading that Aegis knew of these facts prior to the IPO. (Aegis MTD at 17.) However, that is not the standard. Rather, for dismissal, Aegis has to establish that "as a matter of law. . . the underwriters could not have discovered the alleged" misstatements were false or misleading. *In re CytRx Corp. Sec. Litig.*, No. CV141956GHKPJWX, 2015 WL 5031232, at *17 (C.D. Cal. July 13, 2015). The Complaint sufficiently alleges Aegis could have and should have.

### 2. The Registration Statement Contains Misstatements and Omissions Regarding the Amount of Debt Owed

The Registration Statement also contains other clear misstatements. Aegis argues that the SRAX Action and Davis Actions are based on "supposed liabilities" that were "at best, contingent ones that were unknown at the time the Registration

Statement was declared effective." (Aegis MTD at 19.) But both actions involve amounts owed as of the IPO.

The SRAX Action included invoices all predating the IPO. (¶ 87.) The Company was on notice prior to the IPO that Davis and another employee were taking the position that the Company had denied them compensation and stock options to which they were entitled. (¶ 95.) Davis and another employee were also taking the position that El-Batrawi had filed fabricated documents with the SEC to misrepresent their compensation arrangement. (¶¶ 90-96.) All of these amounts, even if disputed by YayYo then or now, were material to investors' valuation of this Company that was conducting an IPO of just $10.5 million.

Notably, the Davis Action describes how a "fabricated incentive award" was filed with the SEC in December 2016, then the correct information was filed with the SEC in March 2017, but, subsequently, the Company went back to reporting the information from the "fabricated incentive award." (¶¶ 93-94.) This was public information and certainly discoverable by Aegis.[5] Aegis compares this to cases in which courts have held that companies do not have a duty to disclose unproven allegations, but those cases are easily distinguishable. (Aegis MTD at 19-20.[6]) In

_____

[5] The Company first filed with the SEC on December 5, 2016.

[6] Aegis' cases are not at all on point. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 258 F. Supp. 3d 1037 (N.D. Cal. 2017) is a case about whether the defendant was required to recognize contingent liabilities. The court states that a company is not "require[] to accuse itself of wrongdoing" when there were no outside allegations of wrongdoing at the beginning of the class period. *Id.* at 1043. Here, Davis was already accusing the Company of wrongdoing prior to the class period. The other cases Aegis cites are also not probative. Aegis

19

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

this case, there were public documents establishing a significant aspect of the allegations. And Aegis as an underwriter had a duty of reasonable investigation and thus can be charged with knowledge of these facts.[7] *See, e.g., In re Am. Realty Cap. Properties, Inc. Litig.*, No. 15 CIV. 307 (AKH), 2019 WL 2082508, at *3 (S.D.N.Y. May 10, 2019) ("The underwriters were obligated to investigate these issues, as well as the issues with non-expertised statements discussed above. The record does not contain evidence of an investigation by the underwriters sufficient to entitle them to summary judgment. Accordingly, the underwriters' motion for summary judgment based on their reliance and due diligence defenses is denied.").

### 3.    The Registration Statement Contains Misstatements About the Intended Use of Proceeds

According to the Registration Statement, a main purpose of the IPO was that the Company intended to use the net proceeds of the IPO to purchase vehicles for its fleet. (¶ 133.) The Registration Statement indicated that $5,000,000 of the net

---

properly states a holding of *Greenberg v. Sunrun, Inc.*, 233 F. Supp. 3d 764, 775 (N.D. Cal 2017), that a company cannot be expected to disclose a litigation that occurs after the IPO, but nowhere in the Complaint do Plaintiffs allege that Defendants should have disclosed the Davis Action. *See also In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809 (N.D. Cal. 2019) (discussing in dicta how a company's statement that it was complying with an order was not false and misleading because there was no finding it had violated the order); *In re Paypal Holdings, Inc. S'holder Derivative Litig.,* No. 17-cv-00162-RS, 2018 WL 466527 (N.D. Cal. Jan. 18, 2018) (similarly stating that statements about good corporate governance were not misleading when an investigation had been announced but had not yet found wrongdoing).

[7]    As to non-expertised portions of the statements in a registration statement, such as whether the CEO has truly resigned, whether he has sold stock the registration statement says he sold, and what debts the company then owes, non-issuers must show that, "after reasonable investigation," they had "reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(b)(3).

20

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

proceeds from the IPO was "expect[ed]" to be used for the "purchase of passenger vehicles made available for rent." (¶ 134.) Only $664,158 of that money was used to purchase vehicles because the vast majority was used to pay back debt. (¶ 113.) The amount paid on "notes payable" alone was over $1 million more than it was reportedly expected to be at the time of the IPO. (*Id.*)

And while the Company maintained discretion in what to do with the proceeds – it was in truth a foregone conclusion prior to the IPO that the money raised, which was set based on the IPO price, would need to be used to repay debts – debts the Registration Statement did not fully disclose. The Company knew the massive amount of debt on its books. In fact, the money from the IPO was not enough to repay all the debts, as Rosen admitted in correspondence with SRAX. (¶ 89.) This is not hindsight – Aegis either knew or was negligent in not knowing these matters at the time of the IPO. (*Id.*)

Because a reasonable inference can be drawn at this stage of the proceedings that a reasonable due diligence investigation would have revealed these facts, the Court must reject Aegis' motion to dismiss.

### 4.     The Registration Statement Failed to Disclose Trends, Uncertainties and Risks Regarding YayYo's Products

In addition, when preparing the Registration Statement, Defendants had an independent duty under Item 303 to disclose "any known trends or uncertainties that have had or that the registrant expects will have a material favorable or

unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii).[8] The Complaint alleges that all Defendants, including Aegis, violated Item 303 because they knew, but did not disclose, that (i) El-Batrawi was continuing to involve himself in the Company's affairs and represent himself as in charge of YayYo, leading to potential problems with the Company's NASDAQ listing; (ii) El-Batrawi had not sold his shares as purported in the Prospectus; (iii) the Company's insufficient internal controls would lead to inquiries from NASDAQ and the Company's eventual delisting; (iv) the Company had committed to paying back investors who invested so the Offering could close; and (v) the Company owed more money than it disclosed and was not able to pay. (¶148.) Defendants also had an independent duty under Item 105 to "provide under the caption 'Risk Factors' a discussion of the most significant factors that make an investment in the registrant or offering speculative or risky" and to "adequately describe[] the risk." 17 C.F.R. § 229.105; *Pirani v. Slack Techs., Inc.*, No. 19-cv-5857, 2020 WL 1929241, *12-14 (N.D. Cal. Apr. 21, 2019) (holding omissions required to be stated under Item 105 produces Securities Act liability). Here, Defendants disclosed, because of El-Batrawi's purported resignation, the "management team has only worked together for only a very short period of time and may not work well together as a management team." (¶¶ 151,

---

[8] *See also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1055-56 (9th Cir. 2014); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

187.) However, Defendants utterly failed to disclose the risk associated with El-Batrawi's continued involvement with the Company, which was ongoing at the time the Registration Statement became effective.

## B.   Negative Causation Does Not Warrant Dismissal

Loss causation is not an element of the strict liability claims Defendants face. *See, e.g.*, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 179 (2015). The absence of loss causation, also known as "negative causation," is an affirmative defense that defendants must plead and prove to both Section 11 and Section 12(a)(2) claims. The affirmative defense of negative causation prevents recovery for losses that the defendant proves are not attributable to the alleged misrepresentation or omission in the registration statement. *See* 15 U.S.C. § 77k(e); *see also McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2nd Cir.1995). Defendants bear the "heavy burden" of proof on this defense. *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir.1994). Overcoming a negative causation defense requires only that "the misrepresentation touches upon the reasons for an investment's decline in value." *Id.* at 1422.

In this case, each and every revelation caused a decline in YayYo's stock price. Aegis only mentions one drop, the February 11, 2020 decline, which Aegis argues Plaintiffs cannot show was directly linked to the SRAX Action and not solely attributable to the Company's voluntary delisting the prior day. (Aegis MTD at 23.) But, contrary to what Aegis might desire, it is Defendants who bear the

heavy burden of proving that the alleged misrepresentations do not at all touch on the reason for the stock's decline. Defendants will not be able to meet that burden. *See, e.g., Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1036 (N.D. Cal. 2016) (declining dismissal when the complaint alleged the filing of another lawsuit touched upon the reason the investment declined in value). Aegis notably ignores the allegations, first alleged in the FirstFire Complaint, that this was essentially a broken IPO in that El-Batrawi fabricated a $1.2 million indication of interest by the Gray Mars Venus Trust to claim the Offering was closed. (¶ 105.) This entity then bought the shares on the open market, as indicated in a review of SEC filings, and immediately sold them, causing the stock to decline. (¶¶ 105-11.) And, while YayYo's delisting from NASDAQ was technically a "voluntary delisting," it was because of El-Batrawi's involvement in the Company. (¶ 81.) This is the same involvement that forms the basis of select misstatements alleged in the Complaint.

"Moreover, [b]ecause an analysis of causation is often fact-intensive, negative causation is generally established by a defendant on a motion for summary judgment or at trial." *Scott Kuhne v. Gossamer Bio, Inc. et al.*, No. 20-CV-649-DMS-DEB, 2021 WL 1529934, at *7 (S.D. Cal. Apr. 19, 2021). This issue is simply "more appropriate for resolution at a later stage" and not a reason for dismissal, *id.*, even if Aegis had more thoroughly briefed its argument.

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

### C. Aegis is a Control Person under Section 15

Plaintiffs also sufficiently pled Section 15 liability against Aegis. Section 15 imposes liability on "[e]very person who, by or through stock ownership, agency, or otherwise… controls any person under" Section 11. 15 U.S.C. § 77o(a).[9] Plaintiffs adequately alleged a primary violation. *Michael Sanders, et al. v. The RealReal, Inc., et al.*, No. 19-CV-07737-EJD, 2021 WL 1222625, at \*21 (N.D. Cal. Mar. 31, 2021) (finding Section 15 liability based on successful pleading of a primary violation). Aegis was the lead underwriter in this case, lending its name and legitimacy to the offering, and Plaintiff alleges Aegis controlled the misstatements and omissions. These allegations are more than adequate at this phase. *See In re Mattel, Inc. Securities Litigation,* No. 2:19-cv-10860-MCS-PLA, 2021 WL 1259405, \*13 (C.D. Cal Jan. 26, 2021) (refusing to dismiss a 20(a) control liability claim against the lead partner of an audit team, despite defendant's argument that the allegations against him were boilerplate).

## V. CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Dismiss in its entirety. If the Court dismisses the Complaint, in whole or in part, as to Defendant Aegis, Plaintiffs respectfully submit that the dismissal should be without prejudice and they be granted leave to amend.

---

[9] *See also Knollenberg*, 152 F. App'x at 685 (Section 15 adequately pled when a defendant was an executive and, along with others, caused a prospectus to be drafted, revised and approved).

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

Dated:  May 17, 2021 at  New York, New York

POMERANTZ LLP

/s/      *Cara Davud*
Jeremy A. Lieberman (*pro hac vice* forthcoming)
Cara David (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: cdavid@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein (pro hac vice forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/  Cara David
Cara David

PLAINTIFFS' OPPOSITION TO AEGIS MOTION TO DISMISS: Case No. 2:20-cv-08235-SVW-AFM