**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Lead Counsel for Plaintiffs*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL OF CALIFORNIA**

| | |
|---|---|
| IN RE YAYYO, INC. SECURITIES LITIGATION | Case Number: 2:20-cv-08235-SVW-AFM |
| | **Plaintiffs' Opposition to Select Defendants' Improper Rule 12(c) Motion on the Pleadings** |
| | JUDGE: Hon. Stephen V. Wilson |
| | DATE: June 14, 2021 |
| | TIME: 1:30 P.M. |

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................1

II.  STATEMENT OF FACTS ..............................................................................3

III. LEGAL STANDARD .....................................................................................3

IV.  ARGUMENT ..................................................................................................7

  A.   This 12(c) Motion is Premature .........................................................7

  B.   The Registration Statement Contains Several Material Misstatements and Omissions .....................................................................................9

       1.   The Registration Statement Contained Several Misstatements About El-Batrawi's Role With the Company .............................9

       2.   The Registration Statement Contains Misstatements and Omissions Regarding the Amount of Debt Owed ....................14

       3.   The Registration Statement Contains Misstatements About the Intended Use of Proceeds.........................................................17

       4.   The Registration Statement Failed to Disclose Trends, Uncertainties and Risks Regarding YayYo's Products ...........17

  C.   WestPark Has Not Previously Asserted Existence of an Arbitration Agreement .......................................................................................17

  D.   Damages Can Be Easily Established in this Case ..............................18

V.   CONCLUSION..............................................................................................20

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acticon AG v. China North East Petroleum Holdings Ltd.*,
    692 F.3d 34 (2d Cir. 2012) ...................................................................................19

*Altayyar v. Etsy, Inc.*,
    242 F. Supp. 3d 161 (E.D.N.Y. 2017) ..................................................................4

*Assoc. of Irritated Residents v. C & R Vanderham Dairy*,
    435 F.Supp.2d 1078 (E.D.Cal.2006) ...................................................................4

*Athena Cosms., Inc. v. AMN Distribution Inc.*,No. 220CV05526SVWSHK,
    2021 WL 1153038 (C.D. Cal. Mar. 16, 2021) (Wilson, J.)................................15

*Beyer v. Symantec Corp.*,
    333 F. Supp. 3d 966 (N.D. Cal. 2018)................................................................16

*Cedano–Viera v. Ashcroft*,
    324 F.3d 1062 (9th Cir. 2003) ..............................................................................4

*Dunn-Mason v. JP Morgan Chase Bank Nat. Ass'n*, No. 11-CV-13419,
    2013 WL 4084676 (E.D. Mich. Aug. 13, 2013)..................................................8

*Habeeba's Dance of the Arts, Ltd. v. Knoblauch*, No. 2:05-CV-926,
    2006 WL 968642 (S.D. Ohio Apr. 10, 2006) ......................................................8

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983).........................................................................................4, 6

*In re LendingClub Sec. Litig.*,
    254 F. Supp. 3d 1107 (N.D. Cal. 2017)...............................................................7

*In re MannKind Sec. Actions*,
    835 F. Supp. 2d 797 (C.D. Cal. 2011) ...............................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..............................................................................19

*In re Qudian Inc. Sec. Litig.*, No. 17-CV-9741 (JMF),
    2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019), reconsideration denied,
    No. 17-CV-9741 (JMF), 2020 WL 3893294 (S.D.N.Y. July 10, 2020) ............12

*In re Snap Inc.*,
  334 F.R.D. (Wilson, J.) ..........................................................................................19

*In re Snap Inc. Sec. Litig.*, No. 217CV03679SVWAGR,
  2018 WL 2972528 (C.D. Cal. June 7, 2018) (Wilson, J.) ...................................17

*Johnson v. Dodson Pub. Sch.*, Dist. No. 2-A(C),
  463 F. Supp. 2d 1151, 1156 (D. Mont. 2006).......................................................8

*Johnston v. Irontown Hous. Co.*, No. 13-CV-0523 W BLM,
  2013 WL 3776946 (S.D. Cal. July 17, 2013) ........................................................8

*Jung v. Ass'n of Am. Med. Colleges*,
  339 F. Supp. 2d 26 (D.D.C. 2004), *aff'd*, 184 F. App'x 9 (D.C. Cir.
  2006) .......................................................................................................................9

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ........................................................................12, 15

*Knollenberg v. Harmonic, Inc.*,
  152 Fed. Appx. 674 (9th Cir. 2005)........................................................................4

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ................................................................................12

*Miss. Pub. Employees' Ret. Sys. v. Bos. Scientific Corp.*,
  523 F.3d 75 (1st Cir. 2008).....................................................................................12

*Moran v. Peralta Cmty. Coll. Dist.*,
  825 F. Supp. 891 (N.D. Cal. 1993) (*abrogated on other grounds* by
  *Radici v. Associated Ins. Companies*, 217 F.3d 737 (9th Cir. 2000)) ..................9

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ......................................................................................6

*Noel v. Hall*,No. CV99-649-AS,
  2005 WL 2007876 (D. Or. Aug. 16, 2005) ...........................................................9

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1992) ....................................................................................1

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015).............................................................................................4

iii
PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

*Otto v. Abbott Lab'ys, Inc.*,No. 512CV01411SVWDTB,
  2013 WL 12131380 (C.D. Cal. Aug. 2, 2013), aff'd, 706 F. App'x 349
  (9th Cir. 2017) (Wilson, J.)..........................................................................16

*United States v. Romm*,
  455 F.3d 990 (9th Cir.2006) .........................................................................4

*Wallace v. IntraLinks*, No. 11-CV-8861,
  2013 WL 1907685 (S.D.N.Y. May 8, 2013) .................................................4

**Statutes**

15 U.S.C. § 77(k) .................................................................................6, 13, 20

15 U.S.C. § 78u-4(e) (1994) .............................................................................19

PSLRA ................................................................................................................19

Securities Act and Exchange Act...............................................................4, 5

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................1

Fed. R. Civ. P. 12(c).............................................................................1, 2, 8, 9

Fed. R. Civ. P. 24 ..............................................................................................1

Local Rule 7.3 ...................................................................................................1

Local Rule 11-3.1.1............................................................................................2

Rule 8 ..................................................................................................................4

Rule 8(a)..............................................................................................................4

Rule 9(b)..............................................................................................................5

Rule 11 ..............................................................................................................10

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

Lead Plaintiff Bernard Bednarz and Plaintiff William Koch ("Plaintiffs") submit this memorandum of law in support of their opposition to the Motion for Judgment on the Pleadings filed by select Defendants and some individuals who are not defendants.[1] (ECF No. 78.)[2]

## I.    PRELIMINARY STATEMENT

Defendants in the case seem committed to flouting the Local Rules. The Aegis MTD, filed pre-answer pursuant to Fed.R.Civ.P. 12(b)(6), was filed without a meet-and-confer in violation of Local Rule 7.3, and now the remaining Defendants purport to "join in" that motion, months after the court-ordered deadline to file such a motion. Seemingly aware that they cannot in fact "join in" the Aegis MTD, despite repeatedly purporting to do so, the Moving Defendants style their copycat motion as a Fed.R.Civ.P. 12(c) motion (the "Motion"). This Motion is procedurally improper on numerous bases. More importantly, just as Aegis' MTD should be denied on the merits, this one should too.

---

[1] This Motion was purportedly filed on behalf of YayYo, Inc./RideShare Rental, Inc. (now EvMo, Inc.), Ramy El-Batrawi, Kevin F. Pickard, Jeffrey J. Guzy, Douglas Mox, Christopher Miglino, John P. Oneill, Harbant S. Sidhu, Paul Richter, Jonathan Rosen and Stephen Sanchez (the "YayYo Defendants") and WestPark Capital, Inc. ("WestPark," with the "YayYo Defendants," the "Moving Defendants"). Notably, Douglas Mox, John P. O'Neill and Stephen Sanchez are not named as defendants in the Complaint, and none have moved to intervene in this action pursuant the strictures laid out in Fed. R. Civ. P. 24, which would require that they articulate how their interests are being "inadequately represented by the existing parties in the lawsuit." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1992), as amended on denial of reh'g (May 30, 1996) (citing *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1493 (9th Cir.1995)).

[2] Paragraphs in the Amended Complaint (ECF No. 46) are cited as "¶_." The Motion on the Pleadings is cited as "Motion." The Aegis Motion to Dismiss (ECF No. 49) is cited as "Aegis MTD." The Plaintiffs' Opposition to the Aegis MTD (ECF No. 79) is cited as "Opposition."

1

The Motion is premature – a Rule 12(c) motion is a motion to be brought "after the pleadings are closed." As discussed in detail *infra*, the vast majority of courts have held, except in unusual circumstances not applicable here, that the pleadings are not closed until all defendants have answered. Aegis has a Motion to Dismiss outstanding before this Court. Jonathan Rosen, one of the Defendants this motion is purportedly brought on behalf of, has filed no responsive pleading. The Moving Defendants are not doing this in the interest of "judicial economy" – they are doing this to improperly jam Plaintiffs with a motion they had months to prepare, and Plaintiffs had only a week to oppose. If "judicial economy" was really of concern, the Moving Defendants could have joined in the Aegis MTD, or filed their own MTD, in the beginning of March when such filings were due.

The Motion is also improper for the separate reason that it puts before the Court many so-called "facts" – some of which Plaintiffs believe to be false – outside the scope of the pleadings. A tactic no more appropriate on a 12(c) motion than it is on a 12(b)(6) motion.[3] Though styled as a motion on the pleadings, this is essentially a summary judgment motion being filed before initial disclosures have been made or discovery has commenced, much less been completed.

Notably, the Motion fails to mention the causes of action brought against YayYo and the Individual Defendants that were not brought against Aegis, claims

---

[3] The Moving Defendants could not even follow simple Local Rules – the Motion appears to be in 12-point proportionally spaced font in violation of Local Rule 11-3.1.1.

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

brought under the Exchange Act. It also fails to discuss the post-IPO misstatements that are contained in the Complaint. Aegis did not address these statements because they are not germane to the claims brought against Aegis. Therefore, the Moving Defendants have failed to move for a judgment on the pleadings with regard to those statements and causes of action. They will remain in the case regardless of the Motion and the Moving Defendants should be foreclosed from filing another 12(c) motion later in the case.

As the Motion is little more than a rehash of the Aegis MTD, which Plaintiffs have already opposed (ECF No. 79, the "Opposition"), Plaintiffs will not burden the Court with a restatement of all arguments in the Opposition. Rather, in each section, it will simply point the Court to relevant pages in the Opposition. All new arguments contained in this opposition will directly relate to points raised in the Motion.

## II.    STATEMENT OF FACTS

Plaintiffs refer the Court to the Opposition at 2-11.

## III.    LEGAL STANDARD

Plaintiffs refer the Court to the Opposition at 11-13. Plaintiffs agree the standards in assessing a 12(c) motion are equivalent to the ones the Court uses in assessing a 12(b)(6) motion. (Motion at 9.)[4]

---

[4] As the Moving Defendants do not contest the Exchange Claims, or any of the post-IPO statements, the additional standards relevant to those claims will not be discussed here. And lest there be any doubt, the Moving Defendants waived any challenge to the Exchange Act or post-

3

As stated in the Opposition, Plaintiffs believe their Securities Act claims do not "sound in fraud" and are, therefore, generally subject to the more permissive notice pleading standards of Rule 8(a).  (Opposition at 13 (*citing Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674, 683-684 (9th Cir. 2005).  In fact, similar to *Harmonic, Inc.*, much of the Complaint is grounded in omissions of facts from the Registration Statement.  The rule that has emerged is that plaintiffs "may plead Section 10(b) fraud and Section 11 negligence claims as alternatives, as long as the complaint is organized in a way that allows the court to determine which allegations support which claim." *Wallace v. IntraLinks*, No. 11-CV-8861, 2013 WL 1907685, at *11 (S.D.N.Y. May 8, 2013); *see also Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 170 (E.D.N.Y. 2017) ("Securities Act and Exchange Act claims can coexist in a complaint without forfeiting Rule 8.").

As the Supreme Court has repeatedly held, Section 11 imposes liability "even for innocent" misstatements or omissions.  *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983); *see also Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318 (2015) (emphasizing "Congress's decision to establish a strict liability offense promoting 'full and fair

---

IPO statements by not challenging them in their opening papers. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir.2006) ("[A]rguments not raised by a party in its opening brief are deemed waived."); *Cedano–Viera v. Ashcroft*, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief."); *Assoc. of Irritated Residents v. C & R Vanderham Dairy*, 435 F.Supp.2d 1078, 1089 (E.D.Cal.2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief.").

4
PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

disclosure' of material information"). No fraud is required. In fact, Plaintiffs disclaimed fraud for the Securities Act counts. (¶ 152 ("the allegations in this Section arise under []strict liability and/or negligence, and none of the allegations herein shall be interpreted as alleging intentional or reckless misconduct or alleging that any of the Defendants acted with scienter or fraudulent intent"); ¶ 153 (the Section 11 "claim does not allege fraud, recklessness, or intentional misconduct"); ¶ 162 ("This claim is premised on the remedies available under Section 12 of the Securities Act, and does not assert that Defendants acted with fraudulent intent").)

The Complaint repeatedly also states "The Registration Statement was *negligently prepared* and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading[.]" (¶¶ 125, 130, 132, 141, 148.)

However, the Complaint easily passes the 9(b) hurdle and any heightened pleading requirement under the PSRLA. The Motion makes irrelevant factual arguments and asserts that "securities fraud claims face a higher burden of pleading *and proof*" (Motion at 10), but the Moving Defendants move solely on the pleadings. The Ninth Circuit interprets Rule 9(b) to require that complaints alleging fraud contain allegations "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything

wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).  As detailed below, and in the prior Opposition, the Complaint easily meets that requirement.

The Motion incorrectly states the standards for Section 11 and Section 12 liability.  (Motion at 12.)  According to the Motion:

> Where, as here, a plaintiff's claims sound in fraud, as opposed to simple negligence, to plead a violation of Section 11 or Section 12(a)(2) the Complaint must explicitly charge any individual defendant with fraud – the allegations must specifically set forth facts that would show that the individuals, or the Underwriters (both Aegis and Westpark) knew about and endorsed, at least by their inaction, the purported fraudulent scheme. The AC utterly fails to allege facts that would demonstrate such requisite intent to renege on agreements and representations which comprises the crux of the scheme to defraud.

(Motion at 12.)  This is supported by no case law because it is a complete misrepresentation of the standard.  Sections 11 and 12 are strict liability statutes. This liability is "virtually absolute" and applies to every person who signed the registration statement, every director and every underwriter.  *Herman & MacLean v. Huddleston*, 459 U.S. at 382; 15 U.S.C. 77k (a).

Plaintiffs nowhere in the Complaint allege a "scheme to defraud" nor are they required to do so.  In fact, the Complaint explicitly states "the allegations in [the Securities Act] Section arise under []strict liability and/or negligence, and none of the allegations herein shall be interpreted as alleging intentional or reckless misconduct or alleging that any of the Defendants acted with scienter or fraudulent intent."  (¶ 152.)

6

Even if the Court were to find that the allegations "sound in fraud," and are subject to a heightened pleading requirement, Plaintiffs are not required to establish Defendants "knew about and endorsed, at least by their inaction, the purported fraudulent scheme." "Generally, a plaintiff pursuing a claim under Section 11 'need not prove ... that the defendant acted with any intent to deceive or defraud,'" and even a "claim under Section 11 that is 'grounded in fraud' [need only] be pled with particularity." *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1114 (N.D. Cal. 2017) (*citing  Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 175 (2015); *In re Rigel Pharma., Inc., Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012)). As set forth in the Opposition, and below, the Complaint easily meets even this higher standard.

## IV.    ARGUMENT

### A.    This 12(c) Motion is Premature

The Motion incorrectly states that only one defendant has yet to answer. (Motion at 8-10.) This is false. In reality, this Motion is also being brought on behalf of a defendant, Jonathan Rosen, who has filed no responsive pleading. This fact is completely ignored by the Motion – which even goes so far as to state that "the Moving Defendants have filed answers" (Motion at 8) – rendering the Motion completely inappropriate on its face.

However, even if Aegis were the only party to have not answered, the Motion would still be premature. Under the explicit terms of the rule, a 12(c) motion is to

be filed only after the pleadings have "closed." Fed. R. Civ. P. 12(c). "The close of pleadings refers to the time when all required or permitted pleadings have been served and filed." *Johnson v. Dodson Pub. Sch.*, Dist. No. 2-A(C), 463 F. Supp. 2d 1151, 1156 (D. Mont. 2006). Therefore, Courts frequently deny 12(c) motions as premature when all defendants have not answered. *See, e.g.*, *Habeeba's Dance of the Arts, Ltd. v. Knoblauch*, No. 2:05-CV-926, 2006 WL 968642, at *2 (S.D. Ohio Apr. 10, 2006) (collecting cases); *Dunn-Mason v. JP Morgan Chase Bank Nat. Ass'n*, No. 11-CV-13419, 2013 WL 4084676, at *4 (E.D. Mich. Aug. 13, 2013) (finding no good cause to waive the requirement that pleadings be closed); *Johnston v. Irontown Hous. Co.*, No. 13-CV-0523 W BLM, 2013 WL 3776946, at *2 (S.D. Cal. July 17, 2013) (plaintiffs' motion under 12(c) premature when no answer had been filed). Courts exercise discretion to hear 12(c) motions prematurely when special circumstances exist – such as other defendants not being served or years passing since filing of the complaint with no responsive pleading from certain defendants. *See JP Morgan Chase Bank Nat. Ass'n*, 2013 WL 4084676, at *4 (recognizing that limited exceptions exist to the general rule before stating none apply: "All defendants have been served, [one defendant] recently filed its motion to dismiss in lieu of an answer, and there is no risk that [one defendant] will not answer the second amended complaint, if necessary, once its motion to dismiss is resolved."). The Moving Defendants rely on three cases to argue that this motion is not premature. (Motion at 9.) None are on point. *See*

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

*Noel v. Hall*, No. CV99-649-AS, 2005 WL 2007876, at \*2 (D. Or. Aug. 16, 2005) (dealing with a motion for partial judgment on the pleadings related solely to a legal issue regarding damages when the Complaint was filed over five years before); *Moran v. Peralta Cmty. Coll. Dist.*, 825 F. Supp. 891, 894 (N.D. Cal. 1993) (*abrogated on other grounds* by *Radici v. Associated Ins. Companies*, 217 F.3d 737 (9th Cir. 2000)) (considering a 12(c) motion when one defendant had not been served and therefore was not a party to the litigation); *Jung v. Ass'n of Am. Med. Colleges*, 339 F. Supp. 2d 26, 35 (D.D.C. 2004), *aff'd*, 184 F. App'x 9 (D.C. Cir. 2006) (addressing a motion for judgment on the pleadings after certain motions to dismiss were already adjudicated and a new congressional law was in place that allegedly rendered certain aspects of the complaint unactionable).

Should the Court entertain the merits of the Motion, which is well within the Court's discretion, Plaintiffs would simply respectfully request that the Court rule this is the only Rule 12(c) motion the Moving Defendants can file and permit no additional 12(c) motions.

**B.      The Registration Statement Contains Several Material Misstatements and Omissions**

**1.      The Registration Statement Contained Several Misstatements About El-Batrawi's Role With the Company**

Plaintiffs refer the Court to the Opposition at 14-18. The Motion states that the El-Batrawi action "make[s] clear that the conduct alleged to be wrongful was conduct that occurred after the closing of the IPO." (Motion at 6.) This is false.

9

First, while the Moving Defendants would like to characterize the allegations made in the El-Batrawi Action as "unsubstantiated" and "unproven," it bears repeating to the Court that the El-Batrawi Action was brought by the Company itself. Each of the actions mentioned in the Complaint were filed by attorneys who risked Rule 11 sanctions and had ethical obligations regarding the content of the complaints, but the El-Batrawi Action is particularly notable because it was filed by the Company. It is a public disclosure by the Company. And the Company simply dismissed the El-Batrawi Action when it reinstated El-Batrawi, the Company never sought to have the complaint withdrawn or other punitive action directed at the counsel who filed the El-Batrawi Action.

Second, contrary to what Defendants may desire, the El-Batrawi Action in no way acknowledges that El-Batrawi's wrongful conduct post-dated the IPO. In the El-Batrawi Action, then CEO Jonathan Rosen testified that: "Since the execution of Certificate, Defendant El-Batrawi has engaged in a continuous and escalating pattern of behavior destructive of YayYo and in violation of the Certificate." The "Certificate" Rosen was referring to was El-Batrawi's September 26, 2019 certification regarding his so-called resignations. (¶¶ 76-78.)[5] In other words, the El-Batrawi Action is explicit in its allegation that El-Batrawi's wrongful conduct had been ongoing since September 26, 2019 – *months prior to the IPO*.

---

[5] This exact date and language are not in the Complaint; Plaintiffs are adding it solely to rebut the Moving Defendants' false argument.

10

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

The fact that Rosen attested that El-Batrawi formally "resigned" – in the Certification and later by signing the Registration Statement (Motion at 14) – in no way negates the misleading nature of the alleged misstatements. In fact, the Company later accused Rosen of "misconduct" and a "breach of fiduciary duty" – very likely as a result of his faux attestation of El-Batrawi's resignation and sale. (¶ 116.) Only discovery will tell. The Court cannot just take Defendants' word for disputed issues of fact *sans* discovery.

The FirstFire Action similarly supports that El-Batrawi's resignations were in name only. It alleges that El-Batrawi was promoting the IPO out of WestPark's offices. The Motion implicitly bolsters this allegation by stating the "vast majority" of purchasers in the IPO are "friendly" to El-Batrawi. (Motion at 7.)[6]

A complaint is not based on hindsight pleading simply because the truth comes to light after the IPO. *See In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809–10 (C.D. Cal. 2011) (rejecting an argument that falsity was demonstrated by hindsight pleading and stating: "Fraud is almost always detected after the fact, typically based on evidence developed subsequent to the allegedly fraudulent

---

[6] Plaintiffs are responding to some of the factual arguments advanced by Defendants, though they are inappropriate for adjudication at this phase. In weighing the factual arguments Defendants are making here against the allegations in the Complaint, the Ninth Circuit has counseled that "[i]f defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief," and "[s]uch undermining of the usual pleading burdens is not the purpose of judicial notice or the incorporation-by-reference doctrine." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

statements."); *see also In re Qudian Inc. Sec. Litig.*, No. 17-CV-9741 (JMF), 2019 WL 4735376 at *9 n.6 (S.D.N.Y. Sept. 27, 2019), reconsideration denied, No. 17-CV-9741 (JMF), 2020 WL 3893294 (S.D.N.Y. July 10, 2020) (rejecting an argument of hindsight pleading when, drawing reasonable inferences in Plaintiffs' favor, the court could not establish as a matter of law that Defendants did not know on "day-1"). "This is not the classic fraud by hindsight case where a plaintiff alleges that the fact that something turned out badly must mean defendant knew earlier that it would turn out badly. Nor is this a case where there is no contemporaneous evidence at all that defendants knew earlier what they chose not to disclose until later." *Miss. Pub. Employees' Ret. Sys. v. Bos. Scientific Corp.*, 523 F.3d 75, 91 (1st Cir. 2008) (internal citations omitted); *see also Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009) (reversing a dismissal and rejecting a hindsight pleading argument when allegations supported private knowledge at the time of the representations).[7]

Additionally, one of the conditions for the Company being listed was El-Batrawi selling his shares prior to the IPO. (¶¶ 57-60.) The El-Batrawi Action – an action brought by the Company itself – alleges that never occurred. (¶ 76.) This was certainly known or knowable to all Defendants at the time of the IPO. And it was unquestionably material to investors—his sale was a condition of listing on the

---

[7] Many cases discuss hindsight in the scienter section, rather than the falsity section. Scienter is not required for these strict liability claims. However, Plaintiffs believe the language instructive in response to the arguments advanced by the YayYo Defendants.

12

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

NASDAQ exchange and determined who was in control of the company they were investing in.  The Moving Defendants simply skip this part of the allegations because they cannot directly address it.  Section 11 liability only requires that at least one aspect of the "registration statement . . . contain[] an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a).  Here, the Registration Statement stated the shares "were sold" and the Company itself admitted that never occurred.  (*Compare, e.g.*, ¶60 with ¶76.)  That alone is enough to sustain the Section 11 claim.

While the Court could not take the Moving Defendants' word for El-Batrawi's stock holdings at the time of the IPO regardless – especially in the face of a prior Company admission on the topic – it is notable the Motion stops short of saying that the shares "were sold," which is what the Registration Statement asserts.  The Motion only says that "Mr. El-Batrawi entered into agreements with respect to his ownership interest in YayYo – reducing his stock holdings per the agreement with NASDAQ."  (Motion at 8.)  This wording implies there was no real sale, it was simply, at best, a technical shuffling of papers.  That said, this argument is more appropriate for a summary judgment motion on a complete record.

The Complaint clearly alleges which statements in the Registration Statement on this topic were false or misleading and why they were false or misleading.

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

## 2. The Registration Statement Contains Misstatements and Omissions Regarding the Amount of Debt Owed

Plaintiffs refer the Court to the Opposition at 18-20.

With regard to the SRAX Action, the Moving Defendants go outside the four corners of the Complaint to claim that the case was "settled amicably between the parties for an amount close to the debt disclosed in the S-1[.]" (Motion at 4; *see also* Motion at 15.)[8] That is irrelevant to whether Plaintiffs have stated, as a matter of law, a cause of action. The Complaint clearly alleges the Registration Statement only stated the amount as due at the end of 2018, $334,471, thereby omitting $91,815 that was already outstanding. (¶¶ 84-87.) The Complaint also includes the allegations in the SRAX Action that YayYo owed Social Reality, Inc. ("SRAX"), the plaintiff in that action, another $219,000 because of an arrangement with a third party. (¶¶ 85-86.) The Moving Defendants call the SRAX Action "frivolous," "absurd," say it "entirely lacks merit" and go so far as to imply that SRAX may not have even provided services to the Company. (Motion at 4.)[9] But,

---

[8] The case is active according to a representative of the Superior Court for the County of Los Angeles on contacted May 20, 2021. (*See* Declaration of Cara David ("David Decl"), dated May 24, 2021, and filed herewith, at ¶ 4.) A recent SEC filing by YayYo does state it was settled but for a confidential amount. The Court cannot simply take the Company's word for the amount of settlement and Plaintiffs intend to request the relevant documents now that the Moving Defendants have made an issue of the amount. However, none of this is relevant to the instant Motion.

[9] Making such a brash characterization of the SRAX Action is questionable on its own—it is implicitly disparaging to Miglino, once a Director at YayYo, who was the CEO of SRAX when the SRAX Action was filed. However, it is even more outrageous taking into consideration that this Motion was purportedly filed on Miglino's behalf. Is Miglino truly going on the record admitting that he filed something with a court that was "frivolous," absurd" and that "entirely lack[ed] merit"?

14

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

if anything, YayYo settling the SRAX Action after never factually disputing it, counters against it being frivolous.

In terms of the passing argument made by the Moving Defendants that the amount of omitted money was not material to investors, materiality is rarely an appropriate ground for dismissal. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 and 1013 (9th Cir. 2018) (finding that "[t]he Supreme Court has eschewed brightline tests for materiality," that plaintiffs' allegations need only "raise a reasonable expectation that discovery will reveal evidence satisfying the materiality requirement," and that "[u]ltimately, a jury should assess materiality as a question of fact."); *Athena Cosms., Inc. v. AMN Distribution Inc.*, No. 220CV05526SVWSHK, 2021 WL 1153038, at *1 (C.D. Cal. Mar. 16, 2021) (Wilson, J.) ("unless reasonable minds could not differ, materiality is generally a question of fact for the jury to decide"); *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 978 (N.D. Cal. 2018) (discussing how materiality is usually "a question of fact" and dismissal is warranted only if the statement or mission is "obviously unimportant"); *Otto v. Abbott Lab'ys, Inc.*, No. 512CV01411SVWDTB, 2013 WL 12131380, at *6 (C.D. Cal. Aug. 2, 2013), aff'd, 706 F. App'x 349 (9th Cir. 2017) (Wilson, J.) (denying dismissal on materiality grounds because "materiality of misrepresentation is ordinarily a question of fact to be determined by a trial court or jury" and "Materiality may be decided as a matter of law only if the fact misrepresented is so obviously unimportant that the jury could not reasonably

15

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

find that a reasonable man would have been influenced by it."). In this case, the Moving Defendants themselves stress how "small" the offering, of just $10.5 million, was. (Motion at 7.) And the Complaint alleges how this was a company constantly receiving loans and raising money from private sales of stock. (*See, e.g.*, ¶¶ 100 (discussing a loan of $50,000 to the Company and a subsequent loan of $150,000), 114 (discussing a private sale for $150,000).) In summary, $50,000 was material enough to the Company that it had to seek a loan for that amount. Therefore, the Moving Defendants cannot establish that invoiced debt of over $90,000 (and obligations totaling well in excess of that) is immaterial as a matter of law.

The Motion completely misstates the Complaint's allegations with regard to the Davis Complaint. The Motion states: "[T]he Davis claim, to the extent the Company knew about it, was fully disclosed in the S-1[.]" (Motion at 4.) In fact, the Complaint clearly alleges, based on the Davis Complaint, that Davis had been notifying the Company throughout 2018 and 2019 – prior to the IPO – that he was taking the position that he was owed more on his contract than was eventually reported on the S-1 and was also accusing the Company of filing false statements with the SEC. (¶¶ 93-95.) This was not "fully disclosed" – or disclosed at all – in the Registration Statement.[10]

---

[10] Based on these allegations, the resulting Davis Complaint was "reasonably possible." *See In re Snap Inc. Sec. Litig.*, No. 217CV03679SVWAGR, 2018 WL 2972528, at *6 (C.D. Cal. June

The Motion asserts that both actions were based on "unreliable hearsay." If a hearsay argument was applicable at this phase – and it is decidedly not – the statements in the SRAX Action and Davis Complaint are anything but "unreliable." The SRAX Action attached correspondence from Rosen and multiple invoices for services rendered. The Davis Complaint attached agreements and also referenced contradictory SEC filings that the Company itself filed. Both complaints were therefore backed by documentary evidence. And the Court simply cannot resolve hotly disputed issues of fact on the pleadings.

           3.    **The Registration Statement Contains Misstatements About the Intended Use of Proceeds**

Plaintiffs refer the Court to the Opposition at 20-21.

           4.    **The Registration Statement Failed to Disclose Trends, Uncertainties and Risks Regarding YayYo's Products**

Plaintiffs refer the Court to the Opposition at 18-20.

**C.    WestPark Has Not Previously Asserted Existence of an Arbitration Agreement**

The Motion was filed on behalf of, *inter alia*, WestPark (Motion at 1), yet the text says only "[w]e understand from WestPark that" purchasers of shares from WestPark signed binding arbitration agreements. Notably this was never mentioned in WestPark's Answer, previously filed with this Court. (ECF No. 48.) WestPark also never made a motion to move this case to arbitration. The only

7, 2018) (Wilson, J.) (discussing whether liability from a suit already filed was "reasonably possible" and therefore disclosure was required under a specific accounting standard).

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

publicly available document that Plaintiffs could locate – a current Account Application and Agreement[11] – has an arbitration provision with an explicit exception for class actions. If the Moving Defendants wish to assert that Plaintiff Koch, who purchased directly from WestPark in the IPO, cannot serve as a plaintiff in this action because of an arbitration agreement with WestPark, that should have been raised by WestPark in its responsive pleading.[12] Not only was it not raised then, but it was also not raised in the meet and confer related to this Motion. (*See* David Decl. at ¶ 3.) It is not a reason to dismiss this action.

## D.    Damages Can Be Easily Established in this Case

The Moving Defendants refer to the damages as "wholly speculative" and assert that "there is no readily identifiable class of potentially aggrieved shareholders, and since the Company has largely recovered its share price since the economic difficulties (that were transitory in nature), investors have not been harmed." (Motion at 2.) While it is unclear whether the Motion is premised, in whole or in part, on this assertion, there are damages in this case. First, "all class members can trace their shares back to the IPO," regardless of when they physically

---

[11]    WestPark Capital, Domestic Individual Account Application Package, https://wpcapital.com/wp-content/uploads/2021/03/Domestic-Individual-Account-Application-Package-3.11.2021.pdf (last visited May 24, 2021).

[12] It is not even properly alleged now. It is not a basis for which the Moving Defendants' purport to move. The alleged document is not included as an exhibit accompanied by a judicial notice request.

18

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

purchased their shares and at what price. *In re Snap Inc.*, 334 F.R.D. at 224 (Wilson, J.).

Second, Section 11 statutory damages do not have a lookback period.[13] Section 11 states that class members:

> "may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought[.]"

15 U.S. Code § 77k(e). Here, YayYo hit the market at $4 a share and closed at $0.285 per share on September 18, 2020, the date of the filing of the original complaint in this action. That represents a 92.88% decline in price. There are obviously damages in this case.

---

[13] For the Complaint's Exchange Act claims, which are not the subject of the Motion, the PSLRA caps damages at "the difference between the purchase ... price paid ... by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. § 78u-4(e) (1994); *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000), as amended (June 19, 2000). But even that does not help Defendants in this case. The stock price did not recover to anywhere near its IPO price until it was announced that El-Batrawi would no longer be in charge – an announcement that occurred in February 2021, whereas the last day of any 90-day lookback period would be July 27, 2020. Investors are not required to hold onto stock indefinitely hoping that a wrongdoer – one who the Company had previously embraced – would one day be removed. *See Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012).

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

The Moving Papers further assert that the "vast majority of the shares [sold in the IPO] were acquired by investors friendly. . . persons who have expressed no interest in joining a purported class action." (Motion at 7.)  This is so far outside the Complaint it raises outside communications of which there are no record.  (If any of those communications involved counsel, any privilege as to them is now waived.)  But, more importantly, this claim has nothing to do with any grounds on which a motion on the pleadings, or a motion to dismiss, can be brought.  It seems impossible the Moving Defendants are arguing that there will be no class, considering there were over 90 million shares traded during the relevant Section 11 period.  (*See* David Decl at ¶ 5.)  The shear trading volume of the stock alone suggests that each and every share sold in the IPO was sold many times over during 2020 and that the unlucky 2019-2020 YayYo investors bear little resemblance to the current stockholders.  This presents yet another hotly contested issue of fact not amenable to resolution on the pleadings.

## V.    CONCLUSION

For the foregoing reasons, and the reasons laid out in the Opposition, the Court should deny the Motion on the Pleadings in its entirety. If the Court rules in favor of the Moving Defendants, in whole or in part, Plaintiffs respectfully submit that they be granted leave to amend.

Dated:  May 24, 2021 at  New York, New York

POMERANTZ LLP

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

/s/      *Cara David*

Jeremy A. Lieberman (*pro hac vice* forthcoming)
Cara David (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: cdavid@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein (pro hac vice forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Cara David*
Cara David

PLAINTIFFS' OPPOSITION TO MOTION ON THE PLEADINGS: Case No. 2:20-cv-08235-SVW-AFM