ARNOLD & PORTER KAYE SCHOLER LLP
Oscar Ramallo (Bar No. 241487)
oscar.ramallo@arnoldporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

Aaron F. Miner
aaron.miner@arnoldporter.com
Zheng (Jane) He
jane.he@arnoldporter.com
250 West 55th Street
New York, NY 10019
Telephone: 212.836.8000
Facsimile: 212.8365.8689

Attorneys for Defendant
Aegis Capital Corp.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE YAYYO, INC. SECURITIES LITIGATION, | Case No. 2:20-cv-08235-SVW-AFM<br><br>**DEFENDANT AEGIS CAPITAL CORP.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**<br><br>Date:       June 14, 2021<br>Time:      1:30 PM<br>Place      Courtroom 10A<br>Judge:     Hon. Stephen V. Wilson |

AEGIS'S REPLY MEMORANDUM

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ...................................................................................................... 3

I.    PLAINTIFFS' SECURITIES ACT CLAIMS SOUND IN FRAUD AND THEREFORE ARE SUBJECT TO A HEIGHTENED PLEADING STANDARD.................................................................................... 3

II.    PLAINTIFFS' ALLEGATIONS REGARDING MR. EL-BATRAWI'S ROLE AND SALE OF SHARES ARE BASED ON UNPROVEN ALLEGATIONS FROM OTHER DISMISSED CASES AND FAIL TO ALLEGE ANY ACTIONABLE MISREPRESENTATIONS OR OMISSIONS.......................................... 5

III.   PLAINTIFFS' ALLEGATIONS REGARDING CONTESTED LIABILITIES FROM POST-IPO LAWSUITS FAIL TO ALLEGE ANY ACTIONABLE MISREPRESENTATIONS OR OMISSIONS ............ 8

IV.   PLAINTIFFS' ALLEGATIONS REGARDING THE USE OF THE IPO PROCEEDS FAIL TO ALLEGE ANY ACTIONABLE MISREPRESENTATIONS OR OMISSIONS ...................................... 9

V.    PLAINTIFFS' ITEMS 303 AND 105 CLAIMS ARE DUPLICATIVE OF PLAINTIFFS' OTHER CLAIMS AND FAIL FOR THE SAME REASONS ....................................................................................... 10

VI.   NEGATIVE CAUSATION PRECLUDES RECOVERY ......................... 10

VII.  PLAINTIFFS FAIL TO ALLEGE THAT AEGIS CONSTITUTES A SECTION 15 CONTROL PERSON ...................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Bartesch v. Cook,*
  941 F. Supp. 2d 501 (D. Del. 2013)............................................................. 6

*Belodoff v. Netlist, Inc.,*
  2009 WL 2777320 (C.D. Cal. Sept. 1, 2009) ............................................. 10

*Berg v. Velocity Fin., Inc.,*
  2021 WL 268250 (C.D. Cal. Jan. 25, 2021)............................................... 10

*Bos. Ret. Sys. v. Uber Techs., Inc.,*
  2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ............................................. 7

*Brown v. Ambow Educ. Holding Ltd.,*
  2014 WL 523166 (C.D. Cal. Feb. 6, 2014) ............................................... 10

*Derr v. Ra Med. Sys., Inc.,*
  2021 WL 1117309 (S.D. Cal. Mar. 24, 2021) ........................................... 7

*Feyko v. Yuhe Int'l, Inc.,*
  2013 WL 816409 (C.D. Cal. Mar. 5, 2013)............................................... 9

*Fraker v. Bayer Corp.,*
  2009 WL 5865687 (E.D. Cal. Oct. 6, 2009)............................................... 6

*Greenberg v. Sunrun Inc.,*
  233 F. Supp. 3d 764 (N.D. Cal. 2017)....................................................... 5

*In re Apollo Group, Inc. Sec. Litig.,*
  2011 WL 5101787 (D. Ariz. Oct. 27, 2011)............................................... 6

*In re Connetics Corp. Sec. Litig.,*
  542 F. Supp. 2d 996 (N.D. Cal. 2008)....................................................... 6

*In re Countrywide Fin. Corp. Sec. Litig.,*
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..................................................... 9

*In re CytRx Corp. Sec. Litig.,*
  2015 WL 5031232 (C.D. Cal. July 13, 2015)............................................ 7

*In re Facebook, Inc. Sec. Litig.,*
  405 F. Supp. 3d 809 (N.D. Cal. 2019)....................................................... 5

AEGIS'S REPLY MEMORANDUM

*In re Mattel, Inc. Securities Litigation*,
   2021 WL 1259405 (C.D. Cal Jan. 26, 2021)................................................. 12

*In re Maxim Integrated Prods., Inc. Secs. Litig.*,
   639 F. Supp. 2d 1038 (N.D. Cal. 2009)..................................................... 11

*In re Paypal Holdings, Inc.*,
   2018 WL 466527 (N.D. Cal. Jan. 18, 2018)................................................. 5

*In re Quarterdeck Off. Sys., Inc. Sec. Litig.*,
   1992 WL 515347 (C.D. Cal. Nov. 4, 1992) ................................................ 10

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) ........................................................ 5

*In re Shoretel Inc., Sec. Litig.*,
   2009 WL 248326 (N.D. Cal. Feb. 2, 2009).................................................. 10

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) .................................................................. 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   258 F. Supp. 3d 1037 (N.D. Cal. 2017)...................................................... 5

*Knollenberg v. Harmonic, Inc.*,
   152 F. App'x 674 (9th Cir. 2005)........................................................ 5, 13

*Kyung Cho v. UCBH Holdings, Inc.*,
   890 F. Supp. 2d 1190 (N.D. Cal. 2012)...................................................... 6

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014), *as amended* (Sept. 11, 2014) ....................... 11

*Loritz v. Exide Techs.*,
   2013 WL 12134142 (C.D. Cal. Dec. 19, 2013) ............................................ 4

*Mallen v. Alphatec Holdings, Inc.*,
   2013 WL 1294640 (S.D. Cal. Mar. 28, 2013) ............................................ 10

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008)................................................................ 11

*No. 84 Employer-Teamster Joint Council Pension
   Trust Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003)................................................................. 12

- iii -

AEGIS'S REPLY MEMORANDUM

*Robb v. Fitbit Inc.*,
    216 F. Supp. 3d 1017 (N.D. Cal. 2016) ..................................................... 12

*Rubke v. Capitol Bancorp Ltd*,
    551 F.3d 1156 (9th Cir. 2009) ........................................................... 3, 4, 6

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ........................................................ 6

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) .................................................................. 10

*Welgus v. TriNet Group, Inc.*,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017),
    *aff'd*, 765 F. App'x 239 (9th Cir. 2019) .................................................... 10

**Statutes**

Section 10(b) of the Securities Exchange Act of 1934
    (the "Exchange Act"), 15 U.S.C. § 77j(b), and Rule 10b-5
    promulgated thereunder, 17 C.F.R. § 240.10b-5 ................................. *passim*

Section 11 of the Securities Act of 1933 (the "Securities Act"),
    15 U.S.C. § 77k ................................................................................ *passim*

Section 12(a) of the Securities Act, 15 U.S.C. § 77l(a) ........................... *passim*

Section 15 of the Securities Act, 15 U.S.C. § 77o ....................................... 12

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................ 3, 4, 5

Fed. R. Civ. P. 12(b)(6) ............................................................................. 10

Public Company Accounting Oversight Board,  Auditing Standards (AS 2505),
    https://pcaobus.org/Standards/Auditing/Pages/ReorgStandards.aspx (last
    visited May 31, 2021) ............................................................................... 8

AEGIS'S REPLY MEMORANDUM

**PRELIMINARY STATEMENT**

Plaintiffs' opposition ("Opp.") fails to refute the points raised in Aegis Capital Corp.'s ("Aegis") motion to dismiss.[1]  The opposition implausibly contends that when Ramy El-Batrawi resigned from and relinquished his stock in YayYo, Inc. ("YayYo") in advance of its IPO, he secretly intended to seize back control of the company after the IPO.  But it fails to explain why Mr. El-Batrawi would work for three years to take YayYo public and list the company's stock on a national exchange only to undo that work a few months after the IPO closed.[2]  Nor does the opposition plead any particularized facts to support the inference that Mr. El-Batrawi's resignation and stock transfer was intended as a sham.  Most significantly, the opposition does not point to any allegations that IPO underwriter Aegis either knowingly participated in Mr. El-Batrawi's purported scheme or was negligent in its failure to predict his intent or later actions.  There are no facts in plaintiffs' 10-page recitation of facts—which aside from identifying Aegis as an underwriter, says nothing about Aegis at all, Opp. at 6—that supports their claims against Aegis.

Sections 11 and 12 of the Securities Act permit private plaintiffs to pursue claims against underwriters; however, their scope is limited.  Underwriter liability depends on whether offering materials accurately disclosed the contemporaneous state of affairs of a company at the time they are declared effective, and if they do not, whether any such failure was a result of an underwriter's negligence.  Plaintiffs have failed to rebut

[1]  "AC" refers to the Amended Class Action Complaint (ECF No. 46); "¶__" to the paragraphs of the AC; "Mot." refers to Aegis's Motion to Dismiss the Amended Class Action Complaint (ECF No. 49); "Mot. Ex. __" refers Exhibits attached to the Declaration of Oscar D. Ramallo in Support of Aegis's Motion to Dismiss the Amended Class Action Complaint (ECF No. 49-1); "Reply Ex. __" refers to Exhibits attached to the Declaration of Oscar D. Ramallo in Support of Aegis's Reply Memorandum in Further Support of its Motion to Dismiss the Amended Class Action Complaint.

[2]  There is a simple and straightforward explanation that Plaintiffs ask the Court to ignore: after the IPO closed, there were apparent internal disputes—which resulted in lawsuits in which certain YayYo defendants made allegations against one another—concerning how YayYo should be managed, which ultimately resulted in a decision by YayYo's Board of Directors to reinstate Mr. El-Batrawi in February 2020. ¶¶ 12, 81; Mot. Ex. 4 at 85.

1

Aegis's argument that, even accepting the facts in the AC as true, they have failed to plead with particularity any misstatements or fraudulent omissions in YayYo's offering materials, let alone that such failures were as a result of Aegis's failure to conduct reasonable due diligence.

First, it is undisputed that Mr. El-Batrawi did in fact resign from YayYo and entered into agreements to sell 12,525,000 of the 15,425,000 shares held by X, LLC to other existing shareholders. Not only were these conditions reviewed by Nasdaq since they were listing requirements, but also Jonathan Rosen, upon whose allegations Plaintiffs rely, personally signed the Registration Statement attesting that these facts were true as of the time the Registration Statement was declared effective. YayYo's audited annual report for the period ended December 31, 2019 reflects that Mr. El-Batrawi's ownership interest was reduced to 2.9 million shares, or 9.9%, exactly as described in Registration Statement. Reply Ex. 1 at 69.

Second, unrelated lawsuits filed after the IPO closing concerning Social Reality, Inc. ("SRAX") and former CEO Anthony Davis cannot support a claim against Aegis because they are irrelevant to plaintiffs' alleged injuries and do not support an inference that there were any misrepresentation in the Registration Statement that Aegis should have learned through reasonable diligence before the IPO closing. The opposition does not point to any allegations that these issues were raised with Aegis or AJ Robbins CPA, LLC ("AJ Robbins"), YayYo's auditor at the time of the IPO. Nor does the opposition provide any support for plaintiffs' contention that Aegis should have independently acquired this information through reasonable diligence, particularly in light of Plaintiffs' allegations that YayYo's management purposefully hid them from the primary gatekeeper responsible for ensuring their accuracy—the auditor. Plaintiffs' remaining allegations, such as regarding the intended use of proceeds, similarly fail because they constitute improper attempts to plead fraud by hindsight.

Plaintiffs' allegations do not support a Section 11 or Section 12 claim, which sections are aimed at preventing negligent misrepresentations that could have been caught by an underwriter through the exercise of reasonable diligence. Rather, fraud is at the heart of Plaintiffs' allegations, and they should have to meet the heightened pleading standards for pleading fraud under at least Rule 9(b). Plaintiffs fail to do so.[3] Accordingly, even if the Court permits this action to proceed, Aegis should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiffs' Securities Act Claims Sound in Fraud and Therefore Are Subject to a Heightened Pleading Standard

Plaintiffs claim that their Securities Act claims do not sound in fraud and are not subject to the heightened pleading standards of FRCP Rule 9(b), let alone Section 10(b) of the Exchange Act. Opp. at 13. But this is merely artful pleading. Putting their Securities Act and Exchange Act claims in separate sections of the AC, or claiming that their Securities and Exchange Act claims arise from different SEC filings that contain the same alleged misrepresentations, does not disguise the reality that their Securities Act and Exchange Act claims are based on the same facts alleging the fraudulent conduct of the YayYo Defendants. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996) (finding plaintiff's argument that he "specifically disclaimed any allegations of fraud with respect to its Section 11 claims . . . unconvincing where the gravamen of the complaint is plainly fraud").

"Where . . . a complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud." *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009) (citation omitted). Here, Plaintiffs'

---

[3]   The Securities Act claims constitute an obvious attempt to bypass the exacting pleading standard of the Exchange Act, which requires Plaintiffs to plead scienter and loss causation. Plaintiffs do not pretend that they can plead a Section 10(b) claim against Aegis.

Securities Act and Exchange Act claims depend on the same factual allegations for the same alleged misstatements. This is self-evident from the brevity and repetitive nature of Plaintiffs' Exchange Act allegations. In Plaintiffs' section entitled "Scienter" for their Exchange Act claims, for example, the list of alleged misstatements entirely duplicates the list of alleged misstatements Plaintiffs allege for their Securities Act claims. *Compare* ¶ 192 ("a. El-Batrawi was continuing to play an active role at YayYo and assert himself as being in charge of the Company; b. El-Batrawi had not sold his shares as required for the Company's NASDAQ listing; c. The Individual Defendants knew the Company did not have sufficient internal controls; d. The Company was not able to pay its debts; e. Proceeds from the IPO would not be used to purchase vehicles but instead pay back investors; f. The Company owed more money to SRAX than disclosed; and g. The Company owed more money to Davis than disclosed.") *with* ¶¶ 126-143, 153, 162 (describing the same alleged falsehoods regarding Mr. El-Batrawi's role, his divestiture of stock, the company's internal controls, its use of IPO proceeds, the SRAX debt, and Davis's compensation). Besides adding a press release and an SEC filing that post-date the IPO but that contain the same alleged misrepresentations, Plaintiffs' Exchange Act claims are factually indistinguishable from their Securities Act claims. *See* ¶¶ 179-195.

Because the underlying factual basis for the Securities Act and Exchange Act claims are identical, Plaintiffs' Securities Act claims sound in fraud and are subject to the heightened pleading standards of Rule 9(b), which requires them to plead the who, what, where, when, and how of fraud. *Cf. Rubke*, 551 F.3d at 1161. Moreover, as discussed above, even without examining the caselaw, it is plain that Plaintiffs' allegations sound in fraud, not negligence; *Loritz v. Exide Techs.*, 2013 WL 12134142, at *4 (C.D. Cal. Dec. 19, 2013). They describe a purported scheme pursuant to which Mr. El-Batrawi and the other members of YayYo's management team purposefully hid damaging information about Mr. El-Batrawi's intent to retain

control of YayYo, liabilities of the company, and the intended use of IPO proceeds from the investing public, as well as YayYo's accountants and underwriters. Accordingly, plaintiffs must plead their fraud claims against Aegis with particularity, which they fail to do.[4]

**II.   Plaintiffs' Allegations Regarding Mr. El-Batrawi's Role and Sale of Shares Are Based on Unproven Allegations From Other Dismissed Cases and Fail to Allege Any Actionable Misrepresentations or Omissions**

In the Opposition, Plaintiffs continue to argue that the Registration Statement contains "[s]everal [m]isstatements" about Mr. El-Batrawi's role with YayYo. Opp. at 14. Despite Plaintiffs' obfuscations, all of the AC's allegations are based on unproven allegations in the El-Batrawi and FirstFire Actions, both of which were filed after the IPO and both of which have since been dismissed. *See* Opp. at 10 (admitting that the El-Batrawi and FirstFire Actions were dismissed).

As an initial matter, Plaintiffs' claims are entirely based on the "unadjudicated wrongdoing" of the El-Batrawi and FirstFire Actions. *In re Paypal Holdings, Inc.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018). Courts have found that defendants in securities actions have no obligation to disclose such unproven allegations. *See Greenberg v. Sunrun Inc.*, 233 F. Supp. 3d 764, 775 (N.D. Cal. 2017); *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019).[5] To the contrary, courts

---

[4]   In *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 684 (9th Cir. 2005), the court declined to apply the Rule 9(b) standard because "plaintiffs do not rely on a unified course of fraudulent conduct or on the 'wholesale adoption' of their securities fraud allegations," contrary to Plaintiffs' "wholesale adoption" of their Exchange Act claims here. Similarly, Plaintiffs have not "specifically pled alternate theories of fraud and negligence" in their Exchange Act claims. *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 633 (S.D.N.Y. 2007).

[5]   Plaintiffs fail in their attempts to distinguish Aegis's cases regarding how "the federal securities laws do not require a company to accuse itself of wrongdoing." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 258 F. Supp. 3d 1037, 1043 (N.D. Cal. 2017) (citation omitted). As in *Volkswagen*, 258 F. Supp. 3d at 1043, no allegations of wrongdoing existed on the date of the alleged misstatements. *Greenberg*, 233 F. Supp. 3d at 775, stands equally for the proposition that Aegis need not have disclosed the allegations in an unfiled action; after all, given that the Davis Action had not been filed, Aegis could not have known of these allegations. Similarly to *Facebook*, 405 F. Supp. 3d at 836, and *Paypal*, 2018 WL 466527 at *3, there has been no finding that YayYo has committed any of the alleged wrongdoing in *any* of the actions cited by Plaintiffs.

have held that "allegations from other complaints or documents, which are unproved and are contested, may not be used to establish facts to demonstrate" securities fraud pleading requirements such as scienter, *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1262–63 (C.D. Cal. 2015) (quoting *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012)), and have struck allegations where plaintiffs have relied solely on the allegations of other complaints, *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008).[6]

Here, Plaintiffs' allegations are not only based on unadjudicated claims, but ones that were unknown at the time of the IPO. It is well-established that "[a] claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective." *Rubke*, 551 F.3d at 1164 (citation omitted). Plaintiffs borrow freely from Mr. Rosen's allegations, but they fail to address the fact that Mr. Rosen personally signed the Registration Statement—and the prior certification—confirming that Mr. El-Batrawi had in fact resigned and sold his shares in order to comply with the Nasdaq listing requirements. Mot. Ex. 2 at 225, Mot. Ex. 9 at 330. To the extent that there is any merit to Mr. Rosen's allegations, they were discovered after the IPO closed. Otherwise, Mr. Rosen would have been an active participant in the alleged fraud. Plaintiffs have failed to explain how Aegis could have possibly known about Mr. El-Batrawi's alleged meddling in the internal affairs of the Company when the officer

---

[6]   *See also Fraker v. Bayer Corp.*, 2009 WL 5865687, at *5 (E.D. Cal. Oct. 6, 2009) (striking allegations lifted from FTC order and consent decree); *In re Apollo Group, Inc. Sec. Litig.*, 2011 WL 5101787, at *10 n. 5 (D. Ariz. Oct. 27, 2011) ("[B]ecause allegations from other complaints are unproven and contested, they do not amount to 'facts' sufficient to establish a strong inference of scienter."); *Bartesch v. Cook*, 941 F. Supp. 2d 501, 507 (D. Del. 2013) ("[I]t [is] not appropriate for the Court to give weight to the allegations in [a] qui tam case, because such allegations are unproven and contested [and] do not amount to 'facts' sufficient to establish a strong inference of scienter." (internal quotation marks omitted; alterations original)).

AEGIS'S REPLY MEMORANDUM

who later made such accusations attested that Mr. El-Batrawi was in full compliance at the time the Registration Statement was declared effective.[7]

Moreover, there is no reason for the Court to give any credit to Mr. Rosen's allegation that Mr. El-Batrawi "failed and/or refused to sell his shares of stock in the Company," Mot Ex. 9 at 320, which appear to be the sensationalized allegations of a disgruntled former officer who was being pushed by the Board and making a last grab for power. YayYo's 10-K for the period ended December 31, 2019—which was audited by AJ Robbins—explicitly states that Mr. El-Batrawi had reduced his ownership interest to 2.9 million shares, down from the 15.425 million shares he owned prior to the IPO, just as YayYo had represented in the Registration Statement. Reply Ex. 1 at 69.

Accordingly, Plaintiffs have failed to show that any representations regarding Mr. El-Batrawi in the Registration Statement were false or misleading at the time they were made and such claims must be dismissed.[8]

---

[7]   Plaintiffs' allegation, borrowed from the now-dismissed FirstFire action, that Mr. El-Batrawi worked out of WestPark's office is similarly unavailing. Opp. at 17. Plaintiffs are required to plead with particularity the wrongdoing of each individual defendant. Resorting to what WestPark knew or may not have known is but one example of their impermissible attempt to plead securities fraud against Aegis based on the knowledge of other defendants. Even assuming that FirstFire's allegations were true—which Plaintiffs have made no efforts to confirm—Aegis was not required to monitor the day-to-day activities of WestPark or who had access to its office space. Moreover, the Nasdaq listing requirements did not bar Mr. El-Batrawi from helping to market the IPO, or otherwise assisting with the process as a significant investor, prior to YayYo's listing on Nasdaq.

[8]   The cases cited by Plaintiffs are inapposite. Unlike the statements in *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020), the statements in the Registration Statements were not "misleading given the information available to [Aegis] at the time the statements were made," because undisputedly, Aegis did not know about the yet-to-be-filed lawsuits. Defendants in *Uber Techs., Inc.* were well aware of the "the legislative process [that was] well underway" at the time of the IPO and a "planned massive restructuring and layoffs" and therefore were obligated to disclose these issues. *Id.* Furthermore, unlike plaintiffs in *Derr v. Ra Med. Sys., Inc.*, 2021 WL 1117309, at *6 (S.D. Cal. Mar. 24, 2021), Plaintiffs here fail to allege a misleading statement. Finally, Plaintiffs cite, out of context, the standard for a due diligence defense in *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *17 (C.D. Cal. July 13, 2015).

- 7 -
AEGIS'S REPLY MEMORANDUM

### III. Plaintiffs' Allegations Regarding Contested Liabilities From Post-IPO Lawsuits Fail to Allege Any Actionable Misrepresentations or Omissions

Plaintiffs' arguments that the Registration Statement failed to disclose alleged liabilities owed to SRAX and Mr. Davis fare no better. Again, Plaintiffs merely parrot the unadjudicated claims in those lawsuits without conducting any investigation into their underlying merit. Christopher Miglino, the CEO of SRAX, was a director of YayYo at the time of the IPO. Mot. Ex. 2 at 149. Mr. Miglino either believed the SRAX liability was accurately represented in the Registration Statement at the time it became effective or was an active participant in the alleged fraud who purposefully hid the liability from YayYo's auditors and the underwriters. Either way, Plaintiffs have failed to explain how the issue could have been uncovered by Aegis through the exercise of reasonable diligence. Similarly, the Davis claims are premised upon the allegation that YayYo forged his signature on "fabricated" documents regarding his compensation arrangement filed with the SEC. Opp. at 8-9. Plaintiffs state that these SEC filings were "public information" but fail to explain why Aegis would have had any reason to believe that they were fabricated had it exercised reasonable diligence. Opp. at 19-20. Given that Davis alleges YayYo owed him the disputed compensation by no later than 2017, ¶ 92, and the financial information in the Registration Statement relating to that period was audited by AJ Robbins, Plaintiffs further fail to state a facially plausible claim against Aegis, which was entitled to rely upon the expertised opinion of YayYo's auditor.[9]

---

[9] As the Court is likely aware, an auditor is required to inquire as to any threatened or pending claims that may affect the financial information reported for any audit period. Public Company Accounting Oversight Board, Auditing Standards (AS 2505), https://pcaobus.org/Standards/Auditing/Pages/ReorgStandards.aspx (last visited May 31, 2021). The fact that Davis's claim was not reported in the Registration Statement means that the auditor either did not believe that it had to be reported, or that YayYo's management and attorneys purposefully hid any information they knew about Davis's claims from the auditor and Aegis prior to the effective date of the Registration Statement. Either way, it is facially apparent that no red flags were raised that would have required Aegis to investigate the matter further.

AEGIS'S REPLY MEMORANDUM

In short, these were issues that Aegis could not have known without a time machine.  Aegis was entitled to rely on YayYo's auditor, AJ Robbins, for the audited portions of the Registration Statement that related to these issues.  *See* 15 U.S.C. §§ 77k(b)(3) (an underwriter does not have liability for "any part of the registration statement purporting to be made on the authority of an expert (other than himself)" if "he had no reasonable ground to believe and did not believe, at the time of such part of the registration statement became effective, that the statements therein were untrue" or otherwise misleading).  Courts have dismissed claims in precisely these circumstances.  *See, e.g., In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1175, 1182 (C.D. Cal. 2008) (finding that plaintiffs failed to state accounting-related allegations against underwriters and that "underwriters may reasonably rely on auditors' statements, absent red flags that the underwriters were in a position to see"); *Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *8 (C.D. Cal. Mar. 5, 2013) ("[U]nderwriters occupy a special place in Section 11 jurisprudence because they are allowed to rely on auditors' work, absent red flags.").

## IV.   Plaintiffs' Allegations Regarding the Use of the IPO Proceeds Fail to Allege Any Actionable Misrepresentations or Omissions

Plaintiffs devote less than a page to their argument that the Registration Statement misstated how the IPO proceeds would be used.  Opp. at 20-21.  Their claims are facially deficient. As they admit, "the Company maintained discretion in what to do with the Proceeds," Opp. at 21, and YayYo disclosed that at least $2.4 million of the IPO proceeds would be earmarked towards the repayment of debt, which was the second highest amount listed for use of IPO proceeds. ¶ 63.  Plaintiffs have failed to provide any evidence suggesting that, at the time of the IPO, YayYo had no intent to use the majority of the IPO proceeds to purchase passenger vehicles, or that any such intent was discernible by Aegis.

- 9 -

## V. Plaintiffs' Items 303 and 105 Claims Are Duplicative of Plaintiffs' Other Claims and Fail for the Same Reasons

Plaintiffs' claims regarding Items 303 and 105 essentially duplicate Plaintiffs' Section 11 and 12 claims, ¶¶ 148, 151, and for the same reasons, fail to allege any actionable misrepresentations. *See Belodoff v. Netlist, Inc.*, 2009 WL 2777320, at *9 (C.D. Cal. Sept. 1, 2009) (dismissing Item 303 claims where the same allegations formed the basis of dismissed Section 11 claims); *Berg v. Velocity Fin., Inc.*, 2021 WL 268250, at *10 (C.D. Cal. Jan. 25, 2021) (dismissing Item 105 claims where Item 303 claims were dismissed).

In addition, contrary to their assertions, Plaintiffs' conclusory group pleading that "Defendants knew, but did not disclose" these alleged misrepresentations, ¶ 148, "fails to allege facts showing the adverse trends that should have been disclosed or that [Aegis] knew about such trends before" the Registration Statement, *In re Quarterdeck Off. Sys., Inc. Sec. Litig.*, 1992 WL 515347, at *5 (C.D. Cal. Nov. 4, 1992). "Regulation S–K . . . governs the disclosure of known historic trends, but does not provide a basis of liability where a corporation fails to 'disclose' the future." *Belodoff*, 2009 WL 2777320, at *9 (citation omitted); *see also Mallen v. Alphatec Holdings, Inc.*, 2013 WL 1294640, at *12-*13 (S.D. Cal. Mar. 28, 2013) (dismissing complaint for failure to plead knowledge); *Welgus v. TriNet Group, Inc.*, 2017 WL 6466264, at *24 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) (same). Plaintiffs also fail to allege that Aegis knew of the "material impact of the trends" and that "the future material impacts are reasonably likely to occur from the present-day perspective." *Belodoff*, 2009 WL 2777320, at *9 (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297-98 (9th Cir. 1998)).

## VI. Negative Causation Precludes Recovery

Courts in the Ninth Circuit "routinely apply Rule 12(b)(6) when the face of the complaint demonstrates that the plaintiff cannot establish loss causation." *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *14 (C.D. Cal. Feb. 6, 2014) (citing *In re Shoretel Inc., Sec. Litig.*, 2009 WL 248326, at *4-*6 (N.D. Cal. Feb. 2, 2009));

- 10 -

*see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1065 (9th Cir. 2008) (same, in the context of a 10(b) action).

While Plaintiffs claim that "each and every revelation caused a decline in YayYo's stock price," Opp. at 23, Plaintiffs' own allegations make clear that the price declines in YayYo's stock price are attributable to the Company's announcement to delist from Nasdaq on February 10, 2020. ¶¶ 12, 197 ("[O]n February 10, 2020, the Company "announced its intention to voluntarily delist from the NASDAQ"; the "stock quickly decreased" after the announcement).

Plaintiffs now claim two sources of disclosures for their loss causation. First, Plaintiffs point to the filing of the SRAX Action. Opp. at 23. The SRAX Action was commenced in California state court on February 11, 2020—the day after YayYo announced its decision to voluntarily delist from Nasdaq. Plaintiffs fail to plead that either YayYo or SRAX filed a press release announcing the commencement of the action, or that the complaint was even served on YayYo on that date. It is wholly unexplained how the market could have known about the lawsuit on February 11, 2020, much less reacted to it.[10]

Second, to the extent Plaintiffs now claim that the decline in YayYo's stock is attributable to a "broken IPO" because Mr. El-Batrawi "fabricated a $1.2 million indication of interest by the Gray Mars Venus Trust to claim the Offering was closed," Opp. at 24, this allegation is conclusory and not actionable under Section 11, which only imposes liability with respect to material misstatements or omissions in the

---

[10]   At best, the filing of the SRAX Action "simply put[] investors on notice of a *potential* future disclosure of fraudulent conduct." *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014), *as amended* (Sept. 11, 2014). This type of "market speculation . . . cannot form the basis of a viable loss causation theory." *Id.* (finding that the announcement of an internal investigation insufficient to establish loss causation upon a motion to dismiss in a Section 10(b) action); *see also In re Maxim Integrated Prods., Inc. Secs. Litig.*, 639 F. Supp. 2d 1038, 1047 (N.D. Cal. 2009) (disclosures regarding compliance with an SEC investigation, subpoenas from the United States Attorneys' Office, and the formation of a Special Committee to investigate options granting practices did not indicate anything more than a "risk or potential that [d]efendants engaged in widespread fraudulent conduct" and thus could not be considered corrective disclosures for the purpose of pleading loss causation in a Section 10(b) action).

Registration Statement.[11] 15 U.S.C. § 77k(a). Given that there are no statements in the Registration Statements regarding any indications of interest, the alleged disclosure of the Gray Mars Venus Trust is not actionable.[12]

**VII.   Plaintiffs Fail to Allege That Aegis Constitutes a Section 15 Control Person**

As a threshold issue, Plaintiffs' Section 15 claim fails because Plaintiffs failed to adequately plead a primary violation under the Securities Act. *See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003). After failing to locate a single case where an underwriter was held liable under Section 15, Plaintiffs cite two cases—one regarding an auditor and one regarding the CEO of the company. Not only is the role of Aegis as an underwriter readily distinguishable from that of an auditor or the CEO of a company, Plaintiffs' cited cases also include significantly more detailed allegations than those in the AC. In *In re Mattel, Inc. Securities Litigation*, for example, the court found Section 20(a) liability as to an auditor where Plaintiffs alleged with particularity that it was the auditor who gave the "mandate . . . to see what kind of a technical argument [defendant corporation] could make to avoid a restatement and avoid reporting a material weakness" that led to the alleged misstatement. 2021 WL 1259405, at *2, *13 (C.D. Cal Jan. 26, 2021). Furthermore, plaintiffs in *Mattel* cited disclosures by defendant corporation that the corporation's "investigation revealed that . . . management's reliance on the accounting advice sought and received from" the auditor. *Id.* at *13. The Section 15 claims were pled with similar specificity in

---

[11]   Plaintiffs' allegation regarding the Gray Mars Venus Trust (the "Trust") was not ignored, *see* Opp. at 24—it is at best, yet another example of pleading by hindsight, and at worst, unintelligible. Plaintiffs parrot FirstFire's allegation that Mr. El-Batrawi fabricated a $1.2 million indication of interest by the Trust in order to close the IPO, but then proceed to explain that the Trust *did in fact purchase such shares* during the IPO process. The fact that the Trust subsequently decided to sell its shares is not indicative of fraud on the part of the underwriters. It merely shows that the Trust exercised its business judgment in ultimately deciding to sell shares.

[12]   *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1036 (N.D. Cal. 2016) did not involve any major event that occurred near the date of the filing of the lawsuit; here, the Company announced its delisting from Nasdaq the day immediately before the filing of the SRAX Action. ¶ 15.

AEGIS'S REPLY MEMORANDUM

*Knollenberg*, where the President, CEO, and Chairman of the Board of defendant corporation "signed the Registration statement, and jointly with his co-defendants, actively caused the prospectus to be drafted, revised and approved." 152 F. App'x at 685. By contrast, the extent of Plaintiffs' allegations here, in its entirety, is the single line that "[t]he Underwriter Defendants also controlled the statements made in the Registration Statement and had an active role in the IPO." ¶ 176. These allegations are plainly insufficient.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint. Given that Plaintiffs have already had numerous attempts to amend their complaint, and to improve upon the allegations that it parrots from other proceedings, such dismissal should be with prejudice.

Dated: May 31, 2021

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Oscar D. Ramallo*
Aaron F. Miner
Zheng (Jane) He
Oscar D. Ramallo

*Attorneys for Defendant*
*Aegis Capital Corp.*

- 13 -
AEGIS'S REPLY MEMORANDUM