Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
R.C. Harlan (SBN 234279)
*rharlan@larsonllp.com*
Paul A. Rigali (SBN 262948)
*prigali@larsonllp.com*
Daniel R. Lahana (SBN 305664)
*dlahana@larsonllp.com*
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel.:(213) 436-4888 / Fax: (213) 623-2000

Attorneys for Defendants EvMo, Inc.
(formerly known as YayYo, Inc.)

George B. Newhouse, Esq. (SBN 107036)
*george@richardscarrington.com*
**RICHARDS CARRINGTON LLC**
545 S. Figueroa Street, 7th Fl.
Los Angeles, California 90071
Tel.: (213) 348-9016 / F: (213) 348-9017

Attorney for Defendants EvMo, Inc.
(formerly known as YayYo, Inc.), Ramy
El-Batrawi, Kevin F. Pickard, Jeffrey J.
Guzy, Christopher Miglino, Jon Rosen,
Paul Richter, and Harbant S. Sidhu

Julie E. Kamps, Esq. (SBN 282536)
*jkamps@wpcfs.com*
**WESTPARK CAPITAL, INC.**
1900 Ave. of the Stars, Suite 310
Los Angeles, CA 92620
Tel.: (310) 203-2942 / F: (310) 843-9304
Attorney for Defendant
WestPark Capital, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IN RE YAYYO INC. SECURITIES LITIGATION, | Case No. 2:20-cv-08235-SVW (AFMx) [Assigned to the Honorable Stephen V. Wilson] |
| | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| | Date: August 16, 2021 Time: 1:30 p.m. Dept.: 10A |
| | Trial Date: October 5. 2021 |

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .......................................2

III.  LEGAL STANDARD ....................................................................................5

IV.   ARGUMENT ................................................................................................6

 A.   Plaintiffs Lack Standing And Their Claims Are Atypical......................6

 B.   Plaintiffs Cannot Establish Predominance..............................................8

  1.   Individual issues of knowledge and reliance predominate...........9

  2.   Individual issues of damages predominate................................17

 C.   Plaintiffs Fail to Demonstrate More Than a *De Minimis* Number of Putative Class Members Suffered Harm................................................19

 D.   The Proposed Class Action Is Not Superior To Separate Individual Actions ................................................................................................20

 E.   Plaintiffs' Proposed Classes Are Overbroad .......................................23

V.    CONCLUSION............................................................................................24

LARSON LLP
LOS ANGELES

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ...............................................................................5, 8, 23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) ....................................................................................8, 12

*In re Apollo Grp., Inc. Securities Litig.,*
2011 WL 5101787 (D. Ariz. Oct. 27, 2011) .....................................................4, 23

*In re Asacol Antitrust Litigation,*
907 F.3d 42 (1st Cir. 2018) ..........................................................................19

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) ...............................................................................12, 17

*Binder v. Gillespie,*
184 F.3d 1059 (9th Cir. 1999) ..........................................................................11

*Briseno v. ConAgra Foods, Inc.,*
844 F.3d 1121 (9th Cir. 2017) ..........................................................................23

*Cammer v. Bloom,*
711 F. Supp. 1264 (D.N.J. 1989) ...............................................................*passim*

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) ...............................................................................5, 17, 18

*In re Connetics Corp. Securities Litig.,*
542 F. Supp. 2d 996 (N.D. Cal. 2008) .............................................................24

*In re Constar International Inc. Securities Litigation,*
585 F.3d 774 (3rd Cir. 2009) ..........................................................................9

*In re Countrywide Financial Corp. Securities Litigation*
273 F.R.D. 586 (C.D. Cal. 2009) .....................................................................13

*Dean v. China Agritech,*
2012 WL 1835708 (C.D. Cal. May 3, 2012) .....................................................13

*Desai v. Deutsche Bank Secs., Ltd.*,
573 F.3d 931 (9th Cir. 2009) ...................................................................................11

*In re Diamond Foods, Inc., Securities Litig.*,
295 F.R.D. 240 (N.D. Cal. 2013) ....................................................................... 15, 19

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2012) (*Halliburton I*) ........................................................................9

*Evans v. Linden Research, Inc.*,
2012 WL 5877579 (N.D. Cal. Nov. 20, 2012).......................................................7

*In re Fed. Home Loan Mortgage Corp. (Freddie Mac) Securities Litig.*,
281 F.R.D. 174 (S.D.N.Y.2012)..............................................................................16

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014) (*Halliburton II*) .........................................................12, 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1988) ..............................................................................8, 9

*In re Heckmann Corp. Securities Litig.*,
2013 WL 2456104 (D. Del. June 6, 2013) ............................................................13

*Loritz v. Exide Techs.*,
2015 WL 6790247 (C.D. Cal. July 21, 2015) (Wilson, J.) ..............13, 16, 17, 18

*LuMetta v. U.S. Robotics, Inc.*,
824 F.2d 768 (9th Cir. 1987)..................................................................................14

*McMahan & Co. v. Wherehouse Entertainment, Inc.*,
65 F.3d 1044 (2d Cir.1995) ....................................................................................10

*N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*,
477 F App'x 809 (2nd Cir. 2012)...........................................................................10

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
993 F.3d 774 (9th Cir. 2021).........................................................................*passim*

*In re POM Wonderful LLC*,
2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ................................................17, 19

*Poulos v. Caesar's World, Inc.*,
379 F.3d 654 (9th Cir. 2004)..................................................................................12

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  934 F.3d 619 (D.C. Cir. 2019)...........................................................................19

*Rahman v. Mott's LLP*,
  2014 WL 6815779 (N.D. Cal. Dec. 3, 2014) .....................................................19

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016)............................................................................19

*ScripsAmerica, Inc. v. Ironridge Global IV, Ltd.*,
  119 F. Supp. 3d 1213 (C.D. Cal. 2015)..............................................................16

*Snapt Inc. v. Ellipse Communications Inc.*,
  430 Fed.Appx. 346 (5th Cir. 2011) ....................................................................14

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
  552 U.S. 148 (2008) ...........................................................................................10

*Terry v. June*,
  420 F.Supp.2d 493 (W.D. Va. 2006)..................................................................22

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190, 2021 WL 2599472 (U.S. June 25, 2021)..............................6, 7

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016).........................................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .............................................................................................5

*Werdebaugh v. Blue Diamond Growers*,
  2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ...................................................19

*In re Xcelera.com Securities Litig.*,
  430 F.3d 503 (1st Cir. 2005) ...............................................................14, 15, 16

*Zamani v. Carnes*
  491 F.3d 990 (9th Cir. 2007).................................................................................7

*Zinser v. Accuflix Research Institute, Inc.*,
  253 F.3d 1180 (9th Cir. 2001).......................................................................21, 22

*Zucco Partners, LLC v. Digimare Corp.*
  552 F.3d 981 (9th Cir. 2009)...............................................................................10

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**Federal Statutes**

15 U.S.C.

§ 77k(a) ................................................................................................. 10

§ 77v(c) ................................................................................................. 22

1933 Securities Act §§ 11, 12, and 15 ..................................................... 10

1934 Securities Exchange Act §§ 10(b) and 20(a) .................................... 10

**Other Authorities**

Federal Rule of Civil Procedure 23 ............................................. 1, 2, 5, 6, 8, 21, 22

LARSON LLP
LOS ANGELES

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION

Plaintiffs Bernard Bednarz and William Koch's ("Plaintiffs") Motion for Class Certification must be denied because they fail to even attempt to carry their burden of proof and therefore cannot meet the requirements for a class action under Rule 23(b)(3).

*First*, Plaintiffs lack Article III standing and do not satisfy Rule 23(a)'s typicality requirement because they fail to establish through admissible evidence that they ever purchased or owned YayYo's stock—nor did they prove they are even members of the classes they now seek to represent.  The only "evidence" Plaintiffs' attempt to submit is the inadmissible testimony of Jack Lo, an employee of Plaintiffs' counsel's law firm who relies on hearsay and does not even purport to be an expert.

*Second*, because Plaintiffs did not provide any evidence to establish their lack of knowledge of the alleged misstatements or omissions (for Plaintiffs' Securities Act claims), that the securities at issue were traded on an efficient market (for Plaintiffs' Exchange Act claim), or that damages are capable of measurement on a classwide basis, individual issues necessarily predominate over common issues. Without any evidence to establish that these issues can decided on a class wide basis, each of these elements must necessarily be litigated through individual mini-trials, which defeats the predominance requirement; and Plaintiffs fail to show otherwise.

*Third*, Plaintiffs fail to prove more than a *de minimis* number of putative class members even suffered damages—YayYo's stock price eventually rebounded 50% higher than its IPO price—further demonstrating that individual issues predominate.

*Fourth*, Plaintiffs fail to show that a class action would be superior under Rule 23(b)(3) because of the aforementioned individual issues that predominate, along with  the lack of manageability of the proposed classes.

*Finally*, Plaintiffs' proposed Exchange Act class is drastically overbroad and

likely includes numerous putative class members who simply cannot show they have been damaged.

Plaintiffs failed to carry their burden under Rule 23's requirements—nor can they—and therefore Plaintiffs' Motion should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Ramy El-Batrawi Launches YayYo

Ramy El-Batrawi launched YayYo in 2016 to capitalize on the rapid growth of rideshare platforms like Uber and Lyft. YayYo originally sought to provide pricing information from rideshare platforms onto a single application. YayYo later altered its business model to solve a different problem in the rideshare market: YayYo helps would-be rideshare drivers obtain vehicles to use on rideshare platforms. YayYo developed Rideshare Rental, which rents passenger vehicles to self-employed rideshare drivers.  Compl. ¶¶ 41-47.

### B.    After Going Public, YayYo Sues Mr. El-Batrawi, Resulting in YayYo Withdrawing From NASDAQ

After three years of operations and multiple rounds of funding, YayYo decided to raise capital through the public markets. In the fall of 2019, it retained Aegis Capital Corp. and Westpark Capital, Inc. as underwriters for its IPO on NASDAQ. *Id.* ¶ 39. YayYo originally submitted a Registration Statement in November 2018, but the following November it submitted an amended Registration Statement, which the SEC declared effective on November 12, 2019. *Id.* ¶ 50. Three days later, YayYo's IPO closed. Through the IPO, approximately 2,625,000 shares were sold at $4.00 per share, resulting in approximately $10.5 million raised. *Id.* ¶ 124. Plaintiff Koch alleges that he purchased shares in YayYo as part of the IPO, Compl. ¶ 26, but offers no proof in support.  In fact, his declaration in support of this motion does not even state that he purchased any shares of YayYo, let alone when he purchased those shares, from whom he purchased them, and at what price he purchased them.  More glaringly, Plaintiffs have yet to even allege, much less

prove, the circumstances surrounding Plaintiff Bednarz's purchase of YayYo stock. *Id*. ¶ 162-163, 173.

As a condition of accessing this capital, however, NASDAQ required Mr. El-Batrawi to (i) reduce his ownership stake in YayYo to no more than 9.9%; and (ii) resign his roles as an officer and director of YayYo. And as set forth in YayYo's November 2019 Registration Statement, both of these conditions were met. Regarding Mr. El-Batrawi's ownership in YayYo, the Registration Statement explained that he sold 12,525,000 shares to reduce his beneficial ownership to 9.9% of shares outstanding after the completion of the IPO. And regarding Mr. El-Batrawi's role with YayYo, the Registration Statement explained he resigned from all positions with YayYo. *Id.* ¶¶ 55-59.

On January 24, 2020, a dispute over YayYo's management developed leading to YayYo filing an action in Los Angeles Superior Court, in which the Company sought declaratory and injunctive relief against Mr. El-Batrawi, alleging that despite leaving YayYo, Mr. El-Batrawi misrepresented his position in, association with, and authority on behalf of YayYo. Request for Judicial Notice ("RJN"), Ex. 1. *Id.* ¶ 72. More specifically, the complaint alleged that Mr. El-Batrawi held himself out as a YayYo officer or director and made contact with YayYo's competitors. *Id.* ¶ 73. In addition, the complaint alleged, *inter alia,* that Mr. El-Batrawi negotiated purchases on behalf of YayYo and attempted to direct YayYo staff. *Id.* YayYo supported its complaint with a declaration from its then-CEO, Jonathan Rosen. RJN, Ex. 2. An application for a temporary restraining order was denied by Judge James Chalfant. As Plaintiffs note, Mr. Rosen was removed as CEO three days later. Compl. ¶ 79. According to Plaintiffs, the allegations in the YayYo lawsuit—which are denied by Defendants—prompted YayYo to voluntarily delist from NASDAQ after NASDAQ informed YayYo that based on the allegations in the complaint, NASDAQ would delist YayYo. *See* Compl. ¶ 81-82. YayYo announced its intention to delist its stock from NASDAQ on February 10, 2020 and delisted its stock from NASDAQ on

LARSON LLP
LOS ANGELES

3

February 20, 2020. *Id.* ¶ 81.

### C.    YayYo Faces Opportunistic Lawsuits

Flush with cash from its IPO, YayYo became a target for meritless lawsuits, three of which form the basis of Plaintiffs' claims here even though "allegations from other complaints are unproven and contested" and are thus insufficient to establish the necessary scienter to comply with the Private Securities Litigation Reform Act ("PSLRA"). *In re Apollo Grp., Inc. Securities Litig.*, 2011 WL 5101787, at *10, n. 5 (D. Ariz. Oct. 27, 2011). Two of those lawsuits have since been settled, and the other is subject to a pending demurrer.

***Social Reality Inc. v. YayYo, Inc.***  In 2018, YayYo incurred $334,471 worth of advertising and digital media services from Social Reality, Inc. (now known as SRAX) that remained unpaid as of December 31, 2018. YayYo's Registration Statement disclosed this amount. On February 11, 2020—months after YayYo's IPO—SRAX filed suit, contending that YayYo owed it $426,286 for services rendered. YayYo disputed the amount of the actual debt. Here, Plaintiffs now assert that YayYo's failure to reference the $426,286 in allegedly unpaid services qualifies as a material omission, even though the larger figure was (i) based on SRAX's allegations in a lawsuit filed well after YayYo's November 2019 registration statement; and (ii) the amount of the debt SRAX alleged it was owed goes through July 2019, well after December 31, 2018.  Compl. ¶ 84-89.

***Davis v. YayYo, Inc., et al.***  On March 5, 2020, Anthony Davis—a former YayYo executive who worked at YayYo for only a matter of a few months from December 2017 to early 2018—sued YayYo for allegedly failing to provide him with stock options. Once again, Plaintiffs rely solely on the complaint's allegations to contend that Davis is owed hundreds of thousands of dollars in stock options, which Davis's complaint does not allege he ever exercised. Compl. ¶ 90. YayYo has since filed a demurrer to Davis's Second Amended Complaint.

***FirstFire Global Opportunities Fund, LLC v. Westpark Capital, Inc., et al..***

On April 28, 2020, FirstFire filed a lawsuit against YayYo's underwriters (later amended to name YayYo), alleging that YayYo's IPO Registration Statement was materially false because it did not reveal Mr. El-Batrawi's ongoing control of YayYo. FirstFire also alleged that YayYo's Registration Statement made misrepresentations concerning the use of the IPO proceeds. Compl. ¶ 102-103, 107. This lawsuit was settled amicably and FirstFire remains a shareholder of YayYo.

On the heels of these meritless lawsuits, Plaintiffs filed this action, which does little more than aggregate other plaintiffs' allegations against the Company. Indeed, the purported misrepresentations that Plaintiffs identify derive mostly from the allegations in the lawsuits referenced above.

## III.    LEGAL STANDARD

Class actions reflect an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). To maintain a class action, the proposed representative "must affirmatively demonstrate his compliance" with Federal Rule of Civil Procedure 23. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23(a) articulates four "prerequisites" to certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Plaintiffs must also "satisfy *through evidentiary proof* at least one of Rule 23(b)'s provisions." *Comcast*, 569 U.S. at 33 (emphasis added).

Where, as here, a proposed representative seeks money damages, Rule 23(b)(3) applies, and so common questions must predominate over individualized ones. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 784 (9th Cir. 2021). This presents a "far more demanding" standard than showing a single common question under Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). In evaluating a proposed representative's compliance with Rule 23(b)(3), "a district court must find by a preponderance of the evidence that the plaintiff has established predominance under Rule 23(b)(3),"

which can only be done through admissible evidence. *Olean,* 993 F.3d at 784-85 (quoting *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228 (5th Cir. 2009) ("[A]n issue of predominance must be established at the class certification stage by a preponderance of all admissible evidence.") (simplified).

## IV.   UNDERLINE ARGUMENT

Plaintiffs' Motion confirms there are multiple insurmountable obstacles to class certification. *First,* Plaintiffs' Motion fails because Plaintiffs fail to prove they have Article III standing and they do not satisfy Rule 23(a)'s typicality requirement. *Second,* individualized issues of knowledge (for Plaintiffs' Securities Act claims), reliance (for Plaintiffs' Exchange Act claim), and damages predominate over common issues. *Third,* Plaintiffs do not establish that more than a *de minimis* number of putative class members suffered harm. *Fourth,* Plaintiffs do not demonstrate that a class action is superior under Rule 23(b)(3). *Finally,* Plaintiffs' proposed Exchange Act class is drastically overbroad. Their Motion must be denied.

### A.   Plaintiffs Lack Standing And Their Claims Are Atypical

As an initial matter, Plaintiffs fail to show they have Article III standing or that their claims are typical of the proposed classes. On these grounds alone, their Motion should be denied.

"Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation" possess Article III standing to "sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2021 WL 2599472, at *8 (U.S. June 25, 2021) (original emphasis).  Here, Plaintiffs have failed to prove they ever even purchased YayYo's stock, let alone that they have been damaged by selling the shares at a loss. There is no case or controversy for the Court to resolve if a plaintiff does not suffer an injury that the defendant caused and the court can remedy. *TransUnion*, 2021 WL 2599472, at *6.

In *TransUnion*, the Supreme Court recently addressed the issue of standing in the class action context. The plaintiffs in *TransUnion* alleged that the company's

actions violated the Fair Credit Reporting Act (FCRA). The district court certified a class of everyone who, during a seven-month period, had received a letter from TransUnion stating that their name was a "potential match" on the Office of Foreign Asset Control (i.e. persons suspected of money laundering and terrorism), although only a portion of those class members had their credit reports sent to a third party. A jury awarded significant damages against TransUnion. The Supreme Court reversed, holding that the plaintiff, and all class members, must show they were concretely harmed in order to have Article III standing and seek damages in federal court. *Id.* at \*1. As "plaintiffs must demonstrate standing for each claim that they press…" at the class action stage, Plaintiffs must prove standing with admissible evidence. *Id*. at \*10; *Olean*, 993 F.3d at 785.

Here, Plaintiffs completely fail to prove they even purchased YayYo's stock, let alone that they suffered any harm. Even though both Plaintiffs submitted declarations in support of their Motion, those declarations are completely devoid of any evidence demonstrating that Plaintiffs purchased or ever owned YayYo stock; nor are there any details surrounding such transactions or purported damages. *See generally* Decls. of Bednarz and Koch. Consequently, Plaintiffs have failed to meet their burden to "demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the [class]." *Evans v. Linden Research, Inc.*, 2012 WL 5877579, at \*6 (N.D. Cal. Nov. 20, 2012). For the same reasons, their claims cannot be typical of the proposed classes—which are limited to those who "purchased or otherwise acquired YayYo common stock" Mot. at i:6-8—because they failed to prove they ever purchased or owned YayYo's stock.[1]

---

[1] To the extent Plaintiffs attempt to submit supplemental evidence in Reply, such gamesmanship should be rejected. The Court should not consider evidence or arguments "raised for the first time in a reply brief." *Zamani v. Carnes* 491 F.3d 990, 997 (9th Cir. 2007). Plaintiffs had *multiple* opportunities to demonstrate

Quite simply, because Plaintiffs provide no evidence they actually purchased YayYo stock and then suffered a loss because of that purchase, Plaintiffs failed to prove they have standing or that their claims are typical of the classes they seek to represent. On these grounds alone, Plaintiffs' Motion should be denied.

### B.    Plaintiffs Cannot Establish Predominance

Even if Plaintiffs had standing (they do not) and satisfied Rule 23(a)'s typicality requirement (they do not), their motion should still be denied because they have not established that "the questions of law or fact common to class members predominate over any questions affecting only individual members" under Rule 23(b)(3).[2] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013).

Predominance exists when proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. But because the predominance analysis presumes common questions exist under Rule 23(a)(2) "the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1988). Rather, the predominance

---

standing with admissible evidence. For example, Plaintiff Bednarz previously filed a Motion for Appointment as Lead Plaintiff. Dkt. 26. That motion was also devoid of any evidence demonstrating he actually purchased or owned YayYo stock. In fact, Plaintiffs did not even submit declarations in support of that motion. Dkt. Nos. 26-28. While the instant Motion includes their declarations, the declarations completely fail to demonstrate standing because they do not provide evidence of Plaintiffs' ownership of YayYo stock. Finally, Defendants requested to depose Plaintiffs prior to filing the instant Opposition, but Plaintiff Bednarz was purportedly only available on the Friday afternoon before this Opposition was due and Koch's only purported availability was the day before the Opposition was due–a Sunday–making it a futile offer as neither transcript would be available for use. As such, Plaintiffs have had ample opportunity to prove they had standing and that their claims were typical of the proposed classes, yet they could not—or chose not—to do so.

[2] Rule 23(b)(3) applies here because Plaintiffs seek to certify a class action for money damages. *See Olean*, 993 F.3d at 784. Plaintiffs assert no other basis for class certification. Mot. at 12.

inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). It ultimately "asks whether the common, aggregation enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id*. (internal quotation marks omitted); *see also Hanlon*, 150 F.3d at 1022 (predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication") (internal quotation marks omitted). As noted above, Plaintiffs can only establish predominance through admissible evidence. *Olean*, 993 F.3d at 785 (quotations omitted).  Because Plaintiffs failed to carry their burden and have provided no admissible evidence to support a finding that common questions predominate over individual issues, class certification should be denied.

### 1.     Individual issues of knowledge and reliance predominate

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2012) (*Halliburton I*). Where "proof of the essential elements of the cause of action requires individual treatment," there are individual issues and class certification is not appropriate. *In re Constar International Inc. Securities Litigation*, 585 F.3d 774, 780 (3rd Cir. 2009).

Each putative class member's knowledge of the alleged misrepresentations (for Plaintiffs' Section 11 claim) and extent of their reliance on the alleged misrepresentations (for Plaintiffs' Section 10b claim) is necessarily individualized and requires individual treatment that precludes class certification.[3]

*Knowledge.*  Starting with Plaintiffs' proposed Securities Act Class, which

---

[3] The Securities Act Subclass also fails because it is subsumed within the Securities Act Class.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

LARSON LLP
LOS ANGELES

asserts violations of Sections 11, 12, and 15 of the 1933 Securities Act,[4] a prima facie case under Section 11 requires proof that a registration statement contained material misstatements or omissions. *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 65 F.3d 1044, 1047 (2d Cir.1995); *see also* 15 U.S.C. § 77k(a). Section 11 absolves a defendant of liability for misstatements or omissions if the purchaser of the security knew about the falsity of the statement at the time of the acquisition. 15 U.S.C. § 77k(a). Thus, individualized knowledge inquiries can overwhelm common issues and are a basis to deny class certification. *N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F App'x 809, 813 (2nd Cir. 2012). Indeed, where, as here, a proposed representative "include[s] in the class definitions *any* purchaser from the initial offering to the present day," it supports the "conclusion that individual knowledge inquiries would be required" given the "different levels of public information" available at different times. *Id.* at 813-14. Plaintiffs do not even attempt to explain how they will overcome these individual issues regarding knowledge, and accordingly have failed to meet their burden that common issues predominate over individual inquiries.

*Reliance.*  Plaintiffs also fail to show reliance with regard to their Exchange Act Class.  Plaintiffs' Exchange Act Class asserts violations of Sections 10(b) and 20(a) of the 1934 Securities Exchange Act, along with SEC Rule 10b-5.[5] The Supreme Court has interpreted Section 10(b) and Rule 10b-5 as providing an implied private cause of action. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,

---

[4] Because Section 12 and 15 claims are essentially derivative of Section 11 claims, only Section 11 is addressed.

[5] Section 20(a) is also derivative of Section 10, and thus is not expressly addressed. Section 20(a) requires "a primary violation of federal securities law" and that the "defendant exercised actual power or control over the primary violator." *Zucco Partners, LLC v. Digimare Corp.* 552 F.3d 981, 990 (9th Cir. 2009) (citation omitted).

552 U.S. 148, 157 (2008). "In a typical § 10(b) private action" based on material misrepresentations or omissions, a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) *reliance upon the misrepresentation or omission*; (5) economic loss; and (6) loss causation." *Id*. (emphasis added).

Plaintiffs concede they cannot show reliance on a class-wide basis without invoking a presumption. Mot. at 13:20-25. Indeed, Plaintiffs ask the Court to invoke the *Affiliated Ute* and "fraud-on-the-market" presumptions in order to establish reliance. Neither presumption applies here.

a.    <em>The Affiliated Ute presumption does not apply</em>

First, Plaintiffs contend they are entitled to a presumption of reliance under *Affiliated Ute*, because their claims involve "primarily a failure to disclose." Mot. at 14:2. But Plaintiffs' contention both misreads the law and distorts their own pleadings. Starting with the law, the Ninth Circuit has consistently rejected the very approach Plaintiffs take here: repackaging affirmative misrepresentation claims as omission claims to apply the *Affiliated Ute* presumption. *See Desai v. Deutsche Bank Secs., Ltd.*, 573 F.3d 931, 941 (9th Cir. 2009) (declining to apply *Affiliated Ute* presumption because treating concealment in fraudulent scheme as omission "would permit the *Affiliated Ute* presumption to swallow the reliance requirement almost completely").

Where, as here, a complaint presents "a mixed case of misstatements and omissions," the *Affiliated Ute* presumption does not apply. *See Binder v. Gillespie*, 184 F.3d 1059, 1063-64 (9th Cir. 1999) (holding that the "*Affiliated Ute* presumption should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions"). And one look at Plaintiffs' Amended Complaint confirms that it does not primarily allege omissions. To the contrary, it is littered with allegations of

misstatements, as the examples below plainly demonstrate:

- "The statements contained in [the Registration Statement] were materially false and misleading..." (Compl. ¶ 130.)

- "The Company had a bigger debt to SRAX than revealed…The Company owed SRAX…. a materially higher amount than disclosed." (Compl. ¶¶ 138, 141.)

- "The statements…were materially false and misleading…" (Compl. ¶¶ 132, 138, 143.)

- "YayYo owed its former President, CEO, and Director over four-hundred-and-fifty thousand dollars at the time of the IPO" (Compl.¶ 143.)

- "YayYo filed a materially false statement regarding the agreement with Davis…" (Comp. ¶ 143.)

At bottom, "[b]ecause the allegations here cannot be characterized primarily as claims of omission," Plaintiffs cannot invoke the *Affiliated Ute* "presumption of reliance." *Poulos v. Caesar's World, Inc.*, 379 F.3d 654, 667 (9th Cir. 2004).

> b.    *The "fraud-on-the-market" presumption does not apply*

Plaintiffs also attempt to invoke the "fraud-on-the-market" presumption, which must also be rejected because it does not apply. Mot. at 14:25-19:23. In a traditional securities fraud case, the plaintiff must demonstrate reliance on a specific false or misleading representation made by the defendant. *See Amgen Inc.*, 568 U.S. at 460-61. "[D]irect proof" of reliance is often "rendered difficult" and is ill-suited to class-wide proof. *Basic Inc. v. Levinson*, 485 U.S. 224, 245 (1988).

In *Basic*, the Supreme Court held that class action plaintiffs may invoke the rebuttable "presumption" of reliance based on the "fraud-on-the-market" theory, which posits that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Id*. at 246. However, plaintiffs may only invoke the *Basic* presumption after establishing that the stock traded on an efficient market throughout the class period. *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) (*Halliburton II*).

LARSON LLP
LOS ANGELES

To determine whether a security is traded on an efficient market, courts in the Ninth Circuit often consider the five factors articulated in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989). *See, e.g., Dean v. China Agritech*, 2012 WL 1835708, at *6-7 (C.D. Cal. May 3, 2012). The *Cammer* factors examine: "(1) the average weekly trading volume of the security during the relevant period; (2) the number of securities analysts following the security; (3) the extent to which market makers trade in the security; (4) the company's eligibility to file an SEC Form S-3; and (5) the existence of a cause-effect relationship between unexpected corporate news and a change in the price of the security." *Id*. at *6.

The first four *Cammer* factors rely on circumstantial evidence to assess whether the market for the security is conducive to informational efficiency. *In re Countrywide Financial Corp. Securities Litigation* 273 F.R.D. 586, 613 (C.D. Cal. 2009). The fifth factor, instead of "relying on circumstantial evidence that a security's market is *conducive* to efficiency ... explores whether an important *result* of an efficient market exists." *Id*. at 614 (original emphasis). It is well settled that the fifth *Cammer* factor is most important. *Loritz v. Exide Techs.*, 2015 WL 6790247, at *9 (C.D. Cal. July 21, 2015) (Wilson, J.).

Typically, plaintiffs provide an expert declaration analyzing the five *Cammer* factors in order to provide the Court with sufficient evidence to make a determination as to market efficiency.  But here, Plaintiffs provided no such evidence, even though a market efficiency analysis must be "rigorous" and "involves resolving disputes among conflicting expert opinions." *In re Heckmann Corp. Securities Litig.*, 2013 WL 2456104, at *9 (D. Del. June 6, 2013).  Instead, Plaintiffs present the declaration of Plaintiffs' counsel's own employee, who apparently retrieved information from Bloomberg, and simply regurgitates it here. But his declaration is wholly inadmissible, as explained below and in Defendants' concurrently filed evidentiary objections.  *See* Objections to Declaration of Jack Lo. Accordingly, as explained below, because the *Cammer* factors do not support a

market efficiency finding based on admissible evidence presented here, the "fraud-on-the-market" presumption does not apply and individualized issues of reliance necessarily predominate. *See Olean*, 993 F.3d at 785 (quoting *Flowserve Corp.*, 752 F.3d at 228) ("An issue of predominance must be established at the class certification stage by a preponderance of all *admissible evidence*.") (emphasis added).

     ***Factor 1: Trading Volume.*** The higher the trading volume during the Class Period, the stronger the showing of "significant investor interest in the company" and, therefore, "likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information." *Cammer*, 711 F.Supp. at 1286. Courts often use the "average weekly trading volume." *In re Xcelera.com Securities Litig.*, 430 F.3d 503, 514 (1st Cir. 2005); *Cammer*, 711 F.Supp. at 1293.

     Here, Plaintiffs attempt to rely on the declaration of Jack Lo, an employee of the law firm representing Plaintiffs, who merely reviewed information he apparently accessed from a Bloomberg Terminal. Lo Decl. ¶¶ 9-10. While a sufficient level of average weekly trading volume could contribute to a finding of market efficiency, Mr. Lo's declaration lacks foundation and personal knowledge, relies on hearsay, and is inadmissible.[6] Mr. Lo is neither a percipient witness nor is he an expert, and therefore his mere recitation of a third party's (Bloomberg's) information is not admissible as it is not properly authenticated and is clear hearsay. *Snapt Inc. v. Ellipse Communications Inc.*, 430 Fed.Appx. 346, 351-52 (5th Cir. 2011) (expert witness affidavit relying on third party information was inadmissible); *LuMetta v. U.S. Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987) (lack of foundation grounds to exclude expert testimony.) Without Mr. Lo's declaration, Plaintiffs lack any evidence to support a sufficient level of trading volume, thus this factor weighs against them. *See Olean*, 993 F.3d at 785 (requiring plaintiff to establish

---

[6] Defendants have prepared separate objections to Mr. Lo's declaration.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

predominance with admissible evidence).

**Factor 2: Analyst Interest.** The more the investment community follows an issuer, the more likely that investors will rapidly and fully impound information into the issuer's securities prices. *Cammer*, 711 F.Supp. at 1286; *Xcelera.com*, 430 F.3d at 514. Courts sometimes count the number of analysts following the stock. *See Teamsters*, 2006 WL 2161887, at *6 & n. 82 (collecting authority). Here, Plaintiffs admit that "no meaningful stock analysts appear to have covered YayYo…" Mot. 18:8-10. Thus, this factor weighs against finding market efficiency.

**Factor 3: SEC Form S-3 Eligibility.** The SEC Form S–3 is an abbreviated disclosure form only required to be filed by "companies that have $75 million of stock held by non-affiliates." *In re Diamond Foods, Inc., Securities Litig.*, 295 F.R.D. 240, 248 (N.D. Cal. 2013). A company being required to file SEC Form S-3 "tends to support a finding of efficiency." *Id.* This form exists based on the assumption that the market has sufficient information about an issuer of sufficient size. *Cammer*, 711 F.Supp. at 1284; *Xcelera.com*, 430 F.3d at 511. Here, Plaintiffs admit that YayYo "did not qualify to file a Form S-3." Mot. 18:8-9. Thus, this factor also weighs against finding market efficiency.

**Factor 4: Market Makers.** "A market-maker is one who helps establish a market for securities by reporting bid-and-asked quotations (the price a buyer will pay for a security and the price a seller will sell a security) and who stands ready to buy or sell at these publicly quoted prices." *Xcelera.com*, 430 F.3d at 515 (internal citations and quotations omitted). Market-makers enhance "liquidity"—the ability to execute a trade quickly and efficiently. The more market-makers for a particular security (and, relatedly, the greater the volume of the security the market-makers are prepared to handle), the more reasonable it is to infer that the security is liquid, and, therefore, more likely the market for that security is efficient. *See Xcelera*.com, 430 F.3d at 515-16.

Here, the only evidence Plaintiffs put forward regarding the number of market

makers is the inadmissible testimony of Jack Lo, who failed to establish a foundation or personal knowledge, and simply regurgitates hearsay. Mot. 18:16-19. And because Plaintiffs lack admissible evidence to establish a sufficient level of market makers, this factor weighs against them. *See Olean*, 993 F.3d at 785 (requiring plaintiff to establish predominance with admissible evidence).

***Factor 5: Empirical Evidence Suggesting a Causal Relationship.*** The fifth *Cammer* factor looks at empirical facts to show a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price, is generally regarded as the most important factor. *See Xcelera*.com, 430 F.3d at 513; *Loritz*, 2015 WL 6790247, at *9.

Here, Plaintiffs' evidence supporting the fifth *Cammer* factor is insufficient on its face. Plaintiffs fail to demonstrate a causal connection between the new information and price movement. Again, Plaintiffs' sole evidence in support of this factor is Mr. Lo's declaration.  Even setting aside the inadmissibility of Mr. Lo's declaration, Mr. Lo failed to conduct *any* analysis showing a cause and effect relationship between the purported misstatements and YayYo's stock price. Instead, his declaration merely repeats dates and stock prices gathered from a third party. Lo Decl. at ¶ 12. The copy and paste of the stock price, even if it were admissible, utterly fails to demonstrate the "causal connection" required by the fifth *Cammer* factor. *See ScripsAmerica, Inc. v. Ironridge Global IV, Ltd.*, 119 F. Supp. 3d 1213, 1256 (C.D. Cal. 2015) ("The court agrees, as an initial matter, that simply pointing to thirteen days on which Scrips' stock price allegedly reacted to press releases is flawed"); *see also In re Fed. Home Loan Mortgage Corp. (Freddie Mac) Securities Litig.*, 281 F.R.D. 174, 180 (S.D.N.Y.2012) (concluding that an event study showing statistically significant abnormal returns on 28% of news days was insufficient to "show that the market price responds to most new, material news").

In sum, Plaintiffs have provided no admissible evidence in support of the five *Cammer* factors, which is more than sufficient to rebut the "fraud-on-the-market"

presumption.  But even assuming Mr. Lo's declaration were somehow admissible, the second, third, and all-important fifth *Cammer* factors still strongly weigh against finding market efficiency. Because of this, Plaintiffs cannot invoke *Basic*'s "fraud-on-the-market" presumption. And without the *Basic* presumption of reliance, individual questions of reliance predominate, and class certification is improper. *See Halliburton*, 134 S. Ct. at 2412; *see also Brown*, 2014 WL 12576643, at \*4 ("[D]emonstrating market efficiency is in essence a lynchpin to Plaintiffs' motion for class certification: market efficiency is essential to 'fraud-on-the-market'; 'fraud-on-the-market' is essential to demonstrating reliance on behalf of the class as a whole; demonstrating reliance on behalf of the class as a whole is necessary to show that individual issues do not predominate over common ones, as required by Rule 23(b)(3).").

2.   <u>Individual issues of damages predominate</u>

To establish predominance under Rule 23(b)(3), Plaintiffs are also required to "establish[] that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). On top of this, Plaintiffs "must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *In re POM Wonderful LLC*, 2014 WL 1225184, at \*2, 5 (C.D. Cal. Mar. 25, 2014) (citing *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (decertifying class because damages "model" included "nothing of substance to analyze"). Despite these clear requirements, Plaintiffs dedicate a single paragraph of *argument*, and no admissible evidence, to argue they can link damages to YayYo's alleged misconduct on a class-wide basis. *See* Mot. at 21-22. This abdication of their burden presents an additional basis to deny class certification.

This Court's opinion in *Loritz v. Exide Techs.*, 2015 WL 6790247 (C.D. Cal. July 21, 2015) (Wilson, J.) is instructive. *Loritz* was a securities class action against a company that allegedly failed to disclose its noncompliance with environmental

regulations and financial liquidity issues. *Id.* at *1.[7] Like Plaintiffs here, the *Loritz* plaintiffs "failed to set forth any model of damages (let alone one tied to their theory of liability) in their opening brief." *Id.* at *22. And like in *Loritz*, Plaintiffs' failure is "particularly problematic" here given that Plaintiffs' own allegations. *Id.*

For example, here, as in *Loritz*, "there are multiple alleged misrepresentations" including misrepresentations regarding Mr. El-Batrawi's involvement with YayYo, YayYo's debt levels, and YayYo's plan for the IPO's proceeds. *Id.* at *22; *see also* Compl. ¶¶ 123-143. By definition, Plaintiffs' failure to provide a damages model violates *Comcast* because Plaintiffs do not "tie damages calculations to the alleged misrepresentations." *Loritz*, 2015 WL 6790247, at *22 (citing *In re POM Wonderful*, 2014 WL 1225184, at *5-6). And here, as in *Loritz*, "some of the allegedly concealed facts arose or were made known to [YayYo] (and thus for the first time could have been disclosed) during the class period." *Id.* at *22; *see also* Compl. ¶¶ 179-191. In light of this, Plaintiffs' lack of a damages model dooms their Motion to failure because they "failed to show that [their] proposed damages stemmed from the [] actions that created the legal liability." *Loritz*, 2015 WL 6790247, at *22 (citations omitted).

Given Plaintiffs' critical failure, this Court should apply *Loritz* and find that this failure means Plaintiffs do not "show that common issues predominate." *Id.* at *23. And if anything, Plaintiffs' failure here is worse than in *Loritz*, because at least in *Loritz*, the plaintiffs submitted expert testimony with their opening motion, something Plaintiffs have chosen not to do here. *Id.* at *22. Thus, unlike in *Loritz*, this is "a case where Plaintiffs failed to put forth *any* admissible evidence establishing that it is possible to calculate the amount of damages tied to their theory of liability." *Id.* at *24 (original emphasis). This is a critical distinction, because

---

[7] There were two proposed classes in *Loritz*: a shareholder class, and a noteholder class.

Plaintiffs' utter failure to proffer any damages model means that there is "nothing of substance to analyze," and so Plaintiffs cannot certify a class. *In re POM Wonderful*, 2014 WL 1225184, at \*5-6; *see also Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at \*11 (N.D. Cal. Dec. 15, 2014); *Rahman v. Mott's LLP*, 2014 WL 6815779, at \*7-9 (N.D. Cal. Dec. 3, 2014) ("no damages model, no predominance, no class certification") (citation omitted).[8]

### C.    Plaintiffs Fail to Demonstrate More Than a *De Minimis* Number of Putative Class Members Suffered Harm

Additionally, Plaintiffs cannot show common issues predominate because they failed to prove more than a *de minimis* number of putative class members suffered any harm.

A large percentage of uninjured class members defeats predominance. *Olean,* 993 F.3d at 792–793. Even though "a well-defined class may inevitably contain some individuals who have suffered no harm," *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016), the few reported decisions involving uninjured class members "suggest that 5% to 6% constitutes the outer limits of a *de minimis* number," *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 624-25 (D.C. Cir. 2019) (simplified) (finding no predominance where 12.7% of class members were conceded to be uninjured by plaintiffs' own expert). In *In re Asacol Antitrust Litigation*, 907 F.3d 42, 51-58 (1st Cir. 2018), the First Circuit reversed

---

[8] Plaintiffs try to argue their way out of their failure to proffer a damages model, citing *Diamond Foods*, 295 F.R.D. at 251-52 for the proposition that "at class certification, a formal damages model is not necessary to demonstrate that damages can be determined on a class-wide basis." Mot at 22. This is misleading. Unlike Plaintiffs here, the *Diamond Foods* plaintiff put forth an event study through an expert that purportedly demonstrated that damages were calculable on a classwide basis. *Diamond Foods*, 295 F.R.D. at 251. Indeed, as the *Diamond Foods* court explained, "the question for class certification is whether plaintiff has met its burden of establishing that damages can be proven on a classwide basis." *Id.* at 252.  Here, Plaintiffs have not even attempted to meet that burden.

certification where the district court had concluded that "around 10%" of the proposed class was uninjured.

Here, Plaintiffs fail to show there are more than a *de minimis* number of putative class members who suffered any harm. Plaintiffs' proposed class definitions seek to include *everyone* who purchased the stock between November 13, 2019 and April 28, 2020, without regard to those who were not harmed or may have even profited. Mot. at i. While Plaintiffs highlight the stock's decline from its IPO to April 2020, they fail to address that the stock later rebounded, reaching a high of $6 per share in March 2021, 50% above its IPO price, and is currently trading around $1.80 per share. RJN, Ex. 3. Thus, someone who purchased the stock at $.08 per share in April 2020 may be a member of Plaintiffs' proposed class, but if they continue to hold the stock or sold it in in March 2021, they would not have suffered any damages, and instead would have made a profit.  *See id.*; *see also* Mot. at 19.  Plaintiffs completely fail to meet their burden to demonstrate predominance by establishing that the number of such putative class members is not *de minimis*. *See Olean*, 993 F.3d at 794 (deciding question of uninjured members of putative class "is necessary to determine whether Plaintiffs have established predominance"). As individual issues predominate as to this issue, class certification should be denied.

**D.     The Proposed Class Action Is Not Superior To Separate Individual Actions**

Next, even assuming common questions predominate over those affecting only individual class members (they do not), Rule 23(b)(3) also requires the proposed class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) lists four non-exhaustive factors for district courts to consider in assessing superiority. When weighed together, these factors do not favor aggregating the claims by YayYo investors into a class action.

The first factor examines "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). "Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *See Zinser v. Accuflix Research Institute, Inc.*, 253 F.3d 1180, 1190-91 (9th Cir. 2001). Here, Plaintiffs have not set forth any evidence demonstrating the amounts at issue. Plaintiffs do not even provide evidence of their own damage, let alone an average damage to class members.  Given Plaintiffs' failure of proof, this factor does not weigh in favor of a showing that class treatment is superior.

The second factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). When other actions are already pending and a risk of inconsistent adjudications exists, "a class action may not be appropriate since, unless the other suits can be enjoined . . . a Rule 23 proceeding only might create one more action . . . ." *Zinser*, 253 F.3d at 1191 (internal quotation marks and citation omitted). Here, as set forth in Plaintiffs' complaint and demonstrated by the other dockets showing relating cases, there are a number of other lawsuits focusing on the same issues as the instant class action complaint.[9] For example, the state court case pending in Los Angeles Superior Court, *Michael Vanbecelaere v. YayYo, Inc., Ramy El-Batrawi, et al.*, asserts the same Section 11 claims based on the exact same conduct. Thus, this factor tends to weigh against granting class certification.

The third factor is "the desirability or undesirability of concentrating the

___

[9] *See FirstFire Global Opportunities Fund, LLC v. Westpark Capital, Inc.*, et al, No. 1:20-cv03327-LLS (SDNY); *Ivan Rung v. YayYo, Inc., Ramy El-Batrawi, et al.*, 20STCV27876 (Los Angeles Superior Court); *Michael Vanbecelaere v. YayYo, Inc., Ramy El-Batrawi, et al.*, 20STCV28066 (Los Angeles Superior Court); *Jason Hamlin v. YayYo, Inc., Ramy El-Batrawi, et al.*, 20-cv-8235 (CD Cal.); *William Koch v. YayYo, Inc., Ramy El-Batrawi, et al.*, 20-cv-8591 (CD Cal.); *Konop v. El-Batrawi*, 1:20-cv-1379 (Del.).

litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). This factor considers the desirability of concentrating the claims in a single particular forum versus "allowing the claims to be litigated separately in forums to which they would ordinarily be brought." Advisory Committee Note to 1966 Amendments, 39 F.R.D. 69, 104 (1966).

As noted, there are already identical claims pending in California state court against the same defendants. Moreover, the 1933 Act, with its grant of concurrent jurisdiction to the state courts, contemplates the potential use of separate judicial systems to adjudicate Securities Act claims (even those arising from the same IPO), signaling more tolerance for separate and scattered individual Securities Act litigation and, implicitly, less desire for concentrated, single-forum litigation. *See* 15 U.S.C. § 77v(c); *Terry v. June*, 420 F.Supp.2d 493, 498-99 (W.D. Va. 2006) (an interest in uniform results was not strong enough to impose federal common law.) Simply put, the centralized forum a class action would present does not, at least in this case, move the superiority needle.

The fourth factor is "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1193. As demonstrated above, resolving liability will require the resolution of investor-specific factual issues. Hence, the aggregation of all investor claims poses serious manageability problems and so, in the end, will not likely reduce litigation costs or promote greater efficiencies. *See id.* at 1189 (when a case devolves into individualized inquiries, "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified") (citation omitted).

Indeed, any class action here would likely devolve into a series of mini-trials on the lack-of-knowledge and reliance issues, which is a true liability issue that is not subject to the administrative techniques used by courts to identify and distribute

damages to absent class members after a liability determination has been made. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017); *see also Amchem*, 521 U.S. at 615 (class certification should not "sacrific[e] procedural fairness"). Yet, despite the major management difficulties awaiting this Court should this case proceed as a class action, lead plaintiffs do not even acknowledge them, much less offer a plan to avoid them. As with the other factors, this factor counsels against class certification. When weighing the factors together, Plaintiffs again fail to meet their burden to show the proposed classes would be superior to individual actions, and therefore class certification should be denied.

### E.    Plaintiffs' Proposed Classes Are Overbroad

The class period for Plaintiffs' proposed Exchange Act Class is also overbroad as to time. Here, Plaintiffs seek to certify a class covering *everyone* who purchased YayYo common stock from November 13, 2019 to April 28, 2020. Mot. i:5-28. Plaintiffs do not explain why the Exchange Act Class Period should extend to April 28, 2020. The most likely explanation is that April 28, 2020 is when the *FirstFire* lawsuit was filed in the Southern District of New York. *See FirstFire Global Opportunities Fund, LLC v. Westpark Capital, Inc.*, Case No. 1:20-cv-03327-LLS, Dkt. 1 (S.D.N.Y. Apr. 28, 2020). But courts do not allow securities plaintiffs to lift "allegations from other complaints" and use them to support claims for securities fraud because "allegations from other complaints are unproven and contested" and are thus insufficient. *In re Apollo Grp., Inc. Securities Litig.*, 2011 WL 5101787, at *10, n. 5.

The same logic applies here. Plaintiffs cannot transmogrify the unproven and contested allegations from a separate action, using them to artificially expand the Exchange Act Class Period. Instead, the Exchange Act Class Period should end on January 23, 2020—the day before YayYo filed its own lawsuit against Mr. El-Batrawi, as that is when corrective information regarding Mr. El-Batrawi's

involvement with YayYo entered the market.[10] Thus, in the event the Court is inclined to grant class certification, the class definition should be modified accordingly.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny lead plaintiffs' motion for class certification.

Dated:  July 19, 2021                  LARSON LLP


By:  /s/ Stephen G. Larson
_____
     Stephen G. Larson
     R.C. Harlan
     Daniel R. Lahana
Attorneys for Defendants, EvMo, Inc. (formerly known as YayYo, Inc.)


RICHARDS CARRINGTON LLC


By:  /s/ George B. Newhouse
_____
     George B. Newhouse
Attorney for Defendants, EvMo, Inc. (formerly known as YayYo, Inc.) and Ramy El-Batrawi, et al.


WESTPARK CAPITAL, INC.

By:
     /s/ Julie E. Kamps
_____
     Julie E. Kamps

Attorneys for Defendant WestPark Capital, Inc.

---

[10] There is an obvious distinction between a lawsuit filed *against* an entity and a lawsuit filed *by* an entity. YayYo's attorneys had a "nondelegable responsibility to personally validate the truth and legal reasonableness of the papers filed and to conduct a reasonable factual investigation." *In re Connetics Corp. Securities Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (internal quotation marks and citations omitted).