UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| IN RE: | ) | CASE NO: 2:20-CV-08235-SVW-AFM |
| | ) | |
| | ) | CIVIL |
| YAYYO, INC. | ) | |
| SECURITIES LITIGATION | ) | Los Angeles, California |
| | ) | |
| | ) | Wednesday, August 25, 2021 |
| | ) | |

TELEPHONIC DISCOVERY CONFERENCE [DKT.NO.129]

BEFORE THE HONORABLE ALEXANDER F. MacKINNON,
UNITED STATES MAGISTRATE JUDGE

**APPEARANCES:**          SEE PAGE 2

Court Reporter:          Recorded; AT&T Teleconference

Deputy Clerk:          Ilene Bernal

Transcriber:          Exceptional Reporting Services, Inc.
                      P.O. Box 8365
                      Corpus Christi, TX 78468
                      361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES:**


For Plaintiff:          CARA DAVID, ESQ.
                        Pomerantz, LLP
                        600 Third Avenue
                        20th Floor
                        New York, NY 10016
                        212 661-1100


For Defendant:          GEORGE B. NEWHOUSE, JR., ESQ.
                        Richards Carrington, LLC
                        545 S. Figueroa Street
                        7th Floor
                        Los Angeles, CA 90017
                        213 348-9016

                        RICHARD C. HARLAN, ESQ.
                        Larson O'Brien, LLP
                        555 South Flower Street
                        Suite 4400
                        Los Angeles, CA 90071
                        213 436-4888

                        CHAD E. WEAVER, ESQ.
                        Freeman Mathis & Gary, LLP
                        3030 Old Ranch Parkway
                        Suite 280
                        Seal Beach, CA 90740

3

**Los Angeles, California; Wednesday, August 25, 2021**

**(Telephonic appearances)**

**(Call to Order)**

**THE CLERK:**  Calling Case Number CV 20-8235-SVW-AFMx, *In Re YayYo Securities Litigation*.

Counsel, please make your appearances for the record.

Plaintiff, you may go first.

**MS. DAVID:**  Cara David from Pomerantz on behalf of Plaintiffs.

**MR. HARLAN:**  RC Harlan on behalf of EvMo, Inc., formerly known as YayYo, Inc.

**MR. NEWHOUSE:**  Good morning, Your Honor.  George Newhouse on behalf of the individual Defendants and we're the moving party.  I won't identify them all but they begin with Ramy El-Batrawi and six other people.

**MR. WEAVER:**  Good morning, Your Honor.  Chad Weaver here on behalf of Westpark.

**THE COURT:**  Okay, good morning, everybody.

We're here on this telephonic conference to address a couple discovery matters.  There was a request to have an Informal Discovery Conference today and it looked like some of the matters might have been resolved but it wasn't clear so I decided to go forward with it.

Let me first ask Mr. Newhouse, has there been an agreement on the protocol for remote depositions at this point?

4

**MR. NEWHOUSE:** No, Your Honor, other than a response that I did see from the Plaintiff to the Court. I have not heard directly from Plaintiff on that issue. I have not seen a revised or accepted copy of the protocol, and I have not heard from Plaintiff, at least, that they do not expect to conduct in-person depositions. So although I'm hopeful that the matter can be mooted by this Court's intercession, at the moment we think there is a live issue.

And then of course, secondly, we would ask the Court to weigh in on the deposition procedure issue that I think will be back before you quickly if we don't resolve it today.

**THE COURT:** Okay. So from the Plaintiff's perspective, I saw there was a communication (glitch in audio) sent an email back or something saying, Didn't you get my response to Mr. Newhouse? Do you understand there's a live issue as to what -- at least what this protocol document's going to say?

**MS. DAVID:** No. I don't believe there's a live issue at all and I'm surprised to hear Mr. Newhouse say that. I don't. I had accepted his edits. I did not send him back -- and honestly, in the rush of yesterday, I did not send him back a clean copy but I emailed him, "I will accept your edits," as I told the Court.

**THE COURT:** Well. Okay so now, Mr. Newhouse, you've heard now on this call that the Plaintiffs have accepted your

edits which would indicate to me, although you don't have something signed back from them, that there really isn't a substantive issue on that protocol to discuss at this point, at least it sounds like you've got an agreement from Plaintiff's counsel on that document.  I understand there's more things you want to talk about but you agree with what I just said, Mr. Newhouse, about given what you've just heard from Plaintiff's counsel?

**MR. NEWHOUSE:**  Yes, Your Honor.  That representation on the record is sufficient.

The related issue, however, is, do we also have an agreement, as we had before the dispute about the protocol arose, that we can proceed with the first four depositions via remote pursuant to --

**THE COURT:**  Right.

**MR. NEWHOUSE:**  -- this protocol.

**THE COURT:**  I got that.  Right.  And you also want to talk about how this procedural question in a deposition; I understand that.

**MR. NEWHOUSE:**  Correct.

**THE COURT:**  So before I ask Plaintiff's counsel about the issue of the remote depositions, let me just generally say -- because this may come up in the future -- unfortunately, we're still dealing with this pandemic and how it impacts the course of litigation.  I'll say this.  That in the past -- and

certainly last year when things were probably worse but we're still not out of the woods yet -- but last year, I was very willing to grant orders requiring depositions to be remote.  In a couple instances there were disputes about that and I went on the side of going remote for the depositions.  There's a couple of reasons for that.  One is obviously they're based upon safety and health.  As everybody knows, when you're doing depositions in person, usually it's fairly close proximity.  We don't know really who's vaccinated, who's not vaccinated.  You've got court reporters, videographers, client representatives, witnesses, lawyers, et cetera.  And you're going to be typically there for an extended period of time.  It's difficult for the examining and defending lawyers, they're probably not going to want to wear masks.  The witness is going to be on video and probably doesn't want to wear a mask.  So you've got a lot of factors to make it difficult -- perhaps more difficult, I think, than in an in-court proceeding where you've got a bigger room and people are separated and lots of other factors that can come into play.  So I've been pretty willing to go the route of remote proceedings for depositions.  You know, parties can agree to do them live -- and I'm certainly not going to say they can't do that -- but if somebody has a good reason for doing it remotely that's sort of my inclination.

                But from the Plaintiff's perspective for these first

7

four depositions that Mr. Newhouse is talking about in this case, given you now apparently have an agreement on the protocol, what's your view on remote versus live for these depositions or in person, I mean?

MS. DAVID: Your Honor, Plaintiffs have always been willing to do these depositions remotely. I indicated to Defense Counsel weeks ago that I would want this protocol that I sent over. As I indicated to the Court in my correspondence, I didn't get comments, even though I had tried to check in and get comments and was --

THE COURT: Okay we've got that now but so now you're wanting to do it -- go back to the remote?

MS. DAVID: Yes, yes, Your Honor, but I have to raise one issue.

When -- on Monday, Mr. Newhouse said to me, Well you're free to do in-person depositions, basically, that was his email. I told the court reporter that we would be in person. So when I -- when Mr. Newhouse alerted the Court last night and I emailed him back that his changes were fine but he didn't respond to me and said he just responded to the Court, I haven't -- I don't even have a court reporter set up yet but I'm willing to do them remotely. But right now, since Mr. Newhouse didn't get back to me last night -- I just heard from him less than 10 -- 20 minutes ago -- I have to set up the logistics of it but I am willing to go forward remotely.

8

THE COURT:  What's the date of the first of these depositions?

MS. DAVID:  Tomorrow.

THE COURT:  Oh, tomorrow, okay.  Well it's probably -- you probably almost do easier to get that set up than trying to getting people to wherever this location is.  I would think you're right; you're going to need to hop on that but I would believe that you probably can get that done but I understand your point.  I understand your point so --

MS. DAVID:  Yeah.

THE COURT:  I sounds like there's an agreement to do them remotely but Plaintiff's counsel has got to do some logistical maneuvering as soon as we get off this call.

MR. NEWHOUSE:  Yes, Your Honor, may -- this is George Newhouse.  May I just briefly be heard on that?  So --

THE COURT:  Ahh, yeah.  And I don't need to know that much about the background; but yeah, go ahead; if there's something else, go ahead.

MR. NEWHOUSE:  I just want to make a point that yes, we in theory have a deposition scheduled tomorrow morning of Mr. Sithoo (phonetic).  And now as I hear Plaintiff's counsel indicate an agreement per the Court's advice, as well, that they will all be done remotely.  That can't go forward tomorrow morning at 10:00.  We don't have links, we don't have instructions.  Ironically, the protocol that Counsel prepared,

would require us 48 hours in advance to vet technological issues with the witnesses.  So the logistics at this point -- and I might add, in my email this morning to Plaintiff's counsel, I suggested in light of the fact Your Honor doesn't know this but the parties have filed a joint stipulation --

THE COURT:  I did see that.  I saw it on the docket. I did see it, yeah, this morning.

MR. NEWHOUSE:  Okay, I'm sorry, of course you did.

-- to continue the trial date which should alleviate. The bottom line is, I asked or offered to Plaintiff's counsel to reschedule all of these depositions to a time convenient for counsel.  So I would actually ask that the Court indicate that the -- at least the depositions that are on calendar for tomorrow should not go forward until such time as Counsel's able to get us the links, the technology and sufficient time so we can follow the very procedures in her protocol that she has set forth.

THE COURT:  So what say you, Ms. David?

MS. DAVID:  Your Honor, I have not heard -- and this is why the stipulation we have another application pending in front of Your Honor that delves more into this and I won't repeat it here.  But this stipulation was just filed with the Court last night.  I don't think we know what continuance we will get, if any.  If we knew that, I would be happy to push the depositions.  I don't think I can push the depositions

right now because as with everything in this case, right now we have a trial going forward on October 5th.  And I don't know if Your Honor has any insight into what Judge Wilson will do.  If you do, please share it with us.  I would be happy.  If there was any sort of court extension, I would be happy to move the depositions from tomorrow.  I believe Plaintiffs are going into them at a severe disadvantage, as I have expressed to you in my court papers.

**THE COURT:**  I don't have insight as to what Judge Wilson will do.

My view -- and I'm not issuing an order on this but I'll tell you what I think should happen is I think that if Plaintiffs can get the logistics arranged, I think you should go forward tomorrow as people have been preparing for.  Hopefully you -- you know hopefully, I'll say in the sense of from the parties perspective, that you can get scheduling relief and then maybe in the future other things can be stretched out a little bit.  But given what's occurred so far and where you stand and everybody's been moving towards this date for these first depositions, I think that this can be set up.  People don't have to go anywhere; they just get the links -- that doesn't take long and isn't hard to do.  And it might be a little bit choppy at first if you don't have as much time to do the checking and whatever but I think you'd be better to stay on course at this point until you get affirmative word

11

from Judge Wilson about what he may or may not do on your requested extension.

Let me go to the other point that I think you wanted to talk about today and particularly if the deposition is going forward.  The issue of conference between witness and counsel during examinations in a deposition.  And I received a little bit of information on that from Mr. Newhouse which I appreciate and he indicated that he would be interested to know what my view on this is.

I will say this to start.  I'm happy to say that for most of the cases where I'm involved in providing discovery rulings, we don't have disputes over deposition procedures.  I think counsel generally are aware of proper behavior during depositions.  The rules are generally pretty clear on what you can do.  There's civility guidelines from the Central District that everyone's supposed to have read and be aware of.  And I'd say the general principle is that counsel should behave themselves during a deposition just as they would in court in front of a judge.  And if they follow those guidelines, usually we don't have any problems.

This is a little bit different in the sense it's kind of a specific procedural point and I'll give you what I think about it.  And my view of it is not based upon the reading of an Eastern District of Pennsylvania case or whatever it was, a District of Nevada case, I think.  It's more based upon my

reading of rule (glitch in audio) of the Federal Rules of Civil Procedure which expresses in Rule 30(c) it expresses the principle that the examination, cross examination of a deponent should proceed as they would at trial under the Federal Rules of Evidence.

And I think taking that principle, the civil trials that I participated in as a lawyer or I've conducted as a judge, have all generally had the proposition that when a witness is under cross examination, they will not talk substantive -- talk about substantive issues of their testimony which their counsel during that examination until the cross examination is completed, for obvious reasons, why that rule has been imposed in civil trials. I don't know what Judge Wilson's view of it is but I know that's the general rule that I've seen applied and have applied in civil trials. So if we're going to conduct examinations in depositions, in a similar fashion as we would at trial, then when the deponent is being examined -- and usually it is on cross examination initially -- the deponent shouldn't be talking with their counsel on breaks about substantive issues in the deposition. And when cross examination is over they certainly can do that but not during cross examination.

This is a general rule and there are probably exceptions to it, depending on what occurs during the exigencies of a deposition, but I think that's the appropriate

general rule to follow.  And if a witness does talk or a deponent does talk to his lawyer about substantive issues during a break or at lunch or something, I think the other side has a right to know what that discussion was about.  And you know, somebody could say well that's a waiver of attorney-client privilege, on the other hand I think one can argue, no, it's a preservation of -- it's a way to preserve the rule that there won't be communications with the witness substantively while cross examination is pending.  So that's my general approach to it.  I don't know whether I've had to actually issue a ruling on that in any case; and quite frankly, most parties have never even asked about it but that's how I have looked at this situation.

So as I said, this is a general principle.  If someone were to come to me with an allegation or a contention that someone violated the rule or acted improperly, I'd have to see what the situation was in that particular deposition, what the supposed communication was about, why it took place, et cetera.  So I can't say that this is a rule or an order that I'm issuing but the question was raised, how do I look at it, and that's how I look at the situation.

So Mr. Newhouse, I know you had cited cases and had a view of it so I'll let you respond to that if you'd like to.

**MR. NEWHOUSE:**  Thank you, Your Honor, and I appreciate the Court's expressing its viewpoint.

14

I do respectfully and I might add strongly disagree.

I would point out that there is a big difference between a deposition -- testimony during a deposition and testimony at trial, a huge difference, the most significant of which is there is no judge, or magistrate judge whoever is presiding present, to rule on objections, to allow, if there be a need, to have a conference between counsel and the witness which would be certainly the exception but to allow that upon a good showing.

In a deposition, we don't have access to a judge. And in a deposition, I believe there is a right to counsel and I believe that there -- and this has come up. I do a lot of white-collar criminal defense work, Your Honor, and this case involves allegations of securities fraud which means that -- and I'm not suggesting that any of my witnesses have actual concerns for prosecution -- but what if they -- and I actually advised my clients in preparation for the deposition which I hope is okay to do -- that if they counter a line of questioning that give rise to a concern about their potential criminal liability, that they should ask to speak with me. And I believe as counsel I would have the right, indeed the duty, to counsel that individual, even if it's now obviously not -- no one's disputing that when a question is pending, the interrogator is entitled to a response. But we're not talking about that; we're talking about a situation where the deponent

is being harassed or is asked a certain particular question that causes concern, I would ask for the ability to speak with that person, off the record, and absolutely not waiving attorney-client privilege.  So there are issues that come up, frequently in depositions in my experience -- and certainly in this district; I don't practice in Philadelphia so I don't know what the practice is there -- but it is not uncommon for the witness to ask me a question during the break and I counsel that client.  And of course I don't tell them what to say, other than the truth, but we do have attorney-client communications.

My concern over Your Honor's -- I won't call it "direction" but we appreciate your advice -- but I believe that that would infringe the right of the witness in some circumstance, maybe not in all, to have the benefit of counsel's advice.  Because as is laid out in the Eastern District opinion -- which is one reason why I respectfully in Stratosphere (phonetic), the Nineth Circuit cases that we've read -- this is not followed because it would cause me, as the attorney now, to be reluctant to have that conversation with the client on fear that there would be now, when we have aggressive counsel on the other side, that we would have a concern over waiver of attorney-client privilege or some contempt.  I mean there are lots of things could come that would inhibit and deter and impede defense counsel in doing

16

their job.

So if that were to be the ruling of the Court -- and I hear that it's not -- so I will tell the Court that it is my intension to continue the practice -- that I've done without ever having a problem in the Central District for the last 30 years -- of counseling my clients on breaks.  We have attorney-client communication.  We do not -- I do not tell them what to say but I do discuss lots of issues that is, frankly, none of the business of opposing counsel.  And --

THE COURT:  Let me ask you a question, Mr. Newhouse.

In several trials you've done -- whether it's the Central District or anywhere else, have you had judges order on cross examination that you're not to talk with the witness until they're done with cross examination?

MR. NEWHOUSE:  Yes.  Well during a trial, yes.

THE COURT:  Right, during a trial, right.

MR. NEWHOUSE:  But my point is, this is a deposition.

THE COURT:  Hold on a second; let me finish, let me finish; let me finish; let me finish.

MR. NEWHOUSE:  Sorry.

THE COURT:  So you've also, I'm sure, had situations where you've taken videotapes of depositions that were -- and you played those videotapes right in front of the jury.  That goes right into evidence in many instances, right?  Depending on who the witness is and other circumstances but you've

certainly seen situations where videotaped depositions have been played to the jury, right?

MR. NEWHOUSE: Yes, correct.

THE COURT: Okay. So those -- that testimony, from what was being shown to the jury, should be taken under the same kind of conditions or very similar conditions of the testimony of the person who is testifying live is my point. Why should there be a situation where there'd be extensively more consultation --

(Automated announcement: "George Newhouse, has left the conference")

THE COURT: I don't think it was my point that caused him to leave but --

(Chuckles heard)

MS. DAVID: I was going to say, he's protesting.

THE CLERK: I can email him the -- I'm sure he knows to call back in.

THE COURT: I'm sure he'll come back; I'm sure he'll come back.

MS. DAVID: Yes, yes, I'm sure. Technology is not always on our side, I find.

THE COURT: No, that's true, that's true. It can be a difficulty.

MS. DAVID: I'm actually the only one in my office today and I was -- because I was afraid my cell phone would

18

drop out.

**(Pause)**

**(Automated announcement: "George Newhouse, has joined the conference")**

THE COURT:  Are you back, Mr. Newhouse?

MR. NEWHOUSE:  Yes.  Your Honor, I apologize.  I apologize.  I must have dropped off but I am back in.

THE COURT:  Okay.  Sure.

So anyway, I was making the parallel between a deposition and a trial and that the rule that I'm talking about or the principle that I'm talking about is applied in trials.

Let me say this.  First of all, as I indicated, this is a general guideline, I'll say, that I believe is correct.  I don't and haven't applied it in situations where there may be potential criminal liability for a witness in a civil deposition.  I take your point that, at that intersection, there are Sixth Amendment concerns, potentially; and I don't know that there is the right to say you can't consult with a lawyer if you think the answer to your question may lead to criminal liability.  That sort of bit of an extreme situation -- I'm not saying -- I don't know whether it would or wouldn't arise here -- but that doesn't vitiate though I think the overall principle that I believe is appropriate.

What I'm trying to avoid -- and I've seen it myself, as a practitioner, where on the other side, every time a break

is taken, the witness comes back with a dramatically different version of the facts than the witness was previously testifying to, and it seemed apparent that this was happening as a result of further consultation with counsel in the middle of an examination, which I believe is incorrect.

Now, as I said in my discussions of my overall view of the problem is, there are exceptions and there are instances where I'm sure discussions are appropriate but as an overall process of how the deposition should take place, my point is that I don't believe it should have substantive consultation with counsel at every break or at most breaks to kind of update the witness or whatever else is going to happen.  And this is -- obviously this is a bilateral rule; it doesn't apply solely to, you know, Defendant's witnesses; it applies to everybody's witnesses.

So you asked for my view on it and that's my view.

I understand you don't agree with it so -- and I don't have a specific -- this isn't I'm going to issue an order on at this point but maybe either there would be some authority that would bind me that would say I can't do this but right now it would either be the Ninth Circuit or probably Judge Wilson would be the two places that would tell me that I'm wrong with that overall approach; but absent that, I think that's how I view how depositions should proceed.

**MR. NEWHOUSE:**  Your Honor, this is George Newhouse.

20

I appreciate the Court's candor and I appreciate the Court's willingness to provide us with its wisdom and its insights.  I did ask the question and the Court has answered my question.  I appreciate that.

I will note for the record, however respectfully, that I disagree.  I hope it is not elevated but at this point we hear what the Court has to say and we appreciate your guidance, as always.

THE COURT:  And just so it's clear, if something comes up in a deposition, obviously in the future, somebody -- I don't want someone to say, Okay, you know, that's a violation of Judge MacKinnon's order because this isn't an order.  I've given you my view on it.  If there is a point of contention and someone believes that the deposition behavior was inappropriate, it'll probably have to get briefed to me with arguments and case cites and the whole nine yards and we'll deal with it at that point when it's presented to me.  But I've given you my advanced view on it, so hopefully people can use that in guiding their behavior.

MR. NEWHOUSE:  Understood, Your Honor, thank you.

THE COURT:  Okay.  Anything else, Mr. Newhouse, you want to discuss at this time with the Court?

MR. NEWHOUSE:  No, Your Honor, I appreciate your time and your courtesy as always.

THE COURT:  Okay.  Mr. Harlan, anything?

21

**MR. HARLAN:**  Not at this time, Your Honor.

**THE COURT:**  Okay, I'm sorry; I didn't get the name of the other defense counsel.  But for the other Defendant who's appeared, anything else from you?

**MR. WEAVER:**  Chad Weaver here, nothing, thanks, Your Honor.

**THE COURT:**  Okay, thanks, Mr. Weaver.

And for the Plaintiffs, anything at this point?

**MS. DAVID:**  No, Your Honor, thank you for your guidance.

**THE COURT:**  Okay.  Appreciate it.  Good luck, thank you.

**(Proceeding adjourned)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    September 3, 2021

TONI HUDSON, TRANSCRIBER

EXCEPTIONAL REPORTING SERVICES, INC