**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
Cara David (admitted *pro hac vice*)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com
cdavid@pomlaw.com

*Lead Counsel for Plaintiffs*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| | Case No. 2:20-cv-08235-SVW-AFM |
| **IN RE YAYYO, INC. SECURITIES LITIGATION** | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL** |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 1

II.    BACKGROUND ................................................................. 3

III.   DOCUMENTS OUTSIDE THE 2019-2020 TIME PERIOD ...................... 5

       A.    Misrepresentations Regarding Anthony Davis: .................................. 8

       B.    Misrepresentations Regarding Defendant Ramy El-Batrawi:............. 8

       C.    Misrepresentations Regarding Debts Owed (In Addition to Davis):.. 9

IV.    A SUITABLE PRIVILEGE LOG ................................................ 11

       A.    Particular Reason for Concern on Defendant's Privilege Calls ........ 12

V.     CONCERNS ABOUT SPOILATION ........................................... 15

VI.    CONCLUSION................................................................. 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Auersperg ex rel. von Bulow v. von Bulow*,
811 F.2d 136 (2d Cir.1987), *cert. denied sub nom. Reynolds v. von Bulow*, 481
U.S. 1015 (1987)........................................................................................................12

*Bernal v. All Am. Inv. Realty, Inc.*,
479 F. Supp. 2d 1291 (S.D. Fla. 2007) ....................................................................17

*Branhaven, LLC v. BeefTek, Inc.*,
288 F.R.D. 386 (D. Md. 2013)..................................................................................17

*Epic Games, Inc. v. Apple, Inc.*,
Case No. 20-cv-05640-YGR (TSH), ECF No. 512 (N.D. Cal. Apr. 28, 2021) .......14

*Garner v. Wolfinbarger*,
430 F.2d 1093 (5th Cir. 1970), *cert. denied sub nom. Garner v. First Am. Life
Ins. Co.*, 401 U.S. 974 (1971) ..................................................................................14

*Kennis v. Metro. W. Asset Mgmt., LLC*,
No. 15-CV-8162-GW, 2018 WL 5274586 (C.D. Cal. May 17, 2018) .....................14

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
No. 94-CV-5587, 2003 WL 41996 (S.D.N.Y. Jan. 6, 2003) ....................................14

*United States v. Sanmina Corp.*,
968 F.3d 1107 (9th Cir. 2020) ..................................................................................14

**Rules**

Fed. R. Civ. P. 34(b)(2)..................................................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. <u>INTRODUCTION</u>

Lead Plaintiff Bernard Bednarz and Plaintiff William Koch (collectively "Plaintiffs") submit this brief in response to the Court's September 9, 2021 order. (ECF No. 144.)  It is unfortunate Plaintiffs have to come to the Court yet again with the same story, but unfortunately Defendants have never changed their stripes.  Defendants did not take the October 5 trial date seriously.  And they have are not even complying with the new, more generous dates.  Plaintiffs have spent considerable time and expense dealing with Defendants' deficiency.  All the while conducting depositions and dutifully following the Court ordered deadlines.

On September 13, 2021, Defendant YayYo, Inc./RideShare Rental, Inc. (now known as EVmo, Inc.) ("YayYo" or the "Company") produced an unwieldly privilege log that purports to identify 7,850 "privileged communications" that the Company refuses to produce.  There were no redactions noted in the log or in the production – rather, the Company claimed full privilege over 7,850 documents.  Hundreds (and more likely thousands) of the documents were communications between the Company and third parties outside the Company who were not counsel to the Company, including emails to/from the OTC Markets Group and NASDAQ and emails to the SEC filing system.  Still more were between non-lawyers within the Company.  Plaintiffs raised this with

counsel for YayYo immediately after beginning Plaintiffs' review and are still waiting for a substantive response.

The parties also remain at an impasse regarding document production outside the 2019-2020 time period. There are also extreme concerns about spoliation associated with these productions.

YayYo, Defendant WestPark Capital, Inc. ("WestPark"), and Plaintiffs met and conferred on September 10, 2021 and September 14, 2021.[1] Plaintiffs made it clear that because of religious observance, the timing of this brief, and the end of fact discovery, Plaintiffs needed responses from YayYo on its many deficiencies by the of the day September 14, 2021. Counsel for YayYo stated he would reply at least about the privilege log by Tuesday night. There still has been no response.

Plaintiffs respectfully request the Court to compel YayYo to promptly produce a sufficient privilege log and additional, unquestionably relevant documents. (There are many other outstanding issues for which Plaintiffs await a response from Defendants, including whether they will stipulate to additional depositions and the productions of documents from third parties who are represented by defense counsel. In an effort not to burden the Court, while

---

[1] Mr. Newhouse, counsel for Defendants Ramy El-Batrawi, Jonathan Rosen, Kevin F. Pickard, Jeffrey J. Guzy, Christopher Miglino, Harbant S. Sidhu and Paul Richter (the "Individual Defendants"), did not attend either meet-and-confer. Mr. Newhouse originally stated that he was available for a conference all day on September 13, and Plaintiffs offered to be available that day. Nonetheless, Mr. Newhouse selected 10am PST on Tuesday, September 14 for the meet-and-confer. However, at 9:30am on September 14, thirty minutes before the scheduled meet-and-confer, Mr. Newhouse informed Plaintiffs' counsel that Mr. Newhouse was unavailable due to a court hearing at 10am. *Id.*

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

reserving their rights, Plaintiffs are not moving to compel on those issues at this time.)

## II.    **BACKGROUND**

Plaintiffs will not repeat in depth the facts asserted in Plaintiffs' *Ex Parte* Application to Compel Production of Documents and Information (ECF No. 105) or Plaintiffs' Request for Further Relief (ECF No. 126).  However, it should be noted, for a case that had document discovery end on September 13, Plaintiffs' multiple requests to meet and confer prior to going to the Court last week received no response.  Plaintiffs are constantly forced to go to the Court because of no meaningful responses from Defendants.[2]

On July 30, 2021, the Court issued an Order requiring substantial completion of document discovery from YayYo and the Individual Defendants – who had not yet produced a single document (when the trial was set for October 5, 2021) – by August 13, 2021.  (ECF No. 114.)

On August 13, 2021, the Company made its first document production, which comprised 30,283 documents.  There were no documents from numerous key custodians.  Plaintiffs' counsel promptly informed YayYo's counsel of these gross deficiencies.  Instead of replying to Plaintiffs on this point, YayYo waited for Plaintiffs to go to the Court and represented to the Court the production was

---

[2] Plaintiffs will not attach the many emails and letters to this application, but warrant to the Court that they have been open to meet and confers on multiple days and at multiple times, especially on the week prior to the Jewish Holiday of Rosh Hashanah (September 6 through September 8), knowing how close the document discovery deadline was after that.  Instead, Plaintiffs received a letter from YayYo on September 7, at a time YayYo knew Plaintiffs' counsel was unavailable, making unilateral decisions, and leading to the last email to the Court.

"substantially complete" for the 2019-2020 time period and that "all custodians were included in collection activities at YayYo, and if no documents were produced with those custodians identified, then that means that no such responsive non-privileged documents exist for that time period." (ECF No. 131 at 8.)[3]   The vast majority of those 30,000-plus documents came from two custodians whose production primarily consisted of irrelevant pictures of cars and emails about promotional codes, but the Company did produce 30,283 documents and claimed it was "substantially complete."

Since this "substantial completion" deadline, which YayYo stated repeatedly it adhered to, YayYo has produced 12,234 additional documents from the 2019-2020 period. Therefore, the Company has ***produced over 40% more documents since representing to the Court that its production was substantially complete***.

During a meet and confer on September 14, Company counsel informed Plaintiffs that the Company would produce a few hundred more documents later that day  (Those documents have not yet arrived.)  On September 13, alone – after four depositions had taken place – the Company produced 7,407 documents.  All of those documents arrived without custodian information, which Plaintiffs have repeatedly requested for each production.  Emails about custodian information for this production have gone unreturned.

---

[3] YayYo's filing also warranted that the Company had provided Plaintiffs with all contact information for certain third parties in its possession by the Court ordered deadline – however, the documents the Company has produced do not contain additional information.

4

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

Prior to YayYo's production of the privilege log to Plaintiffs on September 13, Plaintiffs and YayYo had a substantive meet and confer where Plaintiffs expressed concerns with YayYo's unilateral declaration (months after the format of the privilege log was agreed upon) that it would produce a categorical log. Plaintiffs agreed to a categorical log of documents with external company counsel after this litigation was filed and stated an openness for other topics to be covered in a categorical way, with approval. Defendants agreed. On September 13, 2021, Plaintiffs received a log with 7,850 entries and no categorical division.

## III.    DOCUMENTS OUTSIDE THE 2019-2020 TIME PERIOD

On August 11, 2021, the parties finally met and conferred about Defendants' Responses to Plaintiffs' First Request for Production of Documents. Plaintiffs had first requested this meet and confer on July 19, 2021. During the meet and confer, the parties went through some of the YayYo Defendants' objections. Plaintiffs were particularly concerned about the YayYo Defendants' time period objection. YayYo had objected to the defined Relevant Time Period as "overbroad as to time, and is thus burdensome, harassing, and oppressive." (The First Request for Production of Documents referred to the "Relevant Time Period" as January 1, 2016 through the date of production.) In violation of Rule 34(b)(2) of the Federal Rules of Civil Procedure, the YayYo Defendants objected to the time period but did not specify what they were withholding under that objection. (This was also covered in letters sent before the meet and confer.)

Counsel for YayYo stated that, while he believed the time period was overbroad, he was not withholding documents on the basis of that objection.

Plaintiffs have never taken the position that YayYo waived its objection to time period, but Plaintiffs have taken the position that the adjudication of this objection would have been wiser last month than it is at this late date.  That said, Plaintiffs were originally hopeful they could come to a compromise with YayYo.  YayYo had only produced documents from 2019-2020, but, on August 11, the Company expressed a willingness to send search terms for the remainder of the time period called for the First Request for Production of Documents.  YayYo told Plaintiffs that the Company would propose search terms the following week.

Weeks after the August 11 meet-and-confer, YayYo sent its proposed search terms, which Plaintiffs turned around within 24 hours. On August 24, 2021, YayYo misrepresented to the Court that the parties were "currently negotiating the proposed search terms to be used" (ECF No. 131) and "Defendants are meeting and conferring with Plaintiffs to determine if the burden of reviewing the remaining documents is proportionate to the needs of this litigation – including the potential use of search terms." (ECF No. 130.)  In fact, YayYo did not respond to Plaintiffs' emails requesting a meet and confer after August 11. Nor was there any negotiation.

Plaintiffs foresaw a negotiation on search terms, as is common in these litigations. On August 23, Plaintiffs' counsel emailed defense counsel, Plaintiffs'

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

proposed search terms stating: "I am sympathetic to the fact that some terms, because of your internal system, might produce a great number of mishits. If that is the case with any of these and you want to provide a hit count, I'm happy to meet and confer on narrowing, or just send me an email and I can send back a revision." Yet, a letter sent on September 7 – at a time defense counsel knew both that Pomerantz was closed and that the undersigned was offline in observance of a religious holiday – is the first time YayYo communicated with Plaintiffs about the proposed search terms.  The first time YayYo send a hit count to Plaintiffs was late at night on Friday, September 10.

During the meet and confer earlier on September 10, Plaintiffs raised the importance of having a custodian-by-custodian hit count.  Defendants agreed but represented yesterday they have not received it.  Plaintiffs have proposed many ways to lessen the burden – excluding certain terms that have resulted in many irrelevant documents, excluding certain custodians, etcetera – but remain at a loss without more information from Defendants.

The 2019-2020 time period that YayYo unilaterally – and improperly – decided on is improperly narrow.  Many of the main categories of misrepresentations in this case involve situations that arose prior to 2019.  A very brief description of three of those categories follows:

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

## A.    Misrepresentations Regarding Anthony Davis:

Mr. Davis was an executive of YayYo in 2016 and 2017.  He later sued YayYo alleging that he and another executive, Robert Vanech, were not correctly compensated under the relevant agreements.  He also alleged that YayYo filed incorrect documents with the SEC in 2016.  Mr. Davis has provided a production in this Action.  The documents he produced show he was in contact with Defendant Ramy El-Batrawi and former YayYo Chief Operating Officer and Chief Executive Officer Laurie Digiovanni in 2018.  Therefore, there can be no question that pre-2019 documents are relevant to Plaintiffs' claims.

## B.    Misrepresentations Regarding Defendant Ramy El-Batrawi:

This case partially involves whether YayYo generally, and Defendant El-Batrawi specifically, violated conditions NASDAQ had set for the Company's listing.  This is a Company that began meetings with NASDAQ in 2017, if not earlier.  In 2018, NASDAQ approved the Company's listing and then quickly withdrew that approval.  Again, here, there is no argument that Defendants' discussions with NASDAQ, and Defendants' internal discussions with other employees and agents of the Company  about the NASDAQ requirements in the years prior to 2019, are relevant to Plaintiffs' claims.  (The Company has also planned on relisting in 2021 and requirements of that relisting are relevant as they relate back to what was known at the time of the IPO.)

**C.    Misrepresentations Regarding Debts Owed (In Addition to Davis):**

The Complaint alleges that, while the Registration Materials claimed a primary use of funds from the IPO was to purchase vehicles, in fact the Company had incurred too many unreported debts to use the majority of funds to enhance its fleet of vehicles.[4]  Many of these debts – and agreements related to them – are through to have arisen prior to 2019.

During meet and confers, YayYo has not truly objected to documents outside of the 2019-2020 based on relevance.  It has simply raised burden concerns.  Plaintiffs are sympathetic to these concerns, and that is why Plaintiffs have never expressed any concern with using search terms for any year.  It is YayYo that chose to review the 2019-2020 time period manually without search terms or any sort of technology assisted review.  Plaintiffs said in July: "Happy to review search terms."   Plaintiffs worked out search terms with Defendant WestPark in a matter of days.  YayYo chose to manually review all documents pulled for 2019-2020, without any exclusionary terms.  The burden YayYo has occurred thus far is of its own making to a great extent.

Plaintiffs should not be punished or prejudiced for YayYo's inability to proceed with this litigation in an efficient manner.  Documents from outside 2019-2020 are unquestionably relevant.  Plaintiffs remain confident they can negotiate search terms by, among other things, using a combination of (1)

---

[4] To remind the Court, YayYo is a company that maintains a fleet of vehicles that it rents to rideshare drivers.

9

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

elimination of custodians, (2) elimination of certain mis-hit phrases, and (3) narrowing or eliminating some current search terms, but they need a partner with which to do so. Right, now, Plaintiffs have already taken four depositions in this action. Depositions for others are expected to begin in two weeks or less, and Plaintiffs (who received over 7,000 new documents just yesterday) are faced with the reality that they have no idea when many more relevant documents will even arrive, if ever.

This is a securities class action with over $12,000,000 in expected damages. The defrauded class is entitled to the documents it needs. Plaintiffs would be amenable to the Court setting a maximum limit to the responsive documents YayYo must review. But Plaintiffs seek and are entitled to certainty – a hit count with information Plaintiffs requested, broken down so that Plaintiffs can properly assess burden – and a date certain by which YayYo must produce these additional documents. Fact discovery does not end until October 11, but documents must be produced in advance of depositions. Already, Plaintiffs have found themselves in a situation where many relevant documents have been produced after the four depositions that have already taken place.[5] This puts Plaintiffs at a significant (and costly) disadvantage. Defendants already defrauded tens of thousands of individuals and entities – now they are gameplaying on production.

---

[5] Plaintiffs reserve the right to recall those deponents but are not now seeking to do so.

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

## IV.    A SUITABLE PRIVILEGE LOG

In all honesty, on September 15, 2021, days after the final privilege log should have been produced in this Action, Plaintiffs have absolutely no idea over which of the documents or information YayYo is claiming privilege.

Late on September 13, 2021, YayYo produced a privilege log of 7,850 documents, all marked "privileged communications."  There were no redactions noted in the log or in the production – rather, the Company claimed full privilege over the entirety of all 7,850 documents.  (Counsel for YayYo confirmed during the September 14 meet and confer that the Company was indeed claiming privilege over the entirety of each document and each supposed family of each affected document.  Plaintiffs believe this is not in accordance with relevant federal law, which calls for production of non-privileged aspects of communications, if such non-privileged portions exist.)  Hundreds (and more likely thousands) of the documents were communications with third parties outside the Company who were not counsel to the Company, including emails to/from the OTC Markets Group, NASDAQ, and  the SEC filing system.  Still more were communications between non-lawyers within the Company.  On the September 14 meet and confer, counsel for YayYo said the Company would produce documents that Plaintiffs' counsel gratuitously identified as clearly not privileged, such as emails sent to the SEC.  But this is not Plaintiffs' burden.  "[T]he burden is on a party claiming the protection of a privilege to establish

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

those facts that are the essential elements of the privileged relationship." *Auersperg ex rel. von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.1987), *cert. denied sub nom. Reynolds v. von Bulow*, 481 U.S. 1015 (1987) (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir.1984)). This is not one or two mistakes in a privilege log – which happens – this is a completely flawed log.  It is unclear if an attorney from defense counsel even reviewed it.  Plaintiffs' counsel did a spot check of 500 entries and found that hundreds of the logged documents were seemingly not "privileged communications," as YayYo had claimed.

On the September 14 meet and confer, Plaintiffs requested YayYo's counsel to  review the privilege log and to respond that day, given the upcoming holiday and the Court's due date for this brief.  YayYo's counsel agreed, but Plaintiffs never heard from YayYo's counsel on this matter.  Plaintiffs followed up with an email on September 14 about the importance of receiving this information that day.  To date, nothing has been received.

## A.    Particular Reason for Concern on Defendant's Privilege Calls

Thus far, Plaintiffs have taken the depositions of four of the Individual Defendants.  These depositions went forward when the trial date was set for October 5 and, therefore, they had to go forward timing-wise.  Plaintiffs have received many extremely relevant documents from third parties and from YayYo

12
MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

since these depositions, but also important is what occurred with regard to opposing counsel's privilege calls during the depositions.

George Newhouse is counsel for the Individual Defendants and therefore has defended the four depositions that have thus far taken place. (This Court may remember that prior to the depositions, Mr. Newhouse insisted on holding a court conference to seek the Court's guidance on whether discussions with his clients during breaks were privileged. The Court gave its opinion – though not an order – that they were not. However, when Plaintiffs asked about the substance of these conversations during a deposition, Mr. Newhouse objected on privilege grounds and stated: "If you want to take it up, we'll go all the way up to the Ninth Circuit on this one."[6]) Mr. Newhouse, on behalf of the Company (which he previously represented), asserted privilege and would not let the deponents testify as to what went on in any Board of Directors meeting where an attorney may have been (but may not have been) contributing to the dialogue. Plaintiffs objected at the time to this overly broad assertion of privilege. Since then, Plaintiffs have learned—from a production by non-party NASDAQ— that at least one of the relevant board meeting's minutes were disclosed to NASDAQ. Therefore, there is definitely issues of waiver. *See, e.g.*, *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116–19 (9th Cir. 2020) (finding waiver of attorney-client privilege where company disclosed memos to a third party for a purpose other than seeking legal advice).

---

[6] Due to the many other issues in this litigation, Plaintiffs reserve their rights in this regard (and believe many district courts within the Ninth Circuit, concurs with this Court's position), but are not now bringing this issue before the Court.

13

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

But, even standing alone, the assertion of such a broad version of privilege – when a deponent cannot state for certain whether an attorney was involved in a specific meeting, and when the meeting minutes do not reflect any attorney involvement – is suspect.[7]

Additionally, one deponent discussed at length letters he sent and received. Plaintiffs noted that they did not receive the letters, which the deponent said he turned over to counsel. These letters are extremely relevant to the claims in this case, as they center on Defendant El-Batrawi's involvement at the Company at a time when he was not supposed to be involved in the Company. At the end of the deposition, Mr. Newhouse stated the documents were being withheld on privilege grounds because an attorney was CCed on those communications. Copying counsel on an e-mail, without more, does not cloak the e-mail with a privilege. *See Epic Games, Inc. v. Apple, Inc.*, Case No. 20-cv-05640-YGR (TSH), ECF No. 512 at 2 (N.D. Cal. Apr. 28, 2021) (denying a clawback request when an attorney was CCed because "[t]he attorney-client privilege protects the communications between attorney and client involved in the drafting of those documents, such as emails with redlined documents reflecting legal advice or oral conversations giving legal advice. But that's it."). Given that the Company just produced over 7,000

---

[7] There is also a possibility that production would be warranted in these circumstances under an exception to privilege, including the fiduciary duty exception. *See Kennis v. Metro. W. Asset Mgmt., LLC*, No. 15-CV-8162-GW, 2018 WL 5274586, *4–*7 (C.D. Cal. May 17, 2018); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94-CV-5587, 2003 WL 41996, *4 (S.D.N.Y. Jan. 6, 2003); s*ee also Garner v. Wolfinbarger*, 430 F.2d 1093, 1102–04 (5th Cir. 1970), *cert. denied sub nom. Garner v. First Am. Life Ins. Co.*, 401 U.S. 974 (1971).

14
MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

more documents and an illogical privilege log, it is unclear if these letters have been produced or why they are privileged. Therefore, this is not an issue Plaintiffs can currently bring before the Court (though they had hoped it would be), but Plaintiffs raise it now simply to state the importance of adjudicating all privilege issues sooner rather than later.

## V.    **CONCERNS ABOUT SPOILATION**

Plaintiffs have already raised with the Court numerous times their concerns about document destruction. Plaintiffs even went so far as to file an *ex parte* application with the Court asking for a preservation order in May (ECF No. 76) after Mr. Newhouse, then sole counsel for YayYo and the Individual Defendants, would not represent that his clients were preserving documents. Since then, Plaintiffs' concerns have only been heightened:

1) Defendant El-Batrawi, who was known to text about business matters, preserved no texts according to his interrogatory responses.

2) YayYo represented that there were no relevant non-privileged documents in the 2019-2020 timeframe from the custodian files of Laurie DiGiovani (YayYo's Chief Operating Officer until recently), Boyd Bishop (the President of YayYo during the Company's delisting from NASDAQ), Anthony Davis (YayYo's former CEO), Robert Vanech (YayYo's former CFO and director), Stephen Sanchez (YayYo's current CEO) and Ryan Saathoff (YayYo's current CFO). At

least Ms. DiGiovani and Mr. Bishop had Company emails during 2019-2020 and were very involved in matters extremely relevant to this Action. In fact, one deponent testified that Mr. Bishop was hired, in part, to investigate Defendant El-Batrawi's involvement with the Company.

3) Each of the four Individual Defendants who testified (former company CFO and board member Kevin F. Pickard, former board members Jeffrey J. Guzy and Paul Richter and current board member Harbant S. Sidhu), testified that, while they could not remember an exact date, they were only told to retain documents in recent months. Not only was this action filed long before that, but these same individuals were named in a state court securities class action in July 2020. (And the Company has been subject to various securities claims since no later than April 2020.)

4) Defendant Sidhu, who is still on the YayYo board, testified that he had no relevant documents. He also testified that he had a habit of manually deleting documents.

5) Plaintiffs have yet to receive any emails from Defendant Christopher Miglino, despite being told that the Individual Defendants' production was complete. Just yesterday, after multiple correspondences about this, Mr. Newhouse represented that Mr. Miglino had provided emails.

A search is currently underway on the defense side with regard to where these emails are.[8]

Given that Defendants' production is still not complete, it is difficult to tell the level of destruction that exists. Plaintiffs have propounded interrogatories upon the Company seeking information about the retention policies that Company has in place. Plaintiffs may seek spoliation sanctions depending on the remaining production and the responses from the Company.

In addition to documents that may have been destroyed, Plaintiffs have substantial concerns about the methods of collection, and have raised these with the Company. The last production – of over 7,000 documents – has no custodian information. Well over a thousand documents have metadata that does not at all match the document: the metadata show a modified date of 2021 (which Plaintiffs assume was the collection date), but no non-corrupted date/time metadata from the actual document was produced. For example, the metadata fields from an email sent in 2019 email indicate that the email was created in 2021. There are parent emails without children. There are attachments without parent emails. Plaintiffs are awaiting from defense counsel responses to some of these concerns,

---

[8] Plaintiffs have previously written to Mr. Newhouse reminding him that attorneys have a "duty to make a reasonable investigation to assure that their clients have provided all available responsive information and documents." *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1333 (S.D. Fla. 2007). An attorney's blind reliance upon what a client provides in response to discovery requests, without undertaking a meaningful effort and due diligence review of the material and seeking out additional responsive material that a client may have overlooked, is sanctionable conduct. *See, e.g.*, *Branhaven, LLC v. BeefTek, Inc.*, 288 F.R.D. 386, 392 (D. Md. 2013) (counsel has "an affirmative duty to assure that their client responds completely and promptly to discovery requests," and counsel's nonfeasance is an egregious "abdicat[ion] of their responsibilities" sufficient to warrant sanctions).

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

but they speak to overall problems with Defendants' retention and collection of documents.

Plaintiffs believe sanctions will be necessary and reserve all rights with respect to the same.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel production of a suitable privilege log and additional documents immediately.

Dated: September 15, 2021

POMERANTZ LLP
By: /s/ Cara David
Cara David
(admitted *pro hac vice*)
600 Third Ave., 20th Fl.
New York, NY 10016
(212) 661-1100
cdavid@pomlaw.com

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Lead Counsel for Plaintiffs*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein (*pro hac vice* forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Plaintiffs*

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM

CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/  Cara David*

Cara David

MEMEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL Case No. 2:20-cv-08235-SVW-AFM