Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
R.C. Harlan (SBN 234279)
*rharlan@larsonllp.com*
Paul A. Rigali (SBN 262948)
*prigali@larsonllp.com*
Daniel R. Lahana (SBN 305664)
*dlahana@larsonllp.com*
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel.:(213) 436-4888 / Fax: (213) 623-2000

Attorneys for Defendants
EvMo, Inc. (formerly known as
YayYo, Inc.)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IN RE YAYYO INC. SECURITIES LITIGATION, | Case No. 2:20-cv-08235-SVW (AFMx) [Assigned to the Honorable Stephen V. Wilson] |
| | **DEFENDANT YAYYO INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |

DEFENDANT YAYYO INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND ......................................................................................................2

III.  ARGUMENT ...........................................................................................................4

    A.    Plaintiffs' Motion Is Procedurally Improper ............................................4

    B.    Plaintiffs Demand to Compel Another Privilege Log And Additional Documents Should Be Denied.................................................6

        1.    Plaintiffs Were Provided an Updated Privilege Log ....................6

        2.    Documents Outside The Relevant Time Period of 2019 and 2020 Are Unduly Burdensome and Not Relevant........................8

    C.    The Court Should Shift Costs Of Any Additional Document Productions To Plaintiffs ........................................................................11

IV.   CONCLUSION ......................................................................................................15

LARSON LLP
LOS ANGELES

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Cancer Soc. v. Cook*,
675 F.3d 524 (5th Cir. 2012) .................................................................................. 11

*Engstrand v. Pioneer Hi-Bred Intern., Inc.*,
946 F. Supp. 1390 (S.D. Iowa 1996), *aff'd*, 112 F.3d 513 (8th Cir. 1997) ........................................................................................................................ 11

*In re Copper Market Antitrust Litig.*
200 FRD 213 (S.D.N.Y 2001) .................................................................................. 7

*In re Grand Jury Subpoenas Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*,
265 F. Supp. 2d 321 (S.D.N.Y 2003) ....................................................................... 7

*Javo Bev. Co. v. Cal. Extraction Ventures, Inc.*,
2020 WL 2062146 (S.D. Cal. Apr. 29, 2020) ........................................................ 11

*OpenTV v. Liberate Techs.*,
219 F.R.D. 474 (N.D. Cal. 2003) ........................................................................... 12

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
305 F.R.D. 225 (S.D. Cal. 2015) ...................................................................... 11, 12

*Wiginton v. CB Richard Ellis, Inc.*,
229 F.R.D. 568 (N.D. Ill. 2004) ................................................................. 12, 14, 15

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*,
309 F. Supp. 3d 459 ................................................................................................ 14

*Zubulake v. UBS Warburg LLC*,
216 F.R.D. 280 (S.D.N.Y. 2003) (*Zubulake II*) ..................................... 12, 13, 14

**Other Authorities**

Fed. R. Civ. P.

Rule 26 .................................................................................................................... 11

Rule 34 ...................................................................................................................... 9

DEFENDANT YAYYO INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Local Rule 6.1 ............................................................................................................... 4

Local Rule 7-4 ........................................................................................................... 4, 5

DEFENDANT YAYYO INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

LARSON<sub>LLP</sub>
LOS ANGELES

## I.    **<u>INTRODUCTION</u>**

On September 20, 2021, the Court heard Plaintiffs' Motion for Class Certification.  At the hearing, the Court, *sua sponte*, requested further briefing to reconsider Defendants' Motion for Judgment on the Pleadings, and continued Plaintiffs' Motion for Class Certification to October 18, 2021.  Against that backdrop, Plaintiffs' Motion to Compel is both procedurally and substantively flawed and should be denied.[1]

First, it is procedurally improper—Plaintiffs have completely flouted the Local Rules, the Federal Rules of Civil Procedure, and this Court's procedures.  Worse yet, the relief Plaintiffs seek is intentionally vague, allowing them to tailor their request based on YayYo's opposition.  And Plaintiffs' vagueness also seeps into the substance of their claims.  YayYo attempted, in good faith to resolve the privilege log disputes, and it produced additional documents and an updated privilege log.  Yet Plaintiffs still moved to compel and created a moving target ambiguously claiming the entire log was "flawed," without any further explanation.

The documents requests Plaintiffs seek to compel should similarly be rejected for a number of reasons, including because Plaintiffs fail to specify which requests they seek to compel.  Moreover, the operative complaint alleges misconduct arising from YayYo's 2019 IPO and actions in 2020 that led to its delisting.  Despite this, Plaintiffs now want to more than double the scope of discovery by asking for

---

[1] YayYo sincerely apologizes for filing this Opposition on September 21, 2021 instead of September 20, 2021.  Defense counsel's office interpreted the Court's order to require an Opposition within five days from the September 17, 2021 deadline for Plaintiffs' Motion—which was calendared as September 22, 2021 before receiving Plaintiffs' brief on September 15, 2021—two days earlier than the anticipated deadline.  Unfortunately, Defense counsel did not update the previously-calendared deadline to reflect Plaintiffs' early-filed brief.  We ask that the Court consider Defendants' Opposition as timely-filed, and allow Plaintiffs to file a new Reply brief to respond to Defendants' Opposition.  *See* Harlan Decl., ¶ 8.

irrelevant documents that predate the core allegations in their pleading.  To allow Plaintiffs' proposed expansion of the scope of discovery would impose an undue burden on YayYo and will significantly and unnecessarily drive up YayYo's costs, which is especially problematic given that the Court has expressed its own interest to reconsider Defendants' Motion for Judgment on the Pleadings.  Accordingly, Plaintiffs' Motion to Compel should be denied in its entirety.[2]

## II.    BACKGROUND

YayYo is a startup company that connects individuals looking to drive on rideshare applications (i.e. Lyft and Uber) and rental vehicles. Plaintiff's allegations arise from actions in 2019 and 2020—when YayYo issued its IPO and delisted from NASDAQ.  Amended Comp. ¶ 67;  ["The Company's stock began trading publicly on November 13, 2019…"]; *Id*. at ¶ 81 ["[O]n February 10, 2020, YayYo issued a press release entitled "YayYo, Inc. Announces Intention to Voluntarily Delist Its Common Stock From the NASDAQ Capital Market Effective February 20, 2020."]

Plaintiffs' broad discovery requests sought documents from 2016 to the present.  YayYo timely objected to the timeframe of Plaintiffs' requests – as documents outside 2019 and 2020 clearly had limited, if any, relevance as the crux of Plaintiffs' allegations arise from the 2019 IPO and the 2020 delisting.

YayYo compiled and provided its counsel approximately 230,000 documents (originally estimated to be 300,000), which needed to be reviewed for responsiveness and privilege prior to production to Plaintiffs.  Approximately 80,000 of those documents were from 2019 and 2020.  Managing and reviewing such a voluminous amount of documents took significant time and resources.  At one point YayYo had 22 attorneys and paralegals reviewing documents around the

---

[2] To the extent the Court is inclined to grant any additional discovery beyond the relevant 2019 and 2020 time periods, YayYo requests that the cost of such discovery shift to Plaintiffs' counsel, for the reasons detailed below.

clock to comply with the Court's order.  As Plaintiffs' counsel acknowledged, this was the largest document set she had worked with on a securities matter.

Plaintiffs' counsel has been consistently apprised of YayYo's discovery and review plan, including YayYo's objections to documents outside the 2019 and 2020 time period on the grounds of undue burden and relevance.  While YayYo previously stated it was amenable to using search terms to review pre-2019 documents, the combination of Plaintiffs' proposed search terms and the Court's September 1, 2021 Order made it impossible.  To begin with, the Court's September 1, 2021 Order ordered completion of document discovery by September 13, 2021, making it impossible to agree to search terms, review documents, and provide them in such a short amount of time, especially as Defendants struggled to even complete review of the 2019 and 2020 documents.  Further, Plaintiffs' proposed search terms were so broad they resulted in approximately 90,000 documents—*more* documents than reviewed during the relevant 2019 and 2020 period.  If forced to review so many documents, even though they are "culled" under Plaintiffs' extraordinarily broad search terms, it would still create a crippling undue burden.  While the scope of discovery has not been directly litigated, the Court previously denied Plaintiffs' prior *ex parte* motion to compel documents on the grounds that Defendants substantially complied with the Court's prior order and that they preserved the same objections as to time and burden that are asserted now.  [Dkt. No. 138].  Those same objections apply.

Most recently, on September 20, 2021, the Court heard Plaintiffs' Motion for Class Certification.  The Court, s*ua sponte*, requested further briefing to reconsider Defendants' Motion for Judgment on the Pleadings and deferred decision as to Plaintiffs' class certification motion until October 18, 2021.  Thus, the Court's independent inquiry as to the merits of Plaintiffs' allegations is an additional basis to deny Plaintiffs' vague demand for additional extensive discovery outside the relevant time period.

## III.    <u>ARGUMENT</u>

As explained below, the Court should deny Plaintiffs' Motion to Compel on procedural and substantive grounds.

### A.    **Plaintiffs' Motion Is Procedurally Improper**

As a threshold matter, Plaintiffs motion should be denied because it contains numerous flagrant violations of the Local Rules and this Court's procedures.

*Untimeliness.*  Starting with the Local Rules, Plaintiffs' motion violates Local Rule 6.1 because it is untimely.  Local Rule 6-1 provides that "the notice of motion shall be served not later than twenty-eight (28) days before the Motion Day designated in the notice."  Despite this unambiguous rule, Plaintiffs served their motion 14 days before the designated hearing date.  And while the Local Rules allow the Court to order a shorter time, *see id.*, this Court's September 9, 2021 Order does not relieve Plaintiffs of their obligation to comply with Local Rule 6-1.  Plaintiffs' motion should be denied for this procedural defect alone.

*Improper statement of requested relief.*  The motion's untimeliness is not its only procedural defect.  Indeed, Plaintiffs also fail to comply with Local Rule 7-4, which requires all notices of motion to "contain a concise statement of the relief or Court action the movant seeks."  Far from complying with this requirement, Plaintiffs proffer multiple statements that are fatally flawed.  First, Plaintiffs ask for an order to "compel the production of a suitable privilege log and additional documents from Defendants to Plaintiffs."  Dkt. No. 146 at 2.  This is plainly insufficient.  Not only is it impermissibly vague, Plaintiffs only raised two concerns regarding the privilege log during the meet and confer and both have been addressed by Defendants, and the Motion also does not even attempt to identify the RFPs that support the additional documents Plaintiffs seek.

Second, Plaintiffs ask for Court intervention regarding "Defendants' relevance and proportionality concerns" and "the parties' disputes over potential search terms of the disputed period."  *Id.* at 3-4.  This, too, is insufficient.  To begin

with, Plaintiffs again speak in general terms, failing to identify the RFPs that are the source of the dispute over relevance and proportionality. And as for Plaintiffs' vague request for Court intervention over search terms, Plaintiffs' notice does not identify which search terms they seek an order on. Instead, they ask for open-ended intervention, which could mean anything, and which allows them to tailor the relief they seek to Defendants' opposition. This is improper.

All in all, because neither of Plaintiffs' statements of the relief or Court action they seek complies with Local Rule 7-4, their motion should be denied on that basis as well.

***

These procedural deficiencies are each an independently sufficient basis to deny their motion. Nor can Plaintiffs benefit from the compressed briefing schedule they bring this motion under. That is because the briefing schedule is of their own making. From the moment counsel for Defendants substituted into this case, Plaintiffs have sent *seriatim* and repetitive emails, demanding near immediate responses, document productions, and privilege logs, all the while failing to give Defendants a meaningful opportunity to comply. For example, Plaintiffs' counsel sent 9 separate emails regarding discovery on Monday, September 13, and at least 10 more emails regarding the same discovery issues on Tuesday, September 14, the same day defense counsel telephonically met and conferred with Plaintiff regarding the various discovery issues. Yet despite the barrage of emails, and Defendants' representation that they were working in good faith to address Plaintiffs' issues with the privilege log and the production of documents, Plaintiffs' counsel nevertheless filed this motion to compel the very next day. What Plaintiffs' counsel's actions prove is that they are less concerned with actually addressing discovery issues, and more concerned with driving up the costs of this litigation with unnecessary motion practice and court intervention.

**B.      Plaintiffs Demand to Compel Another Privilege Log And Additional Documents Should Be Denied**

The merits of Plaintiffs' Motion is similarly flawed.  As the Court is well aware, Plaintiffs have sought Court intervention a number of times.  On August 30, 2021, this Court denied Plaintiffs' *ex parte* request to compel further documents. [Dkt. No. 138.]  Almost immediately thereafter, Plaintiffs again sought Court intervention, the Court invited briefing, but Plaintiffs declined to proceed.  [Dkt. No. 139.]  Then on September 9, 2021, Plaintiff *again* sought Court intervention, which led to the instant briefing.  YayYo believes that the September 14, 2021 meet and confer was productive as to the actual issues discussed—the main issue Plaintiffs raised with Defendants' privilege log was resolved even before the Instant motion was filed. Additionally, Plaintiffs seek to compel items that were not discussed during the meet and confer, which remain elusive and vague and create a moving target.

### 1.      Plaintiffs Were Provided an Updated Privilege Log

As discussed during the September 14, 2021 meet and confer—the day before Plaintiffs filed their Motion to Compel— Plaintiffs' counsel raised two discrete issues with the existing privilege log: emails between YayYo and NASDAQ and OTC Markets and emails with YayYo's agents and legal counsel.  Plaintiffs' counsel also vaguely referred to the log as "flawed" without further explanation.

During the meet and confer, defense counsel *agreed* that third-party NASDAQ and OTC Markets communications should be removed from the privilege log and produced.  Defense counsel reiterated this in an email to Plaintiffs' counsel before Plaintiffs' counsel the very next day and stated that Defendants were working on providing an updated log and a further production of documents.  Despite this, Plaintiffs proceeded to file their motion that afternoon.  Indeed, Defendants promptly provided those emails and an updated privilege log on September 17, 2021—the deadline this Court set for this motion.  *See* Harlan Decl. ¶ 7. In other

words, the meet and confer process worked— third-party communications with NASDAQ and OTC Markets were produced and removed from the privilege log prior to the deadline to file a motion.  Unfortunately, Plaintiffs short-circuited this process, filing their motion early despite receiving assurances that their privilege log demands would be met.

The other specific issue Plaintiffs' counsel raised during the meet and confer meeting was whether communications between "Sean Mansouri" of Gateway, a corporate public relations company, and YayYo's counsel were privileged.  Defense counsel stated that as YayYo's agent, privilege would not be broken, but he was willing to discuss the issue further with Plaintiffs' counsel after further research.  Indeed, several courts have extended the attorney-client privilege to public relations experts to counter "unbalanced and often inaccurate press reports … [that] created a clear risk that the prosecutors and regulators … would feel public pressure to bring some kind of charge." *In re Grand Jury Subpoenas Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 323, 325, 330-31 (S.D.N.Y 2003) (internal quotes omitted).  As another court has explained, attorneys' capability of performing "some of their most fundamental client functions … would be undermined seriously if" they were unable to have "frank discussions of facts and strategies" with public relations experts.  *In re Copper Market Antitrust Litig.* 200 FRD 213, 215-16, 219-20 (S.D.N.Y 2001) (upholding privilege for communications with public relations firm as functional equivalent of company's employee).  Here, YayYo hired Mansouri to help with public relations and to the extent he sought legal advice from YayYo's counsel in crafting those press releases, it would be privileged.

In all events, Defendants' counsel met and conferred in good faith, seeking to resolve any issues without Court intervention.  But the circumstances underlying Plaintiffs' motion confirms it is a *fait accompli,* with the meet and confer relegated to a mere box to check before bringing Plaintiffs' inevitable motion.  Moreover,

aside from the two above issues, Plaintiffs' counsel did not raise any other issues with the privilege log, just broadly calling it "flawed" and saying it was not her burden to name the things wrong with it.

Sensing that YayYo's agreement to modify its privilege log would moot their motion, Plaintiffs now manufacture a new purported basis for their motion through a tenuous connection between YayYo's invoking of the attorney-client privilege during depositions and its current privilege log.  At the outset, these issues were never raised during the September 14, 2021 meet and confer meeting.  Nor is it clear how there is a relation between Plaintiffs' claims of improper privilege objection during a deposition and its privilege log.  Despite acknowledging that the privilege objections during the depositions are not relevant to the Motion to Compel, Plaintiffs nonetheless assert that it is "important [] what occurred with regard to opposing counsel's privilege calls during the depositions."  (Mot. 13:1-2.)  This is nothing more than a red herring; Plaintiffs' Motion to Compel as to the privilege log is flawed because YayYo resolved the issues with the third party emails, and properly stood on its privilege objection as to Sean Mansouri.  Other than those issues, Plaintiffs fail to explain – and refused to even review the log – what further issues they have with regards to privilege.

        2.     <u>Documents Outside The Relevant Time Period of 2019 and 2020 Are Unduly Burdensome and Not Relevant</u>

Next, Plaintiff vaguely requests the Court compel further production of documents outside 2019 and 2020—what Plaintiffs call "additional documents." The Court should deny Plaintiffs' Motion to Compel both due to undue burden and relevance.  To the extent the Court is inclined to permit any additional discovery outside the relevant time period, Plaintiffs' counsel should pay for it.

As explained in Defendants' previous opposition to Plaintiffs' last *ex parte* motion to compel [Dkt. No. 126], which this Court denied [Dkt. No. 138], Defendants asserted multiple objections to documents outside the 2019 and 2020

period, the two primary objections being undue burden and relevance.

First, there is a significant undue burden to Defendants if forced to review and produce documents outside 2019 and 2020. This is especially true when weighed against the minimal value such documents provide given the timing of the events that led to this litigation. Importantly, the IPO in question occurred in late 2019, and the improper conduct Plaintiffs allege, leading up to YayYo being delisted from NASDAQ in 2020, occurred in late 2019 and 2020. Despite this, Plaintiffs now demand documents going back to 2016. Requests under FRE Rule 34 are limited to matters within the permissible scope of discovery, i.e. "relevant to the claim or defense of any party."

By way of background, YayYo collected over 230,000 documents from both internal custodians as well as the Individual Defendants. Given the breadth of the collection, Defendants—relying on their undue burden and over breadth objections, as well as the allegations in the operative complaint—focused their review on documents from 2019 and 2020. Plaintiffs were told about Defendants' review process and the fact that Defendants were only reviewing documents from 2019 and 2020 when they conferred in August 2021. Plaintiffs now claim Defendants were "inefficient"—when in reality they benefited greatly from the manual review and the tens of thousands of documents in a very short time frame. Now they seek to further open the scope of discovery to other time periods, further driving up reviewing costs, which have already been significant. Specifically, in order to comply with the Court's previous orders relating to the initial document review, Defendants employed 22 attorneys and staff, and spent approximately $200,000 in August 2021 alone.

Plaintiff acknowledges that a wholesale production of documents outside the relevant time period would be an undue burden, so they propose using search terms. (Mot. 9:26-10:5.) There are two issues with Plaintiffs' proposed search terms. First, after reviewing Plaintiffs proposed search terms and applying their proposed

search terms to the total documents outside the relevant 2019 and 2020 years results in nearly 90,000 documents.  In other words, the proposed search terms remove less than 30% of the total documents and would still create an undue burden that would take months to review and produce, and cost hundreds of thousands of dollars.  Second, Defendants previously explained to Plaintiffs that if they were to use search terms, they would agree to stipulate to extend the September 13, 2021 document cutoff.  Plaintiffs never responded to this inquiry, even though it was raised twice. *See* Harlan Decl. ¶ 6.  In short, Defendants have already incurred an undue burden in reviewing and producing the relevant documents in this matter.  Requiring Defendants to take on an additional undue burden when there is little relevance would be unfair and significantly hinder Defendants.  All the while Plaintiffs' counsel seeks to have it both ways: a manual and fully comprehensive review of the documents from the relevant time period while demanding broad and excessive search terms for the irrelevant time period.  Plaintiffs' position exposes their true and improper purpose:  drive up litigation costs without regard to relevance or burden.

Plaintiffs' attempt to expand the scope of the relevant time period is meritless in any event.  This case is about alleged misrepresentations in the Registration Statement for YayYo's 2019 IPO.  Plaintiff attempts to expand the scope of discovery by claiming that since Anthony Davis alleged YayYo "filed incorrect documents with the SEC in 2016" documents from 2016 are somehow relevant – but there is no connection between aborted 2016 SEC filings and the 2019 IPO; nor are 2016 documents relevant to a 2019 IPO.  For the same reasons, any meetings with NASDAQ in 2017, when there are no allegations that such meetings were relevant, let alone determinative, for a 2019 IPO are not reasonably calculated to lead to the discovery of admissible evidence.  In short, Plaintiffs' attempts to connect the relevant time period as detailed in Plaintiffs' own complaint, 2019 and 2020, to earlier dates is without merit.  *Engstrand v. Pioneer Hi-Bred Intern., Inc.,*

946 F. Supp. 1390, 1396 (S.D. Iowa 1996), *aff'd*, 112 F.3d 513 (8th Cir. 1997) [inferences drawn as a result of speculation or conjecture is not relevant]; *Am. Cancer Soc. v. Cook*, 675 F.3d 524, 528 (5th Cir. 2012) [allegations in affidavit too conclusory and factually bare to support claims].

### C. The Court Should Shift Costs Of Any Additional Document Productions To Plaintiffs

In the three months after Plaintiffs propounded discovery, Defendants have worked at a breakneck pace to review and produce tens of thousands of documents, totaling more than 143,000 pages. *See* Harlan Decl., ¶ 4. Unsurprisingly, Defendants have done this at a great cost, spending approximately $300,000 in July, August, and September, including having at one point 22 attorneys and paralegals reviewing documents to produce to Plaintiffs. *Id.* Plaintiffs were always aware of the discovery plan and were told the date range of documents that were to be produced. Now, after all the 2019 and 2020 documents have been produced, Plaintiffs further demand the scope of discovery be expanded. That request should first be denied, but if the Court is inclined to allow further discovery, Plaintiff should bear the burden.

"[C]onsistent with Rule 26, a court may limit discovery for any one of three reasons," including as relevant here, whether "the burden or expense of the proposed discovery outweighs the likely benefit." *Javo Bev. Co. v. Cal. Extraction Ventures, Inc.*, 2020 WL 2062146, at *8 (S.D. Cal. Apr. 29, 2020) (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii). And where, as here, "the factors set forth in Rule 26(b)(2)(C) evidence cost-shifting's suitability," then the requesting party (Plaintiffs here) must bear some portion of the cost. *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. 2015); *see also Javo*, 2020 WL 2062146, at *8 (explaining that courts possess "power[] to grant protection against undue burden and expense by shifting costs of discovery to the requesting party as a condition of discovery").

In assessing whether to shift costs, courts consider seven factors:

1.    The extent to which the request is specifically tailored to discover relevant information;

2.    The availability of such information from other sources;

3.    The total cost of production, compared to the amount in controversy;

4.    The total cost of production, compared to the resources available to each party;

5.    The relative ability of each party to control costs and its incentive to do so;

6.    The importance of the issues at stake in the litigation; and

7.    The relative benefits to the parties of obtaining the information.

*OpenTV v. Liberate Techs.*, 219 F.R.D. 474, 477 (N.D. Cal. 2003) (citing *Zubulake v. UBS Warburg LLC,* 216 F.R.D. 280, 284 (S.D.N.Y. 2003) (*Zubulake II*). "[T]he list should be read in descending order of importance" with "the central question" being "how important is the sought-after evidence in comparison to the cost of production?" *Bridgepoint*, 305 F.R.D. at 242.

Here, the so-called *Zubulake* factors weigh in favor of cost shifting in the event the Court is inclined to permit additional discovery.

***Factors 1 and 2: Marginal Utility.*** The first two factors, taken together, present a "marginal utility" inquiry. *See Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 573 (N.D. Ill. 2004). These two factors are the most important, "because the more likely it is that relevant information will be discovered, the fairer it is to make the responding party pay for the information." *Id.*

Here, the marginal utility factors weigh in favor of cost-shifting. Where, as here searches "reveal[] a significant number of unresponsive documents," courts "find that the marginal utility test weighs slightly in favor of cost-shifting." *Id.* That conclusion is particularly warranted here because the information Plaintiffs seek is in fact available from other sources. For example, Plaintiffs acknowledge

their proposed search terms are broad, and they vaguely offer to further eliminate "mis-hit phrase" and "current search terms" without further expanding on such an offer. (Mot. 10:1-4).  This indicates that Plaintiffs recognize there is marginal utility in documents outside 2019 and 2020 as they are now willing to curtail their requests, albeit without much explanation.

**Factors 3-5:  The Cost Factors.**  The next three factors are the cost factors, focusing on the cost of production compared to the amount in controversy and available resources, as well as the parties' relative abilities and incentives to control costs.  All three of the cost factors weigh in favor of shifting costs.

Starting with the third factor, which compares the cost of production to the amount in controversy, here, the cost of production would be immense, totaling more than $200,000 when considering the results of Plaintiffs' proposed search list. *See* Harlan Decl., ¶ 5.  This number is calculated because it cost Defendants approximately $200,000 to review approximately 80,000 documents from the relevant 2019 and 2020 time period.  *Id.*  Plaintiffs' proposed search terms also result in approximately 90,000 additional documents, which would need to be reviewed, and would easily cost more than $200,000.  *Id.*  Also, when weighed against the amount in controversy, which may realistically be nothing given Judge Wilson's *sua sponte* request to further brief reconsideration of Defendants' Judgment on the Pleadings—an additional basis to reject Plaintiffs' demand to broadly expand the scope of discovery.  Moreover, no decision has been rendered on Plaintiffs' class certification motion, meaning at this juncture, there exists just two individual plaintiffs whose potential recovery does not support the costs of discovery.  This factor weighs in Defendants' favor.  *See Zubulake II*, 216 F.R.D. at 288.

Similarly, the fourth factor—cost of production vs. party resources—weighs in Defendants' favor.  While ordinarily this factor can weigh against cost-shifting, *see Wiginton*, 229 F.R.D. at 575-76, this case is an anomaly because YayYo's

LARSON LLP
LOS ANGELES

13

DEFENDANT YAYYO INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

precarious financial condition means Plaintiffs are not at a serious financial advantage because their counsel has been willing to front significant expenses to obtain a recovery.  To the extent Plaintiffs' counsel believes documents outside the 2019 and 2020 period are so crucial, it should pay for the review.  *See Zubulake II*, 216 F.R.D. at 288.  YayYo does not have significant financial resources, it is a startup company, with very few employees.  It cannot sustain protracted and extensive litigation, including document review.

The fifth factor—and final cost factor—is the relative ability and incentive for each party to control costs.  And like the other cost factors, this factor weighs in favor of shifting costs.  *Wiginton* is instructive here.  As that court noted, the "costs of the search … are driven to some extent by the scope of the search as selected by Plaintiffs."  *Wiginton*, 229 F.R.D. at 576.  Here, Plaintiffs have consistently pushed back on Defendants' attempts to limit the scope of the search, which "would result in less hits, and less documents that must be transferred to an electronic viewer."  *Id.* Ultimately, the *Wiginton* court explained that "Plaintiffs' search must necessarily be broad, due to the nature of the information for which they are searching."  *Id.*  So too here.  Plaintiffs' proposed search terms are also so broad they are ineffective— applying them amounts to 90,000 documents that need to be reviewed.

***Factors 6 and 7:  Remaining Factors.***  As noted, the remaining factors are the least important.  The sixth factor—the importance of the issues at stake in the litigation—is neutral as to cost-shifting because this is a securities litigation class action, and not a toxic tort class action.  *See Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 309 F. Supp. 3d 459, 466 (distinguishing between types of cases with "the potential for broad public impact" and finding that case involving "alleged manipulation of the securities market" was neutral as to cost shifting).  The seventh and final factor—the relative benefits to the parties of obtaining the information—is "the least important because in discovery the requested information is more likely to benefit the requesting party."  *Wiginton*, 229 F.R.D. at 577.

LARSON LLP
LOS ANGELES

14

In the event this Court is inclined to order Defendants to produce additional documents, it should order that any subsequent productions made by Defendants be done at Plaintiffs' cost.[3]

## IV.    CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel.  In the event the Court is inclined to open the scope of discovery outside the relevant time periods, the costs should shift to Plaintiffs' counsel.

Dated: September 21, 2021          LARSON LLP


                                   By:  /s/ R.C. Harlan
                                        Stephen G. Larson
                                        R.C. Harlan
                                        Daniel R. Lahana
                                   Attorneys for Defendants
                                   EvMo, Inc. (formerly known as YayYo, Inc.)

---

[3] To the extent the Court is inclined to grant Plaintiffs' Motion without shifting costs to Plaintiffs, YayYo requests that the Court allow YayYo to move to shift-costs to Plaintiffs after YayYo determines the cost of such a production.