**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
Cara David (admitted *pro hac vice*)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com
cdavid@pomlaw.com

*Lead Counsel for Plaintiffs*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE YAYYO, INC. SECURITIES LITIGATION** | Case No. 2:20-cv-08235-SVW-AFM<br><br>**PLAINTIFFS' SECOND REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL** |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND .................................................................................. 1

III.    DOCUMENTS OUTSIDE THE 2019-2020 TIME PERIOD ARE
        CLEARLY RELEVANT AND NO COSTS FOR DEFENDANTS'
        REVIEW OF THESE MATERIALS SHOULD BE SHIFTED ................. 5

        A.      Documents Outside of 2019-2020 Are Clearly Relevant ................... 5

        B.      YayYo's Claims of Burden Are Overstated....................................... 6

        C.      Cost-Shifting Is Inappropriate ........................................................ 7

IV.     THE COURT MUST COMPEL YAYYO TO PROVIDE A MORE
        SUFFICIENT PRIVILEGE LOG IMMEDIATELY AND PRODUCE
        ALL DOCUMENTS NOT OBVIOUSLY PRIVILEGED ......................... 9

        A.      YayYo Misstates the Discussions on the September 14 Meet and
                Confer Over the Privilege Asserted During Depositions.................. 19

V.      CONCLUSION .................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almont Ambulatory Surgery Ctr. LLC v UnitedHealth Group, Inc.*,
   2018 U.S. Dist. LEXIS 228010 (C.D. Cal Apr. 25, 2018) ..................................8

*Am. Cancer Soc. v. Cook*,
   675 F.3d 524 (5th Cir. 2012) .....................................................................5

*Burlington N. & Santa Fe Ry. v. U.S. Dist. Court for the Dist. of Mont.*,
   408 F.3d 1142 (9th Cir. 2005) ...................................................................9

*Clarke v. Am. Commerce Nat'l Bank*,
   974 F.2d 127 (9th Cir. 1992) ...................................................................16

*Engstrand v. Pioneer Hi-Bred Intern., Inc.*,
   946 F. Supp. 1390 (S.D. Iowa 1996) ..........................................................5

*Friends of Hope Valley v. Frederick Co.*,
   268 F.R.D. 643 (E.D. Cal. 2010) ........................................................16, 17

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992) .................................................................17

*In re Syncor ERISA Litig.*,
   229 F.R.D. 636 (C.D. Cal. 2005) ........................................................16, 17

*La Verne Firefighters Ass'n, Loc. 3624 v. City of La Verne*,
   No. CV1708743GWAFMX, 2018 WL 6131196 (C.D. Cal. Sept. 5, 2018) ....................................................................................................18

*Lights Out Holdings, LLC v. Nike, Inc.*,
   No. 14-CV-872 JAH (NLS), 2015 WL 11254687 (S.D. Cal. May 28, 2015) ....................................................................................................11

*Morgan Hill Concerned Parents Association, v. California Department of Education*,
   No. 2:11-CV-03471-KJM-AC, 2017 WL 4154927 (E.D. Cal. Sept. 19, 2017) ....................................................................................................18

*Opentv v. Liberate Techs.*,
   219 F.R.D. 474 (N.D. Cal. 2003)....................................................................7, 8

*Zubulake v. UBS Warburg LLC, et al*,
   216 F.R.D. 280 (S.D.N.Y.2003) .........................................................................7

**Rules**

Fed. R. Civ. P. 26(b)(5).....................................................................................16

Fed. R. Civ. P. 34(b)(2).......................................................................................3

SECOND MEMEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
Case No. 2:20-cv-08235-SVW-AFM

## I.   **<u>INTRODUCTION</u>**

Lead Plaintiff Bernard Bednarz and Plaintiff William Koch (collectively "Plaintiffs") respectfully submit this brief in further support of their Motion to Compel.  (ECF No. 146, the "Motion to Compel."[1])  YayYo's Opposition is filled with downright falsehoods and misrepresentations.

Plaintiffs wish YayYo would communicate with them and participate in cooperative discovery.  But, instead, YayYo hides behind a clearly insufficient privilege log – with thousands of entries where the privilege is not identifiable – and cries of burden.  YayYo defrauded tens of thousands of investors and now makes a mockery of its discovery obligations.  As detailed in Plaintiffs' prior papers, the Court must intervene.  Plaintiffs request a suitable privilege log and review of likely relevant documents.  These are basic items, required by the necessities of securities litigation, but YayYo argues it has done enough.  It has not.

## II.   **<u>BACKGROUND</u>**

While Plaintiffs are loath to burden the Court with additional background on a reply, YayYo's "Background" section is so misleading it warrants response.  (Opposition at 2-3.)  Defendants[2] have never "consistently apprised" Plaintiffs' counsel of anything.  Indeed, countless inquiries have gone totally unanswered.

---

[1] Plaintiffs are also relying on Plaintiffs' Reply Memorandum of Law in Further Support of the Motion to Compel (ECF No. 14) and the Declaration of Cara David in Further Support of Plaintiffs' Motion to Compel (ECF No 151, the "David Decl.").  YayYo's Opposition to Plaintiffs' Motion to Compel (ECF No. 150) is referred to as the "Opposition."

[2] The term "Defendants" includes YayYo and the Individual Defendants – and the Log includes Individual Defendant documents – however YayYo's counsel is the only counsel that has spoken

1

As the most recent example, YayYo is planning to depose Plaintiff Koch on Tuesday, September 28. That deposition was officially noticed Wednesday, September 22. As soon as the notice arrived, Plaintiffs' counsel emailed to ask if the deposition could start earlier. No response. Plaintiffs' counsel followed up the following day. No response. There still has been no response on this matter and the deposition is scheduled for three days from now. This is what Defendants do – they fail to respond to anything and then they complain about the amount of emails they receive and the amount of court intervention sought. (David Decl. at ¶¶ 3-6.)[3]

More substantively, Plaintiffs' counsel had no idea Defendants were not producing documents outside the 2019-2020 time period until Defendants finally made a production, as prior emails submitted to this Court has made clear. (*See, e.g.*, ECF No. 137-1 at 6.) On August 11, 2021, the parties finally met and conferred about Defendants' Responses to Plaintiffs' First Request for Production of Documents.[4] Plaintiffs had first requested this meet and confer on July 19, 2021.

to Plaintiffs on the issues relevant to the Motion to Compel. Individual Defendant counsel attended neither September meet and confer.

[3] Plaintiffs continue to not hear from Defendants on several other issues, including (i) when Plaintiffs can expect a production of documents from certain third parties represented by defense counsel; (ii) the full deposition schedule; and (iii) why Plaintiffs have no emails from Defendant Christopher Miglino, despite being told that Defendant Miglino (scheduled to be deposed the first week of October) did turn over emails to counsel.

[4] It was this meet and confer that led to Defendants' favorite quote: "Plaintiffs' counsel acknowledge, this was the largest document set she had worked with on a securities matter." (Opposition at 3.) Defendants have used some version of that quote many times, despite the objection of Plaintiffs' counsel. (And it has changed from "one of the largest" in prior filings to "the largest" in this filing, but that is the least of its issues.) YayYo neglects to tell the Court that the quote was delivered shortly after YayYo sent a letter stating they were "process[ing] approximately 300,000 documents" and implying, at a meet and confer, a review of them. That

2

During the meet and confer, the parties went through some of Defendants' objections. In violation of Fed. R. Civ. P. 34(b)(2), Defendants had objected to the time period but had not specified what was being withheld based on that objection. On the August 11 meet and confer, counsel for YayYo stated that, while he believed the time period was overbroad, he was not withholding documents on the basis of that objection.

YayYo claims that "after all the 2019 and 2020 documents have been produced, Plaintiffs further demand the scope of discovery be expanded." (Opposition at 11.) Plaintiffs issued Requests for Production calling for documents to be produced from a broader time period and have consistently raised that with YayYo. This is not something that arose "after all the 2019 and 2020 documents have been produced" (a production which was "complete" over a week after the Court-ordered deadline). Indeed, YayYo itself suggested custodians that did not have Company email addresses during the 2019-2020 time period (and seemingly did not seek out their non-Company email documents from the 2019-2020 time period), making the falsity of this statement clear.

---

number then mysteriously changed to "more than 230,000" to "well over 200,000" to now "approximately 230,000." Regardless, whatever that amount is, it is irrelevant because YayYo has no intention of reviewing that many documents. They reviewed approximately 80,000, far from a sizable total amount in a securities litigation. Additionally, that quote was also made before counsel had seen YayYo's first production, the majority of which was irrelevant photos of cars, car insurance information, driver promotional rewards, etcetera, all of which require very little review. Therefore, Plaintiffs assessment of the burden assumed by YayYo has changed since the August 11 meet and confer.

3

SECOND MEMEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
Case No. 2:20-cv-08235-SVW-AFM

Furthermore, part of the reason YayYo spent the amount of money and time they did reviewing documents was because of its flawed process. YayYo suggested the custodians who provided by far the most documents – one of which Plaintiffs had never heard of and seems to have no documents truly relevant to the case. Additionally, YayYo did not apply search terms, as is typical in this scale of litigation. That was YayYo's choice. It is disingenuous to incur costs because of your own bad decisions and then come to the Court and blame someone else, which is exactly what YayYo is doing in its Opposition.

Plaintiffs have tried to reach out to Defendants and narrow the issues before this Court. Plaintiffs seek broad relief – a statement of which is in both the Notice of Motion and Memorandum of Law – because Defendants will not come to the table in a way that narrows the relief sought. (David Decl. at ¶¶ 8-26, ECF 151-1 at 1.) Plaintiffs have already been through four depositions during which they were missing many relevant documents – including (i) documents YayYo simply had not produced yet because the Company has produced approximately 45% more documents from just the 2019-2020 time period since assuring the Court its production was substantially complete and (ii) documents improperly withheld on the basis of non-existent privilege. Now Plaintiffs are days away from another

round of depositions without information they need in order to properly conduct the depositions.  Plaintiffs need the Court to step in swiftly.[5]

## III.  DOCUMENTS OUTSIDE THE 2019-2020 TIME PERIOD ARE CLEARLY RELEVANT AND NO COSTS FOR DEFENDANTS' REVIEW OF THESE MATERIALS SHOULD BE SHIFTED

YayYo's main argument against producing documents outside the 2019-2020 time period is apparently that counsel for the Company cannot handle it.  Its only other argument is that because the IPO did not happen until 2019 nothing in prior years could possibly be relevant.[6]  Neither argument should be credited.

### A.  Documents Outside of 2019-2020 Are Clearly Relevant

YayYo argues that what happened in 2016 regarding Anthony Davis, a former YayYo executive, is irrelevant to Plaintiffs' Amended Complaint. (Opposition at 10.) This is perplexing because Davis and his 2016 compensation arrangement are specifically mentioned in the Amended Complaint and in the IPO materials.  (ECF No. 46, the "Complaint," at ¶¶ 62, 90-96, 142-143.)  Likewise, Mr. Davis produced documents showing that he was in contact with the Company

---

[5] Plaintiffs apologize to the Court for setting a motion date in violation of Local Rule 6.1. Plaintiffs chose an accelerated motion date because of the Court's briefing schedule and the necessity of quick action given that the parties are already beyond the Court ordered deadline for document discovery and are quickly approaching the end of fact discovery, October 11, 2021. Plaintiffs respectfully request the Court forgive this minor error, which does not impact the substance of the Motion to Compel.

[6] YayYo cites two cases that have absolutely nothing to do with the instant situation, nor can Plaintiffs even see why they are cited.  *See* Opposition at 10-11; *Engstrand v. Pioneer Hi-Bred Intern., Inc.*, 946 F. Supp. 1390, 1396 (S.D. Iowa 1996) (standing for the proposition that speculation cannot defeat summary judgment); *Am. Cancer Soc. v. Cook*, 675 F.3d 524, 528 (5th Cir. 2012) (an affidavit alone cannot support a judgment).

5

about the issues mentioned in the Complaint in 2018.  Therefore, YayYo's Opposition on this point plainly fails.

Likewise, there is no question NASDAQ requirements are at the center of the Complaint. (Complaint at, *e.g.*, ¶¶ 55-60.)  The dialogue the Company had with NASDAQ in 2019 and 2020 – which led to the listing and delisting – built on the Company's prior dialogue with NASDAQ.  Documents produced by NASDAQ show NASDAQ previously approved the Company for listing in 2018, and then withdrew that approval before the listing became effective, after NASDAQ officials felt hoodwinked by the Company.  Why all of this occurred and how it impacted what the Company did in 2019 to assure NASDAQ it was worthy of a listing on the exchange is unquestionably relevant.

### B.    YayYo's Claims of Burden Are Overstated

Plaintiffs cannot assess the burden YayYo faces without cooperation from YayYo, cooperation that has been absent.  Over a month after Plaintiffs said they would review search terms, Plaintiffs received them on August 22, 2021.  Plaintiffs turned around revisions the following day.  As detailed in the Motion to Compel at 6-7, Plaintiffs anticipated negotiation over those search terms and asked for a hit count.  YayYo told the Court negotiations were ongoing.  (*See* ECF No. 131 the parties "[are] currently negotiating the proposed search terms to be used[.]"  In fact, no negotiations ever took place.  YayYo did not send a hit count – usually generated within hours – to Plaintiffs until late September 10 (although they generated it early

SECOND MEMEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
Case No. 2:20-cv-08235-SVW-AFM

September 3).  In other words, in a case where depositions were ongoing and fact discovery is scheduled to be complete on October 11, it took YayYo 18 days to send the hit count necessary to begin negotiations over the search terms.

Plaintiffs have suggested numerous ways to limit the burden and have heard back on absolutely none of them.  Plaintiffs have been negotiating solely against themselves.  Plaintiffs have suggested eliminating certain terms, changing certain terms, using certain terms for only certain years, using exclusionary terms to reduce mishits and eliminating certain custodians.  Plaintiffs agree the hit count generated resulted in too many documents and have reached out numerous times to come to a compromise, with no response.  To the extent the Company ever intended on complying with its discovery obligations, it has simply stopped.

This is a case where Plaintiffs are seeking to represent tens of thousands of investors who sustained over $10 million in losses because of Defendants' misrepresentations.  Plaintiffs require certain documents to adequately represent their interests and the interests of the proposes classes.  And Plaintiffs' counsel has made it clear repeatedly there is a willingness to reduce burden.  But YayYo refuses to cooperate.

### C.    Cost-Shifting Is Inappropriate

YayYo's reliance on *Opentv v. Liberate Techs.*, 219 F.R.D. 474, 476 (N.D. Cal.  2003),  and  *Zubulake  v.  UBS  Warburg  LLC,  et  al*, 216  F.R.D. 280 , 284 (S.D.N.Y.2003), is entirely misplaced.  (Opposition at 12.)  Those cases

only apply to inaccessible data, such as data that needs to be restored from backup tapes. "Shifting the cost of production from the producing party to the requesting party *should be considered only when inaccessible data is sought*." *Opentv v. Liberate Techs.*, 219 F.R.D. 474, 476 (N.D. Cal. 2003) (*citing Zubulake v. UBS Warburg LLC*, et al, 216 F.R.D. 280, 284 (S.D.N.Y. 2003) (emphasis added)).

In fact, courts in this circuit, including this Court, have consistently rejected the exact argument YayYo is making. As this Court stated:

> Counter Defendants' documents and data are available and in a format that can be reviewed; no undue burden or cost is necessary to begin review (i.e., access) of the documents or data. Instead, Counter Defendants complain about conducting a review of the available documents for responsiveness and privilege, and they argue that the costs of these review activities make the documents inaccessible and unreasonable to produce. But the case law provides that costs attributable to retrieving and reviewing accessible data and documents are generally not subject to cost shifting.

*Almont Ambulatory Surgery Ctr. LLC v UnitedHealth Group, Inc.*, 2018 U.S. Dist. LEXIS 228010, at *26 (C.D. Cal Apr. 25, 2018) (MacKinnon, J.).

YayYo has never claimed these documents are not accessible. In fact, they have never mentioned any backup systems, which Plaintiffs have inquired about (and recently served interrogatories on) given the absence of many relevant documents.

SECOND MEMEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
Case No. 2:20-cv-08235-SVW-AFM

## IV.   THE COURT MUST COMPEL YAYYO TO PROVIDE A MORE SUFFICIENT PRIVILEGE LOG IMMEDIATELY AND PRODUCE ALL DOCUMENTS NOT OBVIOUSLY PRIVILEGED

Defendants decry the requested relief for a more sufficient privilege log as "vague" but it could be no more specific because of Defendants' own failures. Plaintiffs expected this Motion to Compel to be about specific, narrow issues. (*See* the David Decl. and its exhibit.)   However, upon reviewing the log it became immediately clear that the privilege log was over-inclusive, with no way for Plaintiffs to properly assess Defendants' privilege calls.  As a matter of black letter law, a privilege log is supposed to, at least to a significant degree, "enable[] the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged[.]"  *Burlington N. & Santa Fe Ry. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142 (9th Cir. 2005).  The first thing Plaintiffs pointed out on the meet and confer, and in emails before, is that the privilege log contained hundreds (if not thousands) of entries between non-attorneys or attorneys and third parties.  Plaintiffs stated it was impossible for Plaintiffs to assess how many of these documents could possibly be a "privileged communication."  David Decl. at ¶¶ 12-18.

Specifically, Plaintiffs stated that the log contained entries (i) to/from the OTC Markets Group; (ii) to/from NASDAQ; (iii) to/from the SEC; (iv) to/from non-attorneys with the Company (such as between Company CEO Jonathan Rosen and Company President Boyd Bishop, neither of whom are attorneys); (v) to/from

non-attorneys within and outside the Company (such as an email between Boyd Bishop and Sam Tawfik, not a Company attorney, but rather founder of the company LMP Automotive Holdings, Inc.); (vi) to/from Company attorneys and third parties without any indication who those third parties were or whether their involvement would waive privilege (such as Sean Mansouri of Gateway and M2M Compliance). Plaintiffs alerted Defendants to several specific questionable entries.

During the meet and confer, YayYo's counsel did not know the role or position of any third party mentioned. David Decl. at ¶¶ 12-13. YayYo's counsel also could not explain the privilege of correspondence between Mr. Bishop and Mr. Rosen. Given the fast approaching depositions, the Court ordered deadline on the Motion to Compel, and the Jewish holidays, Plaintiffs' counsel asked YayYo's counsel to get back to her on at least some issues that night. David Decl. at ¶ 18. Three days later, Defendants produced a new log, which eliminated the entries to/from the OTC Markets and NASDAQ. All other entries discussed, including the ones to/from the SEC, remain. It is over a week later and Plaintiffs have not heard from Defendants on any of their other inquiries regarding the privilege log.

On the meet and confer call, YayYo's counsel had no idea who Sean Mansouri of Gateway was and could not explain the privilege assertions related to him. David Decl. at ¶ 12. In the Opposition, YayYo now asserts: "YayYo hired Mansouri to help with public relations and to the extent he sought legal advice from YayYo's counsel in crafting those press releases, it would be privileged."

(Opposition at 7.)  The inquiry Defendants refer to is highly fact-specific and the Opposition is the first time Plaintiffs are hearing about it.  As Judge Stormes of the Sothern District of California has stated:

> [For attorney-client privilege, the] critical question when considering whether a third party is an agent of the attorney—thus extending the privilege—is whether a communication to that party was made for a legal purpose.  If the third-party consultant is involved in the giving of legal advice, the privilege attaches, but *if the consultant is retained for nonlegal purposes, the privilege is lost*.

*Lights Out Holdings, LLC v. Nike, Inc.*, No. 14-CV-872 JAH (NLS), 2015 WL 11254687, at *3 (S.D. Cal. May 28, 2015) (internal quotations and citations omitted; emphasis added).  YayYo has not even argued that Mr. Mansouri was retained for legal purposes.  (If YayYo is attempting to assert work product privilege, or any other privilege, instead of an attorney-client privilege, it is unclear from the face of the privilege log or the Opposition.)

This is the type of discussion the parties should have been able to have on Court ordered meet and confer, but they could not, because YayYo's counsel had no idea who Mr. Mansouri was or why the Company was asserting privilege as to communications with him on them.

Plaintiffs have still not heard – nor do Defendants address – the many other issues raised on the meet and confer.  YayYo offers no reason that privilege is asserted on communications to/from the SEC; to/from non-attorneys with the Company; to/from non-attorneys within and non-attorneys outside the Company;

SECOND MEMEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
Case No. 2:20-cv-08235-SVW-AFM

and emails to/from M2M Compliance.  It is over ten days later and Plaintiffs still do not have responses about the majority of the entries they identified on the September 14, 2021 meet and confer – this with depositions starting in a matter of days.

Plaintiffs cannot discern from the face of the log what privilege would possible apply to thousands of entries.  In the last week, Plaintiffs have examined the privilege log (the "Log") provided September 17 (after Plaintiffs' initial complaints) in detail.  To highlight to the Court the importance of the withheld documents, Plaintiffs are going to focus on the Log's 2087 entries from October 1, 2019 through February 11, 2020.  This is an extremely relevant time period.  By October 1, 2019 (and, in fact, before that), Defendant Ramy El-Batrawi was supposed to have no formal or informal relationship with the Company other than holding less than 10% of the Company's shares (and even those shares were in a voting trust).  El-Batrawi's removal was necessary so that the Company could be listed on NASDAQ.  The Company was also preparing to go public, which it did on November 13, 2019.  Misrepresentations in the Registration Statement and related prospectuses associated with the IPO form the basis of Plaintiffs' claims.  Then – months later – NASDAQ became aware of El-Batrawi's continued involvement in the Company, which led to YayYo announcing on February 10, 2020 it would voluntarily delist from NASDAQ.  During this time period, three

board members were pushed out, as was Defendant Rosen.[7]  Therefore, the importance of this time period to this case and the upcoming depositions is clear.

The 2087 Log entries from October 1, 2019 through February 11, 2020 include over 400 entries which have no attorney on them whatsoever.[8]

These include the following five entries as a random sampling (the names are explained for Court purposes—these explanations do not appear in the Log):

| BegDoc | Sent On | To | From | Email Subject | Privilege Description | Privileged |
|---|---|---|---|---|---|---|
| REL00163705 | 10/1/19 | Ramy El-Batrawi | Jonathan Rosen | Fwd: YayYo Nasdaq Approval | Privileged communications | Privileged |
| REL00163829 | 10/1/19 | Ramy El-Batrawi | Jonathan Rosen | Fwd: YayYo Nasdaq Approval | Privileged communications | Privileged |
| REL00005175 | 10/29/19 | Harbant Sidhu (a non-attorney Board member) | Jonathan Rosen | Re: Board meeting this coming Wednesday, October 30 - please resend invite for Wednesday | Privileged communications | Privileged |
| REL00005290 | 11/6/2019 | Kevin Pickard; Jeffrey | Jonathan Rosen | IPO Update | Privileged communications | Privileged |

[7] YayYo's counsel previously represented to the Court that Defendant Rosen was fired, but the official filings state he resigned.

[8] Plaintiffs previously submitted the Log to the Court in the format and order in which Defendants provided it.  (ECF No. 149-1.)  In that submission, Plaintiffs highlighted rows in yellow they believed to not contain attorneys for YayYo.  Since then, Plaintiffs have realized that Dave Donohoe is an attorney, though on its Initial Disclosures the Company did not identify him as acting in that capacity.  In this subsequent review however, Plaintiffs have given Defendants the benefit of the doubt and have not included Mr. Donohoe in the "no attorney" tally.  Board member Paul Richter is an attorney, but was definitely not acting in that capacity for the Company, and therefore an email between him and Defendant Rosen would not automatically be entitled to attorney-client privilege because there is no known attorney-client relationship.  That email would be included in the "no attorney" tally.

| | | Guzy; Harbant Sidhu; Chris Miglino; Paul Richter (all Board members) | | | | |
|---|---|---|---|---|---|---|
| REL00002266 | 2/10/20 | Kevin Pickard (non-attorney CFO) | Harbant Sidhu | Re: Application for OTC | Privileged communications | Privileged |

These are documents that were withheld wholesale. And there are thousands of them (over 400 from this extremely relevant time period) that are between non-attorneys and do not possess the required information for Plaintiffs to "evaluate whether each of the withheld documents is privileged[.]" Unless the answer is simply that they are not privileged, but, Plaintiffs' counsel raised some of these exact entries of the September 14 meet and confer and yet they remained on the September 17 Log.

Additionally, during this time period, there are 500 entries that are between Company counsel and Defendant El-Batrawi. This is at a time when Defendant El-Batrawi was not an officer or director of the Company. It is unclear what privilege is possibly being asserted as to these communications. The Log just says they are "privileged communications" but communications between a Company attorney and a minority shareholder are not typically privileged and the Log contains no explanation of why these entries are purportedly privileged.

SECOND MEMEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
Case No. 2:20-cv-08235-SVW-AFM

There are also an additional approximately 160 entries that have some lawyer on them but also a third party. One of these documents is particularly striking and evidences YayYo's intention to use the Log to hide obviously discoverable information: an entry between a Company attorney and representatives of FirstFire Global Opportunities Fund, LLC ("FirstFire"). FirstFire bought shares directly in the IPO and later sued YayYo asserting YayYo had committed securities fraud, as detailed in the Complaint at ¶¶ 102-111.

One entry in the privilege log reads:

| BegDoc | Sent On | To | From | Email Subject | Privilege Description | Privileged |
|---|---|---|---|---|---|---|
| REL00166808 | 11/19/2019 | Seth Fireman of FistFire; Ramy El-Batrawi; Peter DiChiara (Mr. DiChiara served as outside Company counsel) | Nick Fireman of FirstFire | Re: Revised Agreement | Privileged communications | Privileged |

There is absolutely no explanation of what privilege exits in this communication. Surely YayYo cannot be asserting that simply because its attorney is on an email from an investor some privilege attaches. But yet, that is apparently what the Company is doing. (Plaintiffs also have many questions about supposed privilege of entries that do at least contain a single lawyer and no one present on the email that blatantly would break privilege. A document is not privileged simply

because an attorney is on the "to" or "from" list, but based on the subject header of some of these emails, Defendants may be making that overly broad assertion.)

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: . . . (i) expressly make the claim; and (ii) . . . describe the nature of the documents, communications, or other tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). *See also Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("The privilege must ordinarily be raised as to each record sought to allow the court to rule with specificity," so that "parties seeking to invoke the attorney-client privilege" must explain "how the information contained in the documents subject to" protection "fits within the privilege.") (internal quotation marks and citations omitted) (alteration adopted).

"The party asserting the privilege or protection from disclosure bears the burden of proving the applicability of the privilege or protection to a given set of documents or communications." *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 650 (E.D. Cal. 2010) (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992); *see also In re Syncor ERISA Litig.*, 229 F.R.D. 636, 644–45 (C.D. Cal. 2005) (where "it is not at all clear that the documents plaintiffs seek ever were, or are now, protected by the attorney-client privilege or work

product doctrine" because defendant "has provided insufficient evidentiary support for its contention that they are protected," the privilege is waived because "an assertion of privilege without evidence to support it will not prevail," as the "burden is on the party asserting the privilege to establish all the elements of the privilege.") (internal quotation marks and citations omitted).

Here, Defendants have not submitted "'affidavits or other competent evidence to establish sufficient facts to prove the applicability of the privilege. Conclusory or *ipse dixit* assertions are not enough.'" *Syncor*, 229 F.R.D. at 644 (quoting *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y. 1996)). This is especially so in a case such as this where over 8000 documents have been wholesale withheld on privilege grounds and thousands of those ***do not even involve a single attorney***.

Courts recognize that a party may use a privilege log to assert that certain responsive materials are privileged. *See, e.g.*, *In re Grand Jury Investigation*, 974 F.2d at 1071. In such circumstances, the privilege log must have "requisite detail" supporting the claim of privilege. *Friends of Hope Valley*, 268 F.R.D. at 650. Thus, a privilege log must "consist[] of (1) a description of responsive material withheld, (2) the identity *and position* of its author, (3) the date it was written, (4) the identity *and position* of all addresses and recipients, (5) the material's present location, (6) and *specific reasons for its being withheld, including the privilege invoked and grounds thereof*." *Id.* at 650–51 (emphases

17

added) (internal quotation marks and citations omitted). Here, Defendants have not provided this information even for the few specific entries Plaintiffs specifically inquired about on September 14.

The Log does not offer specific reasons for why these e-mails are being withheld: it characterizes each of the documents as a "privileged communication[]," or an "attachment to a privileged communication[]" but fails to detail *which* privilege purportedly applies and provides *no* explanation whatsoever of the grounds for YayYo's assertion of that privilege (or those privileges, to the extent Defendants are claiming the applicability of more than one privilege, a fact impossible to ascertain from the face of the privilege log). And Plaintiffs have been unable to even get additional information on the less than 10 entries they specifically inquired about over 10 days ago. Plaintiffs are prejudiced because they are spending unnecessary time sorting through an insufficient log, and it appears they are going into a second round of depositions without this relevant information.[9] Plaintiffs are assembling a list of all entries requiring discussion with

---

[9] The time expended reviewing and communicating about the insufficient Log and briefing the Motion to Compel – after Plaintiffs alerted Defendants to the many issues associated with their September 13 log – is worthy of a Court award of attorneys' fees. *See, e.g, Morgan Hill Concerned Parents Association, v. California Department of Education*, No. 2:11-CV-03471-KJM-AC, 2017 WL 4154927, at *4 (E.D. Cal. Sept. 19, 2017) ("Because plaintiffs' motion to compel is meritorious, an award of fees and costs is appropriate"). Because there has not been a prior court order regarding the insufficiency of the Log, Plaintiffs are not currently arguing blanket waiver on the part of Defendants. *See, e.g.*, *La Verne Firefighters Ass'n, Loc. 3624 v. City of La Verne*, No. CV1708743GWAFMX, 2018 WL 6131196, at *3 (C.D. Cal. Sept. 5, 2018) (MacKinnon, J.) ("[T]he Court finds that Thompson has waived any privilege by failing to provide an adequate privilege log that establishes that the withheld material was communicated by Thompson to his legal counsel as part of his seeking legal advice."). However, Plaintiffs reserve their rights in this regard.

Defendants (of which approximately half the Log appears), but given that it has been over 10 days without a response on less than 10 entries, Plaintiffs do not have high hopes that Defendants will act quickly with regard to a review of their own erroneous calls.  Without Court intervention, YayYo will simply do nothing with regard to its clearly overbroad privilege assertions.

### A. YayYo Misstates the Discussions on the September 14 Meet and Confer Over the Privilege Asserted During Depositions

Defendants' brief states: "Sensing that YayYo's agreement to modify its privilege log would moot their motion, Plaintiffs now manufacture a new purported basis for their motion through a tenuous connection between YayYo's invoking of the attorney-client privilege during depositions and its current privilege log.  At the outset, *these issues were never raised during the September 14, 2021 meet and confer meeting*."  (Opposition at 8 (emphasis added).)  That is false, as Defendants' own exhibits make clear.  (David Decl. at ¶¶ 19-20.)

In fact, Plaintiffs' counsel inquired about two different categories of privilege assertions made at the depositions:

*First*, Plaintiffs' counsel asked about specific documents that Defendant Paul Richter testified about during his deposition.  These were documents that Defendant Richter testified were to and from then CEO Rosen.  Counsel for Mr. Richter represented after the deposition that these documents had been withheld for privilege because counsel was CCed on them.  (Motion to Compel at 14-15.)  Plaintiffs had first sought via email to meet and confer about these documents on

August 31, 2021, the day after Mr. Richter testified about them.  That request received no response.  On September 14, 2021, counsel for YayYo could not confirm or deny whether privilege was still being asserted as to those documents.  That is how little knowledge YayYo's counsel had of the Company's own privilege log.  Plaintiffs' counsel sought to discuss waiver – if any privilege existed – but YayYo's counsel stated he would have to respond later.  That response has still not arrived.  From Plaintiffs own review of the Log it appears the relevant entries are:

| BegDoc | Sent On | To | From | Email Subject | Privilege Description | Privileged |
|---|---|---|---|---|---|---|
| REL00224774 | 12/30/19 | Kevin Pickard; Jeffrey Guzy; Harbant Sidhu; Christopher Miglino; Paul Richter | Jonathan Rosen | Letter to members of the Board | Privileged communications | Privileged |
| REL00224775 | 12/30/19 | | | | Attachment to privileged communications | Privileged |
| REL00008029 | 12/31/19 | Jonathan Rosen; Christopher Miglingo; Jeffrey Guzy; Peter DiChiara (outside counsel) | Paul Richter | NEXT CALL | Privileged communications | Privileged |
| REL00004863 | 12/31/19 | Paul Richter | Jonathan Rosen | Re: NEXT CALL | Privileged communications | Privileged |
| REL00008042 | 12/31/19 | Jonathan Rosen | Jeffrey Guzy | Re: NEXT CALL | Privileged communications | Privileged |
| REL00004866 | 12/31/19 | Jeffrey Guzy | Jonathan Rosen | Re: NEXT CALL | Privileged communications | Privileged |
| REL00004468 | 12/31/19 | Jonathan Rosen | Jeffrey Guzy | Re: NEXT CALL | Privileged communications | Privileged |

SECOND MEMEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
Case No. 2:20-cv-08235-SVW-AFM

Only REL00008029 even has an attorney on it.  The others have just been wholesale withheld for no obvious reason.

During the September 14 meet and confer, Plaintiffs also sought to discuss Defendants' assertion over privilege of Board of Director meetings simply because an attorney may have been in attendance, even though the minutes of some of those meetings were provided to NASDAQ.  *See* Motion to Compel at 12-13; ECF No. 151-1 at 3 ¶ 2.  Plaintiffs asked whether Defendants would continue this broad assertion of privilege, so that Plaintiffs could raise it with the Court.  Again, Defense counsel stated he would have to respond later.  That response never came.[10]

Counsel for YayYo is simply not cooperating in discovery.

## V.    **CONCLUSION**

For the foregoing reasons, and the reasons in the Motion to Compel, Plaintiffs respectfully request that the Court compel production of a suitable privilege log (or all the documents on the Log) and documents from outside the 2019-2020 time period to Plaintiffs immediately.

Dated: September 25, 2021

**POMERANTZ LLP**
By: */s/ Cara David*
Cara David
(admitted *pro hac vice*)
600 Third Ave., 20th Fl.

---

[10] With fact discovery over on October 11, counsel for YayYo have also not replied to Plaintiffs' request to depose YayYo CEO Stephen Sanchez. Mr. Sanchez was a member of the Board of Directors during these meetings, so the issue is sure to come up again.

21

SECOND MEMEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
Case No. 2:20-cv-08235-SVW-AFM

New York, NY 10016
(212) 661-1100
cdavid@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Lead Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein (*pro hac vice* forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Plaintiffs*

SECOND MEMEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
Case No. 2:20-cv-08235-SVW-AFM

CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/  Cara David
Cara David

23
SECOND MEMEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
Case No. 2:20-cv-08235-SVW-AFM