**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re YAYYO, INC. SECURITIES LITIGATION | ) Case No. 2:20-cv-08235-SVW-AFM<br>)<br>) <u>CLASS ACTION</u><br>)<br>) MEMORANDUM OF POINTS AND<br>) AUTHORITIES IN SUPPORT OF<br>) PLAINTIFFS' MOTION FOR FINAL<br>) APPROVAL OF SETTLEMENTS AND<br>) PLAN OF ALLOCATION<br>)<br>) |
| | DATE:      June 6, 2022<br>TIME:       1:30pm<br>CTRM:     10A<br>JUDGE:    Honorable Stephen V. Wilson |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   OVERVIEW OF THE LITIGATION ....................................................................3

III.  FINAL CERTIFICATION OF THE SETTLEMENT CLASSES .....................7

IV.   THE PROPOSED SETTLEMENTS WARRANT FINAL APPROVAL .........8

    A.   The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlements ...................................................................................11

        1.   Plaintiffs Faced the Risk of Dismissal...................................12

        2.   Damages Challenge ..................................................................13

        3.   Plaintiffs Faced Additional Risks of Continued Litigation ..........16

    B.   The Amounts Obtained in Settlements Support Final Approval ............19

    C.   The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval .................................22

    D.   The Proposed Settlements Result from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel ...........24

    E.   The Reaction of the Settlement Classes Supports Approval ..................27

    F.   The Settlements Meet the Remaining Rule 23(e)(2) Factors .................28

        1.   The Proposed Method for Distributing Relief is Effective ..........28

        2.   The Attorneys' Fees, Expenses, and Plaintiffs Awards are Appropriate ..................................................................................29

        3.   Agreements Required to be Identified under Rule 23(e)(3).........30

        4.   There is No Preferential Treatment; the Proposed Plan of Allocation Treats Settlement Class Members Equitably.................................................................................30

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

G.    The Court Should Approve the Plan of Allocation..................................32

V.  NOTICE TO THE SETTLEMENT CLASS SATISFIED
    DUE PROCESS...................................................................................................34

VI.  CONCLUSION ...................................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boyd v. Bank of Am. Corp.*,
2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ...................................................24

*Ciuffitelli v. Deloitte & Touche LLP*,
2019 WL 1441634 (D. Or. Mar. 19, 2019) .......................................................31

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) .........................................................................10

*Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*,
533 F. Supp. 3d 881 (N.D. Cal. 2020)................................................................26

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981)..................24

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ........................................................................12

*Evans v. Jeff D.*,
475 U.S. 717 (1986)............................................................................................8

*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989) ...........................................................................9

*Glass v. UBS Fin. Servs., Inc.*,
2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. Appx.
452 (9th Cir. 2009) ..........................................................................................23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..............................................................10, 19, 28

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler
v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ................................................11, 27

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

*In re Am. Apparel, Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ................................................15

*In re BankAtlantic Bancorp, Inc.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds
   sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th
   Cir. 2012) ......................................................................................................17

*In re Critical Path, Inc. Sec. Litig.*,
   2002 WL 32627559 (N.D. Cal. June 18, 2002) ...............................................22

*In re Datatec Sys., Inc. Sec. Litig.*,
   2007 WL 4225828 (D.N.J. Nov. 28, 2007) ......................................................33

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001).................................................................33

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................20

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005).................................12, 20, 24, 25

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................35

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...........................................................10, 20, 22, 28

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)..............................................9, 20, 27, 32

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) .............................................................................16

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...............................................................................25

*In re Petrobras Sec. Litig.*,
   No. 14-cv-9662, Opinion and Order (ECF No. 834, June 25, 2018) ................25

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 1991529 (N.D. Cal. June 30, 2007)...................................................24

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ....................................................35

*In re Puda Coal Sec. Inc., Litig.*,
    30 F. Supp. 3d 230 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016) .............................................................17

*In re Rambus Inc. Derivative Litig.*,
    2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ......................................................27

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) .......................................................................12

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ............................................................................9

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ...................................................22

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...............................................................32

*In re Zynga Sec. Litig*,
    2015 WL 6471171 (N.D. Cal., Oct 27, 2015) ...................................................30

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ............................................................................10

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ..........................................................................22

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) ...........................................................................................................11, 16

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
    65 F.3d 1044 (2nd Cir.1995) ............................................................................14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)................................................................19, 27

*Nobles v. MBNA Corp.*,
  2009 WL 1854965 (N.D. Cal. June 29, 2009).................................................11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ...............................................10, 19, 20

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015).............................................................................14

*Rieckborn v. Velti PLC*,
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015).........................................23

*Riker v. Gibbons*,
  2010 WL 4366012 (D. Nev. Oct. 28, 2010).........................................32

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ...........................................................17

*Roberti v. OSI Sys., Inc.*,
  2015 WL 8329916 (C.D. Cal. Dec. 8, 2015)........................................22

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...............................................9, 16, 34

*Salazar v. Midwest Servicing Grp., Inc.*,
  2018 WL 3031503 (C.D. Cal. June 4, 2018)........................................11

*Tadepalli v. Uber Techs., Inc.*,
  2016 WL 1622881 (N.D. Cal. Apr. 25, 2016).......................................22

*Tom v. Com Dev USA, LLC*,
  2017 WL 10378629 (C.D. Cal. Dec. 4, 2017).......................................10

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...............................................10, 11, 16

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .................................................................9

*Weeks v. Kellogg Co.*,
  2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ......................................13

**Statutes**

15 U.S.C. § 77k(e) ...............................................................................................................14

15 U.S.C. §78u-4(a) .......................................................................................................30, 35

The Exchange Act of 1934 ...................................................................................................13

PSLRA ............................................................................................................................12, 35

The Securities Act of 1933 ..........................................................................................7, 8, 12

**Rules**

Fed. R. Civ. P. 23.........................................................................................................*passim*

Fed. R Civ. P. 26...........................................................................................................2, 6, 24

Lead Plaintiff Bernard Bednarz and Plaintiff William Koch (collectively "Plaintiffs") submit this memorandum in support of their motion for final approval of the Settlements and Plan of Allocation.[1]

## I.    INTRODUCTION

Subject to this Court's approval, Plaintiffs and Defendants have agreed to settle all claims in the Action against Defendants, through two separate settlements, in exchange for cash payments totaling $1,700,000. Plaintiffs and Defendants EvMo, formally known as YayYo, Inc. and Rideshare Rental, Inc. ("YayYo" or the "Company"), Ramy El-Batrawi, Jonathan Rosen, Kevin Pickard, Harbant S. Sidhu, Jeffrey Guzy, Christopher Miglino, Paul Richter, and WestPark Capital, Inc. ("WestPark") (collectively "Yayo Defendants") have agreed to settle all claims in the Action against the YayYo Defendants in exchange for cash payments totaling $1,150,000 (the "YayYo Settlement"). Plaintiffs and underwriter Defendant Aegis Capital Corp. ("Aegis," together with the YayYo Defendants, the "Defendants") have agreed to settle all claims in the Action against Aegis in exchange for a cash payment of $550,000 (the "Aegis Settlement," together with the YayYo Settlement, the "Settlements"). This is a favorable result for the Settlement Classes in light of the many risks inherent in this Litigation.

---

[1] Terms not defined herein have the same meaning as in the Settlement Agreement.

- 1 -

The Settlements are the product of Lead Counsel's extensive investigation concerning the claims asserted in the Action and vigorous prosecution of the Litigation on behalf of the Settlement Classes. By the time the agreements to settle were reached, Lead Counsel had a thorough understanding of the strengths and potential weaknesses of the case, and had spent considerable time on behalf of the Company's Securities holders, including by: (i) engaging in an extensive investigation; (ii) drafting highly detailed pleadings; (iii) completing extensive briefing on the YayYo Defendants' motion for judgment on the pleadings (which the Court denied) and Aegis' motion to dismiss; (iv) moving for certification of the Classes; (v) participating in and preparing for two full day mediations overseen by a respected and experienced mediator, Michelle Yoshida of Phillips ADR Enterprises (the "Mediator"), which included the exchange of detailed mediation statements; and (v) undertaking extensive fact discovery efforts, including reviewing tens of thousands of documents, filing a Rule 26(f) discovery plan, serving Rule 26(a) disclosures, participating in meet and confers and court hearings related to discovery and conducting several depositions.

While Plaintiffs and Lead Counsel believe that Plaintiffs' claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving (and collecting upon) a greater recovery. Defendants have and will continue to contest each element of Plaintiffs' claims. Further, even if Plaintiffs could have succeeded at trial, there is a significant risk that they would not be able to collect, as

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

defense counsel indicated the Company was having trouble shouldering the costs of the Litigation.

The Settlements are fair, adequate, and reasonable under the governing standards in this Circuit. The Settlements, totaling $1,700,000, fall well within the range of settlements in comparable securities fraud cases and eliminate the significant costs and risks of continuing litigation through a decision on Aegis' motion to dismiss and Plaintiffs' motion for class certification, and if successful on those motions, through summary judgment, trial and the inevitable appeals. Additionally, as of the date of this filing, no objections to any aspect of the Settlements remain, and there has only been one exclusion request. Likewise, the proposed Plan of Allocation is eminently fair and reasonable, as they equitably allocate the Net Settlement Fund to those Settlement Class Members who submit valid claims.

For these reasons, and those set forth below, Plaintiffs respectfully submit that the Settlements and Plan of Allocation are in the best interests of the Settlement Classes and merit final approval.

## II.    OVERVIEW OF THE LITIGATION

This Litigation was commenced on September 9, 2020, Case No. 2:20-cv-08235-SVW-AFM in the Central District of California (ECF No. 1). On September 18, 2020, Plaintiff Koch filed a substantially similar action in the same court, Case No. 2:20-cv-08591-SVW-AFM (the "Koch Action"). On November 2, 2020, the Court

- 3 -

consolidated the two cases and administratively closed the Koch Action docket (ECF No. 22). On December 1, 2020, the Court appointed Bernard Bednarz as Lead Plaintiff and Pomerantz LLP as Lead Counsel (ECF No. 33).

On February 8, 2021, Plaintiffs Koch and Bednarz filed the operative Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (ECF No. 46). On March 1, 2021, WestPark filed an answer to the Amended Complaint and Aegis filed a motion to dismiss the Amended Complaint (ECF Nos. 48 and 49). On March 3, 2021, the YayYo Defendants filed an answer to the Amended Complaint (ECF No. 53). The Litigation was then temporarily stayed pending an early mediation entered into at the request of Defendants.

In April 2021, the parties engaged the services of Michelle Yoshida of Phillips ADR Enterprises, a nationally recognized mediator and mediation firm, to facilitate settlement negotiations and assist in resolving the Litigation in its entirety. *See* Declaration of Michael Grunfeld in Support of Motion for Final Approval of Proposed Class Action Settlements ("Grunfeld Decl.") at ¶6. On April 29, 2021, the parties participated in a full-day mediation with Ms. Yoshida. In advance of the mediation, the parties prepared and exchanged detailed position statements which they presented to and discussed with Ms. Yoshida. *Id.*

Despite the parties' efforts at the mediation, they did not reach an agreement to settle the Litigation, or any aspect of it, and the litigation continued. Plaintiffs opposed

- 4 -

Defendant Aegis' motion to dismiss on May 17, 2021 (ECF No. 79), and Defendant Aegis replied on May 31, 2021 (ECF No. 84). However, as the Litigation was ongoing, Aegis continued its settlement negotiations with the assistance of Ms. Yoshida, ultimately culminating in a mediator's recommendation to settle the Litigation with Aegis for $550,000.00, which Aegis accepted and resulted in a stipulation of settlement on August 27, 2021. The court orally granted preliminary approval of the Aegis Settlement, in which Plaintiffs moved for final certification of the Settlement Class, during a hearing held on September 27, 2021 (ECF No. 158).

The Litigation continued as to all other parties. On July 2, 2021, Plaintiffs filed a motion to certify the Classes (ECF No. 91). The YayYo Defendants opposed that motion on July 19, 2021 (ECF No. 100). The Court first held oral argument on that motion on September 20, 2021, which was then continued to October 19, 2021, after the Court expressed interest in hearing more on the merits of the Litigation.

While the motion for class certification was still pending, the YayYo Defendants and Plaintiffs engaged in another all-day mediation with Ms. Yoshida, on October 8, 2021. Grunfeld Decl. at ¶9. While a settlement was not reached that day, the YayYo Settlement, totaling $1,150,000 in cash payments, was reached in the days after, with the assistance of Ms. Yoshida. *Id.*

At the time the Yayo Settlement was reached, Plaintiffs and Class Counsel had, among other things: (i) engaged in extensive investigation; (ii) filed detailed complaints

- 5 -

(including the Amended Complaint); (iii) completed extensive briefing on the YayYo Defendants' motion for judgment on the pleadings (which the Court denied) and Aegis' motion to dismiss; (iv) moved for certification of the Classes; (v) participated in two full day mediations before Ms. Yoshida; and (vi) undertook extensive fact discovery efforts, including reviewing tens of thousands of documents, conducting several depositions, filing a Rule 26(f) discovery plan, serving Rule 26(a) disclosures, and participating in meet and confers and court hearings related to discovery.

The Court granted preliminary approval of the YayYo Settlement on January 13, 2022 (ECF No. 173). While Plaintiff Bednarz initially objected to the preliminary approval of the YayYo Settlement, he has since joined in moving for final approval of the Settlements and has formally withdrawn his objections. *See* Ex. 1 (Declaration of Bernard Bednarz) of Grunfeld Decl. at ¶4. To date, 7,626 copies of the Notice and Claims Forms have been mailed to potential Settlement Class Members, and a Summary Notice has been timely published transmitted over the *PR Newswire* and published in *Investor's Business Daily*. *See* Declaration of Jack Ewashko, Client Services Director of A.B. Data ("Ewashko Decl.") attached as Exhibit 2 to the Grunfeld Decl. at ¶¶8 and 9. Copies of the Long Form Notice and Proof of Claim were posted in downloadable form on a website specific to the Settlements, http://www.yayyosecuritieslitigation.com. *Id.* at ¶11. The Notice sets out that the deadline to object to any aspect of the Settlements and to request exclusion is May 13,

- 6 -

2022. To date, there are no outstanding objections and there is only one request for exclusion. This request for exclusion was received from an individual who claims he purchased shares directly from Defendants prior to the IPO. (*See infra* at Section IV(e)).

## III.   FINAL CERTIFICATION OF THE SETTLEMENT CLASSES

The Parties stipulated to the certification of the following Settlement Classes for settlement purposes only:

### Aegis Settlement Class

All persons and entities who purchased or otherwise acquired YayYo common stock pursuant or traceable to the registration statement and related prospectuses issued in connection with YayYo's November 13, 2019 IPO, and were damaged thereby. Excluded from the Class are all Defendants; the officers and directors of Defendants; members of Defendants' families and their legal representatives, heirs, successors, and assigns; and any entity in which Defendants have or had a controlling interest. In addition, any person or entity who or which submits a timely and valid request for exclusion from the Class shall also be excluded from the Class.

### YayYo Settlement Classes

The Exchange Act Class: all persons or entities who purchased or otherwise acquired YayYo common stock during the period from November 13, 2019 through and including April 28, 2020, both dates inclusive. Excluded from the Exchange Act Class are Defendants and their family members, directors and officers of YayYo, WestPark and Aegis and their families, affiliates, predecessors and/or successors.

The Securities Act Class: all persons or entities who purchased or otherwise acquired YayYo common stock pursuant and/or traceable to the registration statement and related prospectuses issued in connection with YayYo's November 13, 2019 initial public offering. Excluded from the Securities Act Class are Defendants and their family members, directors and officers of YayYo, WestPark and

- 7 -

Aegis and their families, affiliates, predecessors and/or successors.

The Securities Act Subclass: all persons or entities who were primary investors and acquired shares of YayYo's common stock pursuant to the November 13, 2019 IPO. Excluded from the Securities Act Subclass are Defendants and their family members, directors and officers of YayYo, WestPark and Aegis and their families, affiliates, predecessors and/or successors.

When moving for Preliminary approval of the Settlements, Plaintiffs' set forth the reasons why final certification of the Settlement Classes were merited under each prong of Rule 23 and moved for certification of the Settlement Classes (ECF Nos. 135 and 167). The Court granted Plaintiffs' motion for preliminary approval of the Aegis Settlement (ECF No. 158). The Court also granted Plaintiffs' motion for preliminary approval of the YayYo Settlement, other than as to several details related to the notice deadlines and procedures (ECF No. 173). As such, the Court appears to have already determined that the Settlement Classes meet the Rule 23 requirements and certified them for settlement purposes.[2]

## IV.    THE PROPOSED SETTLEMENTS WARRANT FINAL APPROVAL

It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S.

---

[2] To the extent that the Court wishes to analyze the sufficiency of the Settlement Classes further, Plaintiffs refer to the portions of their preliminary approval briefs explaining why certification of the Settlement Classes is merited under each prong of Rule 23. (ECF Nos. 135 and 167). Plaintiffs also note that there have been no objections raised as to the propriety of certifying the Settlement Classes for settlement purposes.

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (holding "the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits"). Moreover, courts should defer to "the private consensual decision of the parties" to settle and advance the "'overriding public interest in settling and quieting litigation.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (quoting *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)).

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements as follows:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> - (A)   the class representatives and class counsel have adequately represented the class;
> - (B)   the proposal was negotiated at arm's length;
> - (C)   the relief provided for the class is adequate, taking into account:
>   - (i)   the costs, risks, and delay of trial and appeal;
>   - (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   - (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   - (iv)  any agreement required to be identified under Rule 23(e)(3); and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

(D)    the proposal treats class members equitably relative to each other.

Ultimately, "[a] settlement should be approved if 'it is fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (quoting *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992)); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), as amended (June 19, 2000) (same).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors, some of which overlap with the requirements of Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant;[3] and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Justice v. Civil Serv.*

---

[3] Here, there was no government participant, so this factor is neutral. *Tom v. Com Dev USA, LLC*, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

- 10 -

*Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, each of Rule 23(e)'s and the Ninth Circuit's factors weighs in favor of, or is neutral as to, final approval of the Settlements.

**A.    The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlements**

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See*, *e.g.*, *Torrisi*, 8 F.3d at 1375-76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). A settlement's "elimination of risk, delay, and further expenses weighs in favor of approval." *See, e.g., Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018). Courts favor settlement where, as here, the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018).

It is well known that class action litigation is inherently complex. *See, e.g., Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). Even among class actions, securities actions, in particular, are complex and their outcomes uncertain. *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

2020). In this Action, Lead Counsel and Plaintiffs have carefully evaluated the merits of this case in light of all of the risks and potential weaknesses.

While Plaintiffs believe that their case is strong, they remain cognizant of the substantial risk posed to the Settlement Class in continuing this action. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class's ultimate recovery be less than the proposed settlement).

### 1. Plaintiffs Faced the Risk of Dismissal

Class action plaintiffs face procedural hurdles and failing at any one stage of the litigation could defeat the class action. While Plaintiffs believe their arguments opposing Aegis' motions to dismiss would be strong, there is no guarantee they would prevail before the Court. The PSLRA imposes heightened pleading burdens on complaints alleging securities fraud that are "not [] easy [] to comply with." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In its motion to dismiss, Aegis advanced several arguments disputing both liability and damages. For example, Aegis raised several challenges disputing the sufficiency and merit of Plaintiffs' claims against it under §§ 11 and 12 of the Securities

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

Act and § 15 of the Exchange Act based on alleged material misrepresentations and/or omissions in the registration statement and related prospectuses issued in connection with YayYo's IPO, and specifically concerning: (i) Defendant El-Batrawi's positions with or ownership interest in Yayo; (ii) YayYo's outstanding debts due and owing to various third-party vendors and former employees; (iii) YayYo's intended use of its IPO proceeds; and (iv) YayYo's risk disclosures.  Aegis also contended that its negative causation defense precluded any recovery for these claims, and that it would obtain dismissal because it had conducted adequate due diligence under the circumstances. Each of these issues would present significant obstacles to Plaintiffs' success at class certification, summary judgment and/or trial.  *See, e.g.*, *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) ("The fact that this issue, which is at the heart of plaintiffs' case, would have been the subject of competing expert testimony suggests that plaintiffs' ability to prove liability was somewhat unclear; this favors a finding that the settlement is fair."). As such, the risk of dismissal faced by Plaintiffs weigh in favor of final approval of the Settlements.

### 2.    Damages Challenge

Even if Plaintiffs defeated Aegis's motion to dismiss, they would have to overcome vigorous challenges pertaining to the measure of damages. Through the course of litigation, it has become clear that the Settling Parties have diametrically

- 13 -

opposed views regarding the calculation of damages and dispute whether loss causation can be established.

Loss causation is not an element of the strict liability Section 11 and Section 12 claims. *See, e.g., Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 179 (2015). But the absence of loss causation, also known as "negative causation," is an affirmative defense that defendants must plead and prove to both Section 11 and Section 12(a)(2) claims. The affirmative defense of negative causation prevents recovery for losses that the defendant proves are not attributable to the alleged misrepresentation or omission in the registration statement. *See* 15 U.S.C. § 77k(e); *see also McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2nd Cir.1995). Aegis raised negative causation in its motion to dismiss. It could have come up again, with any party raising it at summary judgment or at trial.

Multiple negative causation arguments were available to Defendants. The Amended Complaint places the first corrective disclosure on January 24, 2020, when the Company filed an action for declaratory judgement and permanent injunction against Defendant El-Batrawi in the Superior Court of the State of California, County of Los Angeles, alleging that Defendant El-Batrawi improperly continued to purport to act on behalf of the Company and he was harming the business. If Defendants could establish that any loss prior to this disclosure could not be linked to any fraud, damages would be significantly reduced as the stock price first fell shortly after the IPO.

- 14 -

Additionally, there is a possible argument, anticipated by Plaintiffs, that even the Company's "voluntary delisting" from the NASDAQ—another corrective disclosure alleged in the Amended Complaint—because it was technically voluntary, could not be attributed to any alleged misrepresentations or omissions contained in the offering materials. Plaintiffs are confident they could have overcome this argument, because Plaintiffs believe they would have been able to establish the IPO was broken. Likewise, Plaintiffs believe the delisting was directly related to the Company's misrepresentations and omissions. However, there was a risk that Defendants would have been able to establish negative causation. If that occurred, the estimated damages would have fallen from approximately $10 million, without interest, to approximately $2 million. The $1,700,000 total settlement amount here is an extraordinary recovery in comparison to that potentially lower damages figure.

In addition, putting aside any risks to the amount of damages at issue, settling at this juncture of the litigation not only saves time, it also saves the expenses associated with addressing damages at summary judgment and trial, which inevitably would have required expert testimony. *See, e.g. In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at \*9 (C.D. Cal. July 28, 2014) (noting that plaintiffs must turn to experts to disaggregate losses from nonactionable and actionable factors). As such, the complexity, risks and costs in establishing damages support final approval of the Settlements.

- 15 -

### 3.    Plaintiffs Faced Additional Risks of Continued Litigation

Moreover, Plaintiffs would still need to prevail on the pending class certification motion, at summary judgment, on pretrial motions, at trial, and on any subsequent appeals—a process that could possibly extend for years. Settlement is favored where, as here, the case is "'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the "'inherent risks of litigation.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1300 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) (quoting *Rodriguez*, 563 F.3d at 966, and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

Even if Plaintiffs were successful in obtaining class certification, over vigorous opposition from Defendants, they faced a risk that they would not be able to sustain class certification through judgment. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1). A class is not safely certified until judgment. While rare, a change in the law or facts might upset certification. Thus, the necessity of complex and costly class certification proceedings together with the risk this Court would have denied or revised certification, supports the Settlements' adequacy.

Even beyond class certification, further perils would await. Plaintiffs might lose on summary judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed

- 16 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

to establish several of the alleged material misrepresentations and that defendants lacked a reasonable basis for their belief in the alleged misrepresentations). Additionally, Plaintiffs might have an expert excluded, crippling its case. *See*, *e.g.*, *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiffs might also lose at trial, or the jury might trim Plaintiffs' damages significantly. *See Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict* (reporting that plaintiffs won only 5% of the damages they requested).[4] Then, Plaintiffs continue to risk losing their case even if they win at trial. *See*, *e.g.*, *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in plaintiffs' favor), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012). And then, even if Plaintiffs survive summary judgment and motions to exclude its experts, win at trial, secure a damages verdict larger than what is achieved in these Settlements, and defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict overturned).

---

[4] Available at ISS, https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/ (last visited May 2, 2022)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

As such, the Settlements balance the risks, costs, delay, and benefit of immediate recovery for the Classes against the mere possibility of future recovery from Defendants through continued prosecution of the claims. This is especially so when, during a discovery conference in front of Magistrate MacKinnon on October 1, 2021, counsel for YayYo indicated the Company was having trouble shouldering the costs of the Litigation. According to its 10-Q filing for the period ending September 30, 2021, the Company had only slightly more assets than liabilities. There is no way to ensure that YayYo would have survived as a going concern if the Litigation continued – and, if YayYo ceased to exist, the Litigation would have continued against only the individual YayYo Defendants, Aegis and WestPark. This would have caused added concern. Individuals are famously difficult to collect judgments from. Additionally, WestPark, which was an underwriter in the IPO (and would have been one of two remaining entities if YayYo went bankrupt), was intending to make a summary judgment motion based on an asserted due diligence defense. While Plaintiffs are confident that their claims against WestPark would have survived the assertion of this defense, the standard for claims against underwriters is different than that for a subject Company and its individual officers and directors.

Thus, the benefits created by the Settlements weigh heavily in favor of granting the motion for final approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Litigation through trial, the cash

- 18 -

Settlements totaling $1,700,000 represent a meaningful recovery that are in the Classes' best interests. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

## B. The Amounts Obtained in Settlements Support Final Approval

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Nor is the proposed settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. Common sense dictates that Plaintiffs must take less in a settlement than they would after a complete trial victory or Defendants would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, Plaintiffs cannot be sure they will be able to secure or enforce a judgment at or near the full amount of the class-wide damages they estimate.

- 19 -

In fact, a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *Id.* at 628; *Mego*, 213 F.3d at 459.

Moreover, the estimated damages would be reduced or eliminated entirely if the Court or jury were to accept some or all of Defendants' defenses, including that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. Even if Plaintiffs were to prevail on loss causation or negative causation at trial, a jury verdict could be reversed due to problems with these issues. *See*, *e.g.*, *Hubbard*, 688 F.3d at 716 (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at these Settlements, Plaintiffs carefully considered the significant risk that it would be unable to recover a greater amount further down the road.

The absolute maximum the Classes could have recovered was approximately $12 million, including a high percentage of pre-judgement interest (which would have had to be approved by the court) on the Section 12 claim. Even using that number, the Settlements are a good result for the Classes, representing 14% of maximum damages. *See Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *Heritage Bond*, 2005 WL 1594403, at *8-9 (average recovery between 2% to 3% of maximum damages)); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses"). This is

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

significantly higher than the median ratio of settlement value reported by both Cornerstone Research and NERA Economic Consulting. *See* Cornerstone Research, "Securities Class Action Settlements — 2019 Review and Analysis," at 6 (the median recovery in 10(b) cases in 2019 was 4.8% of estimated damages); NERA Economic Consulting, "Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review, at 19 ("For cases settled between 2012 and 2020, the ratio of settlement to Investor Losses is. . . 5.2% for cases with Investor Losses between $20 million and $50 million.").

But, more importantly, the damages were likely to be much lower. Damages without interest, for all the claims combined, was approximately $10 million. With that in mind, the Settlements represent 17% of damages. There also was an even more troubling consideration for Plaintiffs – if Defendants had been able to establish negative causation, the damages would drop to approximately $2 million. ***The current recovery of $1.7 million is therefore 85% of what the Classes may have received even with a successful trial verdict***. And settling now not only saves time, it also saves the expenses associated with summary judgment and a trial, which inevitably would have required expert testimony. Particularly in the context of questions about collectability, the Settlement Amounts in this case are fair, reasonable, and adequate.

- 21 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

### C. The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case. *See Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc. Sec. Litig.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). Courts regularly find this factor to support approval of a settlement even when plaintiffs settle before a decision on the motion to dismiss or for class certification, or even before any discovery is conducted. *See, e.g.*, *Mego*, 213 F.3d at 459 (approving settlement before extensive formal discovery); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *5 (C.D. Cal. Dec. 8, 2015) (before class certification); *Tadepalli v. Uber Techs., Inc.*, 2016 WL 1622881, at *7 (N.D. Cal. Apr. 25, 2016) (no

- 22 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

discovery); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (before decision on motion to dismiss). For this reason, courts have commended class counsel for recognizing when a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc*., 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 Fed. Appx. 452, 457 (9th Cir. 2009).

While discovery is not necessary for a settlement to be approved, Plaintiffs had an exceptionally strong understanding of the merits of their case because the parties engaged in the extensive discovery efforts described above. Plaintiffs and Plaintiffs' Counsel were therefore in an excellent position to evaluate the strengths of their allegations against Defendants as well as the Mediator's Recommendation to settle the Action before additional time and resources were expended on further litigation.

Here, the Settlements were achieved only after Defendants had completed their production of tens of thousands of documents. Before entering into the Settlements, Class Counsel reviewed all the documents produced and thoroughly evaluated the strengths and weaknesses of Plaintiffs' claims. As set forth in greater detail in the Grunfeld Declaration, Class Counsel extensively developed the record by, among other things: (i) engaging in an extensive investigation; (ii) drafting highly detailed pleadings; (iii) completing extensive briefing on the YayYo Defendants' motion for judgment on the pleadings (which the Court denied) and Aegis' motion to dismiss; (iv)

- 23 -

moving for certification of the Classes; (v) participating in and preparing for two full-day mediations overseen by a respected and experienced mediator, Michelle Yoshida of Phillips ADR Enterprises, which included the exchange of detailed mediation statements; and (v) undertaking extensive fact discovery efforts, including reviewing tens of thousands of documents, filing a Rule 26(f) discovery plan, serving Rule 26(a) disclosures, participating in meet and confers and court hearings related to discovery and conducting several depositions. *See* Grunfeld Decl. at ¶22. In sum, Plaintiffs and Lead Counsel were sufficiently informed at this stage of the litigation to negotiate favorable Settlements, supporting final approval.

**D.      The Proposed Settlements Result from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel**

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981); accord *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *6 (C.D. Cal. Nov. 18, 2014). "[A] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Heritage*, 2005 WL 1594403, at *9 (citing *Manual for Complex Litigation* (Third) § 30.42 (1995) (internal quotations omitted); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). This case has been litigated by experienced and well-respected counsel on both sides. Plaintiffs' Counsel has

- 24 -

substantial securities litigation experience, having prosecuted and resolved dozens of complex securities cases, including some of the largest cash recoveries in securities class action history. *See, e.g. In re Petrobras Sec. Litig.*, No. 14-cv-9662, Opinion and Order, at 1, (ECF No. 834, June 25, 2018) ($3 billion settlement achieved by Pomerantz as sole lead counsel); *see also* Exhibit A (Pomerantz Firm Resume) of Declaration of Michael Grunfeld on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses attached as Exhibit 3 to the Grunfeld Decl. ("Grunfeld Fee Decl."). Plaintiffs' Counsel are intimately familiar with the strengths and weaknesses of the case and the core facts, and wholeheartedly recommend these Settlements as fair, reasonable, and adequate.

In considering final approval of the Settlements, the Court should give Lead Counsel's views material weight because in a complex class action, counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). "Absent fraud, collusion, or the like," the Court should give "[g]reat weight [] to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," *Heritage Bond*, 2005 WL 1594403, at *9.

- 25 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

Further, the Settlements were overseen by a highly respected mediator; Michelle Yoshida, Esq. of Phillips ADR, one of the nation's preeminent mediation firms. Grunfeld Decl. at ¶¶6, 7 and 9. The Parties engaged in hard-fought negotiations over the course of two full-day in-person mediation sessions, and held further discussions through Ms. Yoshida telephonically. *Id.* The negotiations were in good faith and at arm's-length. *See Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) (emphasizing that the parties conducted mediation sessions when determining the settlement was the product of serious and non-collusive negotiations by experienced counsel that weighed in favor of final approval). Though professional, the discussions were zealous, and even heated; there was no collusion. Indeed, the Parties were at impasses immediately following each full day mediation. Grunfeld Decl. at ¶11. Only after protracted and good faith negotiations, with the assistance of Ms. Yoshida, were the parties finally able to agree to all the terms of each settlement reflected in the respective Stipulations. *Id.* The Court, in its preliminary approval order, recognized that "Plaintiffs and their counsel have vigorously litigated the case" and acknowledged that "the settlement was reached after arm's-length negotiations, including those facilitated by an experienced mediator" (ECF No. 173).

Finally, Plaintiffs' support for the Settlements is further evidence that the Settlements are fair, reasonable and adequate. *See* Exhibits 1 and 4 (Declarations of

- 26 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

William Koch and Bernard Bednarz) of Grunfeld Decl. Plaintiffs' support for a settlement should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)). In light of the foregoing, it should be without question that Plaintiffs and Lead Counsel have adequately represented the Classes. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (finding, in finally approving settlement, that "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation").

**E.    The Reaction of the Settlement Classes Supports Approval**

The absence of many objections to a proposed class action settlement supports approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

The Claims Administrator mailed 7,626 copies of the Notice and Claim Forms. Ewashko Decl. at ¶8. The Notice sets out that the deadline to file objections to and request exclusion from the Settlements is May 13, 2022. *Id.* at 13 To date, no Settlement Class Members have objected to the Settlements. *Id.*; Grunfeld Decl. at ¶43.

- 27 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

While Plaintiff Bednarz initially objected to Preliminary Approval of the YayYo Settlement, he has since withdrawn his objection and submits a Declaration in support of final approval of the Settlements. *See* Bednarz Decl. at ¶4. Further, only one individual has requested exclusion from the Settlements. *See* Ewashko Decl. at ¶13 and Grunfeld Decl. at ¶43. This request for exclusion will be submitted, along with any other requests that are received, after the deadline for requesting exclusion has passed. *See* Ewashko Decl. at ¶13. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 459 (that there was only one opt-out supports upholding district court's approval of settlement). The lack of objections or requests for exclusion supports final approval.

**F.    The Settlements Meet the Remaining Rule 23(e)(2) Factors**

**1.    The Proposed Method for Distributing Relief is Effective**

The Settlement Agreements, as approved by the Preliminary Approval Order, establish a plan to provide notice to Settlement Class Members, which Plaintiffs and the Claims Administrator duly followed. As these sources directed, the Claims Administrator mailed the Notice to all those who could be identified with reasonable effort, supplemented by the online publication of the Summary Notice on *Investor's Business Daily* and transmission to *PR Newswire*. Ewashko Decl. at ¶¶2 and 9. The

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

Notice notified Settlement Class Members of the Settlements and directed them to a case-specific website where the Claims Administrator posted key documents, including the Notice, Stipulation and Preliminary, Approval Order. Ewashko Decl. at ¶¶10-11.

Settlement Class Members completed a standard claim form that requests the information necessary to calculate their claim amount pursuant to the Plan of Allocation. The case-specific website allowed Settlement Class Members to file their claims electronically without ever having to print, scan, mail, or email any document. Ewashko Decl. at ¶11.

### 2. The Attorneys' Fees, Expenses, and Plaintiffs Awards are Appropriate

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the accompanying Fee Brief, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Amount, plus interest, and expenses of $74,454.78, plus interest. This fee request, fully disclosed in the Summary Notice and Notice, is lower than that awarded in many other settlements approved in the Ninth Circuit. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses and Awards to Plaintiffs ("Fee Brief") at Section III(c). Further, Courts have regularly held the expenses Lead Counsel seeks reimbursement for are properly charged to the settlement class. *See* Fee Brief at Section IV.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

Plaintiffs also request $15,000 for Bernard Bednarz and $10,000 for William Koch (totaling $25,000) pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class. Courts regularly permit similar or larger awards to named plaintiffs. Fee Brief at Section V. The significant amount of time Plaintiffs committed to working with Lead Counsel on this Action is memorialized in the accompanying Fee Brief and declarations. *See* Exhibits 1 and 4 (Declarations of William Koch and Bernard Bednarz) of Grunfeld Decl.

### 3. Agreements Required to be Identified under Rule 23(e)(3)

Rule 23 requires that any agreement made in connection with the proposed Settlements be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv) and Fed R. Civ. P. 23(e)(3). Apart from the Settlement Agreements and other materials associated with the negotiation of the Settlements (and disclosed herein), there are no additional agreements between the Parties or with others made in connection with the Settlements. *See* Grunfeld Decl. at ¶14. Accordingly, this factor weighs in favor of final approval of the Settlements.

### 4. There is No Preferential Treatment; the Proposed Plan of Allocation Treats Settlement Class Members Equitably

Rule 23(e)(2)(D) asks whether the settlement treats class members equitably relative to each other. The Settlements do so because their Plan of Allocation was drafted with the assistance of a damages expert and they do not treat Plaintiff Koch, Plaintiff Bednarz or any other Class Member preferentially. *See In re Zynga Sec. Litig,*

- 30 -

2015 WL 6471171, at *10 (N.D. Cal., Oct 27, 2015). The Plan of Allocation, which is set out in the Notice, explains how the proceeds from the Settlements will be distributed among Authorized Claimants. Specifically, the Plan provides formulas for calculating the recognized claim of each Class Member, based on each such person's purchases or acquisitions of YayYo common stock. Each Authorized Claimant, including Plaintiffs, will receive a distribution pursuant to the Plan of Allocation. Plaintiffs, just like all other Settlement Class Members, will be subject to the same formula for distribution of the Settlements. Moreover, all Settlement Class Members will receive a *pro rata* distribution based on their losses as calculated under the Plan of Allocation. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019), *report and recommendation adopted*, 2019 WL 2288432 (D. Or. May 29, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Settlement Class Members and Class Representatives equally in that they will receive a *pro rata* distribution based of the Settlement Fund based on their net losses"). As the Court concluded in granting preliminary approval to the YayYo Settlement, "the settlement's plan of allocation adequately addresses this concern [that Plaintiff Bednarz raised] and, more broadly, treats class members equitably" by "adjust[ing] the recovery amounts for class members based on the time period in which they held YayYo stock." (ECF No. 173 at 2).

- 31 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

**G.      The Court Should Approve the Plan of Allocation**

In the Preliminary Approval Orders, the Court preliminarily approved the Notice and the Plan of Allocation outlined therein. Plaintiffs now request that the Court grant final approval of the Plan of Allocation for the purpose of administering the Settlements. Courts judge plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045.  Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan of Allocation has a reasonable, rational basis. It distributes the proceeds from each settlement on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold YayYo Securities. Plaintiffs engaged a damages consultant to assist in developing a plan to allocate the proceeds of each settlement among Authorized Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. Grunfeld Decl. at ¶18. *See Riker v. Gibbons*, 2010 WL 4366012, at *5 (D. Nev. Oct. 28, 2010) ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon

- 32 -

in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"). Here, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund (comprised of cash, plus interest, less Court-approved fees and expenses) based on the claimant's recognize loss as calculated in accordance with the Plan of Allocation detailed in the Notice. Grunfeld Decl. at ¶19.

As noted above, the Court already closely reviewed the Plan of Allocation at the preliminary approval stage and concluded, in granting preliminary approval to the YayYo Settlement, that it "treats class members equitably" by "adjust[ing] the recovery amounts for class members based on the time period in which they held YayYo stock and provides for the denial of any [claim] by a class member who achieved a net gain from their investment in YayYo stock." (ECF No. 173 at 2). Since that time, there have been no objections to the Plan of Allocation from any potential Settlement Class

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

Members. Grunfeld Decl. at ¶21; Ewashko Decl. at ¶13. This further supports final approval of the Plan of Allocation. For the foregoing reasons, the Plan of Allocation fairly compensates Settlement Class Members and should be approved.

## V.    NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS

Plaintiffs have provided the Settlement Class with adequate notice of the Settlements in the manner and form directed and preliminarily approved by the Court. Plaintiffs, through Lead Counsel and the Claims Administrator, mailed 7,626 copies of the Court-approved Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort. Ewashko Decl. at ¶¶2-8. In addition, the Claims Administrator published the Court-approved Summary Notice online in *Investor's Business Daily* and transmitted it over the *PR Newswire* on March 21, 2022. *Id.* at ¶9. The Claims Administrator also published all information regarding the Settlements online on the Settlement website. *Id.* at. ¶11. This method of giving notice is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlements. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 962. The Notice gave Settlement Class Members all the information they needed to decide whether to

- 34 -

opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlements; (2) why the parties propose the Settlements; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlements or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. §78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim forms under the Plan of Allocation as described in the Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Orders, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See*, *e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlements and the proposed Plan of Allocation.

- 35 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

Dated: May 2, 2022                    Respectfully submitted,

                                      **POMERANTZ LLP**
                                      By: */s/ Michael Grunfeld*
                                      Michael Grunfeld
                                      (admitted *pro hac vice*)
                                      600 Third Ave., 20th Fl.
                                      New York, NY 10016
                                      (212) 661-1100
                                      mgrunfeld@pomlaw.com

                                      **POMERANTZ LLP**
                                      Jennifer Pafiti (SBN 282790)
                                      Ari Basser (SBN 272618)
                                      1100 Glendon Avenue, 15th Floor
                                      Los Angeles, CA 90024
                                      Telephone: (310) 405-7190
                                      Email: jpafiti@pomlaw.com
                                              abasser@pomlaw.com

                                      *Lead Counsel for Plaintiffs*

                                      **BRONSTEIN, GEWIRTZ &
                                      GROSSMAN, LLC**
                                      Peretz Bronstein
                                      60 East 42nd Street, Suite 4600
                                      New York, New York 10165
                                      Telephone: (212) 697-6484
                                      Facsimile: (212) 697-7296
                                      Email: peretz@bgandg.com

                                      *Additional Counsel for Plaintiffs*

- 36 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/Michael Grunfeld*

Michael Grunfeld

- 37 -