**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re YAYYO, INC. SECURITIES LITIGATION

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:20-cv-08235-SVW-AFM

CLASS ACTION

DECLARATION OF MICHAEL GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENTS AND PLAN OF ALLOCATION AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS

DECLARATION OF MICHAEL GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENTS AND PLAN OF ALLOCATION; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS

I, Michael Grunfeld, declare as follows:

1.    I am an attorney duly licensed to practice law in New York, and I have been admitted *pro hac vice* in this Action. I am a Partner at Pomerantz LLP, court-appointed Lead Counsel in the Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.    I submit this declaration in support of Lead Plaintiff Bernard Bednarz and Plaintiff William Koch (collectively "Plaintiffs") Motions for: (1) final approval of the proposed Settlements of this Action and Plan of Allocation; and (2) attorneys' fees, reimbursement of expenses, and awards to Plaintiffs, filed concurrently herewith.[1] This Declaration demonstrates why the Settlements are fair, reasonable, and adequate and should be approved by the Court, and why Pomerantz's requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs are reasonable and should be approved by the Court.

3.    The Settlements create a gross settlement fund of $1,700,000, plus accrued interest. After attorneys' fees, reimbursement of expenses, awards to Plaintiffs, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to the Settlement Classes.

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

4.    This Litigation was commenced on September 9, 2020, Case No. 2:20-cv-08235-SVW-AFM in the Central District of California (ECF No. 1). On September 18, 2020, Plaintiff Koch filed a substantially similar action in the same court, Case No. 2:20-cv-08591-SVW-AFM (the "Koch Action"). On November 2, 2020, the Court consolidated the two cases and administratively closed the Koch Action docket (ECF No. 22). On December 1, 2020, the Court appointed Bernard Bednarz as Lead Plaintiff and Pomerantz LLP as Lead Counsel (ECF No. 33).

---

[1] Terms not defined herein have the same meaning as in the Settlement Agreement.

- 1 -

5. On February 8, 2021, Plaintiffs Koch and Bednarz filed the operative Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (ECF No. 46). On March 1, 2021, WestPark filed an answer to the Amended Complaint and Aegis filed a motion to dismiss the Amended Complaint (ECF Nos. 48 and 49). On March 3, 2021, the YayYo Defendants filed an answer to the Amended Complaint (ECF No. 53). The Litigation was then temporarily stayed pending an early mediation entered into at the request of Defendants.

6. In April 2021, the parties engaged the services of Michelle Yoshida, a highly respected mediator, of Phillips ADR Enterprises, one of the nation's preeminent mediation firms, to facilitate settlement negotiations and assist in resolving the Litigation in its entirety. On April 29, 2021, the parties participated in a full-day mediation with Ms. Yoshida. In advance of the mediation, the parties prepared and exchanged detailed position statements which they presented to and discussed with Ms. Yoshida.

7. Despite the parties' efforts at the mediation, they did not reach an agreement to settle the Litigation, or any aspect of it, and the litigation continued. Plaintiffs opposed Defendant Aegis' motion to dismiss on May 17, 2021 (ECF No. 79), and Defendant Aegis replied on May 31, 2021 (ECF No. 84). However, as the Litigation was ongoing, Aegis continued its settlement negotiations with the assistance of Ms. Yoshida, ultimately culminating in a mediator's recommendation to settle the Litigation with Aegis for $550,000.00, which Aegis accepted and resulted in a stipulation of settlement on August 27, 2021 (the "Aegis Settlement"). The court orally granted preliminary approval of the Aegis Settlement, in which Plaintiffs moved for final certification of the Settlement Class, during a hearing held on September 27, 2021 (ECF No. 158).

8. The Litigation continued as to all other parties. On July 2, 2021, Plaintiffs filed a motion to certify the Classes (ECF No. 91). The YayYo Defendants opposed

- 2 -

that motion on July 19, 2021 (ECF No. 100). The Court first held oral argument on that motion on September 20, 2021, which was then continued to October 19, 2021, after the Court expressed interest in hearing more on the merits of the Litigation.

9.      While the motion for class certification was still pending, the YayYo Defendants and Plaintiffs engaged in another all-day mediation with Ms. Yoshida, on October 8, 2021. While a settlement was not reached that day, a Settlement, totaling $1,150,000 in cash payments, was reached in the days after, with the assistance of Ms. Yoshida (the "YayYo Settlement").

10.      The Court granted preliminary approval of the YayYo Settlement, which included final certification of the Settlement Classes, on January 13, 2022 (ECF No. 173). While Plaintiff Bednarz initially objected to the preliminary approval of the YayYo Settlement, he has since joined in moving for final approval of the Settlements and has formally withdrawn his objections. *See* Declaration of Bernard Bednarz ("Bednarz Decl.") at ¶4[2].

## II.    OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

11.      Counsel for the Parties were able to reach the Aegis Settlement only after Plaintiffs engaged in an extensive investigation, the operative complaint was filed, Defendant Aegis' motion to dismiss was fully briefed and pending, and the parties participated in a full-day mediation. The YayYo Settlement was not reached until after the YayYo Defendants' motion for judgment on the pleadings was denied, the parties engaged in extensive fact discovery (including the review of tens of thousands of documents and depositions), Plaintiffs moved for class certification, and the parties attended a second full-day mediation. Both Settlements were reached after vigorous, protracted and good faith negotiations with the assistance of Ms. Yoshida, the mediator.

---

[2] A true and correct copy of the Bednarz Decl. is attached hereto as Exhibit 1.

- 3 -

DECLARATION OF MICHAEL GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENTS AND PLAN OF ALLOCATION; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS

12.    In the opinion of the lawyers at my firm who worked on this case, the Settlements are a fair, reasonable, and adequate result for the Settlement Classes. The Settlements confer a benefit on the Settlement Classes, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlements to Settlement Class Members. The Court should approve both the Settlements and the Plan of Allocation.

13.    As set forth herein and in the accompanying memorandum in support of Plaintiffs' motion for final approval of the Settlement ("Final Approval Brief"), the Settlements represent between approximately 14% and 85% of Plaintiffs' estimate of recoverable damages. Guaranteed cash settlements that provide a substantial benefit in the face of these challenges – not to mention the appeals that would likely be filed should Plaintiffs prevail – are a favorable outcome. In light of these circumstances, and especially when the Settlements are the product of comprehensive legal and factual investigation and arm's-length negotiations by experienced counsel, there is ample support for a finding that the Settlements are fair, reasonable, and adequate.

14.    Apart from the Settlement Agreements and other materials associated with the negotiation of the Settlements (and disclosed herein), there are no additional agreements between the Parties or with others made in connection with the Settlements.

15.    For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of 25% of the Settlement Fund, or $425,000, plus interest, and reimbursement of litigation expenses, which is $74,454.78, plus interest. This fee request is within the reasonable range of percentages typically awarded in securities class actions in the Ninth Circuit.

16.    The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee request. The Notice sets out that exclusion requests and objections to the Settlements must be received by May 13,

- 4 -

2022. To date, neither Lead Counsel nor the Claims Administrator have received any valid objections to any aspect of the Settlements. *See* Declaration of Jack Ewashko, Client Services Director of A.B. Data, ("Ewashko Decl.") Concerning (A) Mailing of the Notice Packet; (B) Publication of the Summary Notice; (C) Report on Requests for Exclusion and Objections ("Ewashko Decl.") ¶¶13-14. [3] While Plaintiff Bednarz initially objected to Preliminary Approval of the YayYo Settlement, he has since withdrawn his objection and submits a Declaration in support of final approval of the Settlements. *See* Bednarz Decl. at ¶4. Further, there has only been one exclusion request received, Ewashko Decl. at ¶13. The individual who submitted this exclusion request claims he purchased shares directly from Defendants prior to the IPO.[4] *Id.* If Lead Counsel or the Claims Administrator receives any additional objections or exclusion requests, Plaintiffs will address them in their reply papers in support of final approval.

## III.   NOTICE PROCEDURES

17.     At Lead Counsel's direction, and pursuant to the Court's Preliminary Approval Order, A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data" or "Claims Administrator") published the Summary Notice on the *Investor's Business Daily* and transmitted it over the *PR Newswire*. Ewashko Decl. at ¶9. The Claims Administrator also published the Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on A.B. Data's Settlement-specific website on March 14, 2022. *Id.* at ¶11. To date, A.B. Data has mailed 7,626 copies of the Notice and Claim Forms to potential Settlement Class Members. *Id.* at ¶8.

---

[3] A true and correct copy of the Ewashko Decl. is attached hereto as Exhibit 2.

[4] This individual represented that he has commenced his own lawsuit against El-Batrawi and the Company.

DECLARATION OF MICHAEL GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENTS AND PLAN OF ALLOCATION; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS

## IV.    PLAN OF ALLOCATION

18.    Pursuant to the Preliminary Approval Order, the Notice fully described the proposed Plan of Allocation. *See* Dkt. No. 168-4 (proposed Notice) ¶29-38. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing them to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages report Plaintiffs used to estimate its maximum recoverable damages, and it closely tracks Plaintiffs' theory of the case.

19.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

20.    The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

21.    There have been no objections to the Plan of Allocation from any potential Settlement Class Members. Ewashko Decl. at ¶13.

## V.    THE    FAIRNESS    AND    REASONABLENESS    OF    THE    SETTLEMENTS

22.    The proposed Settlements are the culmination of careful, economical litigation followed by protracted arm's length settlement negotiations. The parties

- 6 -

reached the Settlements after Lead Counsel had a thorough understanding of the strengths and potential weaknesses of the case, and had spent considerable time on behalf of the Company's Securities holders, including by: (i) engaging in an extensive investigation; (ii) drafting highly detailed pleadings; (iii) completing extensive briefing on the YayYo Defendants' motion for judgment on the pleadings (which the Court denied) and Aegis' motion to dismiss; (iv) moving for certification of the Classes; (v) participating in and preparing for two full day mediations overseen by a respected and experienced mediator, Michelle Yoshida of Phillips ADR Enterprises, which included the exchange of detailed mediation statements; and (v) undertaking extensive fact discovery efforts, including reviewing tens of thousands of documents, filing a Rule 26(f) discovery plan, serving Rule 26(a) disclosures, participating in meet and confers and court hearings related to discovery and conducting several depositions.

23.   Lead Counsel, who are highly experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial, the Company's financial position, and other factors related to collectability of any settlement or judgment. Plaintiffs faced multiple procedural hurdles and significant merit-based risks involved with protracted litigation. Lead Counsel carefully considered each of these risks before agreeing to the Settlements.

24.   Although Lead Counsel believes that Plaintiffs' claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would defeat Defendant Aegis' motion to dismiss. In its motion to dismiss, Aegis advanced several arguments disputing both liability and damages.  For example, Aegis raised several challenges disputing the sufficiency and merit of Plaintiffs' claims against it under §§ 11 and 12 of the Securities Act and § 15 of the Exchange Act based on alleged material misrepresentations and/or omissions in the registration statement and related

- 7 -

prospectuses issued in connection with YayYo's IPO, and specifically concerning: (i) Defendant El-Batrawi's positions with or ownership interest in Yayo; (ii) YayYo's outstanding debts due and owing to various third-party vendors and former employees; (iii) YayYo's intended use of its IPO proceeds; and (iv) YayYo's risk disclosures. Aegis also contended that its negative causation defense precluded any recovery for these claims, and that it would obtain dismissal because it had conducted adequate due diligence under the circumstances. Each of these issues would present significant obstacles to Plaintiffs' success at class certification, summary judgment and/or trial.

25.    Even if Plaintiffs defeated the motion to dismiss, they would have to overcome vigorous challenges pertaining to the measure of damages and risk failing to sufficiently establish loss causation. Multiple negative causation arguments, some of which were raised in Defendant Aegis' motion to dismiss, were available to Defendants. The Amended Complaint places the first corrective disclosure on January 24, 2020, when the Company filed an action for declaratory judgement and permanent injunction against Defendant El-Batrawi in the Superior Court of the State of California, County of Los Angeles, alleging that Defendant El-Batrawi improperly continued to purport to act on behalf of the Company and he was harming the business. If Defendants could establish that any loss prior to this disclosure could not be linked to any fraud, damages would be significantly reduced as the stock price first fell shortly after the IPO. Additionally, there is a possible argument, anticipated by Plaintiffs, that even the Company's "voluntary delisting" from the NASDAQ—another corrective disclosure alleged in the Amended Complaint—because it was technically voluntary, could not be attributed to any alleged misrepresentations or omissions contained in the offering materials. Plaintiffs are confident they could have overcome this argument, because Plaintiffs believe they would have been able to establish the IPO was broken. Likewise, Plaintiffs believe the delisting was directly related to the Company's misrepresentations and omissions. However, there was a risk that Defendants would

- 8 -

have been able to establish negative causation. If that occurred, the estimated damages would have fallen from approximately $10 million, without interest, to approximately $2 million.

26. Plaintiffs also faced the risks of prevailing on the pending class certification motion, at summary judgment, on pretrial motions, at trial, and on any subsequent appeals—a process that could possibly extend for years. Even if Plaintiffs were successful in obtaining class certification, over vigorous opposition from Defendants, they faced a risk that they would not be able to sustain class certification through judgment. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1). A class is not safely certified until judgment. While rare, a change in the law or facts might upset certification. Further, even beyond class certification, Plaintiffs faced the risks of losing on summary judgment or at trial. Plaintiffs also faced the risk of a jury trimming Plaintiffs' damages significantly at trial. And then, even if Plaintiffs survive summary judgment and motions to exclude its experts, win at trial, secure a damages verdict larger than what is achieved in these Settlements, and defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal.

27. Further, if Plaintiffs were successful at all stages of the Litigation and awarded relief, they risked being unable to collect the judgment, in part or in its entirely, based on the Company's financial instability. During a discovery conference in front of Magistrate MacKinnon on October 1, 2021, counsel for YayYo indicated the Company was having trouble shouldering the costs of the Litigation. According to its 10-Q filing for the period ending September 30, 2021, the Company had only slightly more assets than liabilities. There is no way to ensure that YayYo would have survived as a going concern if the Litigation continued – and, if YayYo ceased to exist, the Litigation would have continued against only the individual YayYo Defendants, Aegis and WestPark. This would have caused added concern. Individuals are famously

- 9 -

difficult to collect judgments from. Additionally, WestPark, which was an underwriter in the IPO (and would have been one of two remaining entities if YayYo went bankrupt), was intending to make a summary judgment motion based on an asserted due diligence defense. While Plaintiffs are confident that their claims against WestPark would have survived the assertion of this defense, the standard for claims against underwriters is different than that for a subject Company and its individual officers and directors.

28. Thus, considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Litigation through trial, the cash Settlements totaling $1,700,000 represent a meaningful recovery that are in the Settlement Classes' best interests.

## VI. THE FEE APPLICATION IS FAIR AND REASONABLE

29. The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33.3% of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses, plus interest, in an amount not to exceed $100,000. As set forth in the Memorandum in support of Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs, filed herewith ("Fee Brief"), in accordance with the Court's Preliminary Approval Order, which notes that "the benefit created for the class here is not so noteworthy as to warrant a fee award above [the 25%] benchmark" but "it is nonetheless meaningful relief" (ECF No. 173), Lead Counsel has requested only the 25% "benchmark" in attorneys' fees. This fee request falls in line with similar awards that courts in this circuit routinely have granted.

30. Lead Counsel achieved a favorable result for the Settlement Classes at risk and expense to themselves. Throughout this litigation, Lead Counsel was committed to the interests of the Settlement Classes and invested the time and resources necessary to resolve the Settlement Class's claims. As a result of the Settlements, Settlement Class

- 10 -

Members will receive compensation for their losses and avoid the risk of no recovery at all.

### *Lead Counsel's Work and Expertise*

31.     Lead Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation. Lead Counsel used its extensive skill and experience in this Litigation by, among other things, conducting a thorough investigation of the claims, drafting a highly detailed Amended Complaint, reviewing tens of thousands of documents produced by Defendants in discovery, conducting several depositions, and researching and drafting Plaintiffs' opposition to Defendant Aegis' Motion to Dismiss, Plaintiffs' opposition to the YayYo Defendants' motion for judgment on the pleadings, and Plaintiffs' class certification brief. Lead Counsel also participated in vigorous, protracted, arm's-length settlement negotiations overseen by an experienced mediator, including two full-day mediations. The mediations involved extensive presentations by Plaintiffs and Defendants analyzing the legal and factual nuances of the case. As a result of these efforts, Plaintiffs and Lead Counsel thoroughly understood the claims, merits, and weaknesses of the Action and were able to enter into both of the proposed Settlements.

32.     The total amount of time expended by attorneys and professional staff employed by Lead Counsel in prosecuting the Action is **2,170.35** hours. This number is derived from the time records that Pomerantz regularly maintained. A listing of the professionals at Pomerantz who worked on this matter, the number of hours spent by each such professional, and their hourly rates is set forth in detail in the Declaration of Michael Grunfeld on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Grunfeld Fee Declaration") at ¶5. [5] The total value of the services performed in this case by Pomerantz, based upon our current rates, is **$1,351,411.25**.

---

[5] A true and correct copy of the Grunfeld Fee Declaration is attached hereto as Exhibit 3.

- 11 -

33.    If Lead Counsel's request of 25% of the Settlements as attorneys' fees is granted, Lead Counsel would receive a fee of $425,000. This fee award would represent a lodestar negative multiplier of approximately 0.314—*i.e.*, it would not fully compensate counsel. This fractional multiplier is materially below other multipliers that courts in this Circuit have typically awarded in securities class actions.

34.    As reflected in the firm resume, Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases throughout the country, including within this Circuit. *See* Pomerantz's Firm Resume, attached to the Grunfeld Fee Declaration as Exhibit A.

35.    Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, and will not seek additional compensation for this work.

### *The Caliber of Opposing Counsel*

36.    Larson LLP, Richards Carrington LLC and Freeman Mathis & Gary, LLP (collectively "Defense Counsel"), represented Defendants. Each of these law firms has extensive experience in securities litigation and staffed the case with talented and experienced lawyers who advocated forcefully for their respective clients.  In the face of this opposition, Plaintiffs and Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade the Defendants to settle it on terms that were favorable to the Settlement Classes.

- 12 -

*The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases*

37. Lead Counsel undertook this class action on a contingency fee basis. I summarize above and further describe in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.

38. Those risks are also relevant to an award of attorneys' fees. I describe in detail above and in the Fee Approval Brief the risks Lead Counsel assumed and the time and expenses it incurred without any payment.

39. From the outset, Lead Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Lead Counsel has received no compensation during the course of this litigation, pending since September 2020.

40. The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

41. As a result of persistent efforts in the face of substantial risks and uncertainties, Lead Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Classes. In consideration of Lead Counsel's efforts and the favorable result achieved, I believe that a 25% fee is reasonable and that the Court should approve it.

*The Reaction of the Class to the Requested Fee*

42. As noted above, the Claims Administrator disseminated or caused to be disseminated 7,626 Notices to potential Settlement Class members pursuant to the Court's Preliminary Approval Order. Ewashko Decl. at ¶8.

- 13 -

DECLARATION OF MICHAEL GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENTS AND PLAN OF ALLOCATION; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS

43.     The Notice sets out that the deadline for exclusion requests and objections is May 13, 2022. To date, no objections remain as to any aspect of the Settlements, including the requested attorneys' fees. *See* Ewashko Decl. at ¶13. Plaintiff Bednarz initially objected to Preliminary Approval of the YayYo Settlement, he has since withdrawn his objection and submits a Declaration in support of final approval of the Settlements. *See* Bednarz Decl. at ¶4. Further, only one individual has requested exclusion from the Settlements. *See Supra* at *¶*16; *see also* Ewashko Decl. at ¶13.

## VII.   REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

44.     Lead Counsel has incurred $74,454.78 in litigation expenses in connection with the prosecution of the Action. These expenses were reasonable and necessary for the prosecution of the Action.

45.     From the outset, counsel was aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Lead Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

46.     A listing of the expenses incurred by Pomerantz compiled from the regularly maintained records, are set forth in the Grunfeld Fee Declaration at ¶7. The expenses incurred pertaining to this case are reflected in books and records of Pomerantz which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court.

47.     Litigation expenses for which Lead Counsel seeks reimbursement, as set out more fully in the Grunfeld Fee Declaration, included expert consultant expenses, mediator expenses, deposition expenses, legal research expenses, discovery database

- 14 -

DECLARATION OF MICHAEL GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENTS AND PLAN OF ALLOCATION; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS

expenses, transportation expenses, investigator expenses, document retrieval expenses, overtime expenses, and filing fees. Each of these expenses were reasonable and necessary for the successful prosecution of this case. The damages expert performed a damages analysis so that Lead Counsel could properly evaluate and negotiate the Settlements.

48.    In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Classes.

## VIII.  NOMINAL AWARDS TO PLAINTIFFS ARE WARANTED

49.    Lead Plaintiff Bernard Bednarz seeks an award of $15,000 and Plaintiff William Koch seeks an award of $10,000 for their time and effort overseeing this action pursuant to the PSLRA. The declarations of Plaintiffs Bednarz and Koch outline the time they devoted to this litigation, including review of pleadings, communicating regularly with counsel, and discussing the Settlements with counsel.[6] Plaintiff Bednarz also volunteered to file a motion seeking appointment as lead plaintiff. Plaintiff Bednarz's effort to further the interests of the Settlement Classes is further highlighted by his objection to Preliminary Approval of the YayYo Settlement (which the court rejected, and he has since withdrawn) and his appearance at the preliminary approval hearing. Plaintiff Koch prepared for and attended a full-day deposition. Plaintiffs Bernard Bednarz and William Koch have been actively involved and put the concerns of the Settlement Classes at the forefront.

50.    As explained in the Fee Brief, awards of similar magnitude are commonly awarded to plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

---

[6] A true and correct copy of the Declaration of William Koch is attached hereto as Exhibit 4.

- 15 -

51.     The awards to Plaintiffs Bernard Bednarz and William Koch, totaling $25,000.00, are fair and reasonable.

52.     To date, no objections have been raised in response to the requests for service awards that Plaintiffs included in the Notice, which are $10,000 more than Plaintiffs' requests.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 2, 2022.

                              */s/ Michael Grunfeld*
                              Michael Grunfeld

DECLARATION OF MICHAEL GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENTS AND PLAN OF ALLOCATION; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/Michael Grunfeld*

Michael Grunfeld

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF