**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re YAYYO, INC. SECURITIES LITIGATION | Case No. 2:20-cv-08235-SVW-AFM |
| | <u>CLASS ACTION</u> |
| | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS |

DATE:    June 6, 2022
TIME:    1:30pm
CTRM:    10A
JUDGE:   Honorable Stephen V. Wilson

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND AWARDS TO PLAINTIFFS

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     CASE BACKGROUND..........................................................................................5

III.    THE COURT SHOULD AWARD ATTORNEYS' FEES OF
        25% OF THE COMMON FUND ...........................................................................5

        A.      Lead Counsel Are Entitled to a Fee Award from the
                Common Fund................................................................................................5

        B.      The Court Should Award Lead Counsel a Reasonable
                Percentage of the Common Fund...................................................................6

        C.      The Requested Attorneys' Fees are Reasonable and Merited ..................8

                1.      Lead Counsel Achieved a Fair, Adequate, and
                        Reasonable Result for the Settlement Classes...........................10

                2.      The Risks and Complexity of the Litigation Support the
                        Requested Fee Amount................................................................12

                3.      Lead Counsel Skillfully Managed This Case
                        Against Formidable Adversaries .................................................16

                4.      Lead Counsel Undertook a Significant Financial Risk ...............18

                5.      Fee Awards in Similar Cases Further Support
                        an Award of 25% of the Settlement Fund ..................................21

                6.      A Lodestar Crosscheck Shows the Requested
                        Fee Is Reasonable .......................................................................23

                7.      The Settlement Class's Reaction Supports the
                        Requested Fee Award ..................................................................25

IV.     LEAD COUNSEL'S EXPENSES WERE REASONABLE AND
        NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ...........................27

V.      THE COURT SHOULD APPROVE THE AWARDS TO PLAINTIFFS .......28

VI.     CONCLUSION ...................................................................................................31

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ...........................................................................12

*Armes v. Hot Pizzas, LLC*,
  2017 U.S. Dist. LEXIS 89920 (D. Ariz. June 9, 2017) .......................................3

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  2015 WL 12732462 (C.D. Cal. May 29, 2015) ..................................................26

*Atlas v. Accredited Home Lenders Holding Co.*,
  2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) .......................................................9

*Bickley v. Schneider Nat'l Carriers, Inc.*,
  2016 WL 6910261 (N.D. Cal. Oct. 13, 2016) ..............................................10, 22

*Blum v. Stenson*,
  465 U.S. 886 (1984) .............................................................................................6

*Buccellato v. AT&T Operations, Inc.*,
  2011 WL 4526673 (N.D. Cal. June 30, 2011) ...................................................30

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .........................................8, 16, 22

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................................................21

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .............................................................................3

*Feller v. Transamerica Life Ins. Co.*,
  2019 WL 6605886 (C.D. Cal. Feb. 6, 2019) .....................................................25

*Fox v. Vice*,
  563 U.S. 826 (2011).............................................................................................23

ii

*Glass v. UBS Fin. Servs., Inc.*,
    331 F. App'x 452 (9th Cir. 2009)..............................................................................8

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ...................................................................................20

*Halliburton Co. v. Erica P. John Fund, Inc.*
    (No. 13-317) ............................................................................................................6

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994).......................................................................................27

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).................................................................................................10

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989).........................................................................7

*In re Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ................................16, 21, 22, 23

*In re Apollo Grp. Inc. Sec. Litig.*,
    2012 WL 1378677 (D. Ariz. Apr. 20, 2012)......................................................22, 24

*In re Atossa Genetics, Inc. Sec. Litig.*,
    2018 WL 3546176 (W.D. Wash. July 20, 2018)......................................................22

*In re Audioeye, Inc., Sec. Litig.*,
    2017 WL 5514690 (D. Ariz. May 8, 2017)..............................................................22

*In re Banc of California Sec. Litig.*,
    2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) .....................................................8, 22

*In re Brooktree Sec. Litig.*,
    915 F. Supp. 193 (S.D. Cal. 1996) ............................................................................6

*In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016)......................................................................23

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011)..............................................................................11

iii

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)..............................................*passim*

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) ...........................................................................10

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .........................................................26, 27

*In re K12 Inc. Sec. Litig.*,
2019 WL 3766420 (N.D. Cal. July 10, 2019) ................................................9, 22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ............................................................................22

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008).......................................................*passim*

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ...............................................................................8

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .........................................................................12, 22

*In re Petrobras Sec. Litig.*,
No. 14-cv-9662, Opinion and Order (ECF No. 428, February 2, 2016) ............17

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ................................................................................7

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ..................................................................24

*In re Veritas Software Corp. Sec. Litig.*,
396 Fed. App'x 815 (3d Cir. 2010) ....................................................................30

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .............................................................5, 6, 12, 18

*In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................30

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND AWARDS TO PLAINTIFFS

*Jenson v. First Trust Corp.*,
  2008 WL 11338161 (C.D. Cal. June 9, 2008)..........................................10, 13, 22

*Johnson v. US Auto Parts Network, Inc.*,
  2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) (Wu, J.) .....................................12

*Katz v. China Century Dragon Media, Inc.*,
  2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ...................................................28

*Lopez v. Youngblood*,
  2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) .......................................................7

*Manuel Vigueras v. Red Robin Int'l, Inc et al*,
  2020 WL 13042573 (C.D. Cal. Dec. 2, 2020)......................................................29

*Nat'l Fed'n of the Blind v. Target Corp.*,
  2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) ......................................................18

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014).........................................................................27

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ............................................................................5, 8

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ..........................................................................20

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..............................................................................29

*Romero v. Producers Dairy Foods, Inc.*,
  No. 1:05CV0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007).............22

*Sawant v. Ramsey*,
  2012 WL 3265020 (D. Conn. Aug. 9, 2012)......................................................20

*Singer v. Becton Dickinson & Co.*,
  2010 WL 2196104 (S.D. Cal. June 1, 2010) ....................................................8, 22

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016)..........................................................24, 25

v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND EXPENSES, AND AWARDS TO PLAINTIFFS

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).........................................................................................6

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) .......................................................................7

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977) .......................................................................5

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...........................................................*passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..........................................................................7

**Statutes**

15 U.S.C. §78u-4(a) ...............................................................................7, 28

PSLRA ....................................................................................................*passim*

Securities Exchange Act of 1934.................................................................13

Lead Plaintiff Bernard Bednarz and Plaintiff William Koch (collectively "Plaintiffs") submit this memorandum in support of their motion for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs.

## I.   INTRODUCTION

The Parties reached the Settlements to resolve this Action for cash payments totaling $1,700,000.[1] The Settlements represent a favorable result, as they recover 85% of recoverable damages after accounting for Defendants' negative causation arguments, and despite significant risk to continuing this litigation.[2] Having achieved this guaranteed cash recovery for the Settlement Classes, Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Amount, or $425,000, plus interest, reimbursement of expenses incurred of $74,454.78, plus interest, and Awards to Lead Plaintiff Bernard Bednarz of $15,000 and Plaintiff William Koch of $10,000, to be paid from the Settlement Fund.[3]

---

[1] Terms not defined herein have the same meaning as in the Settlement Agreement.

[2] The recovery here is also 14% of damages under Plaintiffs' model for the maximum possible damages and 17% of damages without interest. *See infra* at Section III(C)(1) and Plaintiffs' Final Approval Brief at Section IV(B).

[3] The Notice informed the Settlement Classes that Lead Counsel would apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed one-third of the Settlement Fund plus interest. Lead Counsel intends to share part of any attorneys' fees awarded by the Court with Bronstein, Gewirtz & Grossman, LLC, in accordance with their level of contribution to the initiation, prosecution, and resolution of the Action.

1

Litigants who create a common fund for the benefit of a class are entitled to an award of attorneys' fees and reimbursement of expenses from the common fund. Plaintiffs and Plaintiffs' Counsel have clearly bestowed a substantial common benefit upon the Settlement Class Members here. Through their efforts, Settlement Class Members will share substantial monetary relief, which satisfies the requirements of the common fund doctrine and entitles Lead Counsel to an award of attorneys' fees from the Settlement Fund.

The Parties reached the Settlements only after protracted negotiations. The arm's-length negotiations, described more fully in Plaintiffs' accompanying Final Approval Brief ("Final Approval Brief"), resulted in the favorable Settlements. The Settlements are particularly beneficial to the Settlement Class Members in light of the many risks inherent in this litigation. At this juncture of the Litigation, Plaintiffs faced a Motion to Dismiss and opposition to their motion to certify the classes. Further, if the Litigation continues, Plaintiffs would have to overcome vigorous challenges pertaining to the measure of damages. As explained in more detail in the Final Approval Brief, Plaintiffs faced loss causation challenges which could limit the Settlement Class's recovery to approximately $2 million. *See* Final Approval Brief at Section IV(A)(2). Beyond these challenges, Plaintiffs would still need to prevail at summary judgment, on pretrial motions, at trial, and on any subsequent appeals. As such, continuing litigation is accompanied by substantial risk and costs.

2

In obtaining this result, Lead Counsel took on substantial risk. The Private Securities Litigation Reform Act ("PSLRA") imposes procedural obstacles to alleging securities fraud, and its pleading standards in particular are "not [] easy [] to comply with," *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Despite the risks, however, Lead Counsel was able to obtain this fair, adequate, and reasonable recovery for the Settlement Classes.

Federal courts therefore have long recognized that fee awards in successful cases, such as this one, encourage the prosecution of other actions on behalf of individuals with valid claims, and thereby promote private enforcement of, and compliance with, important areas of federal and state law, including the federal securities laws. Fee awards, such as those requested in this action, encourage "capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *See*, *e.g.*, *Armes v. Hot Pizzas, LLC*, 2017 U.S. Dist. LEXIS 89920, at *12-13 (D. Ariz. June 9, 2017).

In the Ninth Circuit, courts typically determine attorneys' fees as a percentage of the common fund. The main factors courts consider in setting the percentage award are the quality of the result, the risk undertaken, and the settlement class's reaction. Courts also cross-check the award against the time and effort counsel expended. Here,

3

each of these metrics weighs in favor of awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount.

The Settlement Classes approve of Lead Counsel's work. The Notice sets out that objections and requests for exclusion are not due until May 13, 2022, but to date no Settlement Class Member has objected to the fee request and no objections to any aspect of the Settlements remain. *See* Declaration of Jack Ewashko, Client Services Director of A.B. Data, ("Ewashko Decl.") attached as Exhibit 2 to the Grunfeld Decl. at ¶13; Declaration of Michael Grunfeld ("Grunfeld Decl.") at ¶16. Further, there has only been one exclusion request received. Ewashko Decl. at ¶13; Grunfeld Decl. at ¶43.

Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of $74,454.78, plus interest.  These expenses, including court filings fees, expert fees, travel expenses and administrative expenses, among other categories set out in the Grunfeld Fee Declaration, were reasonable and necessary for the successful prosecution of the Litigation.

Finally, Lead Plaintiff Bernard Bednarz seeks an award of $15,000.00 and Plaintiff William Koch seeks and award of $10,000.00 (totaling $25,000) for their time spent in carrying out their obligations in the Litigation. The requested awards are

4

reasonable in light of the time Plaintiffs have spent in connection with this Litigation on behalf of investors, and in line with awards granted in similar matters.

## II.    CASE BACKGROUND

A summary of Plaintiffs' allegations and the procedural history of this Litigation are set forth in the Final Approval Brief, Part II, filed concurrently herewith.

## III.    THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE COMMON FUND

### A.    Lead Counsel Are Entitled to a Fee Award from the Common Fund

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment. "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). "The amount of such a reward is that which is deemed 'reasonable' under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and

5

Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2, *Halliburton Co. v. Erica P. John Fund, Inc.*, (No. 13-317). *Tellabs* and *Halliburton* were both class actions alleging securities fraud. Attorneys' fee awards were necessary to provide incentives for private lawyers to file those actions, and one is necessary here for the same reasons.

### B.    The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund

Under the "common fund doctrine" a reasonable fee may be based on "a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). District courts in the Ninth Circuit have discretion to award fees in common fund cases based on either the "lodestar/multiplier" method or the percentage-of-the-fund method. *WPPSS*, 19 F.3d at 1295-96. "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

Among other benefits, the percentage-of-the-fund method "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002) (affirming 28% fee, representing 3.65 multiplier, disfavoring lodestar for incentivizing

6

lawyers to generate more hours and not to settle early). The percentage method also "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). In addition, the percentage method preserves judicial resources by sidestepping time-consuming lodestar analysis while saving the Settlement Classes from the delays necessitated by the Court's review. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("the lodestar method is difficult to apply [and] time consuming to administer.").

Finally, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). "Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005), as amended (Feb. 25, 2005).

For these reasons the Court should award attorneys' fees based on the percentage-of-recovery method. The Court should use an informal lodestar cross-check only to assess the reasonableness of the percentage award. *See Vizcaino*, 290 F.3d at 1050, n.5 (using lodestar as "a cross-check on the reasonableness of a percentage

7

figure"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) (holding "the district court properly performed an informal lodestar cross-check").

### C.    The Requested Attorneys' Fees are Reasonable and Merited

In the Ninth Circuit, 25% is the "benchmark" award for attorneys' fees. *See e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *Paul, Johnson*, 886 F.2d at 273. However, "[i]n most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *accord In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 & n.14 (C.D. Cal. June 10, 2005) (noting that "courts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions[,]" and granting fees of one third of fund).

Indeed, courts in this Circuit have not hesitated to award attorneys' fees as high as 33.3% in securities class actions  *See*, *e.g.*, *Heritage Bond*, 2005 WL 1594403, at *19 (awarding one-third of the fund, and collecting cases awarding one third of the fund); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33.33% of common fund, and collecting cases, noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases"); *see also In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% fee request); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D.

8

Cal. Oct. 10, 2019) (approving one-third fee award); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (approving 33% attorneys' fees).

Here, in accordance with the Court's Preliminary Approval Order, which notes that "the benefit created for the class here is not so noteworthy as to warrant a fee award above [the 25%] benchmark" but "it is nonetheless meaningful relief" (ECF No. 173), Lead Counsel requests the "benchmark" rate of 25% in attorneys' fees.

When determining whether the requested percentage for attorneys' fees is fair and reasonable, courts consider the following factors: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; (6) awards made in similar cases; (7) the reaction of the class; and (8) the lodestar cross-check. *See Vizcaino*, 290 F.3d at 1048-1050; *Omnivision*, 559 F. Supp. 2d at 1046. Of course, "[t]he relative degree of importance to be attached to any particular factor will depend upon ... the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009). Here, each of these factors supports awarding attorneys' fees of 25% of the common fund.

9

## 1. Lead Counsel Achieved a Fair, Adequate, and Reasonable Result for the Settlement Classes

Courts have consistently recognized that the ultimate result achieved is a major factor to be considered in making a fee award. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (tethering fee award "to the value of the class recovery"); *Bickley v. Schneider Nat'l Carriers, Inc.*, 2016 WL 6910261, at *4 (N.D. Cal. Oct. 13, 2016) (awarding one-third for attorneys' fees for "substantial monetary recovery"); *Jenson v. First Trust Corp.*, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008) (awarding one-third fee request where counsel achieved "highly-favorable outcome"); *Heritage*, 2005 WL 1594403, at *19 ("significant results achieved" weighed "strongly in favor" of one-third fee award).

The value of the Settlements, totaling $1,700,000.00 in cash, plus interest, constitutes between 14% and 85% of estimated damages. Had they continued to litigate, Plaintiffs would have pursued the most aggressive damages approach, under which Plaintiffs contend the absolute maximum the Settlement Classes could have recovered is approximately $12,000,000. However, Plaintiffs contend the more realistic scenario for damages is substantially lower. Damages come out to approximately $10,000,000, without interest, which makes the Settlements total 17% of this scenario. Further, if Defendants were able to establish negative loss causation,

10

the estimated damages would drop to approximately $2,000,000. The Settlements provide a reasonable recovery under any of the above referenced scenarios. *See* Final Approval Brief at Section IV(B).

As a percentage of the total estimated damages, the Settlement Amount is above the median percentage of investor losses recovered in securities class action settlements. *See Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *Heritage*, 2005 WL 1594403, at *8-9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses").

According to Cornerstone Research, between 2012 and 2020, cases with maximum damages of less than $25 million, like this one, settled for a median of 18.2% of total damages. In 2021, the median recovery of potential damages was 12.5%. Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, at 6 (Cornerstone Research 2022).[4] The recovery here is in line with—and based on the more conservative damages estimate, far exceeds—the results in typical securities litigation settlements over the past decade.

---

[4] *Available at* https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

11

**2.** **The Risks and Complexity of the Litigation Support the Requested Fee Amount**

The requested fee is also reasonable because Lead Counsel obtained a favorable result even though it faced substantial risks. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (fees were justified "because of the complexity of the issues and the risks."); *Vizcaino*, 290 F.3d at 1048 (finding "[r]isk is a relevant circumstance" when awarding attorneys' fees); *WPPSS*, 19 F.3d at 1299-1301.

Securities class actions are often complex, difficult to prove, and risky. *Heritage*, 2005 WL 1594389, at *6. As this district court has noted, "a number of courts have commented on the difficulty and uncertainty of maintaining a securities class action." *Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) (Wu, J.) (collecting cases). "[T]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

This case was no exception. From the outset, Lead Counsel understood it was embarking on a complex, expensive, and likely lengthy litigation with no guarantee of

12

ever being compensated for the substantial investment of time and money the case would require.[5] *See* Grunfeld Decl. at ¶39.

As discussed in greater detail in the Final Approval Brief, at Section IV.A, there were many substantial challenges to succeeding in this litigation and to obtaining a common fund recovery.

*First*, the most immediate risk was that Plaintiffs' claims were subject to the PSLRA's stringent pleading standards. In its pending motion to dismiss, Defendant Aegis advanced several arguments disputing both liability and damages. Aegis raised several challenges disputing the sufficiency and merit of Plaintiffs' claims against it under §§ 11 and 12 of the Securities Act and § 15 of the Exchange Act based on alleged material misrepresentations and/or omissions in the registration statement and related prospectuses issued in connection with YayYo's IPO. Further, Aegis contended that its negative causation defense precluded any recovery for these claims and that it would obtain dismissal because it had conducted adequate due diligence under the circumstances. While Plaintiffs believe their arguments opposing Aegis' motion to dismiss would be strong, there is no guarantee they would prevail before the Court.

---

[5] Plaintiffs' Final Approval Brief more fully sets out the risks Plaintiffs would continue to face had they continued the litigation. *See* Final Approval Brief, part IV(A).

13

*Second,* even if Plaintiffs defeated the motion to dismiss, they would have to overcome vigorous challenges pertaining to the measure of damages. Through the course of litigation, it has become clear that the Settling Parties have diametrically opposed views regarding the calculation of damages and dispute whether loss causation can be established. As referenced above and in the Final Approval Brief, damages would have fallen from approximately $10 million to approximately $2 million if Defendants were able to establish negative causation. *See Supra* at Section III(C)(1); Final Approval Brief at Section IV(B). Settling the matter at this juncture avoids these risks and saves time and expenses associated with addressing damages at summary judgment and trial.

*Third,* the Settlement Classes faced risks of obtaining class certification and successfully continuing the litigation through trial. While Plaintiffs and Lead Counsel believed in the merits of Plaintiffs' claims, there would be many challenges in establishing all of the requisite elements and a substantial risk that Plaintiffs might not be able to do so. The arguments raised by Defendants could have materially reduced the amount of recoverable damages and adversely affected any potential recovery. Recovering $1.7 million in cash, representing between 14% and 85% of Plaintiffs' estimated damages, in the face of these substantial risks fully supports the requested fee.

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND AWARDS TO PLAINTIFFS

Finally, even if Lead Counsel were successful at trial and obtained a judgment against Defendants, Plaintiffs would face a severe risk of not collecting the judgment. During a discovery conference in front of Magistrate MacKinnon on October 1, 2021, counsel for YayYo indicated the Company was having trouble shouldering the costs of the Litigation. According to its 10-Q filing for the period ending September 30, 2021, the Company had only slightly more assets than liabilities. There is no way to ensure that YayYo would have survived as a going concern if the Litigation continued – and, if YayYo ceased to exist, the Litigation would have continued against only the individual YayYo Defendants, Aegis and WestPark. This would have caused added concern. Individuals are famously difficult to collect judgments from. Additionally, WestPark, which was an underwriter in the IPO (and would have been one of two remaining entities if YayYo went bankrupt), was intending to make a summary judgment motion based on an asserted due diligence defense. While Plaintiffs are confident that their claims against WestPark would have survived the assertion of this defense, the standard for claims against underwriters is different than that for a subject Company and its individual officers and directors. As such, without a settlement, there exists the real possibility that Plaintiff would spend years litigating the case to a verdict and recover nothing or substantially less than they were awarded due to YayYo's inability to survive the Litigation.

15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND AWARDS TO PLAINTIFFS

For these reasons, among others, fee awards in securities class actions commonly meet or exceed the 25% benchmark. *Omnivision*, 559 F. Supp. 2d at 1047.

### 3. Lead Counsel Skillfully Managed This Case Against Formidable Adversaries

The skill required to litigate the case and the quality of work performed support a fee award of at least the requested 25%. "The prosecution and management of a complex national class action requires unique legal skills and abilities. This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Rentech, Inc.*, 2019 WL 5173771, at \*10; *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at \*22 (C.D. Cal. July 28, 2014) (similar); *Omnivision*, 559 F. Supp. 2d at 1047.

Here, Pomerantz LLP ("Pomerantz"), the Court-appointed Lead Counsel, is among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long and successful track record in securities cases throughout the country, including within this Circuit. *See* Grunfeld Decl. at ¶34; *see also* Exhibit A (Pomerantz Firm Resume) of Declaration of Michael Grunfeld on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses attached as Exhibit 3 to the Grunfeld Decl. ("Grunfeld Fee Decl."). Lead Counsel's reputation as experienced counsel in complex cases, and its persistent efforts and thorough investigation greatly enhanced

16

Lead Counsel's ability to negotiate the Settlements. Pomerantz has amassed the skills and experience needed to prosecute this case through decades of experience litigating and successfully settling many securities class actions. *See*, *e.g.*, *In re Petrobras Sec. Litig.*, No. 14-cv-9662, Opinion and Order, at 17, (ECF No. 428, February 2, 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation."). In 2018, Pomerantz, as sole Lead Counsel for the class, achieved a historic $3 billion settlement, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See In re Petrobras Sec. Litig.*, No. 14-cv-9662, Opinion and Order, at 1, (ECF No. 834, June 25, 2018).

Lead Counsel used its extensive skill and experience in this Litigation by, among other things, conducting a thorough investigation of the claims, drafting a highly detailed Amended Complaint, reviewing tens of thousands of documents produced by Defendants in discovery, conducting several depositions, and researching and drafting Plaintiffs' opposition to Defendant Aegis' Motion to Dismiss, Plaintiffs' opposition to the YayYo Defendants' motion for judgment on the pleadings, and Plaintiffs' class certification brief. Final Approval Brief at Section IV(C); Grunfeld Decl. at ¶31. Lead Counsel also participated in vigorous, protracted, arm's-length settlement negotiations overseen by an experienced mediator, including two full-day mediations. Final Approval Brief at Section IV(D); Grunfeld Decl. at ¶11. The mediations involved extensive presentations by Plaintiffs and Defendants analyzing the legal and factual

17

nuances of the case. Grunfeld Decl. at ¶31. Lead Counsel's extensive efforts and skill leading to the Settlements strongly support the requested fee.

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *Heritage*, 2005 WL 1594403, at *20. Here, the Defendants retained Larson LLP, Richards Carrington LLC and Freeman Mathis & Gary, LLP. Each of these law firms has extensive experience in securities litigation and staffed the case with talented and experienced lawyers who advocated forcefully for their respective clients. Grunfeld Decl. at ¶36. That Lead Counsel achieved favorable Settlements in the face of such formidable opposition weighs in favor of the requested fee.

### 4. Lead Counsel Undertook a Significant Financial Risk

The risk of receiving little or no recovery is a major factor in awarding attorneys' fees. *See WPPSS*, 19 F.3d at 1299; *Heritage*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Unlike counsel for Defendants, who are typically paid an hourly rate and paid for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any time or expense since this case began in 2020. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding attorneys' fees in *Nat'l Fed'n of*

18

*the Blind v. Target Corp.*, 2009 WL 2390261, at *7 (N.D. Cal. Aug. 3, 2009), the court noted the risks that plaintiffs' counsel had taken:

> Risk of non-payment is also an issue to be considered. 'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.' [internal citations omitted] 'The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis.'

While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. The risk of no recovery in complex cases of this type is very real. A study of securities class actions filed between 1997 and 2018, after passage of the PSLRA, found that 43% of the cases filed were dismissed in defendants' favor. *See* Cornerstone Research, *Securities Class Action Case Filings, 2019 Year in Review* at 16 (2020). Additionally, in 2021, about one-third of securities cases reached a settlement, but dismissals outnumbered settlements by almost two to one. Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* at 11, Figure 11 (NERA 2022).

The risks do not end at the motion to dismiss stage. There are numerous contingent fee cases where plaintiffs' counsel, after the expenditure of thousands of hours, have received no compensation. Plaintiffs' Counsel are aware of many hard-

19

fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of the Plaintiff's Counsel produced no fee for counsel. Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See*, *e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (ordering new trial on issues relating to loss causation in phase one of bifurcated trial after years of litigation in which plaintiffs prevailed in both phases at trial). In fact, even when a plaintiff is successful at trial, payment is not guaranteed. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant). In *Sawant v. Ramsey*, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), plaintiffs' counsel spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment.

The risks in this case were no different. Pomerantz's fees were entirely contingent, so the only certainty was that there would be no fee without a successful result and that such a result would only be realized after significant amounts of time, effort and expense had been expended. *See* Grunfeld Decl. at ¶39. Pomerantz risked non-payment of 2,170.35 hours of professional time, as well as cash expenses of $74,454.78, for approximately a year and a half to bring this case to a successful

20

conclusion. *See* Grunfeld Fee Decl. at ¶¶5-7 (summarizing Lead Counsel's lodestar and expenses in further detail). "This type of 'substantial outlay, when there is a risk that [no money] will be recovered, further supports the award of the requested fees.'" *Am. Apparel*, 2014 WL 10212865, at *22 (quoting *Omnivision*, 559 F. Supp. 2d at 1047); *see also City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis").

What is more, and as discussed above, even if Plaintiffs and Lead Counsel could obtain a judgment, Lead Counsel would likely face significant hurdles in collecting a judgment based on YayYo's financial viability. *See* Final Approval Brief at Section IV(A)(3).

Lead Counsel committed enormous resources of both time and money to the vigorous and successful prosecution of this litigation for the benefit of the Settlement Classes. The contingent nature of counsel's representation strongly favors approval of the requested fee.

**5.    Fee Awards in Similar Cases Further Support an Award of 25% of the Settlement Fund**

Courts often look to fees awarded in comparable cases to determine if the fee requested is reasonable. *See Vizcaino,* 290 F.3d at 1050 n.4. "[I]n most common fund cases, the award exceeds [the] benchmark." *Omnivision*, 559 F. Supp. 2d at 1047. "This

21

is particularly true in securities class actions." *Am. Apparel*, 2014 WL 10212865, at *23; *see also Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"). Courts in the Ninth Circuit commonly award fees of one third of the settlement funds. *See*, *e.g.*, *Heritage*, 2005 WL 1594403, at *19 (awarding one-third of the fund, and collecting cases awarding one third of the fund). *See also Singer*, 2010 WL 2196104, at *8 (awarding 33.33% of common fund, and collecting cases, noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of the total recovery); *Pac. Enters.*, 47 F.3d at 379 (affirming 33% fee award); *In re Banc,* 2020 WL 1283486, at *1 (awarding 33% fee request); *Rentech, Inc.*, 2019 WL 5173771, at *7 (approving one-third fee award); *In re K12*, 2019 WL 3766420, at *1 (approving 33% attorneys' fees).[6] Here, Lead Counsel merely requests

---

[6] *See also In re Atossa Genetics, Inc. Sec. Litig.*, 2018 WL 3546176, at *1 (W.D. Wash. July 20, 2018) (approving one-third fee award); *In re Audioeye, Inc., Sec. Litig.*, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (same); *Bickley*, 2016 WL 6910261, at *4 (same); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (same); *Jenson*, 2008 WL 11338161, at *11 (same).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND AWARDS TO PLAINTIFFS

the "benchmark" 25% in fees, in accordance with the Court's Preliminary Approval Order. As such, Lead Counsel's fee request is reasonable as it falls well within fee award percentages in this Circuit.

### 6. A Lodestar Crosscheck Shows the Requested Fee Is Reasonable

"In cases where courts apply the percentage-of-the-fund method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *Am. Apparel*, 2014 WL 10212865, at *20; *Vizcaino*, 290 F.3d at 1050 ("the lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Courts calculate lodestar by assessing attorneys' hourly rates for reasonableness and multiplying the rates by the number of hours reasonably spent, and then cross-checking the resulting number against the fee award. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016). "In securities class actions, it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Heritage*, 2005 WL 1594403, at *22.

When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader

23

question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *Apollo Grp.*, 2012 WL 1378677, at *7 n. 2 (D. Ariz. Apr. 20, 2012). Here, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly supports the reasonableness of the requested fee.

Here, Lead Counsel dedicated 2,170.35 hours of professional time prosecuting this Litigation from its inception through April 17, 2022. This amount excludes time that Lead Counsel spent on this motion for attorneys' fees, expenses, and awards to Plaintiffs.[7] Grunfeld Fee Decl. at ¶¶5-6. Lead Counsel's total lodestar, based on its attorneys' current rates, is $1,351,411.25. *Id.* Accordingly, the requested fee of 25% of the Settlement Amount, which equates to approximately $425,000, represents a 0.314 negative multiplier—*i.e.*, the fee award would not fully compensate counsel for the time they spent on this litigation. This is far below the multiplier range of one to four frequently used as a crosscheck. *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016). Given the highly beneficial results achieved for the Classes in

---

[7] In addition to the time expended to date, Lead Counsel will spend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek further compensation. Grunfeld Decl. at ¶35.

24

this securities fraud action, Plaintiffs' Counsel's 2,170 hours strongly support the reasonableness of the fee request. *See*, *e.g.*, *id.* ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers."); *Feller v. Transamerica Life Ins. Co.*, 2019 WL 6605886, at *13 (C.D. Cal. Feb. 6, 2019) (2.97 multiplier "well-within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit."). The lodestar crosscheck, therefore, supports Plaintiffs' request for 25% in attorneys' fees from the common fund.

### 7.    The Settlement Class's Reaction Supports the Requested Fee Award

"The existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Heritage*, 2005 WL 1594403, at *21 *see also Omnivision*, 559 F. Supp. 2d at 1048. The Claims Administrator mailed 7,626 Notice and Claim Forms. Ewashko Decl. at ¶8. The Claims Administrator also published the Summary Notice on *Investor's Business Daily* and transmitted it over the *PR Newswire*. *Id.* at ¶9. The Notice and Summary Notice each directed potential Settlement Class Members to where they could access the full-length Notice, which was also posted on a Settlement-specific website. The Notice informed Settlement Class Members that Lead Counsel would seek attorneys' fees of up to 33.3% of the Settlement Amount, plus interest, and litigation expenses, plus interest, in an amount not to exceed $100,000. The notices advised Settlement Class Members of their right

to object to any of these requests for relief or request exclusion from the Settlements and explained how to do so.

The Notice sets out that the deadline for potential Settlement Class Members to submit objections and requests for exclusion is May 13, 2022. To date, no objections to any aspect of the Settlements remain. Ewashko Decl. at ¶13; Grunfeld Decl. at ¶43. While Plaintiff Bednarz initially objected to Preliminary Approval of the YayYo Settlement, he has since withdrawn his objection and submits a Declaration in support of final approval of the Settlements. *See* Bednarz Decl. at ¶4. Further, only one individual has requested exclusion from the Settlements. *See* Ewashko Decl. at ¶13; Grunfeld Decl. at ¶43. This individual claims he purchased shares directly from Defendants prior to the IPO. The positive reaction to the Settlements by the Settlement Classes strongly supports the fee request. *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462, at *24 (C.D. Cal. May 29, 2015) (granting final approval of settlement where class counsel received 395 valid opt-out requests and 15 valid objections from class members); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("The lack of objection from any Class Member supports the attorneys' fees award").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND EXPENSES, AND AWARDS TO PLAINTIFFS

## IV.    LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014). The Notice informed potential Settlement Class Members that Lead Counsel would seek expenses, plus interest, in an amount not to exceed $100,000. Lead Counsel requests reimbursement of $74,454.78, plus interest, incurred by Pomerantz in prosecuting this Action. Grunfeld Fee Decl. at ¶7. This amount is well within the maximum amount described in the Notice. Grunfeld Decl. at ¶29. These expenses should be approved because they are the types of expenses that are routinely charged to fee-paying clients. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also Immune Response*, 497 F. Supp. 2d at 1177.

Lead Counsel pursued this litigation knowing that it could recover its expenses only if Plaintiffs and the putative Classes prevailed at trial and survived on appeal or reached a settlement. Grunfeld Decl. at ¶¶39-41. Lead Counsel had no incentive to incur, and did not incur, unnecessary expenses. All of Lead Counsel's expenses were reasonably incurred and necessary for the prosecution of this litigation. *Id.* at ¶44; Grunfeld Fee Decl. at ¶7. The bulk of the expenses incurred by Lead Counsel consisted of fees for a damages expert, a mediator, an investigator, court reporting services for depositions, and a discovery database. Grunfeld Fee Decl. at ¶7. Lead Counsel retained

27

an investigator to investigate YayYo's alleged misconduct, which was crucial for prosecuting this Action. The damages expert was needed to analyze potential damages so that Lead Counsel could properly evaluate and negotiate the Settlements. Lead Counsel and the Defendants' counsel jointly retained the mediator and shared the fee. In addition, Lead Counsel had to pay for court reporting services and a discovery vendor given the extensive discovery that took place in this litigation. The remainder of Lead Counsel's expenses consisted primarily of court filing fees, online legal research fees, and travel fees. *Id*. Courts have held that these and similar types of expenses are properly reimbursed by the settlement funds. *See Katz v. China Century Dragon Media, Inc.*, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013). The categories of expenses for which Lead Counsel here seek reimbursement are the type routinely billed to hourly clients and, therefore, should be paid out of the common fund.

## V.    THE COURT SHOULD APPROVE THE AWARDS TO PLAINTIFFS

The Court should also award $15,000 to Lead Plaintiff Bernard Bednarz and $10,000 to Plaintiff William Koch (totaling $25,000) for the time they spent representing the Settlement Classes. The PSLRA empowers courts to grant awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. §78u-4(a)(4); H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff,

28

including lost wages, and grants the courts discretion to award fees accordingly"). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Manuel Vigueras v. Red Robin Int'l, Inc et al*, 2020 WL 13042573, at *4 (C.D. Cal. Dec. 2, 2020) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)).

Throughout this litigation, both plaintiffs were available to Lead Counsel as needed and performed their duties with attentiveness and diligence. They: (1) reviewed complaints, motion papers and other pleadings; (2) regularly communicated and corresponded with counsel regarding the litigation and settlement; and (3) gathered and produced information to Lead Counsel concerning their YayYo investments. Additionally, while the Court rejected Plaintiff Bednarz's initial objection to Preliminary Approval of the YayYo Settlement (which he has since withdrawn), his making that objection and appearing at the preliminary approval hearing highlight the effort he undertook to further the best interests of the Settlement Classes. Plaintiff Bednarz also volunteered to file a motion seeking appointment as lead plaintiff. Further, Plaintiff Koch prepared for and attended a full-day deposition. The Declarations of Bernard Bednarz and William Koch, attached to the Grunfeld Decl. as Exhibits 1 and 4, respectively, outline the time and tasks Plaintiffs devoted to this

29

litigation. As shown in their declarations, they were actively involved and put the concerns of the Settlement Classes at the forefront. These are the kinds of activities that warrant reimbursement for plaintiffs for their time and efforts expended on the Settlement Classes' behalf.

The Notice informed Settlement Class Members that Lead Counsel may seek service awards for Plaintiffs in connection with their representation of the Settlement Classes in an amount not to exceed $35,000, which is $10,000 more than the awards requested herein. In the Preliminary Approval Order, the court indicated that it did not believe the recovery in this Litigation warranted $35,000 of service payments to Plaintiffs. Accordingly, Plaintiffs have reduced their requests to $25,000 total. To date, no objections have been raised in response to the requests for service awards that Plaintiffs included in the Notice. Ewashko Decl. at ¶13; Grunfeld Decl. at ¶52.

Courts routinely award representative plaintiffs similar or greater amounts on an individual or aggregate basis. *See*, *e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 for each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 to lead plaintiff); *In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (approving a $100,000 award to lead plaintiffs, and noting that awards to lead plaintiffs are important because they further "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves")

Plaintiffs Bernard Bednarz and William Koch dedicated their own valuable time, faithfully representing the Settlement Classes. Here, the requested awards to them are reasonable, amounting to a modest percentage of the Settlement Fund. The Court should award the requested amounts to Plaintiffs.

## VI.    CONCLUSION

For the foregoing reasons, the Court should award attorneys' fees of 25% of the Settlement, or $425,000, plus interest, and expenses of $74,454.78, plus interest. The Court should also award Lead Plaintiff Bernard Bednarz $15,000 and Plaintiff William Koch $10,000, for a total of $25,000.

Dated: May 2, 2022                                  Respectfully submitted,

**POMERANTZ LLP**
By: */s/ Michael Grunfeld*
Michael Grunfeld (admitted *pro hac vice*)
600 Third Ave., 20th Fl.
New York, NY 10016
(212) 661-1100
mgrunfeld@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
Ari Basser (SBN 272618)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com
            abasser@pomlaw.com

*Lead Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ &**

31

**GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Plaintiffs*

32

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/Michael Grunfeld

Michael Grunfeld

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFFS